*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

———————◆———————

CEIVA OPCO, LLC,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC.,

*Defendant-Appellee.*

_____

*Appeal from the United States District Court for the Central District of California*
*Case No. 2:22-cv-02709-AB-MAA · Honorable Andre Birotte, Jr.*

## RESPONSE BRIEF OF DEFENDANT-APPELLEE AMAZON.COM, INC.

J. DAVID HADDEN
SAINA S. SHAMILOV
RAVI R. RANGANATH
FENWICK & WEST LLP
801 California Street
Mountain View, California 94041
(650) 988-8500

TODD R. GREGORIAN
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
(415) 875-2300

JONATHAN G. TAMIMI
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, Washington 98101
(206) 389-4510

*Attorneys for Appellee Amazon.com, Inc.*

Dated: December 20, 2024

 

# EXEMPLARY PATENT CLAIMS AT ISSUE

## U.S. Patent No. 6,442,573

19. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network;

wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

1. A digital display apparatus having an integrated housing, said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus, and a current version of onboard software;

a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

## U.S. Patent No. 9,124,656

1. A display device for displaying image data received from a server system comprising:

a central processing unit;

a display screen for displaying said image data;

a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by

a web browser for managing behavior characteristics of said display device.

# U.S. Patent No. 9,654,562

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:

said display screen;

a central processing unit;

a video controller configured to control display of said content on said display screen;

a communications interface configured to communicate with said server system via said communications network;

a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:

upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;

sending by said apparatus said unique identifier to said server system;

sending by said apparatus said version identifier to said server system;

prompting by said apparatus a user of said apparatus to create an account at said server system;

receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;

updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;

receiving by said apparatus updated content from said server system;

displaying by said apparatus said updated content on said display screen.

16. The apparatus of claim 1 wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system.

# CERTIFICATE OF INTEREST

For Defendant-Appellee Amazon.com, Inc.:

Counsel for Defendant – Appellee Amazon.com, Inc. certify the following under Federal Circuit Rule 47.4:

1. The full name of every party or amicus represented by me is:

   Amazon.com, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not entered an appearance in this case) are:

   | Law Firm | Attorney |
   |---|---|
   | Fenwick & West LLP | Christopher S. Lavin, Dargaye H. Churnet, Donna Tang Long, Jeffrey A. Ware, Melissa L. Lawton, and Olivia L. Wheeling |
   | Formerly of Fenwick & West LLP | Patrick O. Doyle, Liam K. Azartash |

5. Other than the originating number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   None.

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

None.

December 20, 2024                    FENWICK & WEST LLP


                                     By:   */s/ J. David Hadden*
                                           J. David Hadden

                                           *Counsel for Defendant-Appellee*
                                           *Amazon.com, Inc.*

**TABLE OF CONTENTS**

**Page**

EXEMPLARY PATENT CLAIMS AT ISSUE ...................................................... i

CERTIFICATE OF INTEREST ................................................................ vi

TABLE OF ABBREVIATIONS ............................................................... xiv

STATEMENT OF RELATED CASES ....................................................... xv

JURISDICTIONAL STATEMENT ............................................................. 1

INTRODUCTION .................................................................................... 2

STATEMENT OF ISSUES ....................................................................... 4

STATEMENT OF THE CASE .................................................................. 4

    A.    Digital picture frames were conventional at the time of the asserted patents. .................................................................. 4

    B.    The asserted patents describe existing digital picture frames with a conventional internet connection and the resulting benefits. .................................................................................... 6

        1.    The patents instruct the reader to use conventional hardware components. ........................................ 6

        2.    The patents recite the known benefits of internet connectivity in the context of a digital picture frame. ........ 8

    C.    The asserted claims. ......................................................... 12

    D.    Ceiva paid millions of dollars to generate industry praise for its product. ................................................................ 15

    E.    Procedural History .......................................................... 17

        1.    The district court dismisses the original case for lack of standing. ............................................... 17

**TABLE OF CONTENTS**
**(Continued)**

Page

2. Ceiva refiles its case against Amazon, and the district court holds the asserted claims are unpatentable under § 101. ...................................................................18

SUMMARY OF ARGUMENT ...........................................................20

ARGUMENT ...................................................................................22

I. STANDARD OF REVIEW...........................................................22

II. THE ASSERTED CLAIMS ARE UNPATENTABLE UNDER § 101 .......23

A. The asserted claims are directed to an abstract idea at step one.............................................................................23

B. The asserted claims lack an inventive concept. ...................34

C. Ceiva did not raise a genuine dispute of material fact concerning patent eligibility.............................................40

CONCLUSION.................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ...................................................................*passim*

*Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*,
309 F.3d 433 (7th Cir. 2002) ....................................................................44

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)..................................................................................*passim*

*Ameranth, Inc. v. Domino's Pizza, LLC*,
792 F. App'x 780 (Fed. Cir. 2019) ........................................................41, 42, 43

*Angel Techs. Grp., LLC v. Meta Platforms, Inc.*,
No. 2022-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024)..............40, 42, 43

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ..........................................................28

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ...............................................................36, 37

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ...............................................................37

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ..............................................................24

*Bot M8 LLC v. Sony Corp. of Am.*,
465 F. Supp. 3d 1013 (N.D. Cal. 2020), *aff'd*, 4 F.4th 1342
(Fed. Cir. 2021).......................................................................................46

*Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*,
955 F.3d 971 (Fed. Cir. 2020) .................................................................26

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ...............................................................*passim*

**Page(s)**

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........................................................39

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ........................................................44

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .....................................................*passim*

*Context Extraction & Transmission LLC v. Wells Fargo Bank*,
776 F.3d 1343 (Fed Cir. 2014), *cert. denied*, 577 U.S. 914 (2015) .............26, 27

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ........................................................31

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) ........................................................26

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ........................................................26

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ........................................................40, 43

*Dolbear v. Am. Bell Tel. Co.*,
126 U.S. 1 (1888) ........................................................33

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) ........................................................46

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .....................................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........................................................24

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
No. 2022-1932, 2024 WL 371959 (Fed. Cir. Feb. 1, 2024) ........................25, 46

*Ficep Corp. v. Peddinghaus Corp.*,
No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) ........................40

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ................................................................32, 33

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) .......................................................................43

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ...................................................................*passim*

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .......................................................................26

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .......................................................................39

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .....................................................................................23, 45

*MyMail, Ltd. v. ooVoo, LLC*,
No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) ...................25, 36

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) ...................................................................44

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) .........................................................................46

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017) .................................................................36

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) .........................................................................44

*Return Mail, Inc. v. United States Postal Serv.*,
868 F.3d 1350 (Fed. Cir. 2017), *rev'd and remanded
on procedural grounds*, 587 U.S. 618 (2019) ..................................................46

**Page(s)**

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ...........................................................................31

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) .............................................................................25

*Sitrick v. Dreamworks, LLC*,
  516 F.3d 993 (Fed. Cir. 2008) .............................................................................44

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019) ...........................................................................28

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) .....................................................................22, 28

*Tranxition, Inc. v. Lenovo, Inc.*,
  664 F. App'x 968 (Fed. Cir. 2017) ...............................................26, 33, 35, 45

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom.* .........................................28

*Ultramercial, LLC v. WildTangent, Inc.*,
  576 U.S. 1057 (2015)............................................................................................28

*Weisner v. Google LLC*,
  51 F.4th 1073 (Fed. Cir. 2022) ...........................................................................30

*Yu v. Apple Inc.*
  1 F.4th 1040 (Fed. Cir. 2021) .............................................................................32

**STATUTES AND RULES**

35 U.S.C. § 101 .........................................................................................*passim*

Fed. R. Civ. Proc. 12(b)(6) .................................................................................17

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| '573 patent | U.S. Patent No. 6,442,573 |
| '656 patent | U.S. Patent No. 9,124,656 |
| '930 patent | U.S. Patent No. 9,203,930 |
| '562 patent | U.S. Patent No. 9,654,562 |
| Amazon | Defendant-Appellee Amazon.com, Inc. |
| asserted patents / asserted claims | '573 patent (claims 2, 6, 19)<br>'656 patent (claims 1-2, 5-8)<br>'930 patent (claims 1-8, 15)<br>'562 patent (claims 1, 4, 11, 16-17, 20) |
| Ceiva | Plaintiff-Appellant Ceiva Opco, LLC |
| OB | Ceiva's Opening Brief |

# STATEMENT OF RELATED CASES

Amazon knows of no other cases pending before this Court or before a lower court or agency that will directly affect or be directly affected by this Court's decision in this appeal.

# JURISDICTIONAL STATEMENT

Amazon agrees with Ceiva's statement of jurisdiction.

## INTRODUCTION

This Court should affirm the summary judgment order holding the asserted patents ineligible under § 101. The asserted patents claim the idea of a digital picture frame that can "automatically" and "without user input" or a separate computer update its content by accessing a remote database. Appx6; Appx11. But the claims disclose no improvement to computer technology to implement that idea and achieve the desired result. Instead, they claim the idea itself—instructing the reader to provide internet connectivity to a conventional digital picture frame. The patents themselves admit that digital picture frames and the other recited hardware components are conventional, as are the functions they describe—i.e., authenticating a remote server or device over a network, and automatically requesting and receiving data and software updates from the server.

The district court declined to invalidate the asserted claims on a motion to dismiss only because Ceiva alleged that they recited an unconventional ordered combination. Appx6. Yet four years later at summary judgment, Ceiva submitted no evidence supporting the allegation it made to survive dismissal. Instead, it argued as it does here on appeal—that it can prove patent eligibility with evidence of generic industry praise for its own digital picture frame product and expert testimony that such a frame was novel at the time. The district court recognized correctly that this purported evidence was irrelevant—none of it shows any technological

improvement captured in the patent claims that could serve as an inventive concept. Appx15-20. At most, it shows that the abstract idea to which the claims are directed was *new*, which this Court has held time and time again does nothing to show that a patent claims a concrete implementation of an idea rather than the idea itself.

This case thus presents a straightforward application of § 101 and shows neither the "incoherence" in the doctrine nor the "impossibility" in application that Ceiva claims. OB3. What matters under the law is what Ceiva as applicant sought to claim as its exclusive rights under the patent laws. Without a connection to an improvement to computer technology in the claims themselves, it simply does not matter that Ceiva's predecessor released a "new, first in-class consumer electronic device" that was "highly-praised" in the market as "a grandparent's dream come true." OB3-4 (citing Appx7453-7454). This appeal arises from a summary judgment order—the patents were not invalidated on the pleadings and Ceiva had every opportunity to come forward with evidence to prove its allegation of an inventive concept. It did not—the undisputed record reflects that Ceiva claimed only the idea of adding an internet connection to a digital picture frame and the resulting conventional functions and benefits. Its patents are thus ineligible, and the Court should affirm.

Did the district court rule correctly at summary judgment that the asserted claims are ineligible for patenting under 35 U.S.C. § 101?

**STATEMENT OF THE CASE**

**A.      Digital picture frames were conventional at the time of the asserted patents.**

The asserted patents issued to Ceiva Logic, Inc., the parent company of Ceiva Opco, and they share a common specification that claims priority to an application filed December 10, 1999.  Appx61 (1:31-32).[1]

The asserted patents themselves make clear that Ceiva did not invent the digital picture frame.  Appx61, Appx49 (1:45-2:14, Fig. 1A).  The specification discusses the "various type[s] of digital display device[s]" already in common use, Appx61 (1:40-42), including the Sony PHD A55 CyberFrame.  Appx61 (1:46-47).  The CyberFrame was a digital picture frame with an LCD screen, a memory that stored images and videos, and software and hardware "configured to playback MPEG or JPEG data files" from that memory in a variety of image resolutions.  Appx61 (1:60-67.)  Users could change the device settings to "control how data is displayed," e.g., play a slideshow, save or delete images, and adjust the display brightness.  Appx61 (2:5-14.)  Figure 1A depicts the CyberFrame:

---

[1] Amazon herein cites to the common specification as it appears in the '573 patent.



**FIGURE 1A**
**(Prior Art)**

According to the patents, the CyberFrame lacked internet connectivity, Appx61 (1:53-2:14.); Appx61 (2:28-31), and this left it with three shortcomings. The CyberFrame could obtain new images only from a storage medium (e.g., a memory stick) physically connected to the frame, rather than "automatically" or "periodically" "from a networked data source." Appx61 (1:50-53, 2:15-19; 2:32-38). In other words, "a person who does not have physical access to the device cannot introduce new images into the device." Appx61 (2:17-19). A user also could not adjust settings remotely—i.e., without pushing buttons on the device. Appx61, Appx49 (2:17-22, Fig. 1A). And the CyberFrame's software could not be updated remotely to add new features. Appx61 (2:23-28).

5

**B. The asserted patents describe existing digital picture frames with a conventional internet connection and the resulting benefits.**

**1. The patents instruct the reader to use conventional hardware components.**

The patents purport to overcome the shortcomings of the CyberFrame by adding an internet connection to a digital picture frame, allowing it to receive updates to content, operating software, and user settings, from a remote server. Thus, they describe a "digital picture frame that obtains images for display from a repository" (e.g., a server) that it accesses via a network. Appx63 (6:35-41).

The shared specification concedes that the frame consists of conventional hardware components. It has a conventional display, for example an LCD screen, that has a surrounding border "modeled to resemble a traditional picture frame." Appx65-66 (10:64-11:7). A generic "controller" controls the display, Appx66 (11:12), a "flash memory" stores images, *id.* (11:18-19), and a processor or "CPU []️ is responsible for executing tasks," Appx65 (10:48), including making sure the device operates according to the user's preferences. Appx65-66, Appx54 (10:36-11:16, Fig. 3). A user can control the device using "pushbutton switches," Appx66, Appx54 (11:64-12:40, Fig. 3), and its "power source" can be "a standard wall plug," "battery, solar, or any other source." Appx67 (13:1-10).

The digital picture frame may also include generic "telecommunications hardware and/or software" for "connecting to" the data repository, Appx65

6

(10:42-44), which the patent in turn describes as conventional database servers, Appx67 (13:43). These networking components consist of a "communication interface" that uses a "network link" to access to an "interconnection fabric." Appx66 (12:41-50, Fig. 3). But again, the specification establishes each of these as conventional. The "communication interface" can be any "software or hardware" that can transmit data. Appx66 (12:41-64). The "network link" is any wired or wireless link that allows data to travel between the communication interface and the interconnection fabric. Appx66 (12:60-67). And the "interconnection fabric" is simply a coined term denoting the network—it can be "the Internet" or "any type of network configured to transmit data." Appx66 (12:47-50).

Figure 3 shows the components of the frame device and network connection:



**FIGURE 3**

7

Ceiva concedes that it did not invent any physical component described in the patents. OB51.[2] Nor could it contend otherwise, considering the specification admissions just discussed, and because Dean Schiller, its CEO and a named inventor, confirmed in his testimony that Ceiva did not invent them. Appx2314 (57:3-5, 57:16-18); Appx2314-2315 (57:25-58:2); Appx2315 (58:14-15).

### 2. The patents recite the known benefits of internet connectivity in the context of a digital picture frame.

The patents describe using this conventional hardware to allow the digital picture frame to perform functions using the network. *See, e.g.*, Appx47, Appx63 (Abstract, 6:35-39, 6:45-53). Ceiva contends that this means it "invented" up to ten separate "technical improvements" to prior art digital picture frames that are captured in various combinations in the asserted claims. OB22-24. But each of these purported "improvements" merely describe either conventional networking functions and benefits, or aspirational results for which the patents disclose no technology.

The central purported advance is the ability of a device to automatically connect to a server to retrieve self-configuration information, display new photos,

---

[2] Ceiva describes the user interface as allowing a remote user to provide images and control the digital picture frame by updating its preferences, OB18-19, but does not contend that interface is a technological improvement. OB22-24. Only two claims recite an interface, and they do so generically without requiring it to have any specific structure. Appx81 (4:23-28); Appx112 (31:25-30).

and receive user settings and software updates.  OB22-24 (Nos. 1, 2, 4 & 10).  Yet the patents provide no detail on how the frame performs these functions.  The specification provides a generic description of obtaining data from a server—it describes only that the frame connects using standard communication protocols, Appx74 (28:60-67), before it "automatically execute[s] the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software," Appx65 (9:31-35).  It notes that the process may include calling one phone number to get the "configuration information" for the device and calling another number periodically to obtain new images.  Appx65 (9:35-56).[3]

Not only do the patents disclose no technology for the claimed "automatic" server connection, but the undisputed summary judgment record showed that function was conventional.  Existing devices including computers running Windows 95 and 98 automatically connected to servers and downloaded configuration data.  Appx2177-2181 (¶¶ 42-49); Appx2087-2088 (¶¶ 307-309), Appx2143-2145 (¶¶ 418-21); Appx2379 (113:10-19).[4]  They used both client-pull systems (e.g., the

---

[3] Ceiva points to the "architecture of Fig. 2A," as describing these steps.  OB16.  But that figure shows only the conventional components of the network—i.e., server systems, a "data repository," and the network "interconnection fabric[s]."  Appx52.

[4] The "self-configuration protocol" described in the patents itself is just a series of high-level steps absent from the claims: the frame determines in some unspecified manner that that it is connected to power and a network, then it displays images from

World Wide Web), and server-push systems (e.g., PointCast and Internet Explorer's Active Desktop), Appx62 (3:53-56), to send and receive data over a network, Appx62 (3:39-44), including images to display locally, Appx62-63 (3:3-23, 4:16-20, 5:51-6:13); Appx9210.

It was also undisputed at summary judgment that networked computer systems of the time sent and received data periodically and automatically without user input. Appx63 (5:36-6:13); Appx2087-2088 (¶¶ 307-09), Appx2119-2120 (¶¶ 349-69), Appx2123-2127 (¶¶ 376-84); Appx9216. Networking protocols that provided this functionality were well known, Appx2087-2088 (¶¶ 307-09); Appx9213-9214, as were websites using the HTML "refresh" feature. Appx2123-2127 (¶¶ 376-83); Appx7248 (¶ 81); Appx9225-9228. Conventional email clients could automatically check with a server for new emails at predefined time intervals and download any new emails for display, without user input. Appx2119-2120 (¶¶ 367-69). Internet-connected tablet computers performed these functions as well. Appx2097-2106 (¶¶ 327-38). Nor were remote software updates new, as standard computers running Windows 98 had this capability, Appx2373 (57:15-23), and

---

memory before "automatically initiat[ing] a communication session within a certain interval without requiring input from the user," Appx73 (25:27-26:15), such as by dialing a local phone number, *id.* (25:48-26:6). Ceiva highlights this embodiment and its depiction in Figure 2B, OB15-16, but fails to note that none of the asserted claims require these features.

universities and businesses had fleets of devices that obtained software updates from a remote server automatically and without user input. Appx2145-2147 (¶¶ 424-28); Appx9213-9214.

Similarly, authenticating a device and a server (No. 7) was a necessary and conventional feature of networking. The patents moreover instruct the reader to use existing authentication methods, for example by using a prior art "RADIUS server" "to authenticate users for dial-in and/or remote access via a data communication network," Appx68 (16:57-60), or by using a conventional HTTP "GET command" to request an "authentication file" from the server and determining "if the authentication file is authentic by computing a checksum and comparing the result to an expected results file." Appx69 (18:19-24).

Here, too, the undisputed summary judgment record confirmed that the authentication contemplated in the patents was conventional. Existing systems used server-client authentication methods to make sure that only authorized users could access data or provide a data to a device. Appx2127-2136 (¶¶ 385-404); Appx2372(56:12-14). This includes DHCP, which the patent cites as prior art, Appx74 (28:42-45); Appx2128 (¶ 387), and the Secure Sockets Layer (SSL) protocol, Appx2133-2136 (¶¶ 397-404); Appx2388-2389 (153:17-154:6); Appx9228. DHCP and similar protocols use "unique device identifiers" (which date back to the advent of computer networks), Appx2128 (¶ 387), to authenticate

network communications, Appx2128-2129 (¶¶ 387-388), and SSL is one of several two-way authentication methods (i.e., authenticating device to server and vice versa) in widespread use before Ceiva filed its patent applications. Appx2131-2133 (¶¶ 392-397). Conventional systems also included user accounts for authentication, requiring a username and password for access. Appx2157 (¶ 448); Appx9229. Ceiva did not invent any of these conventional authentication methods.

The remaining functions describe basic advantages of networking: the use of a network allows a user to control the device and provide content from a remote location (No. 3); a database server can store more data than a digital picture frame (No. 5) and backup copies in case data is lost from the device (No. 6). OB23-24; *see also e.g.*, Appx62 (3:3-9); Appx7254-7256 (¶ 91). Or they describe alleged improvements—such as displaying images in different file types and formats (No. 8) and converting image formats and resolutions at the server (No. 9)—that Ceiva did not argue at the district court (*see* Appx7022-7063), are not described in the patents other than as a feature of conventional digital picture frames, Appx61 (1:59-67), and in any event are not recited in the asserted claims.

## C.    The asserted claims.

The asserted claims are each directed to the same concept of a digital picture frame that can self-configure and update automatically via a network connection to a remote server. Claim 19 of the '573 patent recites:

A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network;

wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

Appx81 (4:15-39).

In short, the claim requires (1) a digital picture frame configured to behave according to user preferences and obtain software updates; (2) a user interface through which the user provides image data and preferences; and (3) a server system

that periodically relays image data and preferences to the frame when the frame "automatically issues" a request.[5]

The representative claims of the remaining patents are similar.[6] Each recites a variation on a "display device" (i.e., the digital picture frame), consisting of generic computer components (i.e., a display, a memory, a processor, CPU, and/or video controller), and a communication interface or communication circuitry connected to a network. Appx111-112 (30:62-31:30); Appx142-143 (30:56-31:25); Appx172 (31:35-32:10, 32:42-45). Each claim instructs the reader to configure this hardware and/or installed software to initiate a communications session with a remote server, perform an authentication function such as supplying the server with a unique device identifier, and to automatically request and obtain from that server content to display and software updates. Appx111-112 (30:62-31:30); Appx142-143 (30:56-31:25); Appx172 (31:35-32:10, 32:42-45). These claims thus each add an authentication function and minor variations to it, such as to prompt the user to create "an account at said server system" ('562 patent, cls. 1, 16, Appx172), or require the device to

---

[5] The 573 patent was reexamined by the Patent Office, which cancelled claims 1, 7-12, and 17 as unpatentable. Appx79-81. During reexamination, Ceiva amended claims 2, 4, 5, and 13-16 and added claims 18 and 19. Appx79-81.

[6] The parties agree that claim 19 of the '573 patent and that claim 16 of the '562 patents are representative. The district court ruled that claim 1 of the '930 and '656 patents are representative for those patents. Appx9. Ceiva does not argue on appeal that the district court erred, yet without explanation treats claim 3 of the '930 patent and claim 5 of the '656 patent as representative. OB22-24.

receive reciprocal "authentication information" from the server, ('656 patent cl. 1, Appx111-112). Claim 1 of the '656 patent also adds that the device instructs the server to create the user interface, and that it can "manage behavior characteristics" of the device and be "accessible by a web browser." Appx111-112 (30:61-31:31).

But none of the asserted claims provide technical means for carrying out these functions beyond directing that the conventional components be configured to perform them. The claims do not disclose, for example, how to build or configure a device to "automatically" initiate communications with the server, how to generate a unique identifier or other information and use it to authenticate a device or the server, how the device can "automatically" update its operating software, or, in the case of the '656 patent, how a device can instruct a server to create a web interface.[7]

### D. Ceiva paid millions of dollars to generate industry praise for its product.

Ceiva released its product—the "Ceiva Frame"—in December 1999. Appx560. Ceiva spent nearly eight million dollars on marketing efforts in the year after launch. Appx9161. This included paying Amazon one million dollars to promote the frame and serve as its exclusive retailer. Appx562-563; Appx9190.

---

[7] Ceiva's brief identifies a number of other features from the specification that are not recited in any of the asserted claims, such as: filtering image data received at the data repository to determine whether it meets filter criteria, such as a "buddy list" (OB17); image conversion software that converts images from one format or resolution to another (OB17-18); and reductions to the cost, size, and "bulkiness" of a digital display device (OB24, OB46).

Their agreement required Amazon to participate in "public relations activities" for the Ceiva Frame and to promote it through channels that included the Amazon.com website, emails, printed flyers, and newspaper inserts. Appx9190; *see* Appx7123-7126, 7128, 7130. Amazon did so, including promoting the frame through statements by then-CEO Jeff Bezos. Appx563 (¶ 103).

Ceiva notes that its frame received extensive press coverage around the same time. OB31-35. But it identifies no outlet that praised a specific technical feature recited in the asserted claims. Instead, the press focused on the "concept" of a digital picture frame that automatically downloads photos. Appx7141; *see* Appx7137; Appx7151; Appx7161. To the extent that they focused on any technical detail at all, it was how the frame was useful for those without a home computer or internet service provider because it could download photos from a server via a phone line. Appx7141 (Ceiva Frame is "ideal for sharing photos with relatives who don't have PCs"); *see also* Appx7128 ("Receive photos of family and friends over the internet without a computer."); Appx7134; Appx7137-7138; Appx7146; Appx7151; Appx7161; Appx7166-7167; Appx7180. But no asserted claim requires the use of a phone line let alone recites a technical improvement to using phone lines for internet networking functions; instead, the claims recite only that the device communicates with a server over a network.

### E. Procedural History

#### 1. The district court dismisses the original case for lack of standing.

Ceiva filed suit originally through its parent, Ceiva Logic, Inc., alleging infringement of three of the asserted patents by a range of Amazon products including the Kindle, Echo Show, and Fire Tablet. Appx6.[8] Amazon moved under Rule 12(b)(6) to dismiss the complaint for patent-ineligibility under § 101. Appx9971. The district court ruled that the patents appeared to claim an abstract idea—"a digital picture frame able 'to automatically access a remote data repository to obtain updated content without the use of a computer and without any further user input.'" Appx9979-9980; Appx6.[9] It also noted that the claims "do not appear to contain sufficient specificity to be directed to an improvement in computer functionality," as they recite elements "in functional terms, rather than explaining how the components perform the function." Appx9980. In fact, Ceiva never contested at the district court that all the physical components recited in the claims

---

[8] None of these accused products are digital picture frames; rather, the Kindle is an e-reader, the Echo Show is an internet-connected smart speaker and display enabled for use with Amazon's Alexa voice assistant, and the Fire Tablet is a tablet personal computing device with a touchscreen. Appx567 (¶ 121).

[9] The phrase "without the use of a computer" refers to the fact that the frame itself communicates with the network, rather than through a separate desktop or laptop computer. *See* OB37; Appx7053 (17:8-14).

were conventional, and thus the district court held that none standing alone could provide an inventive concept (Appx15).

The district court declined to invalidate, however, because Ceiva persuaded it of a potential fact dispute as to whether the ordered combination of claim limitations was unconventional. Appx9982-9983. Ceiva pointed to allegations in its complaint that "a unique identifier stored in memory, a frame that initiates communications with the server, and a server that automatically distributes updated content to the frame" provides an inventive concept because the combination and ordering of those claim elements "realiz[es] the abstract idea." Appx9982; *see also* Appx6. After discovery, the district court dismissed the case for lack of subject matter jurisdiction when the nominal plaintiff Ceiva Logic admitted that it did not actually own the patents—Ceiva Opco did. Appx312-313.

### 2. Ceiva refiles its case against Amazon, and the district court holds the asserted claims are unpatentable under § 101.

Ceiva refiled its case adding the '656 patent and accusing additional Amazon products like the Fire TV. Appx540; Appx576 (¶ 126), Appx577 (¶ 130). Based on the expanded allegations Ceiva sought a nine-figure royalty for the alleged use of the asserted digital picture frame patents. Appx9985-9986.

The district court granted summary judgment that all asserted claims are ineligible under § 101. Appx1. It first determined representative claims for each

patent. Appx9.[10] At *Alice* step one, the district court held that the claims are "directed to automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input, within the context of a digital picture frame,"—the same abstract idea the district court had identified years earlier at the pleading stage. Appx11 (internal quotations omitted). It observed that the claims' focus is "comparable to 'compiling photos to a display in succession, such as on a film projector,'" but applied in the admittedly well-known technological environment of a digital picture frame. Appx6, Appx14-15. By reciting "generic physical components" that perform the functions of sending and receiving data, authenticating a server, and updating software, the claims recited no improvement to computer or networking technology. Appx11-13. Rather, the claims are "aspirational" because they recite "a desired result" but "do not claim any specific way to achieve that result." Appx13-14.

At *Alice* step two, the district court again concluded, with no contrary argument from Ceiva, that each physical component in the claims was conventional. Appx15. And it rejected each of Ceiva's arguments that the claims recite an

---

[10] Ceiva proposed instead that claim 3 of the '930 patent (rather than claim 1) and claim 5 of the '656 patent (rather than claim 1) should be treated as the representative claims. Appx9. The district court rejected Ceiva's argument, ruling that the dependent claims it identified do not "introduce limitations changing the character" of the independent claims as they merely specify, e.g., a particular type of authentication information, type of data, or type of user input. Appx9-10.

inventive concept. Here, Ceiva did not point to the inventive concept it identified to get past the pleadings in the first case. Appx9982. Instead, Ceiva argued industry praise for its practicing product showed an inventive concept and proffered conclusory expert testimony that "the abstract idea – remotely controlling and updating a digital picture frame – was unconventional." Appx16-17. The district court also addressed each of the purportedly unconventional features identified by Ceiva, including easy setup or configuration, a separable user interface to upload photos, automatic image retrieval, coupling a frame to a server via a communications network, and authenticating the server before storing image data. Appx17-20. It determined that these features failed to provide an inventive concept because (1) the claims recited these features only in "a non-specific way" as "desired capabilities," and (2) Ceiva did not explain why the order of claim elements was unconventional. Appx17-20.

Having concluded that the claims are directed to an abstract idea and recite no inventive concept, the district court granted summary judgment that the asserted claims are invalid under § 101. Appx20.

## SUMMARY OF ARGUMENT

The asserted claims are directed to the abstract idea of a digital picture frame "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input." Appx11. They do not

recite a technological advance because they merely instruct the reader to provide generic internet connectivity to an existing device and perform conventional networking functions to achieve the abstract idea. The components recited in the claims all perform in the expected and conventional manner to allow a conventional digital picture frame to call a server and receive from it data in the form of display content and software updates.

The asserted claims also lack an inventive concept. At the district court, Ceiva did not dispute that individual limitations in the claims are conventional. And at summary judgment it did not support its allegation of an inventive ordered combination with evidence. Thus, the undisputed record showed only that all claim elements perform routinely and are ordered and arranged logically to accomplish the abstract idea.

None of Ceiva's arguments on appeal yield a contrary result. Ceiva's claim to be first to market with an internet-connected digital picture frame is irrelevant. That is because "the commercial embodiment of an asserted patent is not the same as the patent itself." Appx16. In other words, eligibility depends on what the patentee claimed, not what it released to market. Even elements described in the specification are irrelevant if they are not captured by the claims. And claims reciting physical components or purporting to describe a physical device are still invalid if they, as here, "merely provide a generic environment in which to carry out

21

the abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Similarly, the media statements about Ceiva's product and expert testimony Ceiva cites provide no evidence of eligibility because they are not tied to any specific improvement recited in the claims and, at best, highlight the purported novelty of the abstract idea. The shared specification fails to create a triable issue of fact for the same reasons.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment of ineligibility de novo. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016) (applying Ninth Circuit law).

The two-part *Alice* test governs the patentability determination under § 101. At step one, the Court considers whether the claims are directed to a patent-ineligible concept, such as an abstract idea. *See Elec. Power Grp.*, 830 F.3d at 1353. This step requires looking at the claims to determine their "character as a whole." *Id.* If the claims are directed to an abstract idea, at step two, the Court must decide whether the claims add an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Alice Corp. v. CLS Bank Int'l*, 573 U.S.

208, 217-18 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73 (2012)).  At this step, courts consider "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id.* at 217.

## II. THE ASSERTED CLAIMS ARE UNPATENTABLE UNDER § 101

### A. The asserted claims are directed to an abstract idea at step one.

1. The district court correctly recognized that the asserted claims are directed to an abstract idea.  Appx11.  They recite the idea of adding internet connectivity to existing digital picture frames to allow them automatically and without user input or a separate computer to receive data—new images, software updates, or device settings—from a server.  They do not recite any specific solution for achieving this aspirational result or any improvement to computing technology. Instead, they employ generic computer hardware and basic computing functions and are agnostic as to how these are implemented.  The claims simply recite that the device's "onboard software" or "computer readable instructions" are configured in an unspecified manner that will achieve the results successfully.  Appx142-143 (30:60-65, 31:6, 31:10-18); Appx172 (31:45-55); Appx112 (31:1-14).

The asserted claims thus fall on the wrong side of one of the fundamental distinctions in the doctrine of patent-eligibility—between claims that implement a

23

specific solution to a problem and "purely functional" claims that are directed to a naked result. *Compare Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016), *with Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("*Affinity-Amazon*"). This Court has held consistently that the latter sort of claim falls within the category of abstract ideas. The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power*, 830 F.3d at 1356; *see also TLI*, 823 F.3d at 612-13; *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (noting such drafting is one of the "well-settled indicators of abstractness").

The Court has repeatedly ruled claims like those here unpatentable under § 101. In *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), for example, the patentee purported to improve pre-existing electric vehicle charging stations by adding network connectivity, *id.* at 763-64, which in turn allowed them to be controlled remotely from a server, *id.* at 764. The Court held those claims were directed to "nothing more than the abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations." *Id.* at 768. It did not matter that "the inventors [t]here had the good idea to add networking capabilities to existing charging stations to facilitate various business interactions," *id.* at 770, because "[c]ommunication over a network for that purpose has been and continues to be a 'building block of the modern economy,'"

*id.* at 773 (quoting *Alice*, 573 U.S. at 220). So, too, here. The essential focus of the claims is the addition of conventional network communication to a digital picture frame to take advantage of the conventional networking function of receiving data—here image content, software updates, and user controls and preferences—remotely.

Other cases are similar. The Court does not hesitate to deem abstract claims that merely recite even a "good idea" if there are no improvements in the underlying technologies recited to carry them out. *ChargePoint*, 920 F.3d at 770. And in its precedent, the Court has addressed in one form or another nearly every single computing and networking function present in these claims. It has ruled abstract and invalidated claims that, like these, recite conventional technology to perform: "the concept of delivering user-selected media content to portable devices," *Affinity-Amazon,* 838 F.3d at 1269; receiving images from a device and classifying and storing data about them on a remote server, *TLI*, 823 F.3d at 610-13; "automatically" communicating with a server to obtain updated data, *MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at *5 (Fed. Cir. Aug. 19, 2021) or "automatically" invoking an application that includes requesting and receiving data from a remote server, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022-1932, 2024 WL 371959, at *2 (Fed. Cir. Feb. 1, 2024); authenticating a device or network communication including by using a "unique identifier," *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017); and supplying a generic

or even customizable conventional user interface,[11] *Affinity-Amazon*, 838 F.3d at 1271.[12] As the district court recognized, the similar limitations in Ceiva's claims do nothing to change their character.  Appx8.  The focus of the claims is not any of these conventional computing and network functions or an improvement to them.  It is the abstract idea of carrying them out in the context of a digital picture frame.

2.	Ceiva's opening brief focuses in addition on two dependent claims, claim 3 of the '930 patent and claim 5 of the '656 patent.  *Compare* OB27, OB30-31, *with* Appx9-10.  It made no argument that the district court erred in ruling that other claims were representative of these, and thus has waived such challenge.  *See Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 974 (Fed. Cir. 2020).

That aside, the two dependent claims that Ceiva identifies do not change the step one analysis because they are "substantially similar and linked to the same abstract idea."  *Context Extraction & Transmission LLC v. Wells Fargo Bank*, 776

---

[11] Only claim 19 of the '573 patent and claim 1 of the '656 patent recite a user interface.  Appx81 (4:15-38); Appx112 (31:25-30).

[12] *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (collecting cases and holding that automatic "communication between previously unconnected systems" is not a technical improvement); *Tranxition, Inc. v. Lenovo, Inc.*, 664 F. App'x 968, 971-72 (Fed. Cir. 2017) (invalidating claims directed to abstract idea of "automatic migration" of configuration settings from one computer to another); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("improving a user's experience while using a computer application" is not an improvement in computer functionality).

F.3d 1343, 1348 (Fed Cir. 2014) (internal quotation marks omitted), *cert. denied*, 577 U.S. 914 (2015).  They claim the same digital picture frame that automatically accesses a remote data repository to obtain updated content.  And they impart only minor variations to that same idea:

- Representative claim 1 of the '930 patent specifies that the device has a "unique identifier" stored in memory, Appx142 (30:60:65), and that its onboard software has an "authentication function" that authenticates the server before receiving data from it, Appx143 (31:19-21).  Dependent claim 3 adds only the requirements that the authentication function provides the unique identifier and undefined "device authentication information" to the server.  *Id.* (31:26-34).

- Representative claim 1 of the '656 patent recites that the device displays image data, has a memory, and has "behavior characteristics" that can be managed via a web interface.  Appx111-112 (30:61-31:30).  Dependent claim 5 adds only a requirement that the memory include "preference information for controlling the display" of images.  Appx112 (31:41-43).

Thus, both dependent claims merely recite additional types of information to transmit or store.  But specifying what pre-existing types of information "it is desirable to gather" does not make a claim non-abstract or otherwise confer eligibility.  *Context Extraction*, 776 F.3d at 1348; *see Elec. Power Grp.*, 830 F.3d at

1356.  Doing so does not transform them into claims to new network security or user interface technology.  They are still directed to a digital picture frame that automatically contacts the server, and thus show no error by the district court.

3.      None of Ceiva's other arguments on appeal show that the district court erred in its step one analysis.

a.      Ceiva argues that its claims are non-abstract because in practice it was first to connect a digital picture frame to the internet to accomplish the claimed idea, i.e., "automatic, periodic, and remote retrieval and display of photographs without user input or a computer."  OB51; *see also* OB47, OB50-51.

Even if true, Ceiva's contentions about a product it offered to market are irrelevant to whether it claimed an abstraction when it filed its patents.  Whatever additional "programming details" or other implementations exist in that product are "immaterial because these details are not recited in the actual claims."  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016).  Moreover, Ceiva's argument is at most an assertion about the *novelty* of the claim as a whole.  And this Court has held time and time again that "reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) (citing *Synopsys*, 839 F.3d at 1151); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014), *cert. denied sub nom.*, *Ultramercial, LLC v.*

28

*WildTangent, Inc.*, 576 U.S. 1057 (2015); *Affinity-Amazon,* 838 F.3d at 1270 n.3 ("the eligibility finding does not turn on the lack of novelty of the claim").

b.     Ceiva next argues that its claims are directed to a specific technological improvement because they recite a specific "hardware and software architecture" that yields the claimed networking advantages.  OB47.  But it is undisputed that the claims do not recite any unconventional hardware or software. OB51; Appx61 (1:45-2:14); Appx2313 (56:3-5); Appx2314 (57:16-18); Appx2314 (57:3-5); Appx2314-2315 (57:25-58:2); Appx2315 (58:14-15).  Nor do the claims recite *any* specific architecture for achieving their functions.  As to hardware, they merely instruct reader to combine conventional networking components with the conventional digital picture frame.  That can be done in any manner whatsoever— there is no instruction in the claim of how to do so, let alone a specified "architecture" solving a prior art problem.  As to software, the claims recite no "architecture" either.  They specify only "onboard software" or "computer readable instructions" to perform the beneficial functions—displaying images, automatically initiating communications with a server, requesting and receiving images, authenticating the server, and obtaining updated software.  Appx143 (31:62-2:3, 32:10-31); *see also* Appx172 (31:45-32:10); Appx112 (31:1-30).[13]

---

[13] Claim 19 of the '573 patent does not even mention software, and thus cannot be directed to an improved "software architecture."  Like the other representative claims, it recites only the results that the physical components are "configured to"

Ceiva protests that this is a "subjective" assessment (OB5) and that "nearly every invention" could be ruled ineligible for claiming an abstraction. OB50. But opposite is true. If the Court adopts Ceiva's position—that a patentee can survive a § 101 summary judgment motion by calling a generic combination of computing elements in the claim an "architecture"—then almost no claim would be held abstract. For example, *ChargePoint* also involved claims covering conventional devices configured to a network. 920 F.3d at 770-72. One claim at issue recited "a server," a "remote" electric vehicle charger that connected to the server through a "transceiver," and a "communication device" remote control of the charger. *Id.* at 722. A another recited an apparatus having a "device to control" electric vehicle charging, a "transceiver to communicate with a remote server" through a network and "receive communications from the remote server," and a "controller" to modify the charge rate, and so forth. *Id.* at 770-71. These components—an "architecture" in Ceiva's view—were just a generic environment to execute the abstract idea. *See also TLI*, 823 F.3d at 611 (claims ineligible despite aggregating "concrete, tangible components such as a 'telephone unit' and a 'server'"); *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022) (claims ineligible despite combining a processing

---

achieve: the server system is "configured to periodically relay" image data and preferences to the frame when the frame "automatically issues a request" for image data. Appx81 (4:31-35).

system, database, an application, and a handheld mobile communication device).[14]

Here, unlike in *ChargePoint* which was decided on the pleadings, Ceiva had the opportunity to present evidence showing the components in its claims provided a technological improvement. But as the district court observed, Ceiva's claims are "aspirational" because they "do not claim any specific way to achieve" their result. Appx13-14. Ceiva's alleged advantages are not a technological improvement—they are a result that the claims command the reader to achieve, without disclosing any specific means to achieve it. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

c.    Finally, Ceiva argues that its claims are not abstract because they recite an "improved machine." OB48. But an otherwise abstract claim does not become patent-eligible simply by reciting generic physical hardware. In *Alice* itself, the Supreme Court invalidated claims directed to a "computer system" that had tangible components. 573 U.S. at 224. And it noted that "[t]he fact that a computer 'necessarily exist[s] in the physical, rather than purely conceptual, realm" is "beside the point." *Id.*

---

[14] By contrast, the claims in *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131 (Fed. Cir. 2022), cited by Ceiva, recited "a specific type of content-sharing network and delineate[d] both the network's structure and function." *Id.* 50 F.4th at 131. They did not merely recite conventional physical components performing as expected.

This Court's precedents are in accord. It has noted that nothing in the eligibility analysis turns on the recitation of physical components or a device if the claims "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns*, 823 F.3d at 611. Thus in *ChargePoint*, for example, it rejected an argument that claims that recited adding networking components to an electrical charging station were eligible because they recite "a better machine." And in *Yu v. Apple Inc.* 1 F.4th 1040, 1043 (Fed. Cir. 2021), the Court invalidated a claim reciting "an improved digital camera" because it recited only "conventional camera components" used to carry out an idea. Ceiva's claims are no different, as all the physical components are admittedly conventional, not invented by the patentee, and used only in the conventional manner. OB51; Appx2087-2088 (¶¶ 307-309); Appx2097-2106 (¶¶ 327-38); Appx2119-2120 (¶¶ 367-69); Appx2123-2136 (¶¶ 376-404); Appx2143-2147 (¶¶ 418-21); Appx2177-2181 (¶¶ 42-49); Appx2314 (57:3-5, 57:16-18); Appx2314-2315 (57:25-58:2); Appx2315 (58:14-15); Appx2372 (56:12-14); Appx2373 (57:15-23); Appx2379 (113:10-19); Appx2388-2389 (153:17-154:6); Appx7248 (¶ 81); Appx9213-9214; Appx9216; Appx9225-9228.

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) provides Ceiva with no support. It involved claims directed to a new "behavior-based" method of scanning for viruses in downloaded files. *Id.* at 1304. That method operated in a different way than traditional virus scanning because it identified

harmful code based on the operations it performs, while the prior art was limited to checking whether the file repeats code from previously identified viruses. *Id.* The new method produced a different substantive outcome than traditional methods, because it caught "previously unknown viruses" and code that was "cosmetically modified to avoid detection." *Id.* Ceiva's claims, by contrast, offer no new capability. They simply pair an existing device with the known capability of sending and receiving data over a network. Appx61 (1:45-56). And "automatically" initiating communication merely automates a previously manual task, without changing what data the device receives or how it is displayed. *See Tranxition*, 664 F. App'x at 971-72.[15]

---

[15] *Dolbear v. Am. Bell Tel. Co.*, 126 U.S. 1, 536 (1888) does not help Ceiva here. While Ceiva attempts to analogize its claims to Alexander Graham Bell's invention of the telephone (OB49), Bell discovered how to translate sound vibrations into electric current and "devised the means of making it useful," *id.* at 532-33—he did not merely add conventional functionality to an existing device. Moreover, *Dolbear* does not address patent-eligibility, but rather enablement and written description. The Court ruled the claim enabled because Bell's patent provided "sufficient clearness and precision to enable those skilled in the matter to understand what the process is" and "point[ed] out [a] practicable way of putting it into operation." *Id.* And it held that the claim was commensurate in scope with Bell's discovery. *Id.* at 537. Bell's patent reflected "both discovery and invention," *id.* at 533—i.e., the application of a concept that "remains[s] eligible for patent protection." In any event, the Court decided the case over a century before *Alice*, and it therefore does not shed light on the *Alice* framework. 573 U.S. at 217.

## B. The asserted claims lack an inventive concept.

In searching for an inventive concept, courts look for "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself.'" *Alice*, 573 U.S. at 217-18 (cleaned up). Reciting generic computer technology, conventional components, and "purely functional" elements does not supply an inventive concept. *Id.* at 221-26 (citation omitted). The same is true for limiting claims to a particular technological environment. *Elec. Power Grp.*, 830 F.3d at 1354. And the abstract idea itself likewise cannot provide an inventive concept. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).[16] Here, the elements of Ceiva's claims, whether considered individually or together, fail to provide an inventive concept. They recite admittedly conventional physical components that combine to perform routine computer functions.

1. None of the individual claim limitations supplies an inventive concept. Ceiva concedes here, as it did before the district court, that each physical component was conventional. OB51. Thus, the district court correctly determined that these components are generic and do not supply an inventive concept. Appx15. None of

---

[16] Ceiva argues that Amazon must prove by clear and convincing evidence that every element and combination was "well-understood, routine, and conventional to a skilled artisan." OB44. But, again, a combination of elements that is directed to the abstract idea "cannot supply the inventive concept." *BSG Tech*, 899 F.3d at 1290.

the functions recited in the claims provide an inventive concept either. The claims state that the digital picture frame automatically obtains content from a server, but they provide no detail on how to accomplish that task. Appx81 (4:31-38); Appx112 (31:1-14, 31:18-20); Appx143 (31:10-25); Appx172 (32:1-8). The undisputed record here shows that automatic data retrieval was conventional. Appx2087-2088 (¶¶ 307-09), Appx2119-2120 (¶¶ 367-69), Appx2123-2127 (¶¶ 376-83); Appx2379 (113:10-19). The specifications merely instruct the reader to use any one of several prior art communication protocols. Appx74 (28:60-67). Such limitations thus recite conventional technology to automate data transmission between computers—that is insufficient to supply an inventive concept, *Tranxition*, 664 F. App'x 968, 972, as "such invocation of computers and networks are not even arguably inventive." *Elec. Power Grp.*, 830 F.3d at 1355.

The claims likewise provide no detail about how the digital picture frame updates its software. Claim 1 of the '930 patent provides the most detailed description of the process and recites "a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version." Appx143 (31:22-25). The specification provides no further detail, Appx65 (10:10-20), and Ceiva does not dispute that over-the-network software updates were conventional before its patents. Appx2087-2088 (¶¶ 307-09);

35

Appx2145-2147 (¶¶ 424-28); Appx9213-9214.  In *MyMail*, 2021 WL 3671364, at *7, the Court ruled that even a more specific software update claim—comprising the steps of a server determining whether a remote device needs a software update, sending the update, and the device updating its software—as "routine activity" insufficient to supply an inventive concept.  The same is true here.

The authentication process described in the claims also fails to provide an inventive concept.  The most detailed description in the claims requires the device to authenticate the server and send a "unique identifier" and "device authentication information" to the server.  Appx143 (31:19-21, 31:26-34).  Yet the use of unique identifiers to authenticate devices was ubiquitous at the time.  Appx2128-2129 (¶¶ 387-88); Appx9220-9221; Appx7077 (using passwords for authentication existed "in prehistoric times").  And this Court has specifically rejected the idea that "hardware identifiers" used in authentication supply an inventive concept where the undisputed evidence shows they were conventional.  *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017-18 (Fed. Cir. 2017).

2.    The claims also recite no inventive ordered combination of elements. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1352 (Fed. Cir. 2016).  Appx17-18.  To establish such an inventive concept, the patentee must point to something unconventional in the way the limitations are ordered and

combined that makes them an inventive solution to the prior art problem. *See id.*[17]

The patentee cannot rely merely on the novelty of the claim as a whole, nor can it point to claim ordering that is just the steps logically required to carry out the abstract idea. *See, e.g., TLI*, 823 F.3d at 615; *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018).

In *TLI*, for example, where the steps of recording data, transmitting data, receiving and classifying the data, and finally storing the data based on the classification were merely "steps that generically spell out what it means to 'apply it on a telephone network.'" *TLI*, 823 F.3d at 615. And in *Berkheimer*, reciting the steps of presenting data, parsing them, evaluating them, and presenting the evaluated data, described only the necessary order for performing "the abstract idea of parsing and comparing data." *Berkheimer*, 881 F.3d at 1366, 1370. In both of those cases, the order of the claimed steps was not inventive as an ordered combination because it merely described using conventional computer components to perform the idea in the expected manner.

---

[17] For example, in *BASCOM*, the claims recited a "specific, discrete implementation" of a system for filtering content on the Internet by installing an individually customizable tool at a location remote from the end-users. *Id.* at 1350. This improved existing filtering systems, which were either less secure if installed locally at user sites for customizability or were inflexible one-size-fits-all configurations if installed in a central, secure location. *Id.*

Here, as it did below, Ceiva fails to identify any unconventional ordering of elements in is claims. Appx17; OB59. Again, Ceiva submitted *no evidence* concerning the specific ordered combination it identified to defeat Amazon's motion to dismiss—"a unique identifier stored in memory, a frame that initiates communications with the server, and a server that automatically distributes updated content to the frame"—combine in an unconventional way. Appx9982-9983; OB59. Indeed, Ceiva concedes there is nothing inventive about the order of operations that the claims require, e.g., when to authenticate or when to send a request. OB59. Any ordering in the claims is routine, i.e., the same way anyone would necessarily use a server to provide data to a remote digital picture frame. A user must upload data to the server before the device can receive it; the device must connect to the network and authenticate the server before receiving that data; and so forth.

2.     At step two, Ceiva repeats its arguments that the claims recite "a new device with new and useful functionality that did not exist before" and thus must contain an inventive concept. OB55. But that is wrong for all the reasons discussed.

Ceiva's contention is ultimately not that it invented any *new functionality*, but rather that it was first to add existing network functionality in the context of a digital picture frame. OB55, OB57-58, OB60. This Court has repeatedly rejected such arguments as "merely provid[ing] a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d at 611; *see also*

*Electric Power Group*, 830 F.3d at 1354; *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016); *Affinity-Amazon*, 838 F.3d at 1259; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). Here, the components in Ceiva's claims do not function differently than they had in other networked systems. They would work the exact same way if applied to *any* new context—for example, if one described adding the same network components to any consumer product with a display, such as a refrigerator or an automobile. And so, while Ceiva mixes and matches different claim elements throughout its argument in the effort to show novelty (OB46-47, OB50-51, OB55, OB57-58, OB60), ultimately it has merely limited conventional functionality to a digital picture frame. That is not enough to survive *Alice* step two.

Moreover, "'[a] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.'" *ChargePoint*, 920 F.3d at 774 (quoting *BSG Tech*, 899 F.3d at 1290). The useful functions that Ceiva describes are ultimately the same abstract instruction to retrieve new photos and data from a remote source automatically without user input or the need for a separate computer. At times they describe ancillary functions or steps, like device or server authentication or remote control of the device using a network. But Ceiva does not claim to have invented any of these, and the digital picture frame and its recited

networking components that carry them out are all conventional. Thus, there is no difference between Ceiva's purported inventive concept and the "network control" that the *ChargePoint* court held "is the abstract idea itself." *ChargePoint*, 920 F.3d at 774.

**C. Ceiva did not raise a genuine dispute of material fact concerning patent eligibility.**

Ceiva contends throughout its brief that it either proved patent eligibility or raised a triable issue by offering evidence of public acclaim for its product (OB56), expert testimony that the asserted claims are non-abstract and inventive (OB47, OB53, OB57-58), or by pointing to statements in the shared specification (OB58, OB60-61). None of these raises any triable issue or shows error in the district court's determination.

1. The cited industry and media praise for the Ceiva product does not show that any asserted claim is patent-eligible. Such extrinsic evidence is relevant, if at all,[18] only when it pertains to an inventive concept specifically identified by the patentee and captured in the claims. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018). Applying this rule, panels of this Court have held that praise that lauds the abstract idea itself, *Angel Techs. Grp., LLC v. Meta*

---

[18] *See Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *7 (Fed. Cir. Aug. 21, 2023) ("Questions of nonobviousness such as secondary considerations . . . are irrelevant when considering eligibility.").

*Platforms, Inc.*, No. 2022-2100, 2024 WL 4212196, at *6 (Fed. Cir. Sept. 17, 2024), or is untethered to specific claim elements, *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 788 (Fed. Cir. 2019), does not create a triable issue of fact concerning eligibility.

The district court ruled correctly that those same principles resolve the issue here. Appx15-16. Any "praise" the Ceiva frame received had nothing to do with any specific inventive contribution of the asserted patents. Instead, Ceiva cites marketing pieces that tout the abstract idea itself (for which the claims provide no implementation detail): a digital picture frame that automatically downloads photos. The cited articles praise that idea, stating the frame is "ideal for sharing photos with relatives who don't have PCs," Appx7141, because users can "[r]eceive photos of family and friends over the internet without a computer." Appx7128. Or they highlight the ease of use that results, noting that the frame requires "almost no technical knowledge from the person that is using the receiver" (Appx7134), and the like.[19] The district court identified these as "broad accolades regarding the idea of

---

[19] Appx7137 ("the device automatically downloads your photos"); Appx7138 ("Setting up the Ceiva frame requires practically no effort"); Appx7146 ("no Web knowledge or user intervention is required."); Appx7174 ("This is a pioneering product, launching a whole new category of digital, Internet-enabled picture frames."); Appx7152 ("your Ceiva Receiver automatically dials into Ceiva's server" and "works right out of the box, without any additional programming or complicated setup"); Appx7156 ("The device pulls the photos off the site, and doing that is dead simple."); Appx7161 ("just plug it into the wall, just plug it into the phone line and forget about it."; Appx7166-7167 ("Installation is ridiculously easy"); Appx7180

enabling remote upload of new images to a digital frame,"—i.e., again, mere praise of the abstract idea itself—and noted that Ceiva did "not explain how these statements relate to any particular claim element or ordered combination of elements." Appx16. Its expert's testimony merely reproduced claim language and concluded that the recited features had "impressed the industry." *Id.* (citing Appx7444-7463 (¶¶ 479-515).

*Angel Techs.* is instructive. There, the patent claimed the abstract idea of identifying users in photos (e.g., tagging); determining associations between the users, photos, and other information; and storing those associations. 2024 WL 4212196, at *4. The patentee argued "industry praise" showed that its claims contained an inventive concept in the form of an improvement in computer networking functions. *Id.* *5. The Court rejected that argument because the cited articles merely "praise the benefits of tagging photos," which it noted was "the abstract idea itself, not any specific technological improvement that Angel made or claimed." *Id.* at *6. The praise Ceiva cites here is no different. Ceiva claims the statements of praise are tied to the frame's ability to "automatically" and "periodically" communicate with a server to download new images as soon as a user powers it on and connects it to a network. OB56-57. But in the patents, there are

---

("Was it easy for you to set that up?" "Oh, it was very easy. Just plugged it in and into the phone line.").

no limitations that disclose technology for such communications—there is only the idea to perform those functions in the environment of a conventional digital picture frame. *Angel Techs.*, 2024 WL 4212196, at \*5; *see also Ameranth*, 792 F. App'x at 788 (praise of product as "innovative" and "ground-breaking" did not create a genuine factual dispute about eligibility where it did "little to relate the claimed features to the asserted praise").

And that also is why citing to *Data Engine* does not help Ceiva. OB56. There, the patentee claimed a specific user interface for a "three-dimensional spreadsheet" that employed a configuration of "notebook tabs" in a row, each identifying a single spreadsheet page. 906 F.3d at 1003-04. The industry recognized that the claimed invention "improv[ed] computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets." *Id.* at 1008. But that praise specifically attributed the success of the product to the notebook tab feature. *Id*. Here, Ceiva has not tied, and cannot tie, any of its alleged praise to an alleged inventive concept in a claim element or ordered combination.[20]

---

[20] Although the Court need not reach the issue, Ceiva also generated its praise through its multi-million-dollar marketing campaign. Appx9161; Appx9190. As in the non-obviousness context, secondary considerations attributable to aggressive marketing should carry no weight in the Court's patentability analysis. *In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008).

2.      Ceiva's bulk citations to its expert's testimony also do not change the abstract nature of its claims or show a triable issue concerning an inventive concept. As an initial matter, whether a claim is directed to an abstract idea at step one is a legal question for the court to decide based on the intrinsic evidence. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1373 (Fed. Cir. 2020). Thus, expert testimony attempting to offer a legal opinion that a claim is non-abstract is irrelevant.[21]

The result is similar at step two. Ceiva cites broadly to fifty pages of the expert's report, asserting that at minimum it creates a triable issue as to inventive concept. OB37, OB57. But Ceiva fails to explain how these opinions present a material dispute concerning any such concept in the claims.[22]

---

[21] Even if a patentee could create a fact issue at step one through expert testimony, as Ceiva contends here (OB37, OB53), the testimony it cites merely recites the claim language and portions of the specification and asserts that they describe improvements to technology. Appx7302 (¶ 220); *see generally* Appx7302-7304 (¶¶ 221-24), Appx7312-7333 (¶¶ 243-80). Such conclusory testimony cannot create a genuine factual dispute to prevent summary judgment. *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 101 (Fed. Cir. 2008).

[22] The Court in its discretion could ignore these citations as undeveloped argument. *See Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 F. App'x 701, 712 (Fed. Cir. 2021) ("Judges are not like pigs, hunting for truffles buried in the record."), *citing Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002).)

It is black letter law that "a claimed invention's use of the ineligible concept … cannot supply the inventive concept" at step two. *BSG*, 899 F.3d at 1290. Yet that is what Ceiva's expert attempted. He opined that it was unconventional for "a picture frame to be networked," Appx7343-7344 (¶¶ 305, 307), "remotely controlled and updated" over a network, Appx7335 (¶ 286), Appx7304-7308 (¶¶ 226, 229, 231), Appx7311 (¶ 237), Appx7313-7315 (¶¶ 245-246), Appx7317-7318 (¶¶ 251-252), Appx7322-7323 (¶ 260), Appx7325-7326 (¶ 266), Appx 7328-7330 (¶¶ 271, 273-274), Appx7322 (¶ 278), or to communicate over a network "automatically," Appx7304-7305 (¶ 226), Appx7308-7309 (¶ 233); Appx11. But this is merely the step one idea to which the claims are directed. It is abstract under the Court's precedents,[23] and recited in the claims only as conventional technology configured to perform those results.

It is also black letter law that features described in the specification that are not recited in the claims cannot supply an inventive concept. *Alice*, 566 U.S. at 72-73; *ChargePoint*, 920 F.3d at 769; *Elec. Power Grp.*, 830 F.3d at 1355. Here, the expert pointed to an improved "setup/configuration," and a "separable user interface" Appx7461 (¶ 514) that is a customized webpage programmed" to

---

[23] *See ChargePoint*, 920 F.3d at 773 (computer-to-computer communication over a network is a fundamental "building block of the modern economy"); *Tranxition*, 664 F. App'x at 971("automat[ing] the migration of data between two computers" is an abstract idea).

"manage[] behavior characteristics" of a digital picture frame. Appx7344 (¶ 308).

Yet the claims either do not recite these features at all, or at most do so as desired or

implied benefits for which they provide no detail on how to accomplish. *See Eolas*,

2024 WL 371959, at *6.[24]

Finally, a patentee cannot create a triable issue at step two through conclusory

assertions that "the totality" of a claim supplies an inventive concept. *Bot M8 LLC

v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1027 (N.D. Cal. 2020), *aff'd*, 4 F.4th

1342 (Fed. Cir. 2021). Yet here, the expert attempted to summarize entire claims

and assert that they embody such a concept. Appx7345-7348 (¶¶ 309-312). None

of the testimony attempted to show that the ordered combination that Ceiva alleged

in its complaint to survive dismissal—storing a unique device identifier, initiating a

---

[24] Ceiva's expert discusses other generic computer functions—e.g., authentication, remote software updates, and creation of a web interface to supply preferences—that are incidental to the frame device's ability to communicate over a network. *E.g.*, Appx7319-7320 (¶¶ 254-55), Appx7323 (¶ 261), Appx7327 (¶ 269), Appx7330-7331 (¶¶ 275-76). These generic functions, for which the claims do not provide any implementation detail, are not technological improvements. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181-83 (Fed. Cir. 2020) (claimed functions of "enabling a first party to input authentication information, storing the authentication information, and providing the authentication information" are abstract and ineligible); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315–19 (Fed. Cir. 2021) (using unique "identifiers" to control access to data items "doesn't transfigure an idea out of the realm of abstraction"); *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1368-69 (Fed. Cir. 2017) (handling data in different ways "depending on the sender's preferences" cannot save a claim from abstractness), *rev'd and remanded on procedural grounds*, 587 U.S. 618 (2019).

communication with the server, then receiving an automatic distribution of content—was unconventional or inventive. Appx17. As discussed, those are the steps of a network communication placed in their conventional and logically-required order.

The district court thus ruled correctly that Dr. Easttom's opinions failed to show that the asserted claims contain an inventive concept. Appx15-20. They consisted of high-level conclusions summarizing the claims, Appx15-17, identify the abstract idea itself as an inventive concept, Appx18, posit that undisputedly conventional technology and computer components supply an inventive concept merely because they are recited in the context of a digital picture frame, Appx18-20, or identify the inventive concept as the entire claim, Appx19. The district court's step two analysis was correct.[25]

3.     Finally, Ceiva contends that statements from the specification create a triable issue of fact concerning the step two inventive concept. OB58. The Court has previously rejected just such an argument. In *BSG*, it held that "merely pointing" to the "specifications to argue that the asserted claims recite unconventional features

---

[25] Ceiva argues that "the district court *conceded* … that 'it was not routine, conventional, or well-known to have a digital frame device that could be remotely controlled and updated.'" OB58 (citing Appx16). To the contrary, the district court pointed out that, at best, the evidence supported only an argument that the *abstract idea* was unconventional (i.e., novel)—not that the claims recite unconventional technology that could supply an inventive concept. Appx16.

that provide benefits over conventional prior art" is insufficient to show an inventive concept because "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine." 899 F.3d at 1290. Instead, the patentee must identify specific elements in the claims that provide an inventive concept. *Id.*

Here, Ceiva has done only the former. It cites in bulk five pages of the shared specification without identifying what in them constitutes the specific alleged inventive concept. OB58 (citing Appx389-393 (1:15-10:35)). Those pages, just as in *BSG*, describe the state of the art—i.e., "traditional picture frames," Appx61 (1:21-44), existing "digital display devices, Appx61 (1:47-2:44), and conventional "computer networks," Appx61-63 (2:47-6:30)—and then summarize the alleged benefits of the invention over that prior art that are either conventional or not recited in the claims at all, Appx63-64 (6:33-7:16); Appx64-65 (8:31-9:29)—i.e., "automatic configuration without user input," Appx65 (9:31-10:7), "self-upgrading without user input," Appx65 (10:10-20), and a "simplified user interface," Appx65 (10:22-35). At best, these passages describe the improvements that result from providing a conventional digital picture frame with conventional networking capabilities. That is insufficient to show that the claims recite an inventive concept.

# CONCLUSION

Because the asserted claims are directed to an abstract idea and fail to recite an inventive concept, the Court should affirm the district court's summary judgment order holding the asserted claims unpatentable under § 101.

Respectfully submitted,

December 20, 2024          FENWICK & WEST LLP

By:   */s/ J. David Hadden*
      J. David Hadden

      *Counsel for Defendant-Appellee*
      *Amazon.com, Inc.*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Circuit Rule 32(a). This brief contains 11,207 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.

December 20, 2024               By: */s/J. David Hadden*
                                   J. David Hadden

                                   *Counsel for Defendant-Appellee*
                                   *Amazon.com, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a complete copy of **RESPONSE BRIEF OF DEFENDANT-APPELLEE AMAZON.COM, INC.** was served on the attorneys of record via electronic mail or CM/ECF delivery on December 20, 2024.

By: */s/J. David Hadden*
J. David Hadden

*Counsel for Defendant-Appellee*
*Amazon.com, Inc.*