# United States Court of Appeals
# for the Federal Circuit

CEIVA OPCO, LLC,

*Plaintiff-Appellant,*

v.

AMAZON.COM, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the Central District of California,
Case No. 22-cv-02709-AB-MAA
The Honorable Andre Birotte, Jr., U.S.D.J. Presiding.

## CORRECTED BRIEF FOR APPELLANT CEIVA OPCO, LLC

Lawrence M. Hadley
Stephen Underwood
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Suite 1900
Los Angeles, CA 90067
(310) 553-3000
lhadley@glaserweil.com
sunderwood@glaserweil.com

*Counsel for Appellant Ceiva OPCO, LLC*

April 7, 2025

**EXEMPLARY CLAIMS**

**U.S. Patent No. 6,442,573: Claim 19**

19. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and

wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

**U.S. Patent No. 9,203,930: Claim 3**

1. A digital display apparatus having an integrated housing, said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus, and a current version of onboard software;

a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region[;]

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system; [and]

a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

[2. The digital display apparatus of claim 1] wherein said authentication function is further configured to provide said unique identifier of said digital display apparatus to said first remote server system.

[3. The digital display apparatus of claim 2] wherein said authentication function is further configured to provide device authentication information to said first remote server system prior to obtaining image data from said first remote server system.

## U.S. Pat. No. 9,654,562:  Claim 16

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:

said display screen;

a central processing unit;

a video controller configured to control display of said content on said display screen;

a communications interface configured to communicate with said server system via said communications network;

a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:

upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;

sending by said apparatus said unique identifier to said server system;

prompting by said apparatus a user of said apparatus to create an account at said server system;

receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;

updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;

receiving by said apparatus updated content from said server system; [and]

displaying by said apparatus said updated content on said display screen.

[16. The apparatus of claim 1] wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system.

## U.S. Patent No. 9,124,656: Claim 5

1. A display device for displaying image data received from a server system comprising:

a central processing unit;

a display screen for displaying said image data;

a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

[5. The display device of claim 1] wherein said memory further comprises preference information for controlling the display of said image data by said display device.

**FORM 9. Certificate of Interest**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1721

**Short Case Caption** Ceiva Opco, LLC v. Amazon.com, Inc.

**Filing Party/Entity** Plaintiff-Appellant Ceiva Opco, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/06/2024

Signature: */s/ Michael C. Wilson*

Name: Michael C. Wilson

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Ceiva Opco, LLC | | Ceiva Logic, Inc. |
| | | OA3, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**FORM 9. Certificate of Interest**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Munck Wilson Mandala, LLP | Elliott C. Riches | Nicole M. Kamish |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF JURISDICTION..................................................................2

INTRODUCTION ...............................................................................................2

STATEMENT OF THE ISSUES ........................................................................6

STATEMENT OF THE CASE ............................................................................6

I.     CEIVA AND THE CEIVA FRAME ........................................................6

II.    THE PATENTS-IN-SUIT .........................................................................9

III.   TECHNICAL IMPROVEMENTS OF THE INVENTION ......................................................................................................22

IV.   THE ASSERTED CLAIMS ...................................................................25

      A.    The '573 Patent .........................................................................25

      B.    The '930 Patent .........................................................................27

      C.    The '562 Patent .........................................................................28

      D.    The '656 Patent .........................................................................30

V.     PRAISE FOR THE CLAIMED INVENTION.......................................31

VI.   THE PROCEEDINGS BELOW .............................................................35

SUMMARY OF THE ARGUMENT ..................................................................39

STANDARD OF REVIEW ................................................................................42

ARGUMENT ......................................................................................................44

I.     THE ASSERTED CLAIMS ARE NOT DIRECTED TO ABSTRACT IDEAS AT *ALICE* STEP ONE ...............................................44

i

    A.      Step One Looks to Whether the Claims' Focus is on a Specific and Concrete Technological Advance ..................................44

    B.      The Asserted Claims Focus on Concrete Advances in Digital Picture Frame Technology ..................................................45

II.    THE ASSERTED CLAIMS RECITE INVENTIVE TECHNICAL IMPROVEMENTS AT *ALICE* STEP TWO ..............................................................................................54

III.   AT THE VERY LEAST, GENUINE ISSUES OF FACT ON *ALICE* STEP TWO PRECLUDE SUMMARY JUDGMENT ..................................................................................61

CONCLUSION ..................................................................................62

# TABLE OF AUTHORITIES

## CASES

*Adasa Inc. v. Avery Dennison Corp.*,
 55 F.4th 900 (Fed. Cir. 2022) ..........................................................................44

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
 838 F.3d 1253 (Fed. Cir. 2016) .......................................................................52

*Alice Corp. Pty. v. CLS Bank Int'l*,
 573 U.S. 208 (2014) ................................................................... 6, 43, 44, 54, 56

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
 836 F.3d 987 (9th Cir. 2016) ...........................................................................43

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
 827 F.3d 1341 (Fed. Cir. 2016) .............................................................. 50, 54, 59

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018) .......................................................................43

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
 778 F. App'x 882 (Fed. Cir. 2019) ..................................................................52

*Cellspin Soft, Inc. v. Fitbit*, Inc.,
 927 F.3d 1306 (Fed. Cir. 2019) .......................................................................52

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
 723 F.3d 1376 (Fed. Cir. 2013) .......................................................................43

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
 50 F.4th 127 (Fed. Cir. 2022) ..........................................................................50

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec*. LLC,
 15 F.4th 1091 (Fed. Cir. 2021) ........................................................................45

*Data Engine Techs. LLC v. Google LLC*,
 906 F.3d 999 (Fed. Cir. 2018) .........................................................................56

*Dolbear v. Am. Bell Tel. Co.*,
  126 U.S. 1 (1888) .................................................................................. 49, 50

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ...................................................................52

*Enfish LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................................52

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................................45

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ...................................................................48

*Intellectual Ventures I, LLC v. Symantec Corp.*,
  CAFC No. 15-1769, Dkt. 48 (*Amicus* Brief of Judge Michel) .............................5

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019) ...................................................................52

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
  566 U.S. 66 (2012) ...................................................................................6

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ...................................................................45

*MyMail Ltd. v. ooVoo*, LLC,
  No. 2020-1825, 2021 WL 3671364, at *5 (Fed. Cir. Aug. 19, 2021)..................52

*O'Reilly v. Morse*,
  56 U.S. 62 (1853) ...................................................................................50

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021)......................................................................52

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017)......................................................................3

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
330 F.3d 1110 (9th Cir. 2003) ............................................................43

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ................................................... 44, 45

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ................................................... 44, 45

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015) ................................................... 42, 56

## STATUTES

28 U.S.C. § 1295(a)(1) ............................................................................2
28 U.S.C. § 1338(a) ................................................................................2
35 U.S.C. § 1 ...........................................................................................2
35 U.S.C. § 101 ........................................................................... 2, 5, 43
Fed. R. Civ. P. 56(c) .............................................................................43

## RULES

Fed. R. App. P. 4(a) ................................................................................2

**STATEMENT OF RELATED CASES**

Pursuant to Fed. Cir. R. 47.5, Appellant Ceiva OPCO, LLC ("Appellant" or "Ceiva") hereby states that: (i) no other appeal in or from the same civil action in the originating tribunal was previously before this or any other appellate court; and (ii) counsel for Ceiva are not aware of any case pending in this or any other tribunal that will directly affect, or be directly affected by, this Court's decision in this case.

## STATEMENT OF JURISDICTION

The district court had original jurisdiction over this case pursuant to 28 U.S.C. § 1338(a) because it arose under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*. This Court has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1) because it is an appeal from a final decision of a U.S. District Court in a civil action arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This appeal was timely filed pursuant to Fed. R. App. P. 4(a) because: (i) the district court entered final judgment against Ceiva on March 20, 2024 (Appx22-23); and (ii) Ceiva filed its Notice of Appeal in the district court on April 17, 2024 (Appx9644-9645), which is less than 30 days from the date of judgment. This appeal is from a Final Judgment that disposed of all parties' claims in the case, by finding all of the asserted patent claims to be invalid under 35 U.S.C. § 101.

## INTRODUCTION

In March 2000, Grandma Sally received a gift from one of her grandchildren. Inside the package was something that looked like a picture frame, but rather than a glass cover, it had a blank screen. It also had a power cord and a cable to plug into a phone line. Grandma Sally plugged in the cord and attached the cable into a phone jack. The next morning, Grandma Sally looked at the frame and was amazed to see the most recent photos of her seven grandchildren from across the country. She

would have been even more amazed to learn that, 24 years later, a court would say that this invention—her treasured picture frame—was just an abstract idea.

This case presents some of the strongest proof yet that "the abstract idea exception is almost impossible to apply consistently and coherently." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017). In 1999, Appellant Ceiva invented a new, first-in-class consumer electronic device—the Ceiva Frame. The Ceiva Frame was the world's first connected digital picture frame. Dubbed "a grandparent's dream come true" (Appx7453-7454), the Ceiva Frame allowed non-technical users to automatically receive new pictures from family, friends, and loved ones over the internet. The user did not need a computer, an internet connection, or any technical know-how. Rather, due to the technological innovations in the Frame and its supporting servers, all the user had to do was plug the Frame into a power source and a telephone line. The Frame would automatically "phone home" to a central Ceiva server, which would recognize the user's Frame and immediately begin downloading any photographs that friends, family, or loved ones had uploaded to their account. Every night, the Ceiva Frame would dial into the server and download up to ten new photos. Every morning, the user would wake up to a new slide show of pictures from loved ones all over the world.

As the world's first connected picture frame—and one of the very first Internet of Things (IOT) devices (Appx7460)—the Ceiva Frame was universally praised for

3

its technical innovations. CNN called it "amazing … [y]ou give it to grandma and grandpa …it's a constantly changing picture frame in grandma and grandpa's house that has the latest digital images …of the grandkids doing whatever they do that day … [they] just plug it in the wall, just plug it in the phone line and forget about it." Appx7444. The MIT newspaper praised it as a "brilliant solution to the perfect problem of this age," highlighting its "simple installation … [a]ll the recipient had to do is plug in the phone line, plug in power, and hold down the white button;" the device would then "automatically download new images every night." Appx7445-7446. Oprah Winfrey called it "unbelievable;" President Clinton was "fascinated by it." Appx7450. And none other than Jeff Bezos—founder of Appellee Amazon—praised the Ceiva device, going on CNN to "encourage all your viewers to buy the Ceiva picture frame. It's really great!" Appx7459.

Having invented a new, first-in-class, highly-praised consumer device, Ceiva sought patent protection for it. Ceiva ultimately obtained four utility patents, each directed to different technical advancements embodied by the Ceiva Frame: (i) U.S. Pat. No. 6,442,573 (the "'573 patent"), issued in 2002; (ii) U.S. Pat. No. 9,124,656 (the "'656 patent"), issued in 2015; (iii) U.S. Pat. No. 9,203,930 (the "'930 patent"), issued in 2015; and (iv) U.S. Pat. No. 9,654,562 (the "'562 patent"), issued in 2017 (collectively, the "Patents-in-Suit"). The Asserted Claims of the Patents-in-Suit are directed to the technical improvements enabling the very features of the Ceiva Frame

that made it so widely praised:  the ability for "grandma and grandpa" to "just plug it in the phone line and forget about it" (Appx7444), the ability for loved ones all around the world to upload photos for automatic daily download, and the ability of the Ceiva server to automatically identify (without user input) each Frame connecting to it, and only push photos intended for each Frame.

Quite literally, the Ceiva Frame—and the patent claims directed to it—was a "new and useful … machine." 35 U.S.C. § 101. It was a *new device* with *new functionality* that had never existed before:  automatic daily update of photos to a picture frame without needing a computer, user-operated computer software (like email or internet applications), an internet connection, or any technical savvy at the user's end. This "new and useful … machine" is quintessential patent-eligible subject matter—no different than the printing press or the cotton gin.

Yet, applying the "abstract ideas" exception—"a vague and subjective notion that has proven entirely unworkable" (*Intellectual Ventures I, LLC v. Symantec Corp.*, CAFC No. 15-1769, Dkt. 48 (*Amicus* Brief of Judge Michel))—the district court granted summary judgment that the Patents-in-Suit are ineligible. That is: despite the mountains of evidence showing that the entire industry—***including Appellee***—deemed the claimed inventions novel, useful, and innovative (that is, *nonconventional*), the district court ruled that ***no reasonable jury*** could find that the Asserted Claims were anything but "well-understood, routine and conventional."

5

The district court failed to heed the Supreme Court's warning to "tread carefully in construing [§ 101's] exclusionary principle lest it 'swallow all of patent law.'" *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (*citing Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012)). The decision below should be reversed, and the case remanded for trial.

## STATEMENT OF THE ISSUES

1.      Did the district court err in granting summary judgment that the Asserted Claims of the Patents-in-Suit are patent-ineligible?

2.      Did the district court err in ruling that there was no triable issue of fact on *Alice Step* Two, despite the "clear and convincing" evidence standard for patent invalidity, where there was extensive evidence of industry praise, long-felt need, and commercial success—all tied directly to the claimed features—and well-reasoned expert testimony explaining why the ordered combinations of claim elements were unconventional and inventive?

## STATEMENT OF THE CASE

### I.      CEIVA AND THE CEIVA FRAME

Ceiva was founded in 1999 by two high-ranking Disney executives and engineers, Dean Schiller and Paul Yanover. Appx544-545. Ceiva was specifically founded to build what was, by Amazon's own admission, "the first-ever Internet-connected digital picture frame." *Id.*; Appx730-733.

Schiller and Yanover—the inventors of the Patents-in-Suit (the "Inventors")—recognized that, by 1999, digital cameras and photographs were becoming popular. Appx543-544. However, methods of sharing and viewing such photographs were cumbersome. *Id.* For example, it was possible to view photos on the built-in screens in some digital cameras. *Id.* However, those screens were small, ill-suited to photo viewing, and required the viewer to be in the room with the camera. *Id.* Digital photos could also be shared via email. *Id.* However, that required the viewer to have a computer, an internet connection, an email account, photo viewing software, and the technical know-how (uncommon in 1999) to download photos, save them in the proper format, and open them in the viewing software. *Id.* Even if the user had all of that, it only allowed them to view photos on a 1999-sized cathode-ray tube computer monitor—bulky and expensive. *Id.*

The Inventors realized there was a large potential market for a device with the small form-factor and attractive appearance of a traditional picture frame, but with the ability to automatically receive new photos over the Internet. *Id.* At the time, the state of the art digital picture frame was the Sony PHD-A55, also called the Sony CyberFrame. *Id.*; Appx389, 1:46-2:44; Appx7448-7449. The Sony CyberFrame was released in late 1998 or early 1999. Appx7448-7449 (April 2000 interview: "Sony CyberFrame … came out about a year ago"). While the Sony CyberFrame was a digital picture frame, it had several key drawbacks. First, it had *no network*

*connectivity whatsoever. Id.* ("it doesn't connect to the Internet"); Appx389, 2:15-45; Appx7302. Thus, contrary to the Inventors' vision, it had no ability to receive—let alone *automatically* retrieve—new photos from people around the world. Second, the only way to change the photos on the CyberFrame was to physically install a proprietary Sony "Memory Stick" into the device. Appx7467-7470. Not only did this mean there was no way to *remotely* change photos, it meant that, "[i]f you cannot get pictures onto a Memory Stick"—for instance, because you have a digital camera manufactured by someone other than Sony—"the [Cyber]frame is just an expensive paperweight." *Id.* Third, the CyberFrame was "complex[]" and difficult to setup and configure, contrary to the Inventors' "plug-and-play" vision. *Id.* And fourth, because the CyberFrame lacked network connectivity, there was no way for a tech-savvy relative or friend to remotely manage, control, or update the device. Appx7302.

The Inventors developed the Ceiva Frame specifically to overcome these deficiencies with the CyberFrame. Appx544-545. They succeeded. Ceiva released the Ceiva Frame in March 2000 for $250, to widespread industry acclaim. *Id.* In April 2000, Walter Mossberg—longstanding Personal Technology columnist for the Wall Street Journal—went on CBS's Saturday Early Morning Show to compare the Ceiva Frame with the CyberFrame. Appx7448-7450. He praised the Ceiva Frame's ease of use, relating how he sent a Ceiva Frame to his mother, who reported it "was very easy" to use; she "[j]ust plugged it in and into the phone line" and automatically

received "pictures of [her] family." *Id.* By contrast, he disparaged the "$900" CyberFrame, because "it doesn't connect to the Internet. All you do with this—all you can do with this is <u>if you have a Sony digital camera</u> [with a Memory Stick], shoot pictures. You take the little memory stick out of the camera and plug it in here and you can look at the pictures from the camera. To me, it's really pretty dumb for $900." *Id.* This is clear contemporaneous evidence that the Ceiva Frame overcame technical limitations of the prior art. Because the Asserted Claims directly read on those technical advantages, they are patent-eligible.

## II.    THE PATENTS-IN-SUIT

Simultaneous with their development of the commercial Ceiva Frame, the inventors filed their first patent application, U.S. App. No. 09/458,849 (the "'849 Application") on December 10, 1999. '573, Cover. The '849 Application issued as the '573 patent. The remaining Patents-in-Suit all claim priority, as continuation applications, to the '849 Application. Accordingly, the Patents-in-Suit share a common priority date of December 10, 1999, and a common specification.

The specification begins by outlining the technical deficiencies in the three then-existing ways to view photographs:  (i) "Traditional Picture Frames;" (ii) The Sony CyberFrame, which the specification calls the "Digital Display Device;" and (iii) then-existing "Computer Networks," including "Electronic Mail Systems," "Client Pull" systems, and "Server Push" systems. Appx389-391, 1:17-6:30.

Traditional picture frames provided a "visually pleasing way to present photographs for display." Appx389, 1:20-44. However, they had drawbacks. The main one was that "changing the picture in the frame require[d] a series of manual steps," meaning that "changing the picture require[d] that a person be physically located at the same place where the picture frame resides." *Id.* Similarly, there was no way to automatically receive new pictures from a remote location—new pictures would have to either be mailed or physically brought to the location of the frame. *Id.* Furthermore, a traditional frame did "not have the ability to adjust the dimensions and/or size of the picture to fit within the display area." *Id.*

The Sony CyberFrame had all of the deficiencies described in Section I above, including: (i) no network connectivity, meaning it could not receive new photos remotely, and there was no way for friends or relatives to remotely control, configure, or update the device; (ii) dependence on the Memory Stick, which could only be used with Sony products, and required physical insertion to change the pictures; and (iii) being limited to the specific "types of image data" supported by Sony, namely, JPEG and MPEG. Appx389, 1:45-2:45; Appx7468-7470.

Electronic Mail Systems (email) suffered from numerous deficiencies, including: (i) to receive and view photos, the recipient had to have a computer, an internet connection, an email account, and photo viewing software, all of which were expensive and uncommon for all but technically-advanced users in 1999; (ii) the

10

recipient had to manually open the email, download the photographs, and open them in a separate program; nothing occurred automatically; (iii) the user had to have the technical know-how to do all of the foregoing (in 1999); and (iv) even if they did, that only allowed them to view photographs on a bulky 1999-size computer monitor, not in a picture frame. Appx389-390, 2:62-4:12; Appx7307, Appx7336-7337.

"Client Pull" systems—ones in which a client computer manually initiates a request to download content from a server—had similar shortfalls. Appx390-391, 4:14-5:35. The main "client pull" technique in 1999 used a client computer to request data from a web server via HTTP. *Id.* Delivery of photographs via client pull (e.g., WWW) had a number of drawbacks, including: (i) it required the user to have a computer, an internet connection, and web browser software, which were expensive and uncommon among non-tech-savvy users in 1999; (ii) it required the user to know which URL stored the picture(s) they wanted to download; (iii) it required the user to manually enter the correct URL in a browser, and did not permit automatic download of pictures; (iv) it only allowed users to download *public* pictures generally available on websites; it did not allow them to download *private* pictures chosen for them by friends, family, and relatives; and (v) even if the user could do all of the foregoing, it would only allow them to view photos on a bulky, 1999-sized computer monitor, not in a picture frame. *Id.*; Appx7303-7304, Appx7337-7338.

Server Push systems—ones in which a server computer "pushes" new content out to client systems without the client needing to initiate the "push"—offered no solution either. Appx391, 5:35-6:25. For instance, in 1999, the "server push" technique was used to distribute stock prices to client computers. *Id.* The client computer would register with the central push server, and indicate how often it wished to receive stock updates. *Id.* The server would then "push" new stock data to the client at the specified interval. *Id.* However, the server push model had never been used as a photo distribution system, because: (i) the server could only "push" the same data to all clients; it could not customize the data distributed to each client, as is needed to allow private photos to be distributed only to intended recipients; and (ii) neither the user nor their friends or relatives could upload photos that would then be "pushed" to the clients—each client would only receive whatever data was chosen to be "pushed" by the server operator. Appx391, 5:35-6:30; Appx7304, Appx7338.

Thus, as of the filing of the '849 Application, there was a need in the art for "a way to distribute image data to … customizable frame devices … [allowing] for remotely customizing the behavior of each frame device and … [with] a distribution scheme configured to distribute [device-specific] image data to each frame device." Appx391, 6:25-30. The Ceiva Frame, described and claimed in the Patents-in-Suit, filled that need, being—per Mr. Mossberg—a "pioneering product" that "launch[ed] a whole new category of digital, Internet-enabled picture frames." Appx7448.

A block diagram of the patented frame device is shown in Fig. 3 below:



**FIGURE 3**

Above, the frame device includes an LCD display 313 with LCD controller 311 and LCD DRAM 312, flash memory 309, a CPU 305 with DRAM 307, a power source 329, a pushbutton switch 300, a communications interface 340, and an optional photosensor 303. Appx393-395, 10:38-13:10. The LCD 313 and associated DRAM 312 and controller 311 are used to display the pictures stored on flash memory 309. *Id.* The CPU 305 and DRAM 307 execute the functionality of the

13

device, including obtaining, storing, and displaying pictures. *Id.* The communications interface 341 communicates over network link 341 and/or interconnection fabric 342 to obtain pictures and configuration information, as described below. *Id.*

Notably, the frame device of Figure 3 is *not* a general-purpose computer. This is confirmed by the lack of any traditional computer input device, such as a keyboard or mouse. Indeed, the only manual input is a single "pushbutton switch 300" which, when pressed, "cycle[s] through the … images in flash memory 309 available for display." Appx394, 11:64-12:7 The Ceiva Frame was a *purpose-built* digital picture frame, with only as much hardware as necessary to receive and display pictures—a key advantage over the prior art. Appx7304.  This is what allowed Ceiva to launch the Ceiva Frame at $250, as opposed to the $900 CyberFrame, let alone much more expensive general-purpose laptops and desktops. Appx7444-7450.

In an embodiment, the communication interface 340 of the device is a dial-up modem, and the network link 341 is the public telephone network.[1] Appx394, 12:41-55. In this embodiment, the flash memory 309 comes pre-loaded with a "toll free phone number" of a central server, i.e., the "data repository 270" in Figure 2B below:

---

[1] Other embodiments include a "LAN" or "Wireless links." Appx394, 12:51-60.



**FIGURE 2B**

Appx393, 9:30-56. When a user connects the device 200 to power and a telephone line, it "automatically execute[s] the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software." *Id.* In an embodiment, it does so by calling the toll-free number stored in flash memory, which connects to the data repository. *Id.* The data repository

15

determines the location of the frame device, and then sends it a "local number" for a local server, which the device can call for future updates. *Id.*. The device then disconnects and re-dials the number for the local server, reestablishing a connection to the data repository. *Id.*, 9:57-10:7. At that point, the data repository fully configures the device over the connection, with no user input required. *Id.*

To obtain pictures for the device, and configure it beyond the initial setup, the invention uses the architecture of Fig. 2A, shown below:



FIGURE 2A

16

Above, a number of frame devices 250 are provided to users. Appx395-396, 13:13-15:57. The frame devices 250 are connected via local frame servers 211 and/or interconnection fabric 217 to the data repository 213. *Id.* The data repository is a server "populated with image data 214" for each of the frame devices 250. *Id.*

To populate the data repository 213 with images for a particular device—e.g., frame device 205—a user, using a client computer (e.g., client 219), sends pictures over the internet (via email or web) to the data repository 213, specifying the "picture mail address associated with the targeted frame device." *Id.* For instance, if the device 205 is owned by a grandmother, and the grandmother's son wishes to send her new vacation pictures, the son would send the pictures to the data repository 213 over the internet (via email or web), specifying the unique "picture mail address" associated with the grandmother's device. A "filter" program running on the data repository 213 would then "determine[] whether the image data satisfies [the grandmother's user-configurable] filter criteria." *Id.* "For example, the program may determine whether the image data was transmitted from a member of the user's buddy-list and/or address book;" if so, it stores the picture in a portion of memory of data repository 213 assigned to the device 250; if not, it deletes it. *Id.* In our example, assuming the son was on the grandmother's "buddy-list," the vacation pictures would be stored in the memory of the data repository assigned to her device 205. At the same time, image-conversion software on the data repository would

17

automatically convert the pictures to a format and resolution suitable for display on the frame. Appx401-402, 26:66-27:23. In this way, the system could ingest pictures of *any* format, and provide them in a format the frame could display. *Id.*

At regular intervals—e.g., daily, at midnight—the frame device automatically connects to the data repository to check for new images and software updates. Appx393-403, 9:32-10:7, 13:40-51, 28:30-29:59. If it finds new images, and there is sufficient space in the flash memory 309, the device will automatically download the images, store them in flash memory 309, and add them to the "slide show" of pictures to be displayed on the device. Once flash memory 309 is full, new pictures will replace old pictures. *Id.* Meanwhile, to check for software updates, the flash memory 309 stores a "software release number and/or version number of the onboard software," and sends it to the data repository during each connection. Appx394, 11:50-63. The data repository compares the received version number with the most recent version number; if a newer version is available, it sends it to the frame device, which automatically installs it, automatically updating the device. *Id.*

Because the frame device 250 is intended to be used by non-tech-savvy users, the invention allows authorized tech-savvy users (called "proxy" or "parent" users) to *remotely* configure and control it. Appx395-396, 13:65-16:25. To that end, the invention permits client computers 220 to communicate with the data repository 213 via a "picture box" application 251-255 running in a "picture box viewer" 220-228.

18

Appx395-400, 14:37-15:57, 21:35-23:55. In a preferred embodiment, the "picture box viewer" 220-228 is a web browser, and the picture box application 251-255 is a web application or interactive web page. *Id.* The picture box application allows an authorized user—e.g., the grandmother's son—to configure the operation of any authorized frame device 250. *Id.* Using the picture box application, the proxy user can fully control the operation of the frame device. *Id.* Because the picture box operates online, a user can configure the device from anywhere in the world—a substantial improvement over the Sony CyberFrame, which could only be configured locally. *Id.*

An example of the picture box application is shown in Fig. 5 below:



**FIGURE 5**

19

As seen above, the picture box application shows a list of all pictures stored on the data repository for the device. Appx399-490, 21:35-23:55. The authorized user can choose which pictures will be downloaded to, and displayed on, the device by changing the "Status" column to or from "Display Image." *Id.* The user can also mark certain images as "Do Not Delete," and the application can identify "New" images that were not previously displayed on the device. By leveraging the large amount of storage available on the data repository 213—as compared to the limited storage (e.g., "ten images" (Appx394, 12:4-10)) available on the device memory— the user can advantageously store many more pictures than would otherwise be possible, and cycle through them by setting or turning off the "Display Image" flag. Appx399-400, 21:35-23:55; Appx7304-7309. Moreover, if any picture data on the frame device is lost or deleted, it will be automatically restored the next time the device connects to the data repository. *Id.* This offered a substantial improvement over the Sony CyberFrame, in which image data was only stored on the Memory Stick, so that if the Memory Strick was lost or destroyed, the pictures would be lost forever. Indeed, this was "a pioneering step in technology to what we would now describe as 'cloud storage,'" where large amounts of data can be stored on a remote server, and if data is ever lost on the local device, it can automatically be restored during the next "sync" or connection to the server. Appx7265-7267, Appx7309.

Because the invention distributes photographs—which can be highly sensitive—over public networks, the Inventors realized security was paramount. Accordingly, they included several innovative and unconventional security features.

First, they provided each frame with a "unique identifier (e.g., user/frameID)," which the frame automatically sends to the data repository each time it connects. Appx397-403, 17:65-18:15, 28:32-29:60. The unique identifier allows the repository to know exactly which devices have connected to it, and to establish a secure connection to each. *Id.*; Appx7268, Appx7306-7307, Appx7324. These secure, device-specific connections allow the repository to send *only* the pictures intended for each device, and no other device, to each device. *Id.* This was a substantial improvement over prior art "client pull" and "server push" techniques, which could only broadcast the same content to **all** connected clients. Appx7303-7304.

Second, they provided each frame device with the ability to "dynamically generate" "password information" during setup. Appx393-403, 9:30-10:7, 18:3-15, 28:30-29:58. Each time a frame connects to the data repository, the repository can issue a "challenge … to ensure the frame device is authentic," e.g., by requiring the frame to send the previously-generated password. *Id.* If the device does not send the correct password, the connection is terminated, thus protecting the sensitive pictures.

Third, they established a hierarchy of different types of "users" of the picture box application, where "each type of user [has] a different password." Appx396,

15:57-16:25. For instance, "parent users" have "all the privileges needed to control the device," while "member" users have permission to "submit images to the picture box for display on [a] frame device," but "do[] not … have permission to modify the frame['s] behavior." *Id.* By establishing different types of users with different privileges, each protected by different passwords, the security of the system was improved. *Id.*; *see also* Appx7306, Appx7315-7316, Appx7335.

Fourth, they implemented innovative "two-way authentication," in which *both* the frame must authenticate itself to the data repository, *and* the data repository must authenticate itself to the frame, before a secure connection can be established. Appx397-403, 17:40-18:41, 24:35-47, 28:60-29:59; Appx7267-7268, 7306. This further enhanced the security of the system. *Id.*

## III.    TECHNICAL IMPROVEMENTS OF THE INVENTION

The Inventors invented, and the Patents-in-Suit claim, a robust, innovative, purpose-built digital picture frame system with numerous technical advancements over the prior art. These unconventional, new and useful configurations enabled numerous features that did not exist in in the prior art, including the ability to:

1.    Automatically initiate, set up and configure the frame upon connection to a power source and a communication medium, without any user input, and without the need for the user to have a computer (Appx7308-7309; Appx391-392, 6:50-55, 8:42-60; '562 claim 16; '656 claim 5);

2.      Automatically retrieve and display new photographs for the frame from the central server at periodic intervals, without any user input (Appx7309; Appx392-402, 8:30-9:28, 26:18-28:28; '572 claim 19; '930 claim 3; '562 claim 16; '656 claim 5);

3.      Permit users all around the world to send new photographs for a particular frame, which the frame automatically downloads and displays without user input (Appx7309; Appx392-402, 7:12-22, 13:65-14:36, 26:18-28:29; '572 claim 19);

4.      Securely permit a "proxy" or "parent" user to configure and control all aspects of the device—including which photographs to display, when to display them, and in which order—remotely, from anywhere in the world (Appx7304-7307, Appx7311; Appx392-396, 8:61-9:7, 14:37-16:25; '572 claim 19; '656 claim 5);

5.      Store a large number of photographs—far more than could be stored in local device memory—on the central server, and then allow the user (or a proxy) to change the "active display" on the frame from among them at will (Appx7304-7305, Appx7309; Appx392-394, 7:12-48, 8:61-9:28, 11:17-36; '573 claim 19; '930 claim 3; '562 claim 16; '656 claim 5);

6.      Automatically restore, from the central server, any pictures or user preference data lost or deleted on the local frame, without user input (Appx7309;

Appx391-393, 6:42-62, 9:56-10:7; '573 claim 19; '930 claim 3; '562 claim 16; '656 claim 5);

7.     Automatically establish, without user input, secure, two-way-authenticated connections between the frame and the server, to ensure that photographs are only sent to the specific frame(s) for which they are intended (Appx7306-7307, Appx7313-7314; Appx391-403, 6:62-7:22, 13:65-14:20, 28:30-29:59; '930 claim 3; '562 claim 16; '656 claim 5);

8.     Display digital photographs of all file types and formats on an inexpensive, small-form-factor device, rather than a bulky, hard to use  computer and monitor or a proprietary device such as the Sony CyberFrame (Appx7305, Appx7317-7318, Appx7330; Appx389-392, 1:45-2:44, 6:42-7:49; '573 claim 19);

9.     Automatically convert, at a central server, submitted photographs into the proper format and resolution for display on the frame, without user input (Appx7304-7305; '573, 26:66-27:24);  and

10.     Automatically and periodically update the frame's software, including to add new features and functionality, without any user input (Appx7305, Appx7309-7310; Appx391-394, 6:42-62, 10:10-20, 11:50-63; '573 claim 19; '930 claim 3; '562 claim 16; '656 claim 5).

The foregoing were real, concrete improvements in the picture display arts, which did not exist until the Inventors invented them. Thus, far from being "abstract," the Asserted Claims are patent-eligible under § 101. Appx7302-7349.

## IV. THE ASSERTED CLAIMS

The above-described improvements are captured by the Asserted Claims.

### A. The '573 Patent

Claim 19 of the '573 patent, reproduced on the inside cover, is generally representative of the Asserted Claims of that patent. Claim 19 is directed to the Inventors' overall "system for distributing image data," comprising "at least one digital picture frame" (i.e., frame device 250), a "user interface" (e.g., picture box application 251-255), and "at least one server system" (i.e., data repository 213). The claim recites that the digital picture frame has "memory" and "operating system software" "configured to operate according to preferences defined by a user," e.g., preferences set through the "picture box" application. It further recites that the frame has a "border region modeled to resemble a picture frame." The "user interface" (e.g., picture box application) is coupled to the server system and, importantly, is "*physically separable* from said at least one digital picture frame." The "physical separability" of the user interface is what allows *any* authorized user, including a "proxy" or "parent" user, to use the picture box application to configure and control the frame, or upload pictures for the frame, from anywhere in the world ("user

interface … configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system.")

Importantly, the claim further recites that the "server system is configured to <u>periodically relay</u> said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame <u>automatically issues a request</u> for said image data." The frame's "automatic requests," and the server's automatic, "periodic" responses, are what allow the frame to *automatically* obtain new pictures (and preferences) at periodic intervals (e.g., daily), without any input by the user—"a grandparent's dream come true." Appx7453-7454.

Finally, the claim recites that the frame is configured to automatically "obtain an update for said operating system software from said at least one server system."

The foregoing limitations of claim 19, both individually and in combination, directly capture at least the following technical improvements of the invention, as listed in Section III *supra*: Improvements 2 ("automatic" and "periodic" retrieval and display of new photographs without user input), 3 (users anywhere in world can submit new photographs for frame via "user interface"), 4 (control, via "user interface," by tech-savvy proxy user), 5 (large image storage on server system), 6 (automatic restoration of lost pictures during "automatic," "periodic" updates), 8 (display on aesthetically pleasing device "modeled to resemble a picture frame), and

26

10 (automatic software update without user input). Thus, far from being abstract, claim 19, and the other asserted claims of the '573 patent, are patent-eligible.

## B.    The '930 Patent

Claim 3 of the '930 patent, reproduced on the inside cover, is generally representative of the Asserted Claims of that patent. Claim 3 is directed to a "digital display apparatus" (i.e., digital picture frame) contained in an "integrated housing," with an "image display region on an outside surface of said integrated housing," and a "memory," a "processor," and "communication circuitry" inside the housing.

The claimed memory has "a plurality of image data files," "security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus" (*i.e.*, the information required for two-way authentication), and a "current version of onboard software." The claimed processor is "configured to control the display of image data from said plurality of image data files … in accordance with said onboard software." And the claimed "communication circuitry" is "configured to engage a network medium."

The "onboard software" comprises four "functions:"[2] (i) an "image display function," which automatically displays images from the images stored in memory (e.g., slide show); (ii) a "remote connection function," which "<u>automatically</u> initiate[s] communications with said first remote sever system … to send a request

---

[2] The district court found these were <u>not</u> means-plus-function limitations. Appx220.

for image data … and to receive in response … one or more image files;" (iii) an "authentication function" which "authenticate[s] said first remote server system prior to accepting said set of data," and (iv) a "software update function" which automatically updates the onboard software.

Dependent claims 2 and 3 further specify that the "authentication function" is two-way authentication, in which the frame device "provide[s] said unique identifier" and "provide[s] device authentication information" to the server "prior to obtaining image data" from the server.

The foregoing limitations of claim 3, both individually and in combination, directly capture at least the following technical improvements of the invention, as listed in Section III *supra*:  Improvements 2 ("automatic" retrieval of new images), 5 (large image storage on "remote server system"), 6 ("automatic" restoration of lost images from server), 7 (automatic establishment of secure two-way communication), and 10 (automatic software update). Thus, far from being abstract, claim 3, and the other asserted claims of the '930 patent, are patent-eligible.

### C.    The '562 Patent

Claim 16, reproduced on the inside cover, is generally representative of the Asserted Claims of the '562 patent. That claim is directed to an "apparatus for displaying content comprising image data received from a server" (i.e., a digital picture frame), comprising a "display screen," a "central processing unit," a "video

controller," a "communications interface," and a "memory." The video controller is "configured to control display of said content on said display screen." The communications interface is "configured to communicate with said server." And the "memory" comprises a "unique identifier for said apparatus," "computer readable instructions … for controlling the operation of said apparatus," and a "version identifier for said computer readable instructions."

The "computer readable instructions" are configured to *automatically*, "upon connection to a power source and a communications source:" (i) "initiat[e] … a communications session with said server;" (ii) "send[] … said unique identifier to said server;" (iii) "send[] … said version identifier to said server;" (iv) "prompt[] … a user of said apparatus to create an account at said server;" (v) "receiv[e] … updated computer readable instructions … from said server;" (vi) "updat[e] … said computer readable instructions;" (vii) "receiv[e] … updated content [i.e., pictures] from said server;" (vii) "display … said updated content on said display screen;" and (ix) "transmit authentication information to said server system." Critically, all of these steps happen *automatically*, without user input, "upon connection to a power source and a communications source" (e.g., a telephone line).

The foregoing limitations of claim 16, both individually and in combination, directly capture at least the following technical improvements of the invention, as listed in Section III *supra*: Improvements 1 (automatic setup and initialization "upon

29

connection to a power source and a communications source"), 2 (automatic retrieval of new photographs), 5 (large image storage on "remote server system"), 6 (automatic restoration of lost images from server), 7 (automatic establishment of secure two-way communication through "unique identifier" and "authentication information"), and 10 (automatic software update). Thus, far from being abstract, claim 16, and the other asserted claims of the '562 patent, are patent-eligible.

### D.    The '656 Patent

Claim 5, reproduced on the inside cover, is generally representative of the Asserted Claims of the '656 patent. That claim is directed to a "display device for displaying image data received from a server" (i.e., a digital picture frame), comprising a "central processing unit," a "display screen," a "communications interface," and a "memory." The memory has "computer readable instructions" which "caus[e] said display device, <u>upon connection to a power source and a communications source and prior to receiving any input from a user, to</u> <u>*automatically*</u> initiate a communications session with said server."

The communication session, which is *automatically* established without user input, involves:  (i) "sending a request for image data to said server;" (ii) "receiving image data and authentication information from said server;" (iii) "authenticating said server" using the authentication information; (iv) "storing said received image

30

data;" (v) "displaying said image data;" (vi) "receiving updated computer readable instruction;" and (vii) "automatically updating said computer readable instructions."

The "computer readable instructions" further "instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device"—e.g., the "picture box" application, which allows proxy or parent users to control the device. And the memory further comprises "preference information for controlling the display of said image data by said display device"—e.g., preferences set by the proxy user through the "interface."

The foregoing limitations of claim 5, both individually and in combination, directly capture at least the following technical improvements of the invention, as listed in Section III *supra*:  Improvements 1 (automatic setup and initialization "upon connection to a power source and a communications source"), 2 (automatic retrieval of new photographs), 4 (allowing proxy users to control device through the web "interface"), 5 (large image storage on "remote server system"), 6 (automatic restoration of lost images from server), 7 (automatic establishment of secure communication through "authentication information"), and 10 (automatic software update). Thus, far from being abstract, claim 5, and the other asserted claims of the '656 patent, are patent-eligible.

## V.    PRAISE FOR THE CLAIMED INVENTION

Because it created new, innovative functionality, the Ceiva Frame—which is

undisputedly a commercial embodiment of the Asserted Claims of the '573, '930, and '562 patents[3] (Appx221-311; Appx7334-7335, Appx7340, Appx7349-7443, Appx74617465, Appx7482)—was extensively praised on release. Appx7443-7475. That praise is highly probative of the inventiveness of the Asserted Claims, because it is directly tied to the claimed features that distinguished the invention over the prior art, including networking connectivity, automatic setup and update, automatic retrieval and delivery of device-specific images, and remote control by proxies. *Id.*

In the district court, the evidence of praise (as well as long-felt need, copying, and commercial success) was presented through Paragraphs 477-559 of the Expert Declaration of Ceiva's validity expert, Dr. William Easttom. Appx7443-7482. While the evidence is too voluminous to recap in full in this brief, highlights include (along with the evidence cited in the preceding sections):

1. In August 2000, Money Magazine praised how users could "post up to 1,000 photos at the site"—*i.e.*, the claimed "server"—from which "up to 10 images" would be automatically retrieved for the frame ("all Mom or Dad has to do is press a button to see shots you've posted online") (Appx7453-7454)—this directly refers

---

[3] The Ceiva Frame did not literally practice the Asserted Claims of the '656 patent, because it did not practice the limitation of "instruct[ing] said server system to create an interface accessibly by a web browser." Appx7444. However, it practiced all of the other limitations of the '656 claims, including those directed to automatic setup, automatic retrieval of images, and authentication. *Id.*. Thus, the statements praising the Ceiva Frame still demonstrate the inventiveness of the '656 claims.

to the claimed advantages of automatic retrieval and large server-side storage;

2.	In March 2001, Fortune magazine praised the Ceiva Frame for being "easy to use … [w]e post the photos to Ceiva's Website … [and] [t]he device pulls the photos off the site, and doing that is dead simple" (Appx7446-7447)—this refers to the claimed advantage of automatic photo retrieval without user input;

3.	In May 2002, The Gadgeteer praised the Ceiva Frame because its "Installation is ridiculously easy:  You basically just plug the proper end of the power cord in …. and then you run the phone cord from the Ceiva to … any empty phone jack. Once you have done this, you … begin receiving downloads via the modem" (Appx7447)—this directly refers to the claimed advantages of automatic configuration upon power up and automatic retrieval of images;

4.	In December 2004, Walter Mossberg praised the Ceiva Frame in the Wall Street Journal, saying "[t]he coolest thing about the Ceiva is … the Ceiva isn't fed by plugging in memory cards … [i]t receives its photos via an <u>automated Web connection</u>. In fact, Ceiva owners <u>don't need to know anything about the Internet</u> … you could give the Ceiva to <u>grandparents with no PC or Internet server</u> and feed it a <u>constant stream of pictures by simply uploading them to Ceiva's servers</u> … <u>even if you are thousands of miles away</u>" (Appx7450)—this directly refers to the claimed advantages of automatic setup, automatic retrieval, and the ability for others to remotely send photos to the frame from anywhere in the world;

5. In 2004, Time Magazine praised the security of the Ceiva Frame, noting that because of the "frame's specific, randomly generated CeivaMobile email address" (i.e., the claimed "unique identifier"), it was "unlikely" that "spammers or any unsavory types [would] get[] hold of the frame's address" Appx7452—this directly refers to the claimed secure authentication features of the invention;

6. Numerous articles show that the Ceiva Frame met a long-felt need for an easy-to-use photo display device that allowed non-tech-savvy users to receive and display digital photographs sent by family, friends, and loved ones without user input. *See, e.g.,* Appx7470-7471 (Fortune: "Ceiva's digital picture frame … [is] designed to let people who don't like computers do computer-like things … [n]either mom is a hardcore PC user … But both managed to get the units installed, and Charlotte and I have sent them a bunch of pictures … [t]he device pulls the photos off the site, and doing that is dead simple"); Appx7471 (Money Magazine: "The frame is a perfect gift for a technophobe: Once you set it up, all Mom or Dad has to do is press a button to see shots you've posted online"); Appx7473 (PC Magazine: "Its ease of use makes the Ceiva ideal for sharing photos with relatives who don't have PCs … or an Internet account.") The Ceiva Fame met this long-felt need precisely through the claimed features of automatic configuration, automatic photo retrieval, and the ability for remote users to send pictures to the frame. *Id.*

7. Finally, the Ceiva Frame was a substantial commercial success, selling

34

over 100,000 units and earning revenues of over $40 million. Appx7482.

As Dr. Easttom testified in detail, the foregoing praise, long-felt need, and commercial success were directly tied to the technical advantages of the Asserted Claims. Appx7298-7300, Appx7335, Appx7341, Appx7461-7467, Appx7469, Appx7482. Thus, they are highly probative of the inventiveness of those claims.

## VI. THE PROCEEDINGS BELOW

Ceiva first sued Amazon for infringement of the '573, '930, and '562 patents in a different case, C.D. Cal. No. 19-cv-09129 ("*Ceiva* I"). Appx173-175. In that case, Amazon moved to dismiss under Rule 12(b)(6) on grounds that the asserted claims were patent-ineligible. Appx9971-9975. The district court—indeed, the same Judge who decided the summary judgment motion below—*denied* that motion. Appx9978-9983. It did so because it found that statements in the "specification"— "support[ed]" by "specific allegations" in Plaintiff's First Amended Complaint (FAC)—demonstrated a triable issue of fact on *Alice* Step Two. Appx9982-9983. The court found that "Plaintiff identifies a specific configuration of limitations in the claims," which "[t]he specification … supports … [being] unconventional and add[ing] an inventive element because the specific configuration allows content to be sent to the frame automatically, without user input." *Id.*

The statements in the specification which the court relied upon to find an issue of fact in *Ceiva I* were, of course, still in the specification when the court granted

summary judgment of ineligibility in *Ceiva II*. Moreover, with Ceiva's opposition to Amazon's summary judgment motion, Dr. Easttom expanded on the FAC's allegations (which this Court had relied upon in *Ceiva I*) in *far greater detail. Compare* Appx183-185 (FAC ¶¶ 61-72) *with* Appx7302-7349. Indeed, while the FAC talked *generally* about how elements of the claimed inventions were unconventional, Dr. Easttom *specifically analyzed* how the *specific elements* of the Asserted Claims, and combinations thereof, were unconventional. *Id.* Thus, because the specification statements and FAC allegations were sufficient to create a triable issue of fact in *Ceiva I*, the same specification statements, supported by *far more detailed expert testimony of Dr. Easttom*, should have been sufficient to do so in *Ceiva II*.

*Ceiva I* was dismissed because of a defect in standing. Appx320-322. Ceiva corrected the defect, and refiled the case below in the same court (*Ceiva II*). In *Ceiva II,* Ceiva asserted the following claims against Amazon: claims 2, 6, and 19 of the '573 patent; claims 1-8 and 15 of the '930 patent; claims 1-2 and 5-8 of the '656 patent; and claims 1, 4, 11, 16-17, and 20 of the '562 patent (the "Asserted Claims"). Appx1968. Following discovery, Amazon filed a motion for summary judgment of ineligibility under § 101 (the "Motion"). The Motion largely raised the same arguments the Court had previously rejected in *Ceiva I*.

Ceiva opposed the Motion with abundant evidence, including the evidence of praise, long-felt need, and commercial success outlined above, all amply supported in the 3,584-paragraph Easttom Declaration. Appx7022-7063; Appx7185-7188, Appx8504-8506. On *Alice* Step One, Ceiva argued—supported by Dr. Easttom's Declaration, and the other record evidence—that the Asserted Claims were not directed to an "abstract idea," but to "specific claimed improvements … that improve the performance and functionality of a digital display device, enabling it 'to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user' … [and] solv[ing] the technological 'problem[s] that previously, storage media had to be physically inserted in a frame' [] and 'that functions in the prior art [could not] be remotely updated, modified, or otherwise changed." Appx7037-7051. On *Alice* Step Two, Ceiva argued—supported by Dr. Easttom's Declaration and the copious evidence of praise, long-felt need, and commercial success—that the claimed inventions had an "inventive concept" and "improve[d] the functioning of the digital display itself," by enabling "self-configuring, remote controllable, client devices that may be setup and used without a separate computer," which features were not "well-understood, routine, and conventional," but rather (according to the praise evidence) "revolutionary" and "pioneering." Appx7052-7058.

The court found, as a matter of law by clear and convincing evidence, that all of Ceiva's digital picture frame patents claimed only patent-ineligible abstract ideas. Appx1-21. On *Alice* Step One, the court found that all of the Asserted Claims were directed to the "abstract idea" of "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input, and performing related functions including remote authentication and remote software updates." Appx10-15. On *Alice* Step Two, the court found that the claim elements, "individually or as an ordered combination," did not provide an "inventive concept," that the "claim element[s] or combination of elements [were] well-understood, routine, or conventional," and that Ceiva's evidence to the contrary did not create a triable issue of fact. Appx15-20.

The court further rejected as immaterial Ceiva's "Industry Praise" evidence and Dr. Easttom's testimony. According to the court, Industry Praise did not create a triable issue of fact because, allegedly, Ceiva and its expert "d[id] not explain how these [praise] statements relate to any particular claim element or ordered combination of claim elements." Appx16. As to "Dr. Easttom's Other Opinions," the court found they too failed to create a triable issue of fact because, allegedly: (i) they merely "confirm[ed] that the abstract idea – remotely controlling and updating a digital frame – was unconventional, not that any particular claim element was unconventional;" (ii) the "inventive concepts" identified by Dr. Easttom were "not

38

… present in the claim[s];" (iii) there was "no explanation as to why the specific order [of claim elements] is important in a way that renders the claim unconventional;" (iv) "[t]he components" recited in the Asserted Claims were individually "conventional"; and (v) the claims were directed to "a result or desired outcome instead of a specific way to accomplish that outcome." Appx16-20. Thus, it granted Amazon summary judgment. *Id.*

The court erred in reaching these conclusions. The claims are not directed to "abstract ideas" at Step One. At Step Two, on the patents' filing date, the "ordered combinations" of elements were unconventional and provided an inventive concept. And Ceiva's voluminous evidence of inventiveness, coupled with Dr. Easttom's thorough and well-reasoned opinions, were more than enough to create a triable issue of fact on eligibility.

## SUMMARY OF THE ARGUMENT

1.      The district court erred in granting summary judgment of patent-ineligibility. The Asserted Claims should be found patent-eligible as a matter of law, because they pass both steps of the *Alice* test.

At Step One, the Asserted Claims are not directed to "abstract ideas." Instead, they are directed to the specific hardware and software configuration of the Ceiva Frame—a new and useful device, which provided functionality that did not exist before. This new functionality included, for the first time, a purpose-built digital

picture frame, which allowed non-technical users to simply plug the device into a power source and a communication link (e.g., a phone line), and then automatically start receiving new pictures from friends and family around the world. The Ceiva Frame—one of the very first Internet of Things (IOT) devices (Appx7460)—allowed the user to automatically receive, on a daily basis, new photos without providing any input, without needing a computer, without needing an Internet connection, and without needing any technical know-how whatsoever. This new functionality—"a grandparent's dream come true" (Appx7453-7454)—was universally praised on release for its radical ease-of-use, being called, among other things, "pioneering," "brilliant," "surpris[ing]," "ridiculously easy" to install and use, and "unbelievable." Appx7444-7475. It also represented a specific improvement over the state-of-the-art digital picture frame at the time, the Sony CyberFrame, which had no remote connectivity, was difficult to use, and could only obtain new pictures through manual installation of a proprietary Memory Stick. *Id.*

Remarkably, the *district court itself* conceded that "remotely controlling and updating a digital frame [] *was unconventional*" in 1999. Appx16. Yet, it still found the claims abstract, because "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input, and performing related functions including remote authentication and remote software updates," was an "abstract idea." Appx14-15. This decision, if allowed to

stand, threatens to "swallow all of patent law." *Alice,* 573 U.S. at 217. What the district court called an "abstract idea" was, in fact, a description of the *technical advantages* of the claimed invention. If a court is free to call the primary advantages provided by an invention an "abstract idea," then *every* invention will fail the *Alice* test, because it excludes from inventiveness *the very thing about the claim that was inventive*. Under a proper application of *Alice* test, the Asserted Claims are not directed to abstract ideas, and the inquiry ends at Step One.

They also pass Step Two. The Asserted Claims recite an "inventive concept" as a matter of law, because the undisputed evidence showed that the ordered combinations of elements were unconventional, pioneering, and inventive. As even the district court acknowledged (Appx9982-9983), the specification describes, in detail, the problems with prior art means of displaying pictures—including the CyberFrame—and how the claimed invention solved those problems. Appx389-391, 1:5-6:35. Ceiva's expert, Dr. Easttom, explained in detail how the ordered combinations of claim elements captured the specific technical advantages of the invention. Appx7302-7349. And he further explained how the voluminous evidence of industry praise showed that the specific combinations of claim elements were non-conventional and pioneering. Appx7443-7475. On this record, a jury could only reach one conclusion: the ordered combinations in the Asserted Claims were not "well-understood, routine, or conventional."

2.     At the very least, the district court erred in finding that there was no triable issue of fact at *Alice* Step Two. The voluminous evidence of industry praise, long-felt need, and commercial success tied to the claimed features—coupled with Dr. Easttom's thorough and well-reasoned testimony explaining why the ordered combinations of claim elements were unconventional and inventive—easily sufficed for a reasonable jury to find inventiveness at *Alice* Step Two. The district court incorrectly dismissed the evidence of praise for lacking a nexus to the "specific claim elements." Dr. Easttom explained, in detail, how the evidence of praise related directly to the advantages of the Asserted Claims (Appx7443-7475), and that direct relation was clear from the statements of praise themselves. Although secondary evidence is "not *necessarily* a proxy for an improvement in a technology[,] nor does it *necessarily* indicate that claims were drawn to patent eligible subject matter," *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015), when a clear nexus exists between the secondary evidence and the claimed ordered combinations, it is. This is exactly such a case.

Accordingly, at the very least, this Court should hold that there is a triable issue of fact on *Alice* Step Two, and remand for trial.

**STANDARD OF REVIEW**

This Court reviews a grant of summary judgment under the law of the regional circuit. *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed.

Cir. 2013). The Ninth Circuit reviews a grant of summary judgment *de novo*. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016). Under *de novo* review, the appellate court must "employ the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Id.* "As required by that standard," the appellate court must "view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Id.* Summary judgment may only be affirmed only if *no* "reasonable jury … draw[ing] all justifiable inferences in favor of the nonmoving party, including questions of credibility and … weight," could find for the non-movant. *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003). "The plaintiff, to survive the defendant's motion, need only present evidence from which a jury *might* return a verdict in its favor. If the plaintiff does so, there is a genuine issue of fact that requires a trial." *Id.* (quotations and brackets omitted).

Patent eligibility under 35 U.S.C. § 101 is "ultimately an issue of law [which this Court] review[s] de novo." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). However, "[t]he patent eligibility inquiry may contain underlying issues of fact." *Id.* In particular, at *Alice* Step Two, "the question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Id.* Because issued patents are

presumed valid, "any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.* Accordingly, summary judgment must be reversed unless *every* reasonable jury would be *required* to conclude that Amazon proved, by "clear and convincing evidence," that the "claim element[s] [and] combination[s] of elements" in each of the Asserted Claims were "well-understood, routine and conventional to a skilled artisan" in 1999. *Id.*

## ARGUMENT

## I.   THE ASSERTED CLAIMS ARE NOT DIRECTED TO ABSTRACT IDEAS AT *ALICE* STEP ONE

### A.   Step One Looks to Whether the Claims' Focus is on a Specific and Concrete Technological Advance

At *Alice* Step One, this Court analyzes "the focus of the claim." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022); *see also TecSec, Inc. v. Adobe Inc.,* 978 F.3d 1278, 1292 (Fed. Cir. 2020) ("the Step 1 'directed to' inquiry … ask[s] what the patent asserts to be the focus of the claimed advance over the prior art.") (quotations omitted). "If the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine, [the] inquiry ends and the claim is eligible." *Adasa,* 55 F.4th at 908. To perform this analysis, each claim must be "[c]onsidered as a whole, and in view of the specification." *Id.* If a claim "concretely capture[s] an[] improvement" in the relevant technology, it is patent-eligible at Step One. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308-09 (Fed. Cir. 2020).

Critically, to be eligible at Step One, there is *no* requirement that "the claims themselves … expressly mention the [advantages] achieved by the claimed system." *Id.* So long as the claims "concretely capture" the advantages, that is enough. *Id.*

This Court also has "reiterated the Supreme Court's caution against 'overgeneralizing claims' in the [Step One] analysis, explaining that characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293 (Fed. Cir. 2020) (*quoting Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1337 (Fed. Cir. 2016)). Thus, at Step One, "courts 'must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.'" *Id.* (*quoting McRO, Inc. v. Bandai Namco Games America, Inc.,* 837 F.3d 1299, 1313 (Fed. Cir. 2016)).

Finally*,* "[w]hile prior cases can be helpful in analyzing eligibility, whether particular claim limitations [or combinations thereof] are abstract … must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec*. LLC, 15 F.4th 1091, 1099 (Fed. Cir. 2021).

### B. The Asserted Claims Focus on Concrete Advances in Digital Picture Frame Technology

Applying these standards, the Asserted Claims are patent-eligible at Step One, because each Asserted Claim "concretely captures" multiple "specific and concrete

technological advances" in the picture frame display art. *Uniloc*, 957 F.3d at 1309 (finding patent-eligible claims for configuring an existing network communication technique to include a new piece of data that improved response time for Bluetooth devices); *Adasa,* 55 F.4th at 908. As discussed in Sections I-V of the Statement of the Case, prior to the claimed inventions, there were three available techniques for photo display: (i) conventional picture frames; (ii) the Sony CyberFrame; and (iii) viewing photos on laptop/desktop computers. Appx389-391, 1:16-6:24; Appx7302-7304. All of them had drawbacks. *Id.* Conventional picture frames did not allow family or friends to remotely send photographs, could not automatically receive new photographs, and could only be changed by someone in the room with the frame. *Id.* The Sony CyberFrame did not allow family or friends to remotely send photographs, could not automatically receive new photographs, could only be changed by someone in the room with the frame, and required use of the proprietary Sony Memory Stick. *Id.* Viewing photographs on computers required expensive and bulky computer hardware, required the user to have the technical savvy to locate, download, store, and open the photographs, could not automatically receive and display new photographs without manual input, and could not limit the distribution of photos across a network to particular, secure device. *Id.* Thus, as the specification states, there was a need in the art for "a way to distribute image data to [] *customizable* frame devices," where users could "*remotely* customiz[e] the behavior

46

of each frame device," and with "a distribution scheme configured to [automatically] distribute image data to each frame device." Appx391, 6:25-30.

The inventions claimed in the Asserted Claims filled that need, by reciting novel configurations of the digital frame and related networking innovations. Appx7304-7311. They created, for the very first time, a *new and useful device*—a picture frame—that allowed non-tech-savvy users to simply plug in the frame, after which the frame would automatically configure itself, automatically download photographs sent from friends and family around the world, automatically update those photographs at regular intervals only to a particular frame device, and automatically update its own software, all without *any user input* at the device itself, and without any need for the device owner to have a computer. *Id.* And, critically, the Asserted Claims "concretely capture" these advantages. As shown in Sections III-IV of the Statement of the Case, each of the Asserted Claims "concretely captures" *at least five* of the ten identified technical advantages of the invention. The Asserted Claims do not merely recite a "desired result:" they recite the *specific, unconventional hardware and software architecture* that yields the foregoing advantages. Appellant's expert, Dr. Easttom, devoted over fifty Paragraphs of his report to explaining, in exhaustive detail, how each of the Asserted Claims captures these advantages. Appx7312-7334, Appx7339-7349. Amazon did not challenge Dr. Easttom's testimony. On summary judgment, his detailed, plausible testimony

should have been accepted as true. *Suzuki,* 330 F.3d at 1132. By rejecting that testimony, the district court erred in finding the claims patent-ineligible at Step One.

At Step One, the district court found each Asserted Claim to be "directed to the abstract idea of automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input, and performing related functions including remote authentication and remote software updates." Appx14-15. But this was not a description of an "abstract idea"— it was a *summary of the invention and its advantages*. What the Inventors invented was, in fact, an improved picture frame device capable of "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input, and performing related functions." That is an *improved machine*—which allowed a digital picture frame "to do things it could not do before"—and thus, a patent-eligible invention. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018).

Indeed, the voluminous evidence of praise (Statement of the Case, § V) shows that the *number one feature* users and the media deemed "innovative" and "pioneering" about the invention was its ability to "automatically" receive new pictures remotely "without the use of a computer and without any further user input"—"a grandparent's dream come true." Appx7453-7454. If, at *Alice* Step One, courts can simply summarize the innovative features of the invention, and then label

them with the word "abstract," as opposed to performing an analysis of the invention's "specific and concrete technological advances," Step One would become meaningless. *Uniloc*, 957 F.3d at 1309; *Adasa*, 55 F.4th at 908. At that point, Section 101 truly would "swallow all of patent law." *Alice*, 573 U.S. 208, 217.

For instance: consider Alexander Graham Bell's U.S. Pat. No. 174,465 for the telephone.[4] Claim 5 of that patent recites "[t]he method of, and apparatus for, transmitting vocal or other sounds telegraphically, as herein described, by causing electrical undulations, similar in form to the vibrations of the air accompanying the said vocal or other sound." The Supreme Court upheld this claim and others like it. *Dolbear v. Am. Bell Tel. Co.*, 126 U.S. 1, 534 (1888) (finding valid and patentable claims directed to "putting a continuous current, in a closed circuit, into a certain specified condition, suited to the transmission of vocal and other sounds, and using it in that condition for that purpose"). But a court that did not "tread carefully" could have easily characterized this claim—one of the greatest inventions in human history—as directed to "the *abstract idea* of transmitting sound by producing electrical signals similar in form to the sound waves." And since the claim recited only well-known or "generic" equipment to implement this "abstract idea," a court could have deemed the claim ineligible at Step Two. Yet the Supreme Court made clear that Bell's invention satisfied the "new and useful art" test, distinguishing it

---

[4] https://patentimages.storage.googleapis.com/10/ab/a3/b4f5c6e5826640/US174465.pdf

from one of Morse's claims for the use of "electromagnetism" to print "intelligible characters." *Id.* at 533-34 (*citing O'Reilly v. Morse*, 56 U.S. 62, 120 (1853)).

Thus, describing, and even claiming, an invention by what it does—its technological advantages—cannot simply be labeled as "functional claiming" of an "abstract idea" under *Alice* Step One. Otherwise, nearly every invention would fail the Step One test—even new and improved physical devices, like the invention here. By describing the innovative advantages of Ceiva's improved picture frame—automatically accessing and authenticating a remote data repository to obtain updated content without the use of a computer and without any user input on the frame itself—the district court confirmed that the patents, as did Bell's patents, "concretely captured" patent-eligible technical advantages, not mere abstract ideas.

The district court also found that certain physical components recited in the Asserted Claims are, individually, "generic." Appx11-14. Even if so, that does not support its conclusion. Scrutinizing whether individual claimed components are "conventional" or "generic" "misses the point," because "useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computing equipment." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 135 (Fed. Cir. 2022); *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016) (patent-eligible invention "can be found in the non-conventional and non-generic arrangement of known,

50

conventional pieces.") Here, Ceiva does not claim to have invented a new type of "memory," "processor," "communication circuitry," or any of the other *physical sub-components* of the claimed "devices" and "systems." Rather, what it invented was an improved *digital picture frame device* (with supporting server systems) that took existing components and combined them into a "non-conventional and non-generic" system, which allowed, for the first time, automatic, periodic, and remote retrieval and display of photographs without user input or a computer. That is what the Asserted Claims are "directed to," and it is not "abstract"—it is an invention.

Citing six of this Court's cases, the district court concluded that "[c]laims directed to sending and receiving data are not patent eligible," and that "[c]laims directed to remote authentication and remote software updates are likewise not eligible." Appx12-13. True enough—but only when the claims recite nothing more than such broad concepts. In each case the district court cited, this Court found the claims were *only* directed to transferring data, authenticating communications, or updating software—as opposed to *using* data transfer, remote authentication, or

software updates *as part of* concrete "technological advances."[5] In contrast, this Court has upheld as patent-eligible claims that, like here, *utilize* data transfers, data verification, and software updates *as part of* concrete technological improvements.[6] That is why "eligibility …. must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey*, 15 F.4th at 1099. Ceiva's Asserted Claims are nothing like those this Court found ineligible in the first set of cases (n.5). Rather, like those in the second set of cases (n.6), the Asserted Claims capture concrete technical improvements, which created functionality that never existed before. Thus, *these* claims are patent-eligible.

---

[5] For "data transfer" claims, the district court cited *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) and *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019). For "remote authentication and software update" claims, the district court cited *MyMail Ltd. v. ooVoo*, LLC, No. 2020-1825, 2021 WL 3671364, at *5 (Fed. Cir. Aug. 19, 2021); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021)); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020); and *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019).

[6] *See Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339–40 (Fed. Cir. 2016) (upholding under Step One claims directed to a data structure that improved conventional ways of storing and transferring data in memory); *Uniloc*, 957 F.3d 1303, 1308 (upholding under Step One claims that improved the broadcasting of data messages by allowing for simultaneous transmission of different message types); *Finjan,* 879 F.3d at 1304 (Fed. Cir. 2018) (upholding under Step One claims directed to an improved virus detection technique that scanned data and attached scan results in a "security profile" that identified suspicious code); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019) (upholding under Step One claims that improved an existing check-data generation device for "detecting systematic errors in data transmissions").

Finally, the district court found that "the claims of the asserted patents are aspirational"—*i.e.*, that they "are directed to a desired result but … do not claim any specific way to achieve that result." Appx13-14. Ample evidence showed otherwise. As Dr. Easttom explained (Appx7312-7334, Appx7339-7349), the advantages of the claimed invention are achieved *specifically by* the claimed hardware and software architecture, in which—looking, *e.g.*, at '573 claim 19—the "digital picture frame" has onboard "operating system software" that, at programmed intervals, "*automatically* issues a request for said image data," in response to which the "server system … *periodically* relay[s] said image data … to said at least one digital picture frame." There is nothing "aspirational" about the claims. They recite the specific hardware and software that achieves the advantages of the invention, as they are described in detail throughout the specification. Whether the specification enabled a person of skill to implement this hardware and software is a question for § 112, not § 101—and Dr. Easttom shows, in detail, that it did. Appx7482-7573.

Because the claims recite the hardware and software that "concretely captures" the advantages of the invention, they are not directed to "abstract ideas" at *Alice* Step One. Thus, this Court should find, as a matter of law, that the Asserted Claims are patent-eligible, and reverse the decision below.

**II.    THE ASSERTED CLAIMS RECITE INVENTIVE TECHNICAL IMPROVEMENTS AT *ALICE* STEP TWO**

Even if a claim is "directed to" an abstract idea at *Alice* Step One, it is still eligible if it recites an "inventive concept" at *Alice* Step Two. *Bascom*, 827 F.3d at 1347-1352. In searching for an "inventive concept," the Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the … elements transform the nature of the claim into a patent-eligible application" of an abstract concept. *Id.* at 1347 (*quoting Alice*, 134 S. Ct. at 2355). A claim recites an "inventive concept" if it provides "specific improvements in the [relevant] technology [that] go beyond 'well-understood, routine, conventional activities.'" *Id.* (*quoting Alice,* 134 S. Ct. at 2355). This "inquiry requires more than [analyzing whether] each claim element, by itself, was known in the art." *Id.* at 1350. That is because "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* Thus, if the "ordered combination" of claim elements captures a "technical improvement over prior art ways" of performing the function of the invention—even if the claim elements, individually, were known in the art—the claim is eligible at Step Two. *Id.* And, critically, whether the ordered combination of elements captures a "technical improvement over the prior art," or was instead merely "well-understood, routine, and conventional," is a question of *fact*. *Berkheimer,* 881 F.3d at 1368.

Here, the evidence of record establishes that each of the Asserted Claims captures multiple concrete technical improvements over the prior art, *none* of which were "well-understood, routine, or conventional." Appx7334-7349. The Inventors invented—and the Asserted Claims recite—a *new* device with *new and useful* functionality that did not exist before: a digital picture frame that automatically configures itself upon power-up, automatically and periodically retrieves new photos for display, allows friends and family to send pictures for automatic retrieval and display from anywhere in the world, and allows users to remotely configure and control the frame—all without user input, and all without the need for the frame owner to have a computer. *Id.* As confirmed by the voluminous evidence of praise and long-felt need (Appx7444-7475), far from being "conventional" or "routine," *contemporaneous speakers* acknowledged the invention as "pioneering," "brilliant," "surpris[ing]," "ridiculously easy" to install and use, and "unbelievable." *Id.* And, as shown in Sections III-IV *supra*—and confirmed by Dr. Easttom's detailed testimony (Appx7302-7349)—all of these technical advantages are captured by the Asserted Claims. Accordingly, as a matter of law, the "ordered combinations" of elements in the Asserted Claims recite an "inventive concept," and are patent-eligible.

In holding otherwise, the district court made numerous errors of law and fact.

*First*, the district court rejected Ceiva's extensive evidence of industry praise as non-probative of inventiveness, because Plaintiff and its expert allegedly "d[id] not explain how these statements [of praise] relate to any particular claim element or ordered combination of elements." Appx16. While this Court has never expressly held that secondary indicia such as industry praise *must* be considered in examining patent eligibility, several opinions explain why such evidence can be highly probative to the eligibility issue. For example, in *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018), this Court held claims patent-eligible because, *inter alia,* "[t]he invention was *applauded by the industry* for improving computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets," and "*[n]umerous contemporaneous articles* attributed the improved three-dimensional spreadsheets' success to its notebook tab feature." *Compare Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (holding merely that "[c]ommercial success is not *necessarily* a proxy for an improvement in a technology nor does it *necessarily* indicate that claims were drawn to patent eligible subject matter."). In a case with a clear nexus between the secondary evidence and the "ordered combination" of claim elements, secondary evidence is probative of *Alice* Step Two.

This is exactly such a case. Contrary the district court's finding, Ceiva's expert explicitly, and in detail, demonstrated how the evidence of praise and long-felt need

was tied directly to the technical advantages of the claimed inventions. Appx7443-7475. Moreover, this nexus is clear from the statements of praise themselves. As shown in Section V *supra*, the primary advantage that was repeatedly praised in the cited evidence was the ability for a non-tech-savvy user to plug in the device and have it automatically set itself up and start periodically downloading pictures, without user input—a "grandparent's dream." Appx7453-7454. Undoubtedly, that advantage is a direct result of the claimed features of "automatically" and "periodically" initiating communications between the frame's onboard operating system and a remote server for download of new pictures, including "upon connection to a power source and a communications source," in conjunction with the other elements of the claims. Thus, even if Dr. Easttom had not tied specific statements of praise to particular combinations of claim elements—which he did (Appx7461-7467)—the statements themselves would be enough for a reasonable jury to deem the secondary evidence probative of inventiveness. Accordingly, the district court erred in deciding that this evidence was not probative on Step Two.

*Second*, the district court found that Dr. Easttom's opinions on eligibility (Appx7300-7349) failed to create a triable issue of fact, because "most of [his] opinions" (the court did not specify which ones) merely "reference … high level concepts as opposed to specific claim language." Appx16. Yet Dr. Easttom explained, in great detail, exactly how the advantages of the invention tie to the

57

specific limitations of the claims. Appx7300-7349. Moreover, the court's focus on "Dr. Easttom's opinions" ignores that the *specification itself* describes how the invention solved the deficiencies of the prior art (Appx389-393, 1:15-10:35)—evidence the *district court itself*, in *Ceiva I*, relied upon to find eligibility. Appx9981-9983**.** Because the specification's own statements on inventiveness were enough to create a triable issue of fact under Rule 12(b)(6) in *Ceiva I*, they should still have been enough to create a triable issue of fact under Rule 56 in *Ceiva II*.

Indeed, the district court *conceded* Ceiva's point that "it was not routine, conventional, or well-known to have a digital frame device that could be remotely controlled and updated." Appx16. But the court gave that point no weight, because it merely "confirm[ed] that the abstract idea – remotely controlling and updating a digital frame – was unconventional." *Id*. This only highlights the problem with the district court's decision, at Step One, to define the so-called "abstract idea" as the *main advantage of the claimed invention*. Once the "abstract idea" is defined as the main advantage of the invention, the post-*Alice* truism that "the ineligible concept cannot supply the inventive concept"—cited repeatedly by the district court—will *inevitably* cause the claim to fail Step Two, because it disqualifies from "inventiveness" the *very thing about the claim that was inventive*. A remotely controllable and updatable digital picture frame *did not exist* until the Inventors

invented it:  thus, it is not an "abstract idea," and the ordered combinations of claim elements that enable such a frame are "inventive" at *Alice* Step Two.

*Third*, the district court disparaged the claims because it found certain individual elements, such as a "user interface," to be "conventional" or "generic." Appx16-20. It further found that "[l]everaging these generic components to accomplish a particular goal does not transform a claim in a way that makes it subject matter eligible." Appx19. However, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d 1350. Likewise, *using* conventional components *as part of* recited technological improvements can, indeed, recite patent-eligible subject matter. *See id.* and *supra* n.6.  For the reasons discussed, the Asserted Claims do exactly that.

*Fourth*, the district court faulted Ceiva for providing "no explanation as to why the specific order [of claim elements] is important." Appx17. But "ordered combination" does not refer to the *sequence* of claim elements—it refers to whether the *total arrangement* of claim elements was "well-understood, routine, or conventional." *Bascom*, 827 F.3d 1350. Here, even the district court conceded that the total arrangement was neither well-understood nor conventional. Appx16.

*Fifth*, the district court's comparison of the Asserted Claims to "people [who] stack photos behind the glass in traditional photo frames, memorializing updates through the years and allowing for easy updates to the displayed photo or photos"

(Appx17-18) does not answer the patent-eligibility question. Traditional glass photo frames certainly existed before Ceiva's invention, just as people used paper and ink before the printing press. Indeed, nearly every modern invention has roots in the conventional arts. But the ability to analogize a modern invention to its conventional roots does not mean that the invention fails to provide a technological improvement.

Here, Ceiva's invention *did* provide a technological improvement to conventional photo frames. And the specification *expressly explains* how. Appx389-393, 1:10-10:20. "Stacking photos" in a traditional frame does not have *any* of the advantages of the claimed invention, because: (i) it does not allow for periodic and automatic retrieval of *remote* photographs provided by others; (ii) it requires the user to be "in the room" and manually change the pictures in the frame, and does not allow for *remote* selection of photographs to display; and (iii) it does not allow others to instantaneously send new pictures for display; rather, the pictures must be mailed or physically brought to the frame, and then manually installed. *Id.* These very advantages over traditional photo frames are exactly why the invention was so highly praised. Appx7443-7475. In short, a claimed invention cannot be held patent-ineligible simply because it can be "analogized" to the *very prior art that it improved upon,* without swallowing all of patent law.

*Sixth*, the district court held that the claims failed Step Two because they are "directed to a result or desired outcome instead of a specific way to accomplish that

outcome." Appx18 That is wrong, as discussed above as to Step One. The claims do not simply recite a result or outcome—they describe, in detail, the hardware and software architecture which, in an ordered combination, yields the inventive improvements to prior digital picture frames, like the Sony CyberFrame.

In sum: the intrinsic and extrinsic evidence of record overwhelmingly establishes that the "ordered combinations" of elements in the Asserted Claims provided an "inventive concept," and were not "well-understood, routine, or conventional." Accordingly, this Court should reverse the decision below, and hold, as a matter of law, that the Asserted Claims are patent-eligible at *Alice* Step Two.

## III. AT THE VERY LEAST, GENUINE ISSUES OF FACT ON *ALICE* STEP TWO PRECLUDE SUMMARY JUDGMENT

Alternatively, if the Court is not inclined to rule the Asserted Claims patent-eligible as a matter of law, it should reverse the summary judgment and remand for trial, because the evidence of record establishes, at the very least, a genuine issue of fact on eligibility. The voluminous evidence of eligibility cited above—including the statements in the specification specifically showing how the Asserted Claims improved over the prior art, Dr. Easttom's detailed opinions on eligibility, and the extensive evidence of praise and long-felt need tied to the claimed features—are more than enough for a reasonable jury to conclude that the claims pass *Alice* Step Two—a "question of fact." *Berkheimer*, 881 F.3d at 1368. Accordingly, at the very

least, this Court should rule that there is a genuine issue of fact on Step Two, reverse the summary judgment decision, and remand for trial.

## CONCLUSION

For the foregoing reasons, this Court should rule reverse the decision below, and rule that the Asserted Claims are patent-eligible as a matter of law. Or, at the very least, this Court should rule that there are genuine issues of fact at *Alice* Step Two, reverse the grant of summary judgment, and remand for trial.

Dated:  August 20, 2024

Respectfully submitted,

*/s/ Lawrence M. Hadley*
Lawrence M. Hadley
Stephen Underwood
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Suite 1900
Los Angeles, CA 90067
(310) 553-3000

*Attorneys for Appellant*
Ceiva Opco, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-02709-AB-MAA | Date: | March 4, 2024 |
|---|---|---|---|

Title:   Ceiva Opco, LLC v. Amazon.com, Inc.

Present: The Honorable   **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101 AND NON-INFRINGEMENT (DKT. NO. 78); ORDER DENYING-AS-MOOT DEFENDANT'S MOTION TO STRIKE (DKT. NO. 95); ORDER DENYING-AS-MOOT DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINION AND TESTIMONY OF JAMES MALACKOWSKI (DKT NO. 71); ORDER DENYING-AS-MOOT MOTION TO EXCLUDE DR. JOHNSON'S OPINIONS (DKT. NO. 76)**

Defendant Amazon.com, Inc. ("Amazon" or "Defendant") moves for summary judgment of invalidity under 35 U.S.C. § 101 and non-infringement. ("MSJ," Dkt. No. 78.) Plaintiff Ceiva Opco, LLC ("Ceiva" or "Plaintiff") filed an opposition ("Opp.," Dkt. No. 99), and Defendant filed a reply ("Reply," Dkt. No. 121.) Relatedly, Defendant filed a motion to strike Plaintiff's new infringement theories and untimely disclosure of expert opinions (Dkt. No. 96) and motions to exclude the opinions and testimony of Mr. Malackowski and Dr. Johnson (Dkt. Nos. 71 and 76.)

The Court held a hearing on January 12, 2024. After considering the parties' arguments, the Court **GRANTS** Defendant's motion for summary judgment. The other three motions are **MOOT** in view of the summary judgment ruling.

## I.      BACKGROUND

### A. The Asserted Patents

In this patent infringement action, Plaintiff alleges that Defendant infringes U.S. Patent Nos. 6,442,573 ("'573 Patent"), 9,203,930 ("'930 Patent"), 9,654,562 ("'562 Patent"), and 9,124,656 ("'656 Patent") (collectively, the "Asserted Patents"). (*See generally*, "FAC," Dkt. No. 28.) The Asserted Patents are related, share the same inventors, and share a common specification. (*Id.* ¶ 63.) The '573, '930, and '656 Patents, each titled "Method and Apparatus for Distributing Picture Mail to a Frame Device Community," issued on August 27, 2002, December 1, 2015, and September 1, 2015, respectively. (*See* '573 Patent; '930 Patent; '656 Patent.) The '562 Patent, titled "Method and Apparatus for Distributing Content Via a Communications Network," issued on May 16, 2017. ('562 Patent.)

At a high level, the Asserted Patents are directed to displaying images on a digital picture frame. ('573 patent at 6:31-41; *see* 1:45-2:14, Fig. 1.) In the prior art both traditional frames and digital frames required users to be in close proximity to the frame to add new photos. (*Id.* at 1:19-34, 2:15-17.) The specification discloses "interconnected frame devices" having display regions surrounded by aesthetically pleasing frames. (*Id.*, Abstract) To solve the proximity problem, the frame devices are "configured to connect to an interconnection fabric to periodically obtain image data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process." (*Id.*)

Claim 19 of the '573 Patent discloses:

19. A system for distributing image data comprising:
at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;
a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at

least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

('573 Patent, Claim 19.)

Claim 1 of the '562 Patent discloses:

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:
said display screen;
a central processing unit;
a video controller configured to control display of said content on said display screen;
a communications interface configured to communicate with said server system via said communications network;
a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and
a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:
upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;
sending by said apparatus said unique identifier to said server system;
sending by said apparatus said version identifier to said server system;

prompting by said apparatus a user of said apparatus to create an account at said server system;

receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;

updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;

receiving by said apparatus updated content from said server system;

displaying by said apparatus said updated content on said display screen.

('562 Patent, Claim 1.)

Claim 1 of the '930 Patent discloses:

1.  A digital display apparatus having an integrated housing,

said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus, and a current version of onboard software;

a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region[;]

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection

function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

('930 Patent, Claim 1.)

Claim 1 of the '656 Patent discloses:

1. A display device for displaying image data received from a server system comprising:
a central processing unit;
a display screen for displaying said image data;
a communications interface configured to communicate via a communications network;
a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:
sending a request for image data to said server system via said communications network;
receiving image data and authentication information from said server system in response to said request;
authenticating said server system;
storing said received image data in said memory;
displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

('656 Patent, Claim 1.)

## B. Related Proceeding

The Court previously addressed the eligibility of the '573, '930, and '562 Patents under 35 U.S.C. § 101 in a related action. *See Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-09129-AB-MAA ("*Ceiva Logic*"), Docket No. 48. The Court analyzed the patents under the two-part *Alice* framework. *Id.* at 8–13. Under Step One, the Court described the claims at issue as likely directed to the abstract idea of a digital frame automatically accessing a remote data repository to obtain updated content with the use of a computer and without any further user input." *Id.* at 9. Specifically, the Court described this idea as comparable to "compiling photos to a display in succession, such as on a film projector." *Id.* at 10. The Court also reasoned that these patents lacked sufficient specificity to be directed to an improvement in computer functionality. *Id.* Still, the Court declined to reach a final determination on Step One. *Id.*

Under Step Two, the Court found an issue of fact as to whether the ordered combination of the limitations in the Asserted Patents disclosed an inventive concept. *Id.* at 12. Specifically, the Court found that Plaintiff identified a specific configuration of limitations, including "a unique identifier stored in memory, a frame that initiates communications with the server, and a server that automatically distributes updated content to the frame." *Id.* (citing '562 Patent, Claim 1; '930 Patent, Claim 1; '573 Patent, Claim 19). The Court found statements in the specification suggested that this configuration was unconventional. *Id.* (citing '573

Patent at 2:15-16 and 2:23-25).[1] These portions of the specification discuss problems in the prior art. Amazon never renewed its motion to dismiss under § 101 because the case was resolved on other grounds. *See* Dkt. No. 206 in Case No. 2:19-cv-09129. Because the Court did not previously make a final eligibility determination, the Court reapplies the Alice framework here. Still, the statements in *Ceiva Logic* remain relevant and helpful. Additionally, the Court extends the § 101 analysis to the '656 Patent, which was not at issue in *Ceiva Logic*.

## II.   LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

---

[1] The Court also pointed to allegations in the first amended complaint. However, the allegations in the instant litigation are not necessarily the same. Moreover, the instant motion is a motion for summary judgment; pleadings alone are insufficient to avoid an invalidity finding.

## B. Invalidity under 35 U.S.C. § 101

To obtain summary judgment of invalidity, a moving party must overcome the statutory presumption that issued patent claims are valid. *See* 35 U.S.C. § 282. That statute mandates that "[a] patent shall be presumed valid" and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*. Thus, a party seeking to overcome the statutory presumption and to establish the invalidity of an issued patent claim must prove the invalidity by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 112 (2011).

Under §101, Congress granted broad patent eligibility to inventions or discoveries including "processes, machines, manufactures, and compositions of matter." *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010). These broad categories notwithstanding, the Supreme Court has carved out three exceptions to patent eligibility under § 101: "'laws of nature, physical phenomena, and abstract ideas.'" *Id*. (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). The last exception, abstract ideas, is relevant here.

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (asking whether the invention "claim[s] the 'buildin[g] block[s]' of human ingenuity" or "integrate[s] the building blocks into something more"). In *Alice*, the Supreme Court set forth a two-step framework for determining patent eligibility under § 101. A claim is ineligible under section 101 if "(1) it is 'directed to' a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and as an ordered combination,' do not add enough to 'transform the nature of the claim' into a patent-eligible application.'" *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217 (internal quotations omitted)).

Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Under step one, "courts may ask whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Nagravision SA v. NFL Enterprises, LLC*, No. CV 17-03919 AB (SKx), 2018 WL 1807285, at *3 (C.D. Cal. Mar. 9, 2018) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). In the software context, this step often "turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (quotation marks omitted).

If the claims fail step one, under step two, "the court must search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Timeplay, Inc. v. Audience Entm't LLC*, No. CV 15-05202 SJO (JCx), 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Aatrix Software*, 882 F.3d at 1128.

## III.   DISCUSSION

### A. Invalidity under § 101

#### i.   Representativeness

For the reasons explained below, the Court finds claim 19 of the '573 Patent, claim 1 of the '930 Patent, claim 16 of the '562 Patent, and claim 1 of the '656 Patent representative. Defendant explains that the Court's Order in *Ceiva Logic* found claim 19 of the '573 patent, claim 1 of the '930 patent, and claim 1 of the '562 patent representative. Mot. at 9. Plaintiff agrees that claim 19 of the '573 Patent is representative. Opp. at 20. Plaintiff contends that claim 3 of the '930 Patent, claim 16 of the '562 Patent, and claim 5 of the '656 Patent are representative. *Id.*

Claim 3 of the '930 Patent depends from claim 2 which depends from claim 1. Claim 3 adds the additional limitation, "wherein said authentication function is further configured to provide device authentication to said first remote server system

prior to obtaining image data from said remote server system." '930 Patent, Claim 3. This dependent limitation specifies a means of authentication (providing device information) and a type of data (image data). It does not introduce limitations changing the character of claim 1. Accordingly, the Court finds claim 1 representative for purposes of the *Alice* analysis. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary" where claim 1 was "representative" because "all the claims are substantially similar and linked to the same abstract idea.")

Claim 16 of the '562 Patent depends from claim 1 and adds the additional limitation, "wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system." '562 Patent, Claim 16. Thus, the Court finds claim 16, including all of the limitations of independent claim 1 from which it depends, representative. Claim 1, alone, is not necessarily representative as it does not include the idea of "authentication."

Claim 5 of the '656 Patent depends from claim 1 and adds the additional limitation, "wherein said memory further comprises preference information for controlling the display of said image data by said display device." '656 Patent, Claim 1. This dependent limitation specifies a type of user input (preference information). It does not introduce limitations changing the character of claim 1. Accordingly, the Court finds claim 1 representative for purposes of the *Alice* analysis. *See Content Extraction & Transmission LLC*, 776 F.3d at 1348.

ii. *Alice* Step One

1. Representativeness

As a threshold matter, the fact that the representative claims are directed to display devices, apparatuses, or systems, does not end the eligibility inquiry. Claims reciting physical components are invalid if they "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (finding claim reciting "a telephone unit" invalid because the telephone unit merely provided a generic environment for "classifying and storing digital images in an organized manner.")

Here, the representative claims follow a similar pattern. For instance, claim 19 of the '573 Patent recites a "digital picture frame . . . configured to operate according to preferences defined by a user," "a user interface . . . configured to obtain

image data and said preferences from said user and provide said image data and said preferences to said at least one server system," and a "server system . . . configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system." '573 Patent, Claim 19. As in *TLI*, the physical components – a digital picture frame, a user interface, and a server system – are generic environments. The eligibility analysis focuses on the functions these generic environments are configured to carry out. To the extent these functions are abstract ideas, recitation of the generic physical components cannot save the claims. *See* 823 F.3d at 611.

The '930, '562, and '656 Patents disclose similarly generic environments such as a display apparatus, a processor, a communications interface, and a memory. Thus, as with the '573 Patent, discussed above, the eligibility analysis focuses on the functions these generic environments are configured to carry out. Recitation of the physical components does not end the inquiry.

### 2.  The Character of the Claims

Next, the Court assesses the character of the claims. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The Court must determine whether claim 1 is "directed to an improvement" in the relevant technical field or "directed to an abstract idea." 823 F.3d at 612 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Claimed processes that can be "performed in the human mind, or by a human using a pen and paper" are directed to abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

In *Ceiva Logic*, the Court described the '573, '930, and '562 Patents as directed to "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input," within the context of a digital picture frame. *Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-09129-AB-MAA, Docket No. 48 at 9. For the following reasons that description remains applicable and also applies to the '656 Patent.

Claim 19 of the '573 Patent recites generic physical components, as described above. *See* § III.A.i, *supra*. The claimed digital frame is "configured to operate according to preferences defined by a user." '573 Patent, Claim 1. A user interface

is "configured to obtain image data and said preferences from said user and provide said image data and said preferences to" a server. *Id.* The server is "configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from" the server. *Id.* The functions are consistent with the Court's prior description.

Claim 1 of the '562 Patent also recites generic physical components including a display apparatus, a display screen, a processor, a controller, a communications interface, a memory, and software. '562 Patent, Claim 1. The software initiates a communications session with the server over a network, sends and receives information sufficient to identify the display apparatus, updates the display apparatus with the necessary software, receives updated content from the display apparatus, and then uses the display apparatus to display the updated content. *Id.* The claimed software functionalities are consistent with the Court's prior description.

Claim 1 of the '930 Patent recites similar generic physical components. '930 Patent, Claim 1. The claimed software includes an image display function configured to obtain image data, a remote connection function, configured to facilitate communication over a network such that a remote server may request and receive updated image data, an authentication function configured to authenticate the server before accepting updated image data, and a software update function configured to update software on the display device. *Id.* The claimed software functionalities are consistent with the Court's prior description, but also include authentication in addition to remote access.

Claim 1 of the '656 Patent recites similar generic physical components. '656 Patent, Claim 1. These components initiate a communications session which involves sending a request for image data to a server, receiving image data and authentication information from the server, storing the received image data, displaying the received image data, and updating software to perform these functions.

These functions are abstract. Claims directed to sending and receiving data are not patent eligible. *See Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (finding claims directed to "the conveyance and manipulation of information using wireless technology" via tangible yet conventional components invalid); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (finding claims directed to "capturing and transmitting data

from one device to another" abstract at Step One). Claims directed to remote authentication and remote software updates are likewise not eligible. *See MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at \*5 (Fed. Cir. Aug. 19, 2021) (finding claim directed to "updating toolbar software over a network without user intervention" invalid); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021) (finding claims directed to "use of an algorithm-generated content-based identifier to perform the claimed data-management function" invalid); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (finding authentication function added to claim abstract); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) (finding claim directed to "communicating information using a personalized marking" abstract).

### 3.   The Claims Are Not Directed to an Improvement

Third, the Court finds the claims are not directed to an improvement in computer and networking technology. Plaintiff argues the representative claims "improve the performance and functionality of a digital display device" by "enabling it to 'dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user.'" Opp. at 29–30 (quoting '573 Patent at 1:50–53). Plaintiff argues the claimed invention solves a problem in the prior art because it allows users to remotely update or modify image data for display. *Id.* Though the Court agrees the '573 Patent specification discusses the remote access problem in the prior art, the eligibility inquiry focuses on the claims of the asserted patents.

Here, the claims of the asserted patents are aspirational. They are directed to a desired result but, beyond identification of generic computer components, do not claim any specific way to achieve that result. Plaintiff argues that specific combinations of elements come together to provide a technological improvement but the claims do not support this argument. *See* Opp. at 29, n.14. For instance, the '573 Patent discloses "[a] user interface . . . configured to obtain image data and said preferences from said user and provide said image data and said preferences to" a server. '573 Patent, Claim 19. A generic user interface performing a generic function is not an improvement. *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269-71 (Fed. Cir. 2016). Neither is communication between the user interface and server or other components. *See, e.g.*, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). Moreover, the claim discloses only that the user interface is "configured" to achieve a result. This type of results-based claiming does not constitute an improvement. *See Affinity Labs*, 838

F.3d 1253, 1258–59; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (Claims must "sufficiently describe how to achieve [the solution] in a non-abstract way.").

Similarly, Plaintiff points to both the "unique memory ID" and the "version identifier" of claim 1 of the '562 Patent but the claim does not explain how to generate or use these identifiers, along with the other claimed components, to perform any sort of remote authentication or software update. *See Secured Mail Solutions LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (finding limitation abstract where "[t]here is no description of how the unique identifier is generated . . . . Rather, the claim language cited by [plaintiff] merely recites that the unique identifier is generated by the sender"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682, at *3 (Fed. Cir. June 19, 2020) (affirming claimed advance over prior art was a "functional abstraction" where the specification treated an element of the claimed invention as "a black box").[2]

To compare, claims found to provide improvements include a greater level of specificity regarding both the claimed hardware and software components, and how the claimed components or steps come together to provide a solution. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022), *cert. denied*, 2023 WL 3696138 (U.S. May 30, 2023) (finding that a claim directed to "specific, hardware-based RFID serial number data structure designed to enable technological improvements" was non-abstract); *see also Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (finding claims purporting to solve computer network challenge to be valid where "[t]he claims detail how [the solution] is achieved in several steps").

In its Step One discussion (Opp. at 25–30), Plaintiff does not identify any specific evidence it contends raises a triable issue of fact. Accordingly, the Court makes an eligibility determination as a matter of law. For the foregoing reasons, the representative claims are directed to the abstract idea of automatically accessing a remote data repository to obtain updated content without the use of a computer and

---

[2] Plaintiffs also argues the "self-configuring plug and play set up" constitutes the improvement. The Court finds this description amounts to a desired result but, again, the claim elements do not explain how to achieve this result with specificity. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) ("Essentially, the claims are directed to certain functionality—here, the ability to generate menus with certain features. Alternatively, the claims are not directed to a specific improvement in the way computers operate.")

without any further user input, and performing related functions including remote authentication and remote software updates.

### iii. *Alice* Step Two

Where a claim is directed to an abstract idea, the claim must include additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (citations omitted). In evaluating Step Two, the Court considers whether the claim limitations, either individually or as an ordered combination, teach implementing the abstract idea using something more than well-understood, routine, or conventional techniques. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

As a threshold matter, the Court did not already find that a specific configuration of components is the inventive concept here. *See* Opp. at 32. Rather, based on the operative pleadings in *Ceiva Logic*, the Court declined to find the patents invalid due to a ***potential*** fact issue as to whether the specific of configuration of components provided an inventive concept. The pleadings in *Ceiva Logic* are not controlling here, both because that was a different case and because this is a summary judgment ruling and must consider facts, as opposed to allegations.

Next, Plaintiff's opposition focuses entirely on the *Ceiva Logic* issue – whether the claimed configuration of elements constitutes an inventive concept. Plaintiff does not rebut Defendant's arguments regarding the genericness of the claimed physical components. Accordingly, the Court finds the representative claims directed to generic components performing the claimed functions. The only remaining question is whether the sum of those generic components amounts to something more than the abstract idea discussed above. For the reasons stated below, the Court finds it does not.

In support of its position, Plaintiff relies on Dr. Easttom's testimony (1) discussing industry praise of a commercial embodiment of the Asserted Patents and (2) interpreting the claim language of the Asserted Patents.

### 1. The Industry Praise Does Not Create a Fact Issue

Plaintiff begins by discussing several media statements regarding the commercial embodiment of the claimed invention. *See* Opp. at 19 (citing ECF Nos. 99-3–99-15). Generally, the commercial embodiment of an asserted patent is not the same as the patent itself. Thus, absent some argument tying the claim language to the commercial embodiment, this type of evidence is not probative. Here, Plaintiff insists its expert witness, Dr. Easttom, relies upon sufficient evidence tying the asserted claims to the commercial embodiment. *See, e.g.*, Easttom Rebuttal Report, ECF No. 99-16 ("Easttom Report") ¶¶ 465, 479. The Court need not assess this argument, however, because the industry praise evidence suffers from other defects.

The industry praise evidence includes broad accolades regarding the idea of enabling remote upload of new images to a digital frame. *See* Opp. at 19–20; *see also* Easttom Report ¶¶ 479–515. However, again, Plaintiff does not explain how these statements relate to any particular claim element or ordered combination of elements. Rather, following a general discussion of the industry praise, Dr. Easttom reproduces, verbatim, claim language he contends the praise addresses. *Id.* ¶ 514. He then concludes all of these features "impressed the industry." *Id.* ¶ 515. He offers no opinions regarding how any particular piece of industry praise relates to any particular claim element. Absent this kind of discussion focused on specific claim elements, the industry praise evidence is insufficient to create a fact issue as to unconventionality under step two. Moreover, a review of the cited evidence shows it broadly praises the idea of remote upload of new images to a digital frame. The abstract idea cannot provide the inventive concept. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

2.  Dr. Easttom's Other Opinions Do Not Create a Fact Issue

Most of Dr. Easttom's opinions address all of the asserted claims and elements together, with reference to high level concepts as opposed to specific claim language. These opinions do not create a fact issue. Dr. Easttom opines that, at the time of the invention, "it was not routine, conventional, or well-known to have a digital frame device that could be remotely controlled and updated." Easttom Report ¶ 286. However, the above statement confirms that the abstract idea – remotely controlling and updating a digital frame – was unconventional, not that any particular claim element was unconventional. This is insufficient to survive Alice Step Two. *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331–32 (Fed. Cir. 2017) ("Without an explanation of the mechanism for how the result is accomplished, this purported feature of the invention cannot supply an inventive concept.") (internal quotations and citations omitted); *see also BSG Tech LLC*, 899 F.3d at 1290 (the

ineligible concept "cannot supply the inventive concept"); *see also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023).

The portions of Dr. Easttom's report identifying purportedly unconventional features with greater specificity still fail to establish unconventionality. Dr. Easttom identifies the allegedly unconventional features as "easy setup/configuration," "separable user interface to provide photos so non-tech savvy users do not have to figure out how to provide photos," and "automatic image retrieval." Easttom Report ¶ 514. At a high level, none of these features transform the claims.

Easy setup / configuration, itself, is not an inventive concept present in the claim language. Rather, it is a desired benefit of the claimed systems and methods. *See, e.g.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022-1932, 2024 WL 371959, at *6 (Fed. Cir. Feb. 1, 2024) (finding claims ineligible where they "merely describe[d] a desired function or outcome without providing details of the claimed [] process). In order to prevail under Step Two, the patentee must identify inventive concepts in the claim itself. *See Mayo Collaborative Servs.*, 566 U.S. 66, 72–73 (2012). A "user interface," without more, is a conventional computer component. *See W. View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 927 (Fed. Cir. 2017). The idea of having it separate from the frame itself does not render the entire claim inventive. Automatic image retrieval is also a result or desired outcome. *See Eloas Techs. Inc.*, 2024 WL 371959 at *6.

Plaintiff's emphasis on the combination of these three features does not change the analysis. First, the step two analysis typically considers whether a particular, *ordered* combination transforms the claim. *See In re TLI Commc'ns*, 823 F.3d at 611. Here, there is no explanation as to why the specific order is important in a way that renders the claim unconventional. For instance, even in the context of a traditional picture frame displaying physical photos, a user would first need to select a frame, decide which photo(s) to display in the frame, put the photo(s) into the frame, and update the displayed photo(s) in the future by adding new photos. Here, uploading photos using a user interface, first, and then allowing automatic display and updates in the future does not present any unconventionality as to the order. It simply automates a known process.

Further, even if it were appropriate to consider the combination, absent any specific focus on the order, the identified combination is not patent eligible. The process of adding photos to a picture frame and changing the display photo can be accomplished manually. Many people stack photos behind the glass in traditional photo frames, memorializing updates through the years and allowing for easy

updates to the display photo or photos. Here, the asserted claims disclose this same process only digitally and partially automatically.[3] The components that allow a user to perform this known method in a digital and automatic way, including the digital picture frame, user interface, server, and various identifiers, are conventional. *See, e.g.*, '573 Patent at 1:46-2:14 (describing digital frames in the prior art). Thus, what is claimed here, is a non-specific way to perform a known process digitally and automatically. Such claiming does not confer subject matter eligibility. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *3 (Fed. Cir. Jan. 9, 2024) (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)) ("[I]improving a user's experience while using a computer application is not, without more, sufficient to render the claims" eligible.)

At a claim-specific level, Dr. Easttom's opinions also fail to provide sufficient evidence of unconventionality.

### a. The '573 Patent

Dr. Easttom, opines that it "was unconventional and novel" for "a picture frame to be networked" and "configured to automatically receive and display images from a remote user." Easttom Rebuttal Report ¶ 305. This testimony does not create a fact issue at Step Two. The ineligible concept cannot supply the inventive concept. *See BSG Tech*, 899 F.3d at 1290. Here, Dr. Easttom does not analyze specific claim limitations. Rather, he opines that the idea of a networked picture frame that can be set up to automatically display photos uploaded remotely is novel and unconventional. This may be true but it does not establish subject matter eligibility because it is directed to a result or desired outcome instead of a specific way to accomplish that outcome.

Dr. Easttom then goes on to identify several claim elements he contends are unconventional. These include "a remote user interface . . . physically remote from the device," "coupling the server system with the frame via a communications network" and "authenticating the server before storing image data." Easttom Report ¶ 312. Per Dr. Easttom, these features offer certain advantages including allowing a non-tech savvy user to use the frame device, allowing automatic remote photo uploads and software updates, and ensuring data security.

These three features do not amount to inventive concepts. First, each relies only on generic computer components. User interfaces and communications

---

3      The user must still select and add photos to display using the user interface.

networks are generic computer components. Leveraging these generic components to accomplish a particular goal does not transform a claim in a way that makes it subject matter eligible. Authentication is also an idea, not an inventive concept. Claim 19, which the parties agree is representative of the claims of the '573 Patent is not directed to authentication in any event.

Dr. Easttom also details problems in the prior art regarding data pull and push. Easttom Report ¶¶ 292 and 293. While this testimony potentially highlights a need for systems and methods that can overcome these problems, the claims themselves are not directed to a specific way to solve the problems.

### b.  The '930 Patent

Dr. Easttom criticizes Amazon's expert witness, Dr. Johnson, for failing to provide evidence that "conventional software that was usable in a digital display device would comprise the combined ability to display images from files in memory on a display, automatically initiate a remote connection to a server system across a network to request image data and software updates, create a secure communication by authenticating the server system before accepting the data, and then download image data and software and update its software in memory." Easttom Report ¶ 304. Again, however, these features rely on "conventional software" per Dr. Easttom's own admission. Moreover, in identifying purportedly inventive features, Dr. Easttom again discusses only desired capabilities of the device, which are not eligible subject matter.

Dr. Easttom discusses these desired results at length, again repeatedly using the terminology, "the ability to . . . ." *See e.g.*, Easttom Report ¶ 309; *see also* ¶ 141 (characterizing claim language using largely functional language). This type of disclosure does not provide sufficient evidence that the discussed features are patentable. Dr. Easttom also largely repeats or paraphrases the claim language in totality, as opposed to focusing on specific, inventive features, and then concludes that the recited limitations or combination of limitations is unconventional. This is not sufficient.

### c.  The '562 Patent

Plaintiff points to Dr. Easttom's report at ¶¶ 149, 307, and 310 in support of its position that claimed features of the '562 Patent are unconventional. This testimony suffers from the same defects discussed above with the respect to both the

'573 and '930 Patents. Thus, for the reasons stated above, the Court does not find this evidence sufficient to raise a triable issue of fact as to unconventionality.

### d. The '656 Patent

Dr. Easttom criticizes Dr. Johnson's opinions and characterizes the claim limitations consistent with his testimony, discussed above, concerning the other asserted patents. Dr. Easttom also specifically opines that "the user interface itself is a customized webpage programmed with the claimed functionality, namely 'for managing behavior characteristics of said display device.'" Easttom Report ¶ 308. The Court appreciates that the user interface, as characterized by Dr. Easttom, is not necessarily the same as a 1999 webpage. Nevertheless, Plaintiff does not contend that user interfaces themselves were unconventional at the time of the '656 Patent. In view of the claims, it is the programming that, per Plaintiff, renders the user interface unconventional. However, Dr. Easttom and the claim itself describe this programming in only functional language – i.e., the user interface is "for managing behavior characteristics of said display device." '656 Patent, Claim 1. The claim includes no further detail as to how the user interface accomplishes this purpose. Thus, consistent with the above discussion, the claim does not disclose eligible subject matter. Dr. Easttom's testimony at ¶¶ 145 and 311 parallels other testimony discuss above and fails to create a fact issue as to unconventionality for the same reasons discussed above.

* * *

For the foregoing reasons, the Court does not find any fact issue as to whether a specific claim element or combination of elements was well-understood, routine, or conventional. The representative claims do not include any inventive concepts under Step Two.

In sum, the Court finds the Asserted Patents invalid under 35 U.S.C. § 101. No disputes of material fact prevent this finding. Within seven days of the issuance of this Order, Defendant shall submit a proposed judgment consistent with this Order, stating whether Plaintiff has agreed to its form. If Plaintiff does not agree to the form of the proposed judgment, it shall file any objections within seven days of its lodgment and in a manner consistent with the Local Rules.

### B. Non-infringement

Because the Court finds no issue of material fact exists as to whether the

Asserted Patents are invalid under § 101, the Court need not address infringement.

## IV.    Remaining Motions

### A. Defendant's Motion to Strike New Infringement Theories and Undisclosed Expert Opinions and Testimony (Dkt. No. 95)

Defendant's motion to strike pertains only to Plaintiff's infringement theories. (*See generally*, Dkt. No. 95.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

### B. Defendant's Motion to Exclude Opinions and Testimony of Mr. Malackowski (Dkt. No. 71)

Defendant's motion to exclude pertains to Mr. Malackowski's opinions on damages. (*See generally*, Dkt. No. 71.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

### C. Defendant's Motion to Exclude Opinions and Testimony of Dr. Johnson (Dkt. No. 76)

Defendant's motion to strike pertains only to Dr. Johnson's infringement opinions on infringement. (*See generally*, Dkt. No. 76.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

## V.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- **GRANTS** Defendant's Motion for Summary Judgment (Dkt. No. 78);
- **DENIES-AS-MOOT** Defendant's Motion to Strike (Dkt. No. 95);
- **DENIES-AS-MOOT** Defendant's Motion to Exclude Opinions and Testimony of Mr. Malackowski (Dkt. No. 71);
- **DENIES-AS-MOOT** Defendant's Motion to Exclude Opinions and Testimony of Dr. Johnson (Dkt. No. 76.)

**IT IS SO ORDERED**.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEIVA OPCO, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation,<br><br>Defendant. | Civil Action No.: 2:22-cv-02709-AB-MAA<br><br>**FINAL JUDGMENT** |

APPX22

The Court granted Defendant Amazon.com, Inc.'s Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 on March 4, 2024. (Dkt. No. 142.) Accordingly, the Court **ORDERS** and **ENTERS FINAL JUDGMENT** as follows:

1. Judgment is entered in favor of Defendant Amazon.com, Inc. and against Plaintiff Ceiva Opco, LLC on the four claims asserted in the Amended Complaint for patent infringement, as follows.

2. With respect to the first cause of action in the Amended Complaint, Claims 2, 6, and 19 of United States Patent No. 6,442,573 are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

3. With respect to the second cause of action in the Amended Complaint, Claims 1-8 and 15 of United States Patent No. 9,203,930 are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

4. With respect to the third cause of action in the Amended Complaint, Claims 1-2 and 5-8 of United States Patent No. 9,124,656 are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

5. With respect to the fourth cause of action in the Amended Complaint, Claims 1, 4, 11, 16-17, and 20 of United States Patent No. 9,654,562 are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

This is a final judgment, and all other relief requested by Amazon is denied; provided, however, this is without prejudice to any application or motion for costs or attorney's fees.

**IT IS SO ORDERED.**

Dated: March 20, 2024

_____
Honorable André Birotte Jr.
United States District Judge

APPX23



US006442573B1

(12) **United States Patent**
Schiller et al.

(10) **Patent No.:** **US 6,442,573 B1**
(45) **Date of Patent:** **Aug. 27, 2002**

(54) **METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY**

(75) Inventors: **Dean Schiller**, Glendale; **Paul Yanover**, Los Angeles, both of CA (US)

(73) Assignee: **Ceiva Logic, Inc.**, Burbank, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/458,849**

(22) Filed: **Dec. 10, 1999**

(51) Int. Cl.[7] ............................................. **G06F 15/00**

(52) U.S. Cl. .................... **707/500.1**; 709/218; 358/403; 345/719

(58) Field of Search .............................. 345/302, 327, 345/719; 709/218, 215; 713/2; 707/500.1; 358/403

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,742,345 | A | * | 5/1988 | Santo et al. ................. | 345/107 |
| 5,394,166 | A | | 2/1995 | Shimada ....................... | 345/98 |
| 5,448,372 | A | * | 9/1995 | Axman et al. ............... | 358/403 |
| 5,561,531 | A | * | 10/1996 | Funazaki .................... | 358/403 |
| 5,612,741 | A | | 3/1997 | Loban et al. ............... | 248/383 |
| 5,680,535 | A | * | 10/1997 | Harbin et al. ............... | 345/473 |
| 5,706,457 | A | * | 1/1998 | Dwyer et al. ............... | 345/835 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| WO | 92/05657 | * | 2/1992 | ............ | H04N/1/21 |
| WO | 95/30300 | * | 11/1995 | .......... | H04M/11/00 |
| WO | 95/31872 | * | 11/1995 | ............ | H04N/7/10 |
| WO | 96/29639 | * | 9/1996 | ............. | G06F/1/00 |
| WO | 97/47106 | * | 12/1997 | ............. | H04L/9/00 |
| WO | 98/04088 | * | 1/1998 | | |
| WO | 98/26548 | * | 6/1998 | .......... | H04L/29/06 |
| WO | 99/04342 | * | 1/1999 | .......... | G06F/13/00 |
| WO | 99/44339 | * | 9/1999 | .......... | H04L/12/28 |
| WO | 99/54663 | * | 10/1999 | .......... | G06F/12/00 |
| WO | 99/56447 | * | 11/1999 | ............ | H04M/1/00 |
| WO | 00/29960 | * | 5/2000 | .......... | G06F/13/00 |

OTHER PUBLICATIONS

Hagawara–Sys–Com, "LUKIS (TM) JPEG Image Viewer (product information)," web page downloaded from www.h-scus.com/prod03 No. n/a, pp. 1–2, Apr. 2001.*

(List continued on next page.)

*Primary Examiner*—Heather R. Herndon
*Assistant Examiner*—Jeffrey A. Rossi
(74) *Attorney, Agent, or Firm*—The Hecker Law Group

(57) **ABSTRACT**

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. Each frame device has a display region (e.g. an LCD) surrounded with a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a centralized repository and then display that data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process. In one or more embodiments of the invention, the user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established and/or managed via a picture box. The picture box resides on a server computer and may be obtained by the user upon demand.

**17 Claims, 12 Drawing Sheets**



APPX47

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,708,826 A | | 1/1998 | Ikeda et al. ............... | 707/501.1 |
| 5,740,549 A | * | 4/1998 | Reilly et al. ................... | 705/14 |
| 5,760,916 A | * | 6/1998 | Dellert et al. ............... | 358/403 |
| 5,838,906 A | | 11/1998 | Doyle et al. ................ | 709/202 |
| 5,862,297 A | * | 1/1999 | Timmermans ............. | 358/403 |
| 5,864,387 A | * | 1/1999 | Reed et al. ................... | 355/40 |
| 5,870,172 A | | 2/1999 | Blume ........................ | 708/105 |
| 5,898,600 A | | 4/1999 | Isashi ........................ | 708/105 |
| 5,905,492 A | | 5/1999 | Straub et al. ............... | 345/744 |
| 5,913,088 A | | 6/1999 | Moghadam et al. ........ | 396/311 |
| 5,923,736 A | | 7/1999 | Shachar ................... | 379/93.17 |
| 5,923,738 A | | 7/1999 | Cardillo, IV et al. .... | 379/93.25 |
| 5,930,501 A | * | 7/1999 | Neil ........................... | 345/619 |
| 6,005,690 A | * | 12/1999 | Suzuki et al. ............... | 358/403 |
| 6,025,827 A | * | 2/2000 | Bullock et al. .......... | 707/500.1 |
| 6,037,989 A | * | 3/2000 | Kim ........................... | 348/441 |
| 6,058,428 A | * | 5/2000 | Wang et al. ................ | 709/218 |
| 6,067,566 A | * | 5/2000 | Moline ....................... | 709/218 |
| 6,111,586 A | * | 8/2000 | Ikeda et al. ................ | 345/619 |
| 6,167,469 A | * | 12/2000 | Safai et al. ................... | 710/62 |
| 6,199,106 B1 | * | 3/2001 | Shaw et al. ................ | 709/217 |

## OTHER PUBLICATIONS

Kodak, Inc. Smart Picture Frame . . . for the Story Box (TM) Network (product description), downloaded from www.kodak.com/US/en/digital/assessories/smartFrame/ on Apr. 2001 (7 p. reprint).*

Heather Newman Free Press Staff, W., "Nifty Ways You Can Soup up Your Machine," Detroit Free Press No.—, pp. 3E, Aug. 1999.*

Anonymous, "Visions of the Future," Blaricum, Neather-lands: V+K Publishing No. ISBN 90 6611 591 2, pp. 12–13, Dec. 1996 (reprinted 1998).*

Takashi, D. "Doing Fieldwork In the High Tech Jungle", The Wall Street Journal, p. B1 & B22, Oct. 27, 1998.*

Kirschner, S. K., "Ideas that stick," Popular Science, vol. 254 No. 2, pp. 27, Feb. 1999.*

Okamoto et al., "Reproducing Device", translation of WO 99/54663, as provided by Ralph McElroy Translation Company (Washington DC), pp. 1–15+Figures.*

* cited by examiner



FIGURE 1A
(Prior Art)



**FIGURE 1B**
**(Prior Art)**

APPX50



**FIGURE 1C**
**(Prior Art)**



**FIGURE 2A**



**FIGURE 2B**



**FIGURE 3**



**FIGURE 4**



**PICTURE BOX**

**CONTENT SUBSCRIPTIONS**

| WEEKLY SUBSCRIPTION | DAILY SUBSCRIPTION | MONTHLY SUBSCRIPTION |
| 503 | 505 | 507 |

**PICTURE BOX CONTENTS**

| STATUS | IMAGE NAME | DATE | SENDER |
|---|---|---|---|
| NEW IMAGE | IMAGE-1.JPG | 7/24/99 | USER1 |
| DISPLAY IMAGE | IMAGE-2.JPG | 7/24/99 | USER2 |
| DISPLAY IMAGE | IMAGE-3.JPG | 7/20/99 | USER3 |
| DO NOT DELETE | IMAGE-4.JPG | 4/15/99 | USER4 |
| DO NOT DELETE | IMAGE-5.JPG | 3/12/99 | USER5 |

512   513   514

523   511   500   505

**FIGURE 5**



*600*
OBTAIN IMAGE DATA

*603*
PREPARE IMAGE DATA
FOR SUBMISSION TO A
FRAME DEVICE

*605*
TRANSMIT IMAGE DATA
TO ELECTRONIC MAIL
ADDRESS ASSOCIATED
WITH THE FRAME
DEVICE

*607*
DOES IMAGE DATA
SATISFY FILTER
CRITERIA
?

*606*
DISCARD IMAGE DATA
OR RETURN TO SENDER

*609*
LOAD IMAGE DATA INTO
DATA REPOSITORY

*611*
OBTAIN IMAGE DATA
FROM DATA
REPOSITORY

*613*
DISPLAY IMAGE DATA

**FIGURE 6**



*FIGURE 7*

APPX57



**FIGURE 8**



**FIGURE 9**



**FIGURE 10**

# METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY

## FIELD OF THE INVENTION

This invention relates to the field of computer software. More specifically, the invention relates to a method and apparatus for distributing picture mail to a frame device community.

Portions of the disclosure of this patent document contain material that is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office file or records, but otherwise reserves all copyrights whatsoever.

## BACKGROUND

### Traditional Picture Frames

Picture frames provide a visually pleasing way to present photographs for display. People typically prefer to use picture frames, rather than digital display mechanisms (e.g. computer monitors), because of the aesthetic qualities associated with such frames. However, several problems and disadvantages result from the use of traditional picture frames.

For example, a problem that may be encountered by picture frame users is that changing the picture in the frame requires a series of manual steps. For example, a person who wishes to change the picture must manually remove the picture and replace it with a new one. Consequently, changing the picture requires that a person be physically located at the same place where the picture frame resides.

An additional problem with picture frames is that the frame does not have the ability to adjust the dimensions and/or size of the picture to fit within the display area. Pictures placed into the picture frame must correspond to the dimensions of the frame's display area. One prior art attempt to overcome these limitations is the use of various type of digital display device. The following section describes a prior art digital display device and discusses the inherent limitations of the device.

### Digital Display Device

FIG. 1a illustrates a prior art device (e.g. the Sony PHD A55 CyberFrame™) capable of displaying digital images. However, there are several problems associated with this device. For example, the device lacks the ability to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user. The device shown in FIG. 1a consists of a display 100. Display 100 is an active matrix LCD screen configured to display digital video data and still image data. The data shown on display 100 is obtained from storage media 103. Storage media 103 is a memory medium capable of storing video and/or image data (e.g. a Memory Stick™).

The device contains software and/or hardware configured to playback MPEG or JPEG data files obtained from storage media 103. The device supports playback in a variety of different resolutions and can, for example, display JPEG data in UXGA (1600×1200), SXGA (1280×960), XGA (1024×768), or VGA (640×480). MPEG data files are shown on display 100 using a presentation mode that supports a resolution of 320×240 or a video mode that uses a resolution of 160×112.

The device also has built-in speaker(s) 105 and volume control 107. Speakers 105 provide a way to play back sound data introduced to the device via storage media 103. Volume control 107 allows the user of the device to adjust the decibel level. Control mechanism 109 contains the software and/or hardware utilized to control how data is displayed. For example, control mechanism 109 has a slide show mode that allows the user to display several images at varying intervals. Control mechanism 109 also provides the system with a way to delete unwanted images or keep certain images from being deleted. Control mechanism 109 is configured to provide other functionality, such as a sleep timer, brightness control, an index mode, an automatic angle detector, and a touchless sensor.

A problem with prior art mechanisms, such as the one illustrated in FIG. 1a, is that the user must physically provide storage media 103 to the device. Thus, a person who does not have physical access to the device cannot introduce new images into the device. Moreover, the device cannot be controlled from a remote location. For example, making changes to a web site cannot control the behavior of the control mechanism.

A further problem is that the functions offered by control mechanism 109 cannot be remotely updated, modified, or otherwise changed. For example, a new feature, such as the ability to obtain new images from a network, cannot be added by transmitting a software update to the device from a remote source. The device illustrated in FIG. 1a is isolated from other devices and therefore does not have the ability to communicate with such devices over a telecommunication medium.

Another limitation inherent in the design of the prior art device is that the device cannot automatically receive different types of image data. For example, the device cannot obtain different types of image data via an image delivery service. The user of the device illustrated in FIG. 1a cannot elect to periodically receive information relating to a particular topic such as the weather report. Computer networks are a prior art mechanism used to propagate data to devices connected to the network. The following section describes several techniques used to send and receive data across such computer networks and explains the limitations and disadvantages associated with such techniques.

### Computer Networks

A network is an amalgamation of interconnected computers. Devices properly connected to the network may utilize the network to communicate with other devices coupled to the network. A server computer, for example, may use a network to transmit data to a client computer for display. There are several different techniques for propagating data to devices connected to the network. For example, electronic mail, client pull, and server push mechanisms all are examples of techniques that provide a way to transmit data to a client computer. However, these techniques lack a mechanism for establishing and then controlling the behavior of a device from a remote location. For example, these techniques cannot dynamically obtain image data from a networked data source and then display that data according to the behavior criteria established by an authorized user.

A. Electronic Mail Systems:

The following section discusses electronic mail systems and points out the limitations associated with using such systems to distribute image data. An electronic mail system is an example of a prior art system used to distribute data to one or more recipients. The electronic mail system, for

example, provides users with a way to transmit data from one computer to another computer.

An example of an electronic mail system is shown in FIG. 1b. The system consists of one or more client computers 125–128 each having a client software program 129–132 configured to send and receive data, a network 133 configured to relay the data to one or more recipients, and a mail server 120 having server software 121 configured to store the data until it is retrieved by the designated recipient(s).

A user residing at client computer 125, for example, may use the system shown in FIG. 1b to transmit an image file to another user residing at a different computer (e.g. client, computer. 127). To send the file the user typically executes the appropriate client software program (e.g. client software 129), determines the data to be sent, and directs the program to send the data to a recipient. Data that is sent is routed across network 133 to the appropriate mail server 120–123 associated with the recipient. Once mail server 120 receives the data, the server holds the data in the intended recipients account until requested by the recipient. For example, mail server 120 will store the data until the recipient residing at client computer, 127 executes a local version of client software program 129 and directs the program to obtain data from mail server 120.

A problem associated with using current electronic mail systems is that to receive and view images recipients must have physical access to a client computer containing a client software program configured to obtain mail data. For example, an electronic mail client (e.g. Microsoft Outlook Express) and/or a web browser (e.g. Microsoft Internet Explorer) must reside on client computer 127 in order for it to obtain data from server 120.

An additional problem with using current electronic mail systems is that in order to receive data the recipient must know how to navigate around the operating system and how to use the program utilized to obtain the data. For example, in some instances the recipient is required to manually configure the program utilized to obtain data. This requires that the recipient know the name and/or address of server 120 and be familiar with the settings required to login to server 120. Current electronic mail systems cannot, for example, automatically connect to an image source, obtain image data for display, and then automatically display the image data according to a set of predetermined preferences.

Instead, current systems require the recipient to manually perform a series of steps before the image data may be viewed. For example, receivers that use a Simple Mail Transfer Protocol (SMTP)/POP electronic mail system, are typically required to 1) open a client program configured to connect to the appropriate server, 2) direct the client to obtain the image data from the server, 3) select the electronic mail message containing the image data from a list of received messages, and 4) provide the image data to a client program configured to display the image data.

In some instances, however, the receiver cannot use the electronic mail client to view the image data, but instead must have an application specially configured to view the image data. If, for example, the receiver's electronic mail client cannot process images sent in the Tagged Image File Format (TIFF), the receiver must have an application capable of viewing TIFF files in order to view the image data transmitted by the sender. Thus, a problem with using current electronic mail clients to transmit image data is that such clients lack flexibility and require the user to manually open the electronic mail message to view the attached image data.

Another problem is that electronic mail client programs cannot obtain image data and then display a full sized view

of that data without requiring the user to manually intervene. Current electronic mail clients are not configured to periodically obtain and then automatically display images. Additionally, the receiver cannot control which images may be displayed and the frequency with which those images are displayed cannot be set based on the receiver's preferences. For example, mail clients lack the ability to automatically distribute data to a client computer according to a set of preferences determined by the user of the client computer. Furthermore, the receiver cannot set the behavior characteristics of the electronic mail client unless physically present at the client.

B. Client Pull:

The following section discusses the client pull technique and points out the limitations associated with using such systems to distribute image data. Client pull is an example of a technique used to download data from a server computer. When client pull is employed, data is requested by a client computer and then delivered by a server. For example, if web browser 131, executing at client computer 127, requests web page 151 stored on web server 150, it will cause web server 150 to execute web server software 152 which will in turn transmit web page 151 to client computer 127. The World Wide Web (WWW) is an example of a system that utilizes the client pull technique. The WWW is a segment of the Internet that utilizes an application layer protocol called the HyperText Transfer Protocol (HTTP) to disseminate and to obtain information from server computers (e.g. web server 150).

HTTP is a request/response protocol used with distributed, collaborative, hypermedia information systems. In operation, HTTP enables one computer to request data from another. For example, client 127 can use HTTP to communicate with web server 150 via network 133. In this scenario web server 150 acts as a data store for one or more web pages 151 and is capable of processing client 127's requests for such files. The web pages 151 stored on web server 150 may contain any type of data. For example, the files may contain data used to construct a form, image data, text data, or any other type of data. HTTP has communication methods that utilize the client pull technique to allow client 127 to request data from web server 150. Client 127 may use web browser 131 to initiate a request and thereby obtain web page 151.

Typically, web browser 131 requests at least one web page 151 from web server 150 and web server software 151 responds to the request by forwarding requested web page 151 to client 127. Once web page 151 arrives the connection is between client 127 and web server 150 is terminated. Client 127 uses web browser 131 to display requested web page 151. Web server 150 does not maintain any state information about the request once the connection is terminated. HTTP, which is frequently used to implement client pull, is, therefore, a stateless application protocol. That is, client 127 can send several requests to web server 150, but each individual request is treated independent of any other request. Web server 150 has no recollection of any previous request. Thus, for example, if a form is completed by the user and submitted to web server 150 for processing, the web server does not maintain a record of the data entered the form.

Once a file is sent from web server 150 to client 127 it becomes ready for display. Client 127's web browser 131 is typically used to format and display web page 151. Web browser 131 allows the user to request and view web page 131 (or any other web page) without having to learn a complicated command syntax. Examples of several widely

5

used web browsers include Netscape Navigator, Internet Explorer, and Opera. Some web browsers can display several different types of files. For example, web browser 131 may display files (e.g. web pages) written using the Hyper-Text Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF). It is also possible to display various other types of files using language such as Standard Generalized Markup Language (SGML) or extensible Markup Language (XML).

A problem with utilizing client pull to distribute data, is that information about what data is to be disseminated to the client computer must be contained in the initial request. For example, if amuser residing at client 127 wishes to request web page 131, the user may do so by entering a Uniform Resource Locator (URL) and then transmitting the URL to web server 150. The URL is used to identify the name and location of web page 131 (e.g. web page 131 resides on web server 150). When web server 150 receives the request it transmits requested web page 131 to client 127. Web server 150 is not configured, for example, to transmit data that web server 150 determines client 127 needs (e.g. onboard software updates).

Another problem associated with client pull is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server 150, for example, does not provide a way to ensure that data intended for display at a certain device is only sent to that device (e.g. a device with a unique serial number). An additional problem is that client 127 cannot be directed to request data without input or direction from a user residing at client 127. For example, a user residing at client 128 cannot control the behavior of client 127. Systems utilizing client pull do not have a mechanism for control the request patterns of multiple devices.

C. Server Push:

The following section discusses the server push techniques and points out the limitations associated with using such systems to distribute image data. Server push is a technique that provides a way to transmit a predetermined data set from a server computer to one or more client computers. Referring now to FIG. 1c, a system configured to perform one or more server push operations is shown. The system is generally composed of a server system 170, a network 173, and client computers 175–171. Each element of the system is configured to perform a task. Server system 170, for example, transmits data to any client computer 175–171 scheduled to receive data. Network 173 provides end-to-end connectivity for the system and thereby links server system 170 with client computers 175–171.

Each client computer 175–171 contains software configured to provide the user with an interface for operating the computer (e.g. an operating system). A web browser 180, residing at each client, provides users with a way to inform server 170 what type of data to send and how often data of that type should be sent. For example, if the user of client computer 175 wishes to have server 170 transmit stock market quotes (e.g. data 172) to client computer 175 on a daily basis, the user may direct server 170 to do'so by obtaining a web form 190 from server 170 that provides such a option, filling the form out, and submitting the form to server 170. When server 120 receives the data provided by the user, it schedules the stock market quotes for dissemination at the interval specified by the user.

Server 120 may also be configured to disseminate electronic mail messages to client computers 125–131 on a regular basis. For example, if the user of client computer

6

129, or any other person authorized to control the behavior of server 120, directs server 120 to transmit an electronic mail messages to client computer 129 once a week, server 120 will distribute an electronic mail message to client computer 129 at the interval specified by, the user.

Other types of data, such as document written using the HyperText Markup Language (HTML) may also be transmitted to client computers 175–171 for display. Such document may, for example, be embedded into the graphical user interface (e.g. the GCU desktop) or shown as screen savers. Examples, of such distribution systems include the active desktop included with Internet Explorer and the screen saver distribution scheme used by pointcast.

A problem with server push systems is that data is transmitted in a unidirectional manner. For example, data may be sent from server 170 to client computer 177 using server push techniques, but data cannot be transmitted from client computer 175 to client computer 177. Another problem associated with server push is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server 170, for example, does not contain a mechanism for ensuring that data is only sent to devices having a certain serial number.

None of the prior art devices and/or systems described provide a way to distribute image data to a customizable frame devices. The prior art lacks a mechanism for remotely customizing the behavior of each frame device and does not have a distribution scheme configured to distribute image data to each frame device.

## SUMMARY OF THE INVENTION

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display from a repository of that may be accessed via an interconnection fabric (e.g. a computer network). If a person (referred to as a user) wants to display an image on the frame device the person may do so by transmitting the image data to the repository.

The frame device is programmed to connect to the repository and obtain new images for display. Once the frame device is connected to the network it may also use the opportunity to update the device's onboard software. In one or more embodiments of the invention, the frame device is configured to automatically execute the steps typically required for it to connect to the repository. Thus, the frame device is self-aware and requires only a minimal amount of input from the user. Once the frame device is connected to a power source and a telephone line, for example, the device is configured to automatically access the data repository without any further user input. The software that provides the frame device with its operational logic may be automatically upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. Thus, if certain information necessary for normal day-to-day operation is lost (e.g. by a power outage), the frame device may recover without requiring input from the user.

The type of images and the frequency with which such images are displayed is configured remotely via a graphic user interface called a picture box. In one or more embodiments of the invention, the picture box is accessible via a web browser. The picture box provides a way to customize the behavior characteristics of the frame device to conform

7

8

to the wishes of the user. Each frame device has a display region (e.g. an LCD) surrounded by a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. The border region may be, for example, an actual picture frame with a paper matte board that surrounds a thin LCD display region. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a data repository and to then display that data according to criteria established by an authorized user.

The data repository is populated with image data via an image collection process. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the target frame device. The user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established via a picture box.

When a user initializes a frame device, the user associated with the initialized frame device becomes a member of an online community. When the user initiates the frame device a picture box is created that allows the user to specify mange the behavior of the user's frame device. Each picture box is assigned a unique username (e.g. a picture address) and associated with one or more frame devices. The picture box provides the user with an interface for managing the behavior characteristics and filter criteria of one or more registered frame devices. For example, the picture box provides the user with a way to specify when the frame device should connect to the data repository to obtain a image and/or software update. When an update occurs new image data and or information related to the operation and behavior of the frame device may be transmitted to the device.

In one or more embodiments of the invention, users may obtain a picture box by using a picture box viewer (e.g. a web browser). A picture box engine residing on a server system may generate the picture box. The picture box engine uses information stored in the data repository to generate the picture box that is displayed by the picture box viewer. For example, a user residing at a client computer may use a picture box viewer to request a picture box from a server computer. The server will respond to the request by executing the picture box engine, which in turn obtains the data used to generate a picture box from the data repository.

## DESCRIPTION OF THE DRAWINGS

FIG. 1a illustrates a device configured to display digital images.

FIG. 1b illustrates the components used by an electronic mail system and/or a client pull system such as the World Wide Web.

FIG. 1c illustrates a system configured to push data from a server computer to one or more client computers.

FIG. 2a is a block diagram that illustrates the components utilized by one embodiment of the invention.

FIG. 2b illustrates the system components utilized by one or more embodiments of the invention.

FIG. 3 is a block diagram that illustrates the internal components of the frame device.

FIG. 4 illustrates what type of data may be stored in the data repository.

FIG. 5 is an illustration of a picture box viewer containing a picture box.

FIG. 6 is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in a frame device.

FIG. 7 illustrates an embodiment of the invention that may be utilized to access the picture box interface.

FIG. 8 is a flow chart illustrating the process utilized by one or more embodiments of the invention to register a frame device.

FIG. 9 illustrates the process utilized by one or more embodiments of the invention to initialize a frame device.

FIG. 10 illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates.

## DETAILED DESCRIPTION

A method and apparatus for distributing picture mail to a frame device community is described. In the following description numerous specific details are set forth in order to provide a more thorough understanding of the present invention. It will be apparent, however, to one skilled in the art, that the present invention may be practiced without these specific details. In other instances, well-known features have not been described in detail so as not to obscure the invention.

### General Overview

The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display and/or software from a data repository via an interconnection fabric (e.g. a computer network). Each frame device is configured to automatically interface with the data repository to obtain image data and to then display that data according to a set of preferences. For example, a frame device may dynamically obtain image data from a networked data source (e.g. a client computer), store that data, and then display that data according to criteria established by an authorized user.

Each frame device provides users with a simplified interface that minimizes the amount of complexity presented to the user without limiting the ability of the device to perform an advanced set of functions. For example, each frame device is programmed to automatically configure itself without obtaining input from the user. So long as the frame device is connected to a power source and a communication source it may remain operational without obtaining input from the user. The software that controls the behavior of each frame device may also be updated or modified without requiring additional input from the user. One embodiment of the invention provides a simplified pushbutton interface that provides users with a mechanism for manually directing the behavior of the device. However, the device will continue to operate even if users do not direct it to via the pushbutton interface. Each frame device is part of a community of interrelated components that operate in concert to provide image data to a family of one or more frame devices. The details of the system are further described below.

Image data is typically stored in a data repository (e.g. a database). Users or people authorized to submit images may transmit image data to the data repository which in turn provides the image data to an associated frame device by sending the image data via picture mail. A picture box, which comprises functionality further described below, provides users with a mechanism for controlling the behavior

APPX64

characteristics of each frame device. Thus, users may control the picture box without touching the pushbutton interface on the device. When the picture box is created the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses.

Each frame device contains onboard software designed to automatically connect to an image delivery service. The image delivery service provides a mechanism for transmitting certain types of images to a frame device based on a set of predefined criteria. The specific aspects of the image delivery service are further described below. When a frame device is connected to a network it may automatically execute an initialization process without obtaining any additional input from the user. In one embodiment of the invention this is referred to as the self-configuration protocol. The initialization process is further described below. The data repository may act as an image relay mechanism that processes any image data that is submitted to the system via an image collection/submission engine. The functionality provided by the image collection/submission engine is discussed further below. Once the image data is processed by the collection/submission engine the data repository stores the image data until the frame. device connects to the repository for an update. Each frame device is designed to connect to a data source such as the data repository to obtain an update (e.g. image data or software data) using a conversation/security protocol.

### Automatic Configuration Without User Input

The device is configured to automatically execute the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software. In one or more embodiments of the invention, for example, the frame begins to acquire configuration information by obtaining the toll free phone number stored in the devices' memory and using that number to connect to a server computer. The server responds by analyzing the caller ID information contained in the connection signal (e.g. ANI) to determine what local phone number or phone numbers the frame device should utilize to inexpensively connect to the data repository. Based on the location of the frame device during dial-in, the server computer provides the frame device with information that directs the device when and where it should dial. The caller ID information, for example, provides the frame device with a way to discern what geographic region the device is located in and based on that information the device knows when to connect to the data repository for an image and/or software update. If the server determines the frame device is in located in Los Angeles, Calif. the server may inform the device to connect at 12:00 am Pacific Daylight Time (PDT) using a phone number located in the Los Angeles area. The local phone number information may be referred to as a localized number sequence.

The frame device responds by storing the information provided by the server in memory and then disconnecting from the toll free phone number without requiring any input from the user. Once the device is disconnected from toll free phone number the frame redials using one of the local phone numbers obtained while the device was connected to the toll free phone number. The local phone number provides the frame device with a mechanism for connecting to the data repository to obtain new images and/or software updates. The frame device typically uses the local phone number information to connect to the data repository at the time specified by the server without requiring any input from the user of the device. Thus, the frame device is self-configuring and self-maintained. If certain information necessary for normal day-to-day operation is lost (e.g. by a power outage or by the user physically moving the frame device), the frame device may recover without requiring input from the user.

### Self-Upgrading Without User Input

The software that provides the frame device with its operational logic may be automatically updated and/or upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. The functionality of the pushbutton switch or behavior characteristics of the frame device, for example, may be altered by updating the onboard software that controls the device. Transmitting an update to the frame device may modify any characteristic that may be controlled via onboard software.

### Simplified User Interface

Users are not required to perform any complex activities to configure the device. The device may, however, connect to the data repository when manually directed to by the user. The frame device contains a simplistic pushbutton interface that provides novice users with a mechanism for directing the behavior of the device. For example, one or more pushbuttons provides users with a way to manually initiate a connection to the data repository. Other functions such as dimming the LCD or cycling through a set of available images (e.g. slide show mode) may also be provided by the pushbutton interface. A detailed discussion of the pushbutton interface located on the frame device follows below.

### The Components of a Frame Device

FIG. 3 shows a block diagram illustrating the components of a frame device as it is used by one embodiment of the invention. Each frame device comprises a Central Processing Unit (CPU 305), memory (e.g. flash memory and DRAM), and telecommunication hardware and/or software configured to provide the device with a mechanism for connecting to a data repository. Onboard software stored in memory provides each frame devices with a set of behavior characteristics that may be customized by the user, or by any other person authorized to alter the frame device's behavior characteristics. CPU 305 is responsible for executing tasks for the frame device. In one or more embodiments of the invention, CPU 305 is a microprocessor manufactured by Cirrus Logic, such as the EP7211 ARM processor, or a microprocessor manufactured by Intel, such as the 80×86, or Pentium processor. However, any other suitable CPU, microprocessor, or microcomputer may be utilized.

CPU 305 communicates with the other components of the frame device utilizing system bus 335. Bus 335 may contain, for example, thirty-two address lines for addressing flash memory 309 or DRAM 307. The system bus 335 may also include, for example, a 64-bit or 32-bit data bus for transferring data between and among the components, such as CPU 305, flash memory 309, DRAM 312, and,DRAM 307. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

Display 313 represents the display hardware used to render a visual representation of the image data. In one or more embodiments of the invention, display 313 is a Liquid Crystal Display (LCD). However, the invention also antici-

pates the use of other display mechanisms that are capable of rendering an image for display. Flat panel technologies such as plasma displays, Field Emission Displays (FED), or improved Cathode Ray Tube (CRT) monitors, for example, may also be utilized to display images. Display 313 is surrounded with a border region modeled to resemble a traditional picture frame. Display 313 is a low profile LCD designed to minimize the prevalence of display 313. Thus, the emphasis is on the picture frame rather than the LCD. Controller 311 controls the image data output to display 313. For example, if LCD hardware it utilized to display image data, controller 311 is an LCD controller. DRAM 312 is the memory controller 311 uses to prepare image data for display on display 313. DRAM 312, for example, may be utilized for purposes of frame buffering. Dithering may be performed on the frame device in order to improve the quality of images displayed on display 313.

Flash memory 309 provides the frame device with storage space for the image data. For example, image data held in the data repository may be copied into flash memory 309 when a connection to the data repository occurs. In one or more embodiments of the invention, the image data held in flash memory. 309 is stored in a compressed format and decompressed when the data is output to display 313. Flash memory 309 may hold the onboard software that defines the functionality of the device. The mechanism and data used to control the behavior characteristics of the frame device is also stored in flash memory 309. For example, flash memory 309 may hold the local phone number utilized to connect to the data repository. In case the local phone number cannot be reached a toll-free phone number also resides in flash memory 309. The toll-free phone number may be used if the local number fails. Other information that is required to initiate a communication session with the data repository may also reside in flash memory 309.

Flash memory. 309 may store timing information. For example, the time the frame device is scheduled to dim display 313, the time the frame device is scheduled to connect to the data repository for an update, and the current time are stored in flash memory. In one or more embodiments of the invention, relative time is utilized to indicate the current time. Relative time is kept by keeping track of the number of clock cycles performed by CPU 305. However, the invention contemplates the use of other mechanisms for keeping time. For example, the current time may be obtained from a central source located on the frame device. The current time may also be obtained by accessing other networked devices such as a server computer containing a system clock.

In one or more embodiments of the invention, flash memory 309 is configured to store the software release number and/or version number of the onboard software. When a connection to the data repository occurs the version of software held resident in flash memory 309 is compared to the version held in the repository. If the version of software held in flash memory 309 is older than the version in the data repository then a newer version is loaded into flash memory 309. Thus, the frame device is configured to automatically update its software without requiring input from the user. DRAM 307 provides the frame device with an execution space for general-purpose tasks (e.g. frame buffering). Modulator demodulator 319, for example, may utilize DRAM 309 as a place to process downloaded data.

The function of pushbutton switch 300 is to provide the user with an interface for controlling certain attributes of the frame device. If, for example, the user depresses pushbutton switch 300 the frame device will illuminate display 313 so

that images shown on the display become visible. Pushbutton switch 300 is also used as a frame advance. Thus, pushbutton switch 300 provides the user with a way to navigate through the images held in flash memory 309. If ten images currently reside in flash memory 309, the user may utilize pushbutton switch 300 to cycle through the ten images in flash memory 309 available for display. One embodiment of the present invention contemplates using pushbutton switch 300 to force the frame device to update its image library. For example, depressing pushbutton switch 300 for an extended duration of time (e.g. several seconds) causes the device to initiate a connection to the data repository. Once the connection is established the frame device utilizes the information contained in the data repository to supply the frame device With a new set of images. Pushbutton switch 300 also provides a way for the user to alter the backlight level of display 313. In one embodiment of the present invention, pushbutton switch 300 is configured to alter any of the attributes of the frame device provided via software. Thus,it is possible to periodically change the features controlled by pushbutton switch 300 to meet the demands o the user.

The invention also contemplates the use of multiple pushbutton switch 300's. If multiple pushbutton switch 300's are present each pushbutton switch 300 may be configured to perform different functions. For example, one pushbutton switch 300 may be utilized as a dimmer button that controls the brightness of the frame, whereas the second pushbutton switch may be configured to act as a main button that has multiple functions. In one or more embodiments of the invention, the pushbutton switch provides a mechanism for marking images for deletion. The pushbutton switch may also be utilized to identify images that are to be saved or archived. Photo sensor 303 supplies the frame device with a mechanism for automatically dimming display 313 when certain conditions, such as the passage of time or the activation of pushbutton switch 300, occur. The frame device is operational without photo sensor 303. Therefore, photo sensor 303 is not required, but may be included if dimming functionality is desired.

Communication interface 340 provides a two-way data communication coupling via a network link 341 to interconnection fabric 342. Communication interface 340 may be implemented in software or hardware form. In one or more embodiments of the invention, data communication interface provides a codec for optimizing data throughput to network link 341. Interconnection fabric 342 represents any type of network configured to transmit data. For example, interconnection fabric 342 may represent the Internet or any other type of easily accessible computer network.

If communication interface 340 is an integrated services digital network (ISDN) card or a modem, communication interface 340 provides a data communication connection to the corresponding type of telephone line, which comprises part of network link 341. Data is then transported across network link 341 to interconnection fabric 342. If communication interface 340 is a local area network (LAN) card, communication interface 340 utilizes a compatible LAN as network link 341 to transmit data to interconnection fabric 342. Wireless links are also possible. In any such implementation, communication interface 340 sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information. These signals are transmitted across network link 341 to interconnection fabric 342. Therefore, interconnection fabric 342 couples the frame device to the data repository.

## 13

Power source 329 provides the frame device with the electrical current necessary to properly run the device. In one or more embodiments of the invention, power source 329 obtains an electrical signal from a standard wall plug and utilizes a transformer unit, a voltage converter and an econo reset device to prepare the signal for use by the frame device. Power source 329 may also obtain an electrical signal from a battery, solar power, or any other source that can generate the appropriate amount of current required to adequately power the frame device.

### System of Interrelated Components

FIG. 2a is a block diagram that illustrates the components comprising one embodiment of the invention. In the embodiment illustrated, the system comprises one or more frame devices 200–209 configured to connect to data repository 213 via an interconnection fabric 217. Frame devices 200–209 are designed to resemble traditional picture frames. For example, each frame device contains a border region 250 that enhances the aesthetic qualities of the device. The border region 250 may be comprised of wood, plastic, metal, or any other compound that is pleasing to the eye. Each frame device 200–209 may have a border region 250 that appears to be different from the border region 250 of another frame device. For example, the border region 250 for frame device 200 may appear different than the border region 250 attached to frame device 209. In one or more embodiments of the invention, border region 250 is an actual picture frame sized to surround the display of frame device 209. Border region 250 may contain a matte board designed to complement the picture frame.

However, unlike a traditional picture frame, the images shown in the display region of frame devices 200–209 can be periodically modified. For example, frame device 200 can be configured to show a first image for a certain duration of time and a second image for another duration of time. Image data 214, for example, can be shown in the display region once it is obtained from the data repository.

Frame devices 200–209 connect to data repository 213 to obtain image data 214 via interconnection fabric 217. In one or more embodiments of the invention, frame devices 200–209 use one or more local frame servers 211 to connect to interconnection fabric 217. An Internet Service Provider (ISP), modem pool, or any other mechanism capable of connecting frame devices 200–209 to interconnection fabric 217 is an example of a local frame server. However, local frame servers 211 are not required to achieve connectivity to interconnection fabric 217. Frame devices 200–209, for example, may connect directly to interconnection fabric 217 and thereby bypass local frame servers 211.

In the invention, interconnection fabric 217 is any of multiple suitable communication paths for carrying data between frame devices 200–209 and data repository 213. Interconnection fabric 217 may be, for example, a local area network (LAN) implemented as an Ethernet network. Any other local network may also be utilized. The invention also contemplates the use of wide area networks such as the Internet and/or World Wide Web. Interconnection fabric 217 may be implemented using a physical medium such as a wire or fiber optic cable, or it may be implemented in a wireless environment. For example, the invention contemplates the use of dedicated, dial-up, or shared communication interconnects.

The data repository is populated with image data 214 via an image collection process. Image data 214 is inserted into data repository 213 by data source 260. In one or more

## 14

embodiments of the invention, data source 260 populates data repository 213 with image data by obtaining the data from a storage medium such as a hard drive, preparing the data for submission, and transmitting the data to data repository 213. A program executing at data repository 213 determines whether the image data satisfies certain filter criteria. For example, the program may determine whether the image data was transmitted from a member of the users buddy-list and/or address book. If the image data does not satisfy the filter criteria it may be discard or returned to the original data source. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the targeted frame device. In one or more embodiments of the invention, the picture mail address is a network address (e.g. an IP address) that is associated with a frame device. The user may specify filter criteria (e.g. via a picture box) which establishes what addresses,(e.g. picture mail address) are authorized to populate the data repository. Users who join the picture mail community by connecting one or more frame devices to the interconnection fabric may, for example, pass images data to other members of the community via a picture mail address. However, users are not required to belong to the picture mail community to submit images to a frame device that does belong to the picture mail community. In addition to storing the image data, and filter criteria, data repository 213 also comprises data that may be used to define the behavior of frame devices 200–209. The structure and arrangement of the data repository itself will be discussed further below. In one or more embodiments of the invention, the filter criteria (e.g. who is permitted to send images to a frame device) and other information held in data repository 213 such as the behavior characteristics of each frame device are established via a picture box.

Users may use the picture box to customize the behavior characteristics associated with each frame device 200–209. Specifying the time and type of image data 214 frame device 200 is to obtain is an example of a customizable behavior characteristic. However, any feature and/or function offered by the frame devices 200–209 may become a behavior characteristic.

Each picture box 229–233 may provide a way, for example, to specify how often a certain frame device retrieves new image data from the data repository. For example, the user of client computer 225 may use picture box 232 to specify how, often frame device 207 connects to data repository 213. Picture box 232 can also be configured to provide the user of client computer 225 with a mechanism for controlling what images are deliver to frame device 207. For example, the user could specify that images should only be accepted from people listed in the user's buddy-list, friendly-sender list, or address book. If the user of client computer 225 wants to subscribe to an image delivery service, this preference may also be expressed via picture box 232. The image delivery service regularly delivers images that illustrate weather reports, art collections, greeting cards, movie posters, post cards, live camera data, or any other type of customized data to the user's frame device. Each image delivery service may be separately subscribed to and the device may be unsubscribe at any time.

The user may also utilize the picture box to define filter criteria (e.g. to specify who is authorized to populate a certain frame device with new images). For example, the user of client computer 221 may use picture box 232 to indicate that only images received from certain picture mail

APPX67

addresses are to be held for display in data repository **213** and forwarded to frame device **203** upon request. Each individual picture box **229–233** controls the behavior characteristics of one or more frame devices **200–209**. Picture box **220**, for, example, may be configured to control frame device **203** and **209**.

In one or more embodiments of the invention, the picture box engine **216** is responsible for obtaining the picture box data **233** needed to generate a picture box from data repository **213** and transmitting a visual representation of the picture box to the appropriate picture box viewer. For example, a user who has permission to control frame device **209** may control the behavior characteristics of the device via a picture box. The user may obtain picture box **251** by using picture box viewer **220** to request picture box **251** from server system **215**. For example, if a user residing at client computer **219** uses picture box viewer **220** to request picture box **251** from server computer **215** the server responds by executing picture box engine **216**, which in turn obtains picture box data **233** from data repository **213**. In this instance, picture box data **233** is associated with frame device **209**. However, the picture box may be associated with any frame device **200–209** the user is authorized to control. The user may control multiple frame devices via a single picture box. A single user can also elect to use multiple picture boxes to control multiple frame devices.

It is possible for the user to modify the onboard software embedded into each frame device **200–209** by making changes to the picture box. When a change is made it is reflected in data repository **213** and communicated to the frame device when the device connects to data repository **213** for an update. Other authorized parties, such as the picture box provider, can also modify and or update the functionality provided by the onboard software by indicating to the frame device when it connects to the data repository that new software is available for it to obtain. When the frame device receives such a message it may automatically obtain and install the new software update. Thus, authorized users can automatically add new functionality and features into the frame device without prompting the user for input.

Each client computer **219–227** is configured to run a picture box viewer **220–228**. For instance, client computer **219** is configured to execute picture box viewer **220**. Picture box viewer **220** provides the user of client computer **219** with a visual representation of picture box **229**. In one or more embodiments of the invention, picture box viewers **220–228** are web browsers configured to obtain picture box data from server system **215**. Picture box engine **216** is responsible for generating picture boxes. To accomplish this task, picture box engine **216** obtains picture box data **233** used to create the picture boxes **229–233** from data repository **213**. The invention contemplates placing picture box engine **216** in a variety of different locations. In one embodiment, for example, picture box engine **216** resides at server system **215**. However, picture box engine **216** may also resides on any computer readily accessible to clients **219–227** via interconnection fabric **217**.

FIG. 2*b* illustrates the system components utilized by one or more embodiments of the invention. Frame devices **200***n* and web browser **262** are both controlled by an authorized user **283**. The term user as described herein has multiple meanings. The term comprises guest users who have not yet registered and/or initialized a frame device. The term user also refers to registered guests (e.g. members) that may submit images to a frame device. An owner is a type of user who has a frame device. However, an owner need not use web browser **262** to configure the frame device if a user of another type or the manufacturer of the device already has configured the frame. One or more embodiments of the invention contemplates the use of an owner-proxy. The owner-proxy is authorized by the owner to act on the owner's behalf. For example, the owner-proxy may be given authority to control certain aspects of the frame device by the owner. A parent is the user who controls one or more frame devices. The parent has the authority to control what type of images is displayed on the frame and who may submit images for display. The parent user typically has all the privileges needed to control the frame device. The purchaser or buyer of a frame device may also be referred to as a user. A person who provides images and/or data to the system such as a gallery provider, channel provider, and or advertisement provider is also considered a user of the system. Thus, the term user is intended to be a general term that has multiple meanings. A single person or entity may function as multiple users and multiple people may function as one or more users. The invention contemplates assigning each type of user a different password. Thus, each user may be assigned a different level of access to the system. For example, a parent user has permission to modify the picture box in any way whereas a member does not yet have permission to modify the frames behavior, but may submit images to the picture box for display on the frame device.

When a user initially connects frame device **200** to a power source and/or a communication source, the frame device interfaces with telco **278** via telecommunication mechanism **263**. Telecommunication mechanism **263** connects to access array **264**. In one or more embodiments of the invention telco **278** is the infrastructure provided by a telecommunications provider (e.g. AT&T, MCI, SBC, PacBell, GTE, etc . . . ) and telecommunication mechanism **278** is a local phone service and/or toll-free phone service. Access array **264** is provided by ISP **279**, and comprises one or more devices configured to communicate with the carrier wave signals transmitted by frame device **200**. The invention contemplates the user of multiple access arrays and each access array may be located in a different geographic region. Each access array may be configured to understand the signaling and/or communication protocols utilized by the frame device. For example, if frame device **200** uses a modem to connect to access array **264**, access array **264** may be configured to understand the corresponding signaling standard (e.g. V.32, V.42bis, V.90 etc . . . ). Access array **264** may also comprise computer hardware configured to understand protocols such as TCP/IP, SLIP, and PPP. The services offered by MegaPOP™, ZipLink™, UUNE™, and/or GTE Internetworking™, for example, are examples of an access array **264**.

Access Array **264** communicates with proxied server(s) **266**. Proxied server **266** may be, for example a RADIUS server configured to communicate with the registration server **268**. RADIUS is a program that runs on a computer. RADIUS allows the expansion of the number of user (connection) profiles available to RADIUS compliant remote access devices. The three main functions of a RADIUS server are authentication, authorization, and accounting. RADIUS is used to authenticate users for dial-in and/or remote access via a data communication network. Authentication information may be stored locally (e.g. in a local file) or accessed from external authentication mechanisms. Authorization controls access to specific services on the network. Once a user is authenticated, RADIUS identifies what a user is authorized (permitted) to access and communicates that information to a PortMaster. For example, user __1 may be authorized to use a certain type of

communication protocol (e.g. PPP or SLIP) for his connection, and to use a certain IP address. The RADIUS accounting permits system administrators to track dial-in and/or network use. The present invention is not limited to the use of RADIUS servers, but also contemplates the user of other types of servers that perform the functionality required to effectively balance the communication path between frame device **200** and data repository server **269**.

In one or more embodiments of the invention, access array **264**, proxied server **266**, load balancer **267**, and registration server **268** intercept and then forward data signals transmitted from frame device **200** to data repository server **269**. Load balancer **267**, for example, is responsible for balancing the load placed on devices in the communication path (e.g. registration server **268**). A Domain Name System (DNS), Windows load balancing service, Router, or Round Robin device are some examples of systems capable of acting as load balancer **267**. Load balancer **267** is provided by frame data provider **281** to communicate with data repository server **269** via registration server **268**. The functionality provided by load balancer **267,272**, and **276** may be provided by a single computer or multiple computers. A single computer connected to the interconnection fabric may, for example, be configured to execute software or hardware that acts as load balancer **267**. Alternatively, the functionality provided in load balancer **267** may be executed in other computer systems connected to the interconnection fabric (e.g. Registration Server **268** or Data Repository Server **269**).

Data repository server **269** and registration server **268** may be configured to transmit log information **274** to one another. In one or more embodiments of the invention log information **274** is RADIUS logs. Data repository server **269** executes, manages, and communicates with data repository **270** via Local Area Network (LAN) **273**. Data repository **270** is a database file system and image store. However, data repository **270** may also comprise other information needed to update and/or manage frame device **200**. For example, the data contained in Package Server **271** may be stored in data repository **270**.

Package Server **271** is configured to communicate with data repository **270** and data repository server **269** via LAN **273**. In one or more embodiments of the, invention,package server **271** comprises a File Transfer Protocol Daemon (FTPd), a packager, and an interpreter. Package server **271** may also be referred to as an application server. The packager is responsible for generating multiple kinds of packages. A package is a compilation of data that provides the recipient and the transmitting device with information needed to complete a transaction. For example, a package may contain authentication information that provides frame device **200** with a way to verify whether package server **271** is authentic. A package may also contain metadata about frame device **200**. For example, some or all of the information stored in flash memory and/or DRAM may be inserted into a metadata file. The metadata file may contain, for example, a unique frame identifier, a relative clock time, a lights on clock tick, a lights out clock tick, a connect time, connection information, slide show information, log information, name server information, image information, an image display list, and error information. Other information utilized by the frame device and/or any of the server systems may also be placed into the metadata file. The package server **271** may also generate packages that contain content and formatting data (e.g. image and/or text data).

To obtain package data frame device connects to access array **264** via telecommunication mechanism **263**. In one or more embodiments of the invention frame device **200** is configured to establish an FTP session with package server **271**. Once the session is established, frame device **200** transmits a unique identifier (e.g. user/frameID). Package server **271** responds by prompting frame device **200** for password information, which the frame then transmits. The frame device may dynamically generate the password information. Once frame device **200** enters the correct password, the device is permitted access to package server **271**. At this-point frame device **200** is linked to package server **271** and data may be sent to and from each using either ASCII mode or binary, mode. Load Balancer **272** may be optionally placed between package server **271** and access array **264** in order to ensure that the load placed. on package server **271** does not exceed its capacity.

Frame device **200** typically communicates with package server **271** using the binary connection mode. During the communicate session frame device **200** initiates a GET command via path and thereby obtains an authentication file from package server **271**. When frame device **200** obtains the authentication file, it determines if the authentication file is authentic by computing a checksum and comparing the result to an expected results file. If the comparison matches, frame device **200** "trusts" package server **271**. When a trust relationship is established frame device **200** transmits package data to package server **271**. In one more embodiments of the invention, frame device **200** tells package server **271** how much package data it will be sending (e.g. via a SIZE command) and then transmit that amount of data to package server **271** via a PUT command. For example, a content list and a log file may be transmitted to the server via the PUT command. Package server **271** then computes and compares the checksum information associated with the transmitted package data (e.g. metadata). Frame device **200** may also utilize the GET command to obtain additional packages. In one or more embodiments of the invention, the USER command and PASS command are modified to provide an additional layer of security. For example, the PASS command and the USER command may be modified to transmit and/or bounce back encrypted strings of data that are authenticated before access to the package data is permitted.

For example, frame device **200** may use the GET command to obtain an administrative package comprising information useful for administering the frame and/or a content package comprising content and formatting data. The content of the packages is self-defined and may vary depending upon the requirements of frame device **200**. Upon delivery of the relevant packages, frame device **200** may synchronize its time keeping mechanism with package server **271** and terminate the connection. If the frame device connected using the toll-free phone number, local number information is obtained and provided to the frame device in the administrative package. The local number information that is best for the device is determined by analyzing the caller ID information provided when the device call using the toll-free phone number.

In one or more embodiments of the invention, web browser **262** provides a mechanism for submitting and/or changing the image data that is to be displayed on frame device **200**. To submit image data web browser **262** connects to local ISP **265** via telco **278**. Local ISP **265** communicates with load balancer **276** which in turn communicates with one or more web servers **275** and submission/image processing engine **284**. Web browser **262** and web servers **275** may also communicate with clearing house **277** and/or data repository **270**. Clearing house **277** is a computer system configured to process transactions with user **283**. In one or

more embodiments of the invention, submission/image processing image comprises software configured to obtain image data from user **283** via web browser **262**.

### The Data Repository

The data repository comprises one or more databases. Each database provides the system with information and/or data related to distributing data to one or more frame devices. In one or more embodiments of the invention, the data repository stores information used to control the content distributed to and from each frame. For example, data about each user and the preferences associated with that user may be held in the data repository. Each frame device is configured to connect to the data repository at one or more predefined intervals utilizing an interconnection fabric such as the Internet. Once a frame device connects to the data repository, it utilizes the information stored in the data repository to update the image data that is to be displayed and the behavior characteristics of each frame device. For example, the functions provided by the onboard software may be modified when the behavior characteristics are updated. The data repository is therefore responsible for queuing and archiving image data and/or software data for each frame device associated with the data repository.

Referring now to FIG. **4**, an example, of the type of data stored in the data repository is shown. In one or more embodiments of the invention, the data repository is comprised of multiple databases. The databases are related to one another and contain information utilized to generate the data repository. Each database may contain one or more tables of information. Thus, the data repository may be constructed as a single database having one or more tables or as a series of databases related to each other. The term database and table may therefore be used interchangeably. The databases may be organized using a relational structure, an object-oriented structure, or any other type of organizational scheme configured to store the information needed to create the data repository. The databases may also be distributed across multiple computers. For example, a first computer may contain one portion of the data repository and a second computer may contain a second portion of the data repository.

One of the databases contained in the data repository is the user database **401**. User database **401** comprises information about users that have registered with the system. In one embodiment of the invention user database **401** contains one record for each registered user. User database **401** typically stores information about the user such as the user's username, password, picture mail address, and billing information. User database **401** may also contain a list of picture mail addresses from which image data may be received. If, for example, a user wishes to receive picture mail from a certain address the user may designate that address as a friendly sender by placing the address in the list of picture mail addresses from which data may be received. In one or more embodiments of the invention, picture mail addresses not contained in the list may not populate a user's frame device with image data. The user may use the picture box to identify a list of friendly picture mail addresses. This list of friendly senders may be referred to as a buddy list and/or address book.

The data repository also holds information about each frame initialized with the system. A frame becomes initialized when the user of the frame device, or a person acting on behalf of the user, directs the system to obtain a picture box. Information about the frame device is held in the frame database **403**. The frame database **403** comprises multiple records **404–411**n and each record is associated with a unique frame device. A single user, however, may have multiple frames registered with the system. Thus, one record in user table **401** may be related to many records in the frame table. For example, if a user owns two frame devices the data repository may have a single record about that user in user database **401** and two records about the user's frame devices in frame database **403**. Frame database **403** contains a record for each frame device that registers with the system.

Frame database **403** contains information that uniquely identifies each frame. Frame database **403**, for example, may store a serial number or any other form of information that uniquely describes a particular frame device. Each user, may control one or more frame devices. In one or more embodiments of the invention, frame database **403** stores information about the geographical location of each frame. For example, the zip code, the area code, and/or phone number where the physically device resides, or any other information that identifies the location of the device may be used to describe the geographic location of the frame.

In one or more embodiments of the invention, each frame is associated with an access number. The access number is the phone number utilized by a particular frame device to connect to the interconnection fabric. The access number, for example, may be a toll free phone number or the phone number of an ISP closest in proximity to the physical location of the frame device. The access number may be stored in frame database **403**.

Frame database **403** also contains data that identifies the intervals at which a particular frame device may perform a predefined action. For example, frame database **403** may hold information that specifies the date and time the frame device associated with that record is to connect to the data repository. The actions performed may be defined by the user of the frame device or by an entity authorized to control the actions of the frame device. One embodiment of the invention allows any person with access to the picture box to define an action.

The intensity of each frame device's display region may be varied. For example, the display of each frame device may be configured to dim at certain times. The dimming times are stored in frame database **403**. For example, if the user wishes to have a particular frame device dim between the hours of 11:00 p.m. and 6:00 a.m. this information may be specified via the picture box and is stored in frame database **403**. The frame device may also be configured to automatically dim at a certain time based on the longitude and latitude of the device. The system obtains the location of the frame device when the device indicates it is present by calling the toll free phone number embedded in memory. The caller ID information passed during this connection, for example, allows the system to determine the location of the device and set the corresponding dimming times. The frame device is typically directed to dim during times when network traffic is low and connect time is inexpensive, however, dimming may occur at any time determined to be appropriate by the system. For example, dimming may occur at a time that is not associated with the geographical location of the frame device.

Information about the software contained in each frame may also be stored in frame database **403**. For example, frame database **403** may store the release and/or version number of the software used to operate and control each frame. If the software is not the most current version available an indication as to whether it is ok to download the

software may also be stored in frame database **403**. Frame database **403** stores information about the connection history of each device. For example, the number of failed connections, the number of successful connections, as well as the speed and duration of those connections is stored as the connection history. The connection history may also contain a record of the communication sessions established by a particular device (e.g. the phone numbers called by a particular frame device and the number of images transmitted to the device at that phone number). The frame database **403** may also contain a list of the administrative information uploaded to each frame device.

In one or more embodiments of the invention, the data repository also contains content provider database **413**. A content provider is an entity or organization that offers one or more image delivery services via the interconnection fabric. Content provider database **413** may contain information about multiple content providers. Content provider database **413** contains the name and location of each content provider. For example, content provider database **413** may store the web address or Internet Protocol (IP) address where data pertaining to a particular image delivery service may be located. Content provider database **413** may also contain pointers to other databases where image data utilized to offer an image delivery service resides.

The data repository also stores data utilized by multiple frame devices. For example, central administration database **415** comprises information such as the time of day (per time zone), administrative messages and/or images, broadcast messages and/or images, and other general data utilized by the frames devices when a connection to the data repository is made. An example of a relational database schema arranged to store the data utilized by the system is shown in appendix A.

### The Picture Box/Picture Mail Community

When a user initializes a frame device, that frame device becomes associated with a picture box. For example, each frame device **200–209** is uniquely identified (e.g. by a serial number, address, digital signature, or other identifier) and associated with a particular picture box (e.g. an account at a web site). Each picture box is associated with a unique username and/or picture mail account. Once a picture box is obtained, the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses. A picture mail address provides a mechanism for transmitting image data to a frame device. The picture mail address, for example, provides the system with the addressing information needed to identify the location of the frame and transmit image data to the frame. Thus, the picture mail address provides user with a way to pass images between others users (e.g. family and friends) who also belong to the picture mail community. In one or more embodiments of the invention, a picture mail address is a network address that uniquely identifies the location of each frame device. The picture mail address may be implemented in the form of an electronic mail address, an IP address, or any addressing scheme that informs the system how to direct image data to the frame device.

Image data may be sent to the frame device by sending the data from a data source (e.g. a client or server computer) to the picture mail address associated with that device. The picture box provides the user with an interface for managing the behavior characteristics of one or more registered frame devices. In one or more embodiments of the invention, each user is given a single picture box to control the behavior characteristics of multiple frame devices. However, a user may also be given multiple picture boxes. The picture box is accessible via an interconnection fabric such as the Internet and may be viewed using a standard web browser. In one or more embodiments of the invention, each frame device is associated with a specific picture box. Information about the picture box utilized to control a frame device may be stored in frame database **403**.

Information used to generate each of the picture boxes may be stored in picture box database **400**. For example, picture box database **400** contains a representation of the image (e.g. a thumbnail) as it will be displayed on the frame device, should it be flagged for download to the device. The location (e.g. picture mail address or network address) the image data was transmitted from is also stored in picture box database **400**. Other information such as the date and time the image was received at the data repository and the date and time the image was received at a particular frame device also resides in picture box database **400**. Picture box database **400** may also contain information about the status of the image data accessible to a particular frame device, such as whether the image is to be archived or kept on the frame device when an update occurs. Data that specifies the filename of the image, whether the image currently resides on the frame device, and routing information that specifies which images should be sent to which frame devices may also be stored in picture box database **400**.

FIG. **5** shows an illustration of a picture box viewer containing a picture box. In one or more embodiments of the invention, picture box viewer **500** is a web browser configured to display picture box **523** (e.g. a web page). Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. However, picture box viewer **500** may be any type of software program configured to display picture box **523**. Picture box **523** is any type of data file cable of being transmitted to picture box viewer **523** for display. For example, files written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF) may be displayed using. picture box viewer **523**. It is also possible to generate picture box **523** using various other types of languages such as Standard Generalized Markup Language, (SGML) or extensible Markup Language (XML).

Picture box **523** is any example of the type of interface that may be used to create and/or modify records in the data repository. The information stored in the data repository may be presented to the user via picture box **523**. In one or more embodiments of the invention, picture box **523** comprises a first portion **505** that contains a list of the image delivery services scheduled to provide data to a particular frame device and a second portion **509** that shows the status of images that may be displayed on the frame device. However, picture box **523** is not limited to using first and second portions, but may utilize any number of portions to present information to the user of a frame device.

In one or more embodiments of the invention, first portion **505** shows what image delivery services the frame device associated with picture box **523** is subscribed to. For example, the frame associated with picture box **523** is scheduled to receive weekly subscription **503**, daily subscription **505**, and monthly subscription **507**. The delivery intervals may be changed utilizing picture box **523**. For example, it is possible to use picture box **523** to change weekly subscription **503** to a monthly subscription.

The second portion **509** shows what image data is currently intended for display frame devices associated with

picture box **523**. Second portion **509** comprises columns of information likely to be of use to the owner of the relevant frame device. For example, in one or more embodiments of the invention, columns that contain image name **512**, status **511**, date **513** and sender **514** are shown in second portion **509**. However, any type of data that describes the images currently accessible to the frame device may be placed in the image name **512** column. For example, the image name **512** column may contain the actual file name, an alias associated with the image file, or a description of the image itself. Image name **512** may also contain a representation of the image data such as a thumbnail.

The status **511** column comprises information that represents the status of the image. For example, information that communicates whether an image is scheduled for display on the frame device is shown in status **511** column. Other information such as whether a new image was received, or whether the image may or may not be deleted can also be presented using status **511** column. One embodiment of the invention provides for the placement of any data that communicates the location and/or status of an image in status **511** column.

Picture box **523** may be configured to show a date **513** column. The date and/or time an image was received may be placed in date **513** column. Other data that is relevant to the receipt of an image may also be inserted into date **513** column. For example, the date a particular image was loaded into an associated frame device may also be placed in date **513** column.

Sender **514** column shows who sent the images shown in the picture box. In one or more embodiments of the invention, sender **514** column contains the picture mail address of the party who transmitted the image. The name and/or location the image was transmitted from may also be shown in sender **514** column.

Routing information may be also be defined using picture box **523**. For example, if the user has the authority to control what is shown on multiple frame devices, the user may use the picture box to specify which images should be sent to which frame devices.

Picture box **253** also provides a mechanism for users to browse through the image data available for display. For example, users may search for images in a list of galleries by conducting a key word search of the galleries. Images held, in the galleries may be obtained from a person or entity, that provides stock images to the picture box. The user may obtain thumbnail views and full size views of the image data upon request. The user may also use the picture box to review all past, present, and future images displayed on the frame device. Users can also use the picture box to add, replace, or delete any image that is to be scheduled for display on the frame device. Thus, the picture box provides an interface for remotely controlling the behavior of the frame device.

### The Image Delivery Service

In one or more embodiments of the invention, users may elect to subscribe a particular frame device to one or more image delivery services offered by the content providers. When the user subscribes to an image delivery service, customized image data is periodically delivered to the frame device designated by the user as the recipient. For example, if a user wishes to have an image summarizing the weather report regularly delivered to the frame device located in the user's house, the user may subscribe to an image delivery service that regularly transmits weather images to the picture

mail address associated with the appropriate frame device. The user may control the date and time the image delivery service sends the image data. The user, for example, may specify that the weather report is only to be delivered at 7:00 a.m. on weekdays and is not to be delivered during the weekend. The invention also contemplates a system wherein the data and time the image delivery service transmits image data is predefined and not set by the user. For example, the image provider may determine when to send images to the picture mail account associated with a frame device. A number of different image delivery services are available to members of the picture mail community and each delivery service may transmit images that are illustrative of any kind of information. For example, images that represent post cards, greeting cards, art collections, live video feeds, or any other type of image data may be delivered to a frame device utilizing an image delivery service.

### Frame Device Initialization

In one or more embodiments of the invention, the frame device initializes with the system in order to have the capability to obtain image data. The initialization process may occur with the aid of a user or it may occur automatically without user input. In either instance, users are given the opportunity to customize the behavior of the user's frame device(s). FIG. **8** illustrates the process utilized by one embodiment of the invention to initialize a frame device. The initialization process begins at step **800** when the frame device is connected to a power source and a communication medium such as a telephone line or network connection. The frame device may be configured to automatically connect via a wireless connection or the user may manually couple it to al power source and communication medium.

Once step **800** occurs, an embodiment of the invention proceeds to step **803**. At step **803**, the frame device initiates a connection to the data repository utilizing an interconnection fabric. In one or more embodiments of the invention, the frame device is configured so that can only connect to the data repository and cannot connect to other data sources that are available via the interconnection fabric. For example, the connection process may utilize an authentication scheme (e.g. encryption) to ensure the device connects to an authorized data repository and is not being directed to another data source masquerading as the authorized repository. When step **803** is complete, step **805** executes. At step **805**, the data repository is analyzed to determine whether there is a record for the frame device initiating the connection.

If a record for the frame device is not located, step **807** executes and an image prompting the user to create a picture box account associated with that frame device is displayed to the user. Once the picture box account is created it provides the user with a way to set the behavioral characteristics of the frame device. In one or more embodiments of the invention, the frame device cannot properly connect to the data repository until the picture box account is generated. Thus, the invention contemplates generating a picture box by executing steps **811** and **813**.

At step **811**, a picture box is obtained. The user may obtain a picture box, and thereby join the picture mail community, by calling a toll free phone number to have another person initiate the generation of the picture box. Alternatively, the user may obtain a picture box by using a web browser and connecting to a web site that contains a mechanism for generating the picture box. The frame device may also automatically direct the system to generate a picture box if an attempt is made to connect and a picture

box associated with the frame device attempting to make the connection does not exist. This may occur without requiring any input from the user. However, user input may be obtained if such input is deemed to be desirable. In one or more embodiments of the invention, however, the user may personalize the picture box by using the input mechanisms present on the frame device (e.g. the pushbutton switch).

Once the picture box is obtained, step **813** executes, at step **813** the behavior characteristics of the frame device is determined. The behavior characteristics may be established by default or customized according to the user's preferences. When the behavior characteristics are determined, step **815** executes. At step **815**, the invention contemplates loading the behavior characteristics into the data repository for use by the frame device.

If the data repository already contains a record for the frame device initiating the connection, step **809** executes. At step **809**, the frame device obtains the behavioral characteristics set via the picture box, by accessing the data repository. One embodiment of the invention loads the behavioral characteristics into flash memory residing on the corresponding frame device. Other data, such as software programs and/or image data may also be loaded into the frame device during step **809**. Thus, functionality may be added to the software contained in the frame device without input from the user.

### Self-Configuration Protocol

FIG. **9** illustrates another process that may be utilized by one or more embodiments of the invention to initialize a frame device. The initialization process begins at step **900** where the frame device determines if it is connected to a power source and a communication medium such as a telephone line or network connection. If so, the frame device proceeds to step **901** where it obtains image data from its own memory. At step **902**, the image data is displayed to the user via display **313**. In one or more embodiments of the invention, the image data directs the user to proceed to step **903** where the frame device manually initiates a communication session. The frame device may be configured to automatically initiate a communication session within a certain interval without requiring input from the user. For example, if the user connects the frame device to power source and a communication source, the frame device may initiate a communication session if the user does not manually do so within a certain time frame.

At step **903**, the frame device determines whether it has local phone number information in resident memory. For example, if the frame device has not previously initiated a communication session the device will not have any local phone number information. If so, step **904** executes. At step **904**, the device obtains a phone number (e.g. toll free phone number) from the memory of the frame device. This phone number is referred to as a configuration number sequence and may be permanently embedded into persistent memory (e.g. nonvolatile memory). The configuration number sequence is used only for configuration access and is parsimonious with the amount of time it remains connected. Once the frame device has the configuration number sequence, it dials the configuration number using a tone sequence (e.g. step **905**). If that fails, the device may use pulse mode. When a connection is established, device proceeds to step **906** where it obtains one or more local phone numbers from a server computer (e.g. the data repository) provided by the frame service provider. The local phone number information is stored in memory at step **907**.

Once step **907** executes, the device proceeds to step **908** where it disconnects from the configuration number and re-dials using one of the local numbers. If the frame device already has obtained a local number, step **909** executes and when the device is directed to initiate a connection it dials the local number stored in memory. Thus, the frame device is capable of automatically connecting to the interconnection fabric where it may obtain image data from the data repository without requiring input from the user. If the local phone number information is flushed from memory (e.g. by a power failure) or becomes inaccurate (e.g. because the user moved the physical location of the device), the device may use the toll free phone number to automatically reconfigure itself without prompting the user for additional input. Thus, each frame device is an intelligent device that can be easily maintained by novice or inexperienced users.

### Image Collection/Submission Engine

FIG. **6** is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in the display region of a particular frame device. At step **600**, the user wishing to transmit the image data or a data collection engine, obtains the data and prepares it for submission to the picture mail address associated with a particular frame. The data repository may act as an image relay mechanism which holds the image data until the frame device connects to the repository for an update.

The data may be obtained from any source capable of providing one or more image files. For example, image data may be collected from a client computer, an image scanner, digital camera, or a memory device such as a hard drive. The data collection engine provides a mechanism for obtaining images from any image source accessible via an interconnection fabric such as the Internet. In one or more embodiments of the invention, the data collection engine is configured to obtain image data from any web server or web client connected to the interconnection fabric. For example, the user may direct the data submission engine to periodically collect one or more images from a networked device (e.g. a web server or series of web servers) by specifying a URL that identifies the location of the networked device containing image data that is to be collected.

At step **603**, the image data is prepared for submission. An embodiment of the invention contemplates examining the image data to discern whether it meets a set of predetermined constraints. For example, if the display area of the frame device is a static width and height (e.g. 640×480 pixels), step **603** will obtain the dimensions of the display area and determine whether the image data will fit within the identified area without alteration. If the image does not fit, the image data may be altered to coincide with the dimensions of the frame device. The alteration process may scale the image, crop the image, change the resolution of the image, or otherwise modify the image so that it fits within the given display area. For example, if an image is 1024×768 pixels and the display area of a particular frame device is 640×480 pixels, the image may be appropriately scaled to fit into the 640×480 display area of the frame device. In one or more embodiments of the invention, step **603** is performed before the image data is transmitted to the data repository. However, software executing at the data repository or at the frame device may also be configured to prepare the image data for submission. One embodiment of the invention contemplates placing software configured to perform step **603** on any computer connected to the interconnection fabric.

In one or more embodiments of the invention, the data format of the submitted image is modified to conform to the

preferences of the frame device. For example, if the submitted image is in BMP format and the frame device contains software or hardware that is capable of rendering JPEG images for. display, the image will be converted from BMP format to JPEG format to coincide with the needs of the frame device. The dimensional aspects of the image may be altered along with the data format. For example, a BMP image having a resolution of 1024×768 may be converted into a JPEG image having a resolution of 640×480. The color depth and other aspects of the image may also be modified. For example, the image alteration process may convert all JPEG images so that each image submitted to the system has a 12-bit color depth and is compressed to a size that does not exceed a certain size (e.g. 64 Kb). Submitted data is conformed to coincide with size and format parameters in order to prevent large, illegal, or improperly formatted files from consuming resources on the system. Additionally, filtering and modifying images before they are stored in the data repository provides a way to prevent excessively large images from consuming resources on the frame device. The data format conversion and the image resizing process may be performed without requiring input from the user. However, in one or more embodiments of the invention, the image alterations may,be presented to the user for approval and/or manual modification.

When a user initializes a frame device, that frame device becomes associated with a picture box. Each picture box is associated with a unique username and/or picture mail account. At step **605**, the username and/or picture mail account information is utilized to provide a mechanism for transmitting image data to a frame device or series of frame devices. For example, if a user named user_1 initialized frame device XYZ with the system, another user could transmit image data to frame device XYZ by transmitting the image data to the picture mail address associated with user_1. A standard electronic mail client or a customized picture mail client may be utilized to transmit the picture mail and its associated image data. However, any interface capable of sending binary image data to a particular network address (e.g. a web-based interface) may also be utilized.

At step **607**, the image data is analyzed to determine if it meets the filter criteria established by the user during the registration process (e.g. is the submitted image data from a person who belongs to the user's buddy list or, address book). In one embodiment of the invention step **607** is performed by a data population engine. The data population engine utilizes a specific set of filter. criteria to determine whether an image is appropriate for display on a frame device. An embodiment of the invention provides the user with an interface to set the criteria. For example, the filter criteria may be set using the picture box associated with that user. The user can, for example, prevent images arriving from certain picture mail and/or network locations from being displayed on the user's frame device(s).

The user may also elect to store images that arrive from certain locations in the data repository and not present the images for display until they are. reviewed and/or approved by the user. The user or any other authorized individual and/or entity may set the filter criteria. For example, the organization that controls the data repository may be given the authority to establish filter criteria. The user may set the filter criteria used by the data population engine using the picture box interface. Other interface devices capable of receiving input from a user, such as a telephone or Personal Desktop Assistant (PDA), may also be used to set the filter criteria.

When an image satisfies the filter criteria step **609** executes. At step **609**, images are loaded into the appropriate portion of the data repository. For example, image data that is transmitted to the picture mail address of user_1 may be loaded into the record in the data repository created for user_1. Each time another image is submitted it is added to the appropriate record. Thus, the data repository may hold one or more images.

If the image data does not meet the filter criteria, the image data is discarded or returned to the address of the sender at step **606**. In one or more embodiments of the invention, data that does not meet the filter criteria is stored in the data repository, but is not forwarded to a frame device until approved by the user.

Once image data resides in the data repository, step **611** executes. At step **611**, the frame device obtains the image data set residing at the data repository. For example, the frame device may connect to the data repository utilizing the interconnection fabric and download the image data into memory. In one or more embodiments of the invention, the frame device periodically connects to the data repository. The frequency of the connections may be determined by the user via the picture box interface or by a party authorized to access the picture box. The device may also automatically determine the connection frequency without requiring input from the user.

Once the image data resides in flash memory, step **613** executes and the image data is displayed on the frame device's display mechanism according to the display preferences expressed via the picture box.

### Conversation/Security Protocol

FIG. **10** illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates. At step **1000**, the frame device establishes a connection to the access array at the scheduled interval via the interconnection fabric. For example, the frame device may utilize the communication interface to connect to an ISP or other entity with an access array such as a modem pool. The frame device obtains the information it needs to initiate the connection from flash memory (e.g. phone number information, unique identifier such as a serial number, and password information). Other information such as the network router information, subnet mask, and domain name service information is drawn directly from the ISP using DHCP or some other dynamically addressing protocol. Thus, the device may obtain the information it needs to connect without input from the user. Once the connection is initiated, the process proceeds to step **1002** where the ISP or entity having control of the access array determines if the frame device is authorized to connect to the access array. If for example, the frame device connects using a modem and PPP, the access array may prompt the device for password information that may be automatically entered by the frame device. In one or more embodiments of the invention, the password to be entered is determined algorithmically by the frame device. If the correct password information is entered the process proceeds to step **1004**, otherwise step **1003** executes and the frame device disconnects and waits for a reconnect command to be initiated.

At step **1004**, the frame device establishes a communication session with a data, server. This may be done, for example, using FTP to connect to the data server. However, the invention contemplates the use of other communication protocols such as NFS, tFTP, HTTP, SMTP, POP3, IMAPI, or any other protocol that can be used to transport data between two or more sources, to establish a communication session with the data server.

When the communication session is initiated the data server executes step **1006** where a challenge is made to ensure the frame device is authentic. If the frame device correctly responds to the challenge, step **1008** executes. Otherwise, step **1003** executes and the frame device disconnects. At step **1008**, the data server transmits data to the frame device. For example, the data server may enter binary mode and transmit an authentication file to the frame device in response to the device's request for data (e.g. via the GET command). Once the data is sent step **1010** executes. At step **1010**, the frame device examines the data it received to determine if the data is the type of data expected. For example, the frame device may authenticate the data by checking the size, contents, or encryption sequence associated with the data to determine if the transmitted data came from an authorized data server. If the frame device received the expected data (e.g. the encryption sequence is authentic), it proceeds to step **10012**. If the frame did not receive the kind of data expected, step **1003** executes and the frame disconnects from the data server and awaits a reconnect command.

At step **1012**, the data server transmits metadata and/or a log file to the data, server. The metadata file contains status information about the frame such as configuration information or connectivity information. The metadata file may also contain new or additional parameters and/or functionality that are to be added to the device (e.g. an on board software update). The log file contains a record of the frame devices past activities. For example, the log may contain a list of recent connection attempts. Any connection failures may be flagged and later analyzed to determine the cause of the failure. After the frame device transmits the metadata to the frame device step **1014** executes. At step **1014**, the data server determines if it received the kind of metadata that was expected. For example, the data server may check to see if the metadata file contains all the expected parameters. In one or more embodiments of the invention, the data server checks the received data to ensure that the data is the proper type of data and that it has not been modified by an unauthorized user (e.g. by examining an encryption sequence associated with the metadata). If the metadata is properly authenticated, the data server executes step **1016** where it transmits package data to the frame device. The package data may contain one or more images that are scheduled for display on the frame device, software updates, and additional parameters needed to direct the behavior characteristics of the frame device. Other information that is useful to the operation of the frame device such as timing information may also be placed in the package. Once the package is received by the frame device step **1018** executes. At step **1018**, a checksum operation is performed to ensure that the entire package scheduled for transmission was indeed transmitted. If the checksum results in the expected response the frame device disconnects and begins to unpackage the package data. If the package data is compressed, the frame device decompresses the package and loads the contents of the package into memory. Image files found in the package may be stored in DRAM until they are rendered for display.

### Embodiment of Computer Execution Environment (Hardware)

An embodiment of the invention utilized to access the picture box interface can be implemented as computer software in the form of computer readable code executed on a general purpose computer such as computer **700** illustrated in FIG. **7**, or in the form of bytecode class files executable

within a Java™ runtime environment running on such a computer, or in the form of bytecodes running on a processor (or devices enabled to process bytecodes) existing in a distributed environment (e.g., one or more processors on a network). A keyboard **710** and mouse **711** are coupled to a system bus **718**. The keyboard and mouse are for introducing user input to the computer system and communicating that user input to processor **713**. Other suitable input devices may be used in addition to, or in place of, the mouse **711** and keyboard **710**. I/O (input/output) unit **719** coupled to system bus **718** represents such I/O elements as a printer, A/V (audio/video) I/O, etc.

Computer **700** includes a video memory **714**, main memory **715** and mass storage **714**, all coupled to system bus **718** along with keyboard **710**, mouse **711** and processor **713**. The mass storage **714** may include both fixed and removable media, such as magnetic, optical or magnetic optical storage systems or any other available mass storage technology. Bus **718** may contain, for example, thirty-two address lines for addressing video memory **714** or main memory **715**. The system bus **718** also includes, for example, a **64**bit data bus for transferring data between and among the components, such as processor **713**, main memory **715**, video memory **714** and mass storage **714**. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

In one or more embodiments of the invention, the processor **713** is a microprocessor manufactured by Sun Microsystems, Inc., such as the SPARC™ microprocessor, or a microprocessor manufactured by Motorola, such as the 680X0 processor, or a microprocessor manufactured by Intel, such as the 80X86, or Pentium processor. However, any other suitable microprocessor or microcomputer may be utilized. Main memory **715** is comprised of dynamic random access memory (DRAM). Video memory **714** is a dual-ported video random access memory. One port of the video memory **714** is coupled to video amplifier **716**. The video amplifier **716** is used to drive the cathode ray tube (CRT) raster monitor **717**. Video amplifier **716** is well known in the art and may be implemented by any suitable apparatus. This circuitry converts pixel data stored in video memory **714** to a raster signal suitable for use by monitor **717**. Monitor **717** is a type of monitor suitable for displaying graphic images.

Computer **700** may also include a communication interface **740** coupled to bus **718**. Communication interface **740** provides a two-way data communication coupling via a network link **741** to a local network **744**. For example, if communication interface **740** is an integrated services digital network (ISDN) card or a modem, communication interface **740** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **741**. If communication interface **740** is a local area network (LAN) card, communication interface **740** provides a data communication connection via network link **741** to a compatible LAN. Wireless links are also possible. In any such implementation, communication interface **740** sends and receives electrical, electromagnetic or optical signals which carry digital data streams representing various types of information.

Network link **741** typically provides data communication through one or more networks to other data devices. For example, network link **741** may provide a connection through local network **744** to local computational service provider computer **743** or to data equipment operated by an Internet Service Provider (ISP) **744**. ISP **744** in turn provides data communication services through the world wide packet data communication network now commonly referred to as

## 31

the "Internet" **745**. Local network **744** and Internet **745** both use electrical, electromagnetic or optical signals which carry digital data streams. The signals through the various networks and the signals on network link. **741** and through communication interface **740**, which carry the digital data to and from computer **700**, are exemplary forms of carrier waves transporting the information.

Computer **400** can send messages and receive data, including program code, through the network(s), network link **741**, and communication interface **740**. In the Internet example, remote computational service provider computer **746** might transmit a requested code for an application program through Internet **745**, ISP **744**, local network **744** and communication interface **740**.

The received code may be executed by processor **713** as it is received, and/or stored in mass storage **714**, or other non-volatile storage for later execution. In this manner, computer **700** may obtain application code in the form of a carrier wave.

Application code may be embodied in any form of computer program product. A computer program product comprises a medium configured to store or transport computer readable code, or in which computer readable code may be embedded. Some examples of computer program products are CD-ROM disks, ROM cards, floppy disks, magnetic tapes, computer hard drives, computational service providers on a network, and carrier waves.

The computer systems described above are for purposes of example only. An embodiment of the invention may be implemented in any type of computer system or programming or processing environment. When a general purpose computer system such as the one described executes the process and process flows described herein, it is configured to adaptably distribute data to one or more recipient devices.

Thus, a method and apparatus for distributing picture mail to a frame device community is described.

### APPENDIX A

| Database Tables | |
|---|---|
| Table Name | Fields |
| member | member_id |
| | rating_id (FK) |
| | member_nickname |
| | last_name |
| | first_name |
| | middle_initial |
| | member_email_addr |
| | address_1 |
| | address_2 |
| | address_3 |
| | city |
| | state |
| | postal_code |
| | country |
| | birth_date |
| | birth_month |
| | birth_year |
| | birth_day |
| | member_username |
| | member_passwd |
| lock | lock_status_id |
| | lock_status_desc |
| picture | picture_id (FK) |
| | lock_status_id(FK) |
| | file_name |
| | file_location |
| | pict_info |
| | pict_copyright |
| | pict_author |

## 32

### APPENDIX A-continued

| | |
|---|---|
| | pict_creation_date |
| | pict_owner |
| picture_box | member_id (FK) |
| | content_id(FK) |
| | container_type_id(FK) |
| | picture_expiration_date |
| content | content_id |
| | content_parent_type_id(FK) |
| | picture_id(FK) |
| content_parent_type | content_parent_type_id(FK) |
| | content_parent_type |
| rating | rating_id |
| | rating_level |
| channel | channel_id |
| | channel_provider_id(FK) |
| | gallery_id(FK) |
| | rating_id(FK) |
| | channel_desc |
| | channel_update_freq |
| | channel_update_timestamp |
| channel_provider | channel_provider_id(FK) |
| | channel_provider_name |
| gallery_provider | gallery_provider_id(FK) |
| | gallery_provider_name |
| gallery | gallery_id |
| | rating_id(FK) |
| | gallery_provider_id(FK) |
| | gallery_name |
| | gallery_desc |
| location | location_id |
| | postal_code |
| | country_id |
| | area_code |
| | location_utc_offset |
| isp | isp_id |
| | location_id(FK) |
| | isp_name |
| frame | frame_id |
| | rating_id(FK) |
| | frame_parent_id(FK) |
| | member_id(FK) |
| | frame_primary_phone_id(FK) |
| | frame_secondary_phone_id(FK) |
| | frame_tertiary_phone_id(FK) |
| | location_id(FK) |
| | frame_serial_number |
| | frame_lights_one_timestamp |
| | frame_lights_off_timestamp |
| | frame_callback_timestamp |
| | frame_display_mode |
| | frame_user |
| | frame_pwd |
| | frame_label_number |
| | frame_software_version |
| | frame_hardware_version |
| | frame_name |
| | public_directory |
| phone | phone_id |
| | isp_id(FK) |
| | primary_phone_nimber |
| | secondary_phone_nimber |
| | tertiary_phone_nimber |
| | primary_dns |
| | secondary_dns |
| frame_queue | frame_id(FK) |
| | content_id(FK) |
| | container_type_id(FK) |
| | slide_show_order |
| | slide_show_member |
| | picture_expiration_date |
| | picture_lock |
| | frame_queue_date |
| frame_history | frame_id(FK) |
| | history_timestamp |
| | frame_primary_phone_id |
| | frame_secondary_phone_id |
| | frame_tertiary_phone_id |
| | frame_callback_timestamp |
| | frame_software_version |

APPENDIX A-continued

| frame_history_detail | frame_id(FK) |
| | history_timestamp(FK) |
| | event_timestamp |
| | event_id(FK) |
| | data_primary |
| | data_secondary |
| frame_events | event_id |
| | event_dsc |
| | event_severity |
| buddy | member_id(FK) |
| | buddy_member_id(FK) |
| | buddy_name |
| frame_parent | frame_parent_id(FK) |
| account | member_id(FK) |
| | frame_id(FK) |
| | acct_created_date |
| | acct_status |

Relationsip Table

| Table name | Relationship description | Associated Table Name |
| --- | --- | --- |
| member | submits | picture |
| | may be a | channel_provider |
| | may be a | galerry_provider |
| | owns | frame |
| | maintains | accounts |
| | may be a | frame_parent |
| | owns | buddy |
| | chooses | buddy |
| | owns | picture_box |
| rating | restricts | member |
| | ranks | gallery |
| | ranks | channel |
| | restricts | frame |
| lock | locks | picture |
| gallery_provider | provides | gallery |
| gallery | captures | channel |
| | holds | content |
| channel_provider | provides | channel |
| phone | is dialed by | frame |
| frame | records | frame_history |
| | has | frame_queue |
| | bills | account |
| frame_history | contains | frame_history_detail |
| frame_event | describes | frame_history_detail |
| frame_parent | controls | frame |
| container_type | describes | frame_queue |
| | describes | picture_box |
| picture | fills | content |
| content | fills | picture_box |
| | fills | |
| content_parent_type | describes | content |

What is claimed is:

1. A system for distributing image data comprising:

at least one frame device configured to operate according to preferences defined by a user, said at least one frame device comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one frame device and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one frame device via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one frame device when said at least one frame device automatically issues a request for said image data.

2. The system of claim 1 wherein said at least one frame device stores said preferences at said at least one frame device in at least one behavior module.

3. The system of claim 2 wherein said preferences are also stored in said at least one server system.

4. The system of claim 2 wherein said at least one frame device periodically obtains an update for said at least one behavior module by obtaining said preferences from said at least one server system.

5. The system of claim 2 wherein said at least one behavior module directs said at least one frame device to obtain said image data from a content provider.

6. The system of claim 1 wherein input to said user interface is permitted when said user is authenticated by said at least one server system.

7. The system of claim 1 wherein said at least one frame device initiates said request for said image data at intervals obtained via said user interface.

8. A method for distributing picture mail via a network to a community of frame devices comprising:

connecting at least one frame device to a network wherein said at least one frame device comprises a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

obtaining a configuration number sequence from a memory located in said at least one frame device; using said configuration number sequence to initiate a connection to at least one data server via said network;

obtaining a localized number sequence from said at least one data server;

terminating said connection to said at least one data server;

reconnecting to said at least one data server via said network using said localized number sequence;

presenting a user interface to a user associated with said at least one frame device, wherein said presenting executes at a location physically separable from said at least one frame device;

obtaining image data from said user via said user interface;

providing said image data to said at least one frame device via said network;

storing said image data in said memory of said at least one frame device.

9. The method of claim 8 wherein said localized number sequence is stored in said memory of said at least one frame device.

10. The method of claim 9 wherein said at least one frame device utilizes said localized number sequence when said localized number sequence resides in said memory.

11. The method of claim 8 wherein said configuration number sequence is used when said localized number sequence does not reside in said memory.

12. The method of claim 8 wherein said obtaining said image data from said user via said user interface further comprises storing said image data in at least one data repository accessible via said network.

13. The method of claim 12 further comprising:

obtaining an update of said at least one frame device's onboard software from said at least one data repository via said network.

14. The method of claim 13 wherein said update to said onboard software modifies said at least one frame devices functionality.

APPX77

**35**

**15**. The method of claim **14** wherein said at least one frame device determines whether said update to said onboard software is current.

**16**. The method of claim **15** wherein said obtaining said update of said onboard software executes when said update to said onboard software is not current.

**36**

**17**. The method of claim **8** wherein said step of obtaining said configuration number sequence from said memory located in said at least one frame device occurs automatically.

*   *   *   *   *

US006442573C1

(12) **INTER PARTES REEXAMINATION CERTIFICATE** (858th)

# United States Patent

Schiller et al.

(10) **Number:** US 6,442,573 C1
(45) **Certificate Issued:** Apr. 18, 2014

(54) **METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY**

(75) Inventors: **Dean Schiller**, Glendale, CA (US); **Paul Yanover**, Los Angeles, CA (US)

(73) Assignee: **Ceiva Logic, Inc.**, Burbank, CA (US)

**Reexamination Request:**
No. 95/000,402, Jan. 26, 2009

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,442,573** |
| Issued: | **Aug. 27, 2002** |
| Appl. No.: | **09/458,849** |
| Filed: | **Dec. 10, 1999** |

(51) **Int. Cl.**
| | |
|---|---|
| *H04L 29/06* | (2006.01) |
| *H04L 12/58* | (2006.01) |
| *H04L 29/08* | (2006.01) |
| *H04L 12/18* | (2006.01) |

(52) **U.S. Cl.**
USPC ........... **715/210**; 358/403; 709/218; 715/209; 715/719

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 95/000,402, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Matthew Heneghan

(57) **ABSTRACT**

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. Each frame device has a display region (e.g. an LCD) surrounded with a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a centralized repository and then display that data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process. In one or more embodiments of the invention, the user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established and/or managed via a picture box. The picture box resides on a server computer and may be obtained by the user upon demand.



APPX79

# 1

## INTER PARTES REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 316

THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claims **1, 7-12** and **17** are cancelled.

Claims **2, 4, 5** and **13-16** are determined to be patentable as amended.

Claim **3**, dependent on an amended claim, is determined to be patentable.

New claims **18** and **19** are added and determined to be patentable.

Claim **6** was not reexamined.

**2.** [The system of claim 1] *A system for distributing image data comprising:*

*at least one frame device configured to operate according to preferences comprising an image display list defined by a user, said at least one frame device comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;*

*a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one frame device and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;*

*said at least one server system coupled to said at least one frame device via said network, wherein said at least one server system is configured to generate package data comprising said image data and said preferences and to periodically relay said package data comprising said image data and said preferences to said at least one frame device when and in response to said at least one frame device automatically initiating communication with said server system and issuing a request for a current one of said package data comprising said image data and said preferences,*

wherein said at least one frame device [stores] *is configured to authenticate said at least one server system before storing* said *image data and said* preferences *from said current one of said package data* at said at least one frame device in [at least one behavior module] *memory of said frame device.*

**4.** [The system of claim 2] *A system for distributing image data comprising:*

*at least one frame device configured to operate according to preferences defined by a user, said at least one frame device comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;*

*a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one frame device and configured*

# 2

*to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;*

*said at least one server system coupled to said at least one frame device via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one frame device when said at least one frame device automatically issues a request for said image data, wherein said at least one frame device stores said preferences and operating system software for said frame device at said at least one frame device in memory of said frame device, and* wherein said at least one frame device [periodically] obtains an update for said [at least one behavior module by obtaining said preferences] *operating system software* from said at least one server system.

**5.** [The system of claim 2] *A system for distributing image data comprising:*

*at least one frame device configured to operate according to preferences comprising an image display list defined by a user, said at least one frame device comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;*

*a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one frame device and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;*

*said at least one server system coupled to said at least one frame device via said network, wherein said at least one server system is configured to generate package data comprising said image data and said preferences and to periodically relay said package data comprising said image data and said preferences to said at least one frame device when and in response to said at least one frame device automatically initiating communication with said server system and issuing a request for a current one of said package data comprising said image data and said preferences,*

wherein said current one of said package data comprises a software update [at least one behavior module directs said at least one frame device to obtain said image data from a content provider].

**13.** [The method of claim 12] *A method for distributing picture mail via a network to a community of frame devices comprising:*

*connecting at least one frame device to a network wherein said at least one frame device comprises operating system software located inside said frame device and a border region modeled to resemble a picture frame designed to circumscribe printed photographs;*

*obtaining a configuration number sequence from a memory located in said at least one frame device; using said configuration number sequence to initiate a connection to at least one data server via said network;*

*obtaining a localized number sequence from said at least one data server;*

*terminating said connection to said at least one data server;*

*reconnecting to said at least one data server via said network using said localized number sequence;*

*presenting a user interface to a user associated with said at least one frame device, wherein said presenting executes at a location physically separable from said at least one frame device;*

**3**

obtaining image data from said user via said user interface;

providing said image data to said at least one frame device via said network;

storing said image data in said memory of said at least one frame device,

wherein said obtaining said image data from said user via said user interface further comprises storing said image data in at least one data repository accessible via said network;

further comprising: obtaining an update of said at least one frame device's onboard *operating system* software from said at least one data repository via said network.

**14**. The method of claim **13** wherein said update to said onboard *operating system* software modifies said at least one frame device's functionality.

**15**. The method of claim **14** wherein said at least one frame device determines whether said update to said onboard *operating system* software is current.

**16**. The method of claim **15** wherein said obtaining said update of said onboard *operating system* software executes when said update to said onboard *operating system* software is not current.

18. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences comprising an image display list defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network,

**4**

wherein said at least one server system is configured to generate package data comprising said image data and said preferences and to periodically relay said package data comprising said image data and said preferences to said at least one digital picture frame when and in response to said at least one digital picture frame automatically initiating communication with said server system and issuing a request for a current one of said package data comprising said image data and said preferences,

wherein said at least one digital picture frame is configured to authenticate said at least one server system before storing said image data and said preferences from said current one of said package data at said at least one frame device in said memory.

19. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network,

wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

\* \* \* \* \*

APPX81



US009124656B2

(54) **METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY**

(75) Inventors: **Dean Schiller**, Glendale, CA (US); **Paul Yanover**, Los Angeles, CA (US)

(73) Assignee: **Ceiva Logic Inc.**, Burbank, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1367 days.

(21) Appl. No.: **11/927,520**

(22) Filed: **Oct. 29, 2007**

(65) **Prior Publication Data**

US 2008/0120701 A1 May 22, 2008

**Related U.S. Application Data**

(63) Continuation of application No. 10/179,732, filed on Jun. 24, 2002, which is a continuation of application No. 09/458,849, filed on Dec. 10, 1999, now Pat. No. 6,442,573.

(51) **Int. Cl.**
*G06F 15/00* (2006.01)
*G06F 13/00* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............ *H04L 67/36* (2013.01); *H04L 12/5835* (2013.01); *H04L 29/06* (2013.01); *H04L 51/066* (2013.01); *H04L 63/102* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ................................ H04L 67/36; H04L 29/06
USPC .......... 715/716, 719, 722, 723, 726, 851, 853
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 4,742,345 | A | 5/1988 | Santo et al. ................... 345/107 |
| 5,394,166 | A | 2/1995 | Shimada |

(Continued)

FOREIGN PATENT DOCUMENTS

| WO | 92/05657 | 2/1992 | ............... H04N 1/21 |
| WO | WO 92/05657 | 4/1992 | |

(Continued)

OTHER PUBLICATIONS

Hagawara-Sys-Com, "Lukis (TM) JPEG Image Viewer (prduct information)," web page downloaded from www.hscus.com/prod03 No. n/a, pp. 1-2, Apr. 2001.

(Continued)

*Primary Examiner* — Kevin Nguyen
(74) *Attorney, Agent, or Firm* — The Hecker Law Group, PLC

(57) **ABSTRACT**

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. Each frame device has a display region (e.g. an LCD) surrounded with a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a centralized repository and then display that data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process. In one or more embodiments of the invention, the user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository.

**18 Claims, 12 Drawing Sheets**



APPX82

(51) **Int. Cl.**
*H04L 29/08* (2006.01)
*H04L 12/58* (2006.01)
*H04L 29/06* (2006.01)

(52) **U.S. Cl.**
CPC ............ *H04L 67/12* (2013.01); *H04L 67/1014*
(2013.01); *H04L 67/1017* (2013.01); *H04L*
*67/1036* (2013.01); *H04L 69/329* (2013.01)

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,448,372 A | 9/1995 | Axman et al. | |
| 5,561,531 A | 10/1996 | Funazaki | |
| 5,606,365 A | 2/1997 | Maurinus et al. | |
| 5,612,741 A | 3/1997 | Loban et al. | |
| 5,680,535 A | 10/1997 | Harbin et al. | 345/473 |
| 5,706,457 A | 1/1998 | Dwyer et al. | 345/349 |
| 5,708,826 A | 1/1998 | Ikeda et al. | |
| 5,740,549 A | 4/1998 | Reilly et al. | 705/14 |
| 5,760,916 A | 6/1998 | Dellert et al. | |
| 5,790,792 A | 8/1998 | Dudgeon et al. | |
| 5,838,906 A | 11/1998 | Doyle et al. | |
| 5,848,427 A | 12/1998 | Hyodo | |
| 5,862,297 A | 1/1999 | Timmermans | |
| 5,862,339 A | 1/1999 | Bonnaure et al. | |
| 5,864,387 A | 1/1999 | Reed et al. | 355/40 |
| 5,870,172 A | 2/1999 | Blume | |
| 5,898,600 A | 4/1999 | Isashi | |
| 5,905,492 A | 5/1999 | Straub et al. | |
| 5,913,088 A | 6/1999 | Moghadam et al. | |
| 5,923,736 A | 7/1999 | Shachar | |
| 5,923,738 A | 7/1999 | Cardillo, IV et al. | |
| 5,930,501 A | 7/1999 | Neil | 345/334 |
| 5,959,945 A | 9/1999 | Kleiman | |
| 6,005,690 A | 12/1999 | Suzuki et al. | |
| 6,025,827 A | 2/2000 | Bullock et al. | |
| 6,037,989 A | 3/2000 | Kim | |
| 6,058,428 A | 5/2000 | Wang et al. | |
| 6,067,566 A | 5/2000 | Moline | |
| 6,111,586 A | 8/2000 | Ikeda et al. | 345/433 |
| 6,141,010 A | 10/2000 | Hoyle | |
| 6,167,469 A * | 12/2000 | Safai et al. | 710/62 |
| 6,199,106 B1 | 3/2001 | Shaw et al. | 709/217 |
| 6,205,126 B1 * | 3/2001 | Moon | 370/329 |
| 6,215,559 B1 | 4/2001 | Bryniarski et al. | |
| 6,266,069 B1 | 7/2001 | Thagard et al. | 345/638 |
| 6,381,631 B1 * | 4/2002 | van Hoff | 709/202 |
| 6,462,761 B1 | 10/2002 | Hasuo | 715/838 |
| 6,463,468 B1 | 10/2002 | Buch et al. | |
| 6,502,194 B1 | 12/2002 | Berman et al. | |
| 6,535,228 B1 * | 3/2003 | Bandaru et al. | 715/752 |
| 6,567,983 B1 | 5/2003 | Shiimori et al. | |
| 6,571,271 B1 | 5/2003 | Savitzky et al. | |
| 6,668,278 B1 | 12/2003 | Yen et al. | |
| 6,670,934 B1 * | 12/2003 | Muoio et al. | 345/1.1 |
| 6,717,567 B1 | 4/2004 | Bowden, III et al. | |
| 6,741,271 B1 | 5/2004 | McConica et al. | 715/839 |
| 6,784,925 B1 | 8/2004 | Tomat et al. | 348/207.11 |
| 6,975,308 B1 * | 12/2005 | Bitetto et al. | 345/204 |
| 7,155,679 B2 | 12/2006 | Bandaru et al. | |
| 2003/0093493 A1 * | 5/2003 | Watanabe et al. | 709/217 |

### FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| WO | 95/30300 | 11/1995 | ............ | H04M 11/00 |
| WO | 95/31872 | 11/1995 | ............... | H04N 7/10 |
| WO | WO 95/30300 | 11/1995 | | |
| WO | WO 95/31872 | 11/1995 | | |
| WO | 96/29639 | 9/1996 | ............... | G06F 1/00 |
| WO | WO 96/29639 | 9/1996 | | |
| WO | 97/47106 | 12/1997 | ............... | H04L 9/00 |
| WO | WO 97/47106 | 12/1997 | | |
| WO | 98/04088 | 1/1998 | | |
| WO | WO 98/04088 | 1/1998 | | |
| WO | 98/26548 | 6/1998 | ............ | H04L 29/06 |
| WO | WO 98/26548 | 6/1998 | | |
| WO | 99/04342 | 1/1999 | ............. | G06F 13/00 |
| WO | WO 99/04342 | 1/1999 | | |
| WO | 99/44339 | 9/1999 | ............. | H04L 12/28 |
| WO | WO 99/44339 | 9/1999 | | |
| WO | 99/54663 | 10/1999 | ............. | G06F 12/00 |
| WO | WO 99/54663 | 10/1999 | | |
| WO | 99/56447 | 11/1999 | ............. | H04M 1/00 |
| WO | WO 99/56447 | 11/1999 | | |
| WO | 00/29960 | 5/2000 | ............. | G06F 13/00 |
| WO | WO 00/29960 | 5/2000 | | |

### OTHER PUBLICATIONS

Kodak, Inc. Smart Picture Frame . . . for the Story Box (TM) Network (product description), downloaded from www.kodak.com/US/en/digital/accessories/smartFrame/ on Apr. 2001 (7 p. reprint).

Heather Newman Free Press Staff, W., "Nifty Ways You Can Soup up Your Machine," Detroit Free Press No. --, pp. 3E, Aug. 1999.

Anonymous, "Visions of the Future," Blaricum, Neatherlands: V+K Publishing No. ISBN 90 6611 591 2, pp. 12-13, Dec. 1996 (reprinted 1998).

Takashi, D. "Doing Fieldwork in the High Tech Jungle", The Wall Street Journal, p. B1 & B22, Oct. 27, 1998.

Kirschner, S. K., "Ideas that stick," Popular Science, vol. 254 No. 2, pp. 27, Feb. 1999.

US 5,790,792 (Dudgeon et al.) Aug. 4, 1998; abstract, figures 1-5, Claims 1-14; relevant to previously filed Claims 1-43.

Hagiwara-Sys-Com U.S., "Lukis (TM) JPEG Image Viewer (product info.)," web page download from www.hscus.com/prod03 No. n/a, pp. 1-2, Apr. 2001.

Kodak, Inc. Smart Picture Frame . . . for the Story Box (TM) Network (product description), downloaded from www.kodak.com/US/en/digital/accessories/smartFrame/ on Apr. 2001.

Newman, Heather, Free Press Staff Writer, "Nifty Ways You Can Soup Up Your Machine," Detroit Free Press No. , pp. 3E, Aug. 22, 1999.

Anonymous, "Visions of the Future," Copyright 1996, 3rd edition 1998, Philips Design, Eidonhover, NL and V+K Publishing, Blaricum, NL, ISBN 90 6611 591 2, pp. 12-13.

Takashi, D. "Doing Fieldwork in the High Tech Jungle," The Wall Street Journal, p. B1 & B22, Oct. 27, 1998.

Okamoto et al., "Reproducing Device," translation of WO 95/54663, as provided by Ralph McElroy Translation Company (Washington DC), pp. 1-15+Figures.

Bill Gates Keynote Speech Fall/COMDEX, Alladain Hotel, Las Vegas, Nevada, Nov. 14, 1994 http://ourworld.compuserve.com/homepages/r_harvey/iayf2005.htm.

Elizabeth Corcoran, "Software Giant Targets Huge Consumer Market With a Host of High-Tech Innovations," The Washington Post, Nov. 13, 1994.

Stephan Somogyi, "Future Perfect," Interactions, Nov. + Dec. 1999, at 17-18.

Anthony Mills, "Collaborative Engineering & the Internet: Linking Product Development Partners via the Web" 160-3 (Binstock ed., Society of Manufacturing Engineers 1998).

Peter M. Corcoran, et al., "Internet Enabled Digital Photography" 45 IEEE Transactions on Consumer Electronics 577 (1999).

William H. Gates III, The Road Ahead, Viking, New York, New York USA 1995, pp. 216-227.

Kathleen Kenna, $81 Million Home Built for a King—of Cyberspace, The Toronto Star, Toronto, Ontario Canada, Aug. 4, 1997, p. A1.

Jim Erickson, The House That Microsoft Built: Billionaire Bill's Estate Will be an Electronic Showcase for Art, Seattle Post-Intelligencer, Seattle, Washington USA, May 10, 1991, p. D1.

O. Casey Corr, Gates Buys Electronic Rights to Artwork—Seattle Art Museum Images Will be Shown at his $5 Million Home, The Seattle Times, Seattle, Washington USA, May 9, 1991.

Jacqueline Lunn, Virtual Reality, Sunday Herald Sun, Melbourne, Victoria Australia, Jan. 1, 1998, p. 14.

Susan Nielsen, Technology Doesn't Make for Random Moonings, The Columbian, Vancouver, Washington USA, Mar. 5, 1998.

(56) **References Cited**

OTHER PUBLICATIONS

Ernst Schmiederer, All Power Proceeds From Picture, Ars Electronica, Linz, Austria 1998.

James Wallace, The House Big Money Will Buy if You Were the Richest Person in the World: What Kind of Home Would You Buy? Here's What Bill Gates Did, Roanoke Times & World News, Roanoke, Virginia USA, Sep. 28, 1997, p. D1.

Dawna Travis Dewire, Thin Clients: Delivering Information Over the Web, Michael Sprague ed., McGraw-Hill, New York, New York USA, 1998, Chaps. 15-16, pp. 235-264.

Neil Templin, Choice Hotels International Bets Guests Will Go for Wired PCs, The Wall Street Journal, New York, New York USA, Jul. 26, 1999.

Microsoft Corporation, Microsoft Announces Internet Referral Server to Facilitate Selection of Internet Service Provider for Users of Windows, Microsoft Internet Explorer, press release, Redmond, Washington USA, Jul. 30, 1996.

Jeff Pulver, A Personal Cast: BackWeb provides a twist on the PointCast Model by Allowing Users to Broadcast as well as Receive Material, Internet World, Norwalk, Connecticut USA, Dec. 1996, pp. 110-112.

Carolyn Bickford, Free Internet News and Stock Reports: Screen-Saver News Service Gives You Only the News You Choose, MacUser, New York, New York USA, Nov. 1996, p. 33.

Whit Andrews, Planning for Push: How to Seize Control of the Technology That's Sweeping the Web, Internet World, Norwalk, Connecticut USA, May 1997, pp. 45-52.

Anonymous, Visions of the Future, V+K Publishing, Blaricum, The Netherlands, 1998, pp. 130-131.

Frame Media, Inc., Detailed Request for Inter Partes Reexamination Under 35 U.S.C. 311-318 and 37 C.F.R. 1.902 et Seq., filed with the USTPO on Oct. 15, 2008.

* cited by examiner



*FIGURE 1A*
*(Prior Art)*



**FIGURE 1B**
**(Prior Art)**



**FIGURE 1C**
**(Prior Art)**



**FIGURE 2A**



**FIGURE 2B**



**FIGURE 3**



**FIGURE 4**



FIGURE 5



**FIGURE 6**



**FIGURE 7**



FIGURE 8



**FIGURE 9**



**FIGURE 10**

# METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY

## CROSS REFERENCE TO RELATED APPLICATIONS

This patent application is a continuation of and claims the benefit of the filing date of U.S. patent application Ser. No. 10/179,732 entitled "Method and Apparatus for Distributing Picture Mail to a Frame Device Community" filed Jun. 24, 2002, which is a continuation of U.S. patent application Ser. No. 09/458,849 entitled "Method and Apparatus for Distributing Picture Mail to a Frame Device Community" filed Dec. 10, 1999, issued as U.S. Pat. No. 6,442,573 on Aug. 27, 2002.

## FIELD OF THE INVENTION

This invention relates to the field of computer software. More specifically, the invention relates to a method and apparatus for distributing picture mail to a frame device community.

Portions of the disclosure of this patent document contain material that is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office file or records, but otherwise reserves all copyrights whatsoever.

## BACKGROUND

Traditional Picture Frames:

Picture frames provide a visually pleasing way to present photographs for display. People typically prefer to use picture frames, rather than digital display mechanisms (e.g. computer monitors), because of the aesthetic qualities associated with such frames. However, several problems and disadvantages result from the use of traditional picture frames.

For example, a problem that may be encountered by picture frame users is that changing the picture in the frame requires a series of manual steps. For example, a person who wishes to change the picture must manually remove the picture and replace it with a new one. Consequently, changing the picture requires that a person be physically located at the same place where the picture frame resides.

An additional problem with picture frames is that the frame does not have the ability to adjust the dimensions and/or size of the picture to fit within the display area. Pictures placed into the picture frame must correspond to the dimensions of the frame's display area. One prior art attempt to overcome these limitations is the use of various type of digital display device. The following section describes a prior art digital display device and discusses the inherent limitations of the device.

Digital Display Device:

FIG. 1a illustrates a prior art device (e.g. the Sony PHD A55 CyberFrame™) capable of displaying digital images. However, there are several problems associated with this device. For example, the device lacks the ability to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user. The device shown in FIG. 1a consists of a display 100. Display 100 is an active matrix LCD screen configured to display digital video data and still image data. The data shown on display 100 is obtained from storage media 103. Storage media 103 is a memory medium capable of storing video and/or image data (e.g. a Memory Stick™).

The device contains software and/or hardware configured to playback MPEG or JPEG data files obtained from storage media 103. The device supports playback in a variety of different resolutions and can, for example, display JPEG data in UXGA (1600×1200), SXGA (1280×960), XGA (1024×768), or VGA (640×480). MPEG data files are shown on display 100 using a presentation mode that supports a resolution of 320×240 or a video mode that uses a resolution of 160×112.

The device also has built-in speaker(s) 105 and volume control 107. Speakers 105 provide a way to play back sound data introduced to the device via storage media 103. Volume control 107 allows the user of the device to adjust the decibel level. Control mechanism 109 contains the software and/or hardware utilized to control how data is displayed. For example, control mechanism 109 has a slide show mode that allows the user to display several images at varying intervals. Control mechanism 109 also provides the system with a way to delete unwanted images or keep certain images from being deleted. Control mechanism 109 is configured to provide other functionality, such as a sleep timer, brightness control, an index mode, an automatic angle detector, and a touchless sensor.

A problem with prior art mechanisms, such as the one illustrated in FIG. 1a, is that the user must physically provide storage media 103 to the device. Thus, a person who does not have physical access to the device cannot introduce new images into the device. Moreover, the device cannot be controlled from a remote location. For example, making changes to a web site cannot control the behavior of the control mechanism.

A further problem is that the functions offered by control mechanism 109 cannot be remotely updated, modified, or otherwise changed. For example, a new feature, such as the ability to obtain new images from a network, cannot be added by transmitting a software update to the device from a remote source. The device illustrated in FIG. 1a is isolated from other devices and therefore does not have the ability to communicate with such devices over a telecommunication medium.

Another limitation inherent in the design of the prior art device is that the device cannot automatically receive different types of image data. For example, the device cannot obtain different types of image data via an image delivery service. The user of the device illustrated in FIG. 1a cannot elect to periodically receive information relating to a particular topic such as the weather report. Computer networks are a prior art mechanism used to propagate data to devices connected to the network. The following section describes several techniques used to send and receive data across such computer networks and explains the limitations and disadvantages associated with such techniques.

Computer Networks:

A network is an amalgamation of interconnected computers. Devices properly connected to the network may utilize the network to communicate with other devices coupled to the network. A server computer, for example, may use a network to transmit data to a client computer for display. There are several different techniques for propagating data to devices connected to the network. For example, electronic mail, client pull, and server push mechanisms all are examples of techniques that provide a way to transmit data to a client computer. However, these techniques lack a mechanism for establishing and then controlling the behavior of a device from a remote location. For example, these techniques cannot dynamically obtain image data from a networked data source and then display that data according to the behavior criteria established by an authorized user.

A. Electronic Mail Systems:

The following section discusses electronic mail systems and points out the limitations associated with using such systems to distribute image data. An electronic mail system is an example of a prior art system used to distribute data to one or more recipients. The electronic mail system, for example, provides users with a way to transmit data from one computer to another computer.

An example of an electronic mail system is shown in FIG. 1*b*. The system consists of one or more client computers 125-128 each having a client software program 129-132 configured to send and receive data, a network 133 configured to relay the data to one or more recipients, and a mail server 120 having server software 121 configured to store the data until it is retrieved by the designated recipient(s).

A user residing at client computer 125, for example, may use the system shown in FIG. 1*b* to transmit an image file to another user residing at a different computer (e.g. client computer 127). To send the file the user typically executes the appropriate client software program (e.g. client software 129), determines the data to be sent, and directs the program to send the data to a recipient. Data that is sent is routed across network 133 to the appropriate mail server 120-123 associated with the recipient. Once mail server 120 receives the data, the server holds the data in the intended recipients account until requested by the recipient. For example, mail server 120 will store the data until the recipient residing at client computer 127 executes a local version of client software program 129 and directs the program to obtain data from mail server 120.

A problem associated with using current electronic mail systems is that to receive and view images recipients must have physical access to a client computer containing a client software program configured to obtain mail data. For example, an electronic mail client (e.g. Microsoft Outlook Express) and/or a web browser (e.g. Microsoft Internet Explorer) must reside on client computer 127 in order for it to obtain data from server 120.

An additional problem with using current electronic mail systems is that in order to receive data the recipient must know how to navigate around the operating system and how to use the program utilized to obtain the data. For example, in some instances the recipient is required to manually configure the program utilized to obtain data. This requires that the recipient know the name and/or address of server 120 and be familiar with the settings required to login to server 120. Current electronic mail systems cannot, for example, automatically connect to an image source, obtain image data for display, and then automatically display the image data according to a set of predetermined preferences.

Instead, current systems require the recipient to manually perform a series of steps before the image data may be viewed. For example, receivers that use a Simple Mail Transfer Protocol (SMTP)/POP electronic mail system are typically required to 1) open a client program configured to connect to the appropriate server, 2) direct the client to obtain the image data from the server, 3) select the electronic mail message containing the image data from a list of received messages, and 4) provide the image data to a client program configured to display the image data.

In some instances, however, the receiver cannot use the electronic mail client to view the image data, but instead must have an application specially configured to view the image data. If, for example, the receiver's electronic mail client cannot process images sent in the Tagged Image File Format (TIFF), the receiver must have an application capable of viewing TIFF files in order to view the image data transmitted

by the sender. Thus, a problem with using current electronic mail clients to transmit image data is that such clients lack flexibility and require the user to manually open the electronic mail message to view the attached image data.

Another problem is that electronic mail client programs cannot obtain image data and then display a full sized view of that data without requiring the user to manually intervene. Current electronic mail clients are not configured to periodically obtain and then automatically display images. Additionally, the receiver cannot control which images may be displayed and the frequency with which those images are displayed cannot be set based on the receiver's preferences. For example, mail clients lack the ability to automatically distribute data to a client computer according to a set of preferences determined by the user of the client computer. Furthermore, the receiver cannot set the behavior characteristics of the electronic mail client unless physically present at the client.

B. Client Pull:

The following section discusses the client pull technique and points out the limitations associated with using such systems to distribute image data. Client pull is an example of a technique used to download data from a server computer. When client pull is employed, data is requested by a client computer and then delivered by a server. For example, if web browser 131, executing at client computer 127, requests web page 151 stored on web server 150, it will cause web server 150 to execute web server software 152 which will in turn transmit web page 151 to client computer 127. The World Wide Web (WWW) is an example of a system that utilizes the client pull technique. The WWW is a segment of the Internet that utilizes an application layer protocol called the Hyper-Text Transfer Protocol (HTTP) to disseminate and to obtain information from server computers (e.g. web server 150).

HTTP is a request/response protocol used with distributed, collaborative, hypermedia information systems. In operation, HTTP enables one computer to request data from another. For example, client 127 can use HTTP to communicate with web server 150 via network 133. In this scenario web server 150 acts as a data store for one or more web pages 151 and is capable of processing client 127's requests for such files. The web pages 151 stored on web server 150 may contain any type of data. For example, the files may contain data used to construct a form, image data, text data, or any other type of data. HTTP has communication methods that utilize the client pull technique to allow client 127 to request data from web server 150. Client 127 may use web browser 131 to initiate a request and thereby obtain web page 151.

Typically, web browser 131 requests at least one web page 151 from web server 150 and web server software 151 responds to the request by forwarding requested web page 151 to client 127. Once web page 151 arrives the connection is between client 127 and web server 150 is terminated. Client 127 uses web browser 131 to display requested web page 151. Web server 150 does not maintain any state information about the request once the connection is terminated. HTTP, which is frequently used to implement client pull, is, therefore, a stateless application protocol. That is, client 127 can send several requests to web server 150, but each individual request is treated independent of any other request. Web server 150 has no recollection of any previous request. Thus, for example, if a form is completed by the user and submitted to web server 150 for processing, the web server does not maintain a record of the data entered the form.

Once a file is sent from web server 150 to client 127 it becomes ready for display. Client 127's web browser 131 is typically used to format and display web page 151. Web

5           6

browser **131** allows the user to request and view web page **131** (or any other web page) without having to learn a complicated command syntax. Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. Some web browsers can display several different types of files. For example, web browser **131** may display files (e.g. web pages) written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF). It is also possible to display various other types of files using language such as Standard Generalized Markup Language (SGML) or eXtensible Markup Language (XML).

A problem with utilizing client pull to distribute data, is that information about what data is to be disseminated to the client computer must be contained in the initial request. For example, if a user residing at client **127** wishes to request web page **131**, the user may do so by entering a Uniform Resource Locator (URL) and then transmitting the URL to web server **150**. The URL is used to identify the name and location of web page **131** (e.g. web page **131** resides on web server **150**). When web server **150** receives the request it transmits requested web page **131** to client **127**. Web server **150** is not configured, for example, to transmit data that web server **150** determines client **127** needs (e.g. onboard software updates).

Another problem associated with client pull is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **150**, for example, does not provide a way to ensure that data intended for display at a certain device is only sent to that device (e.g. a device with a unique serial number). An additional problem is that client **127** cannot be directed to request data without input or direction from a user residing at client **127**. For example, a user residing at client **128** cannot control the behavior of client **127**. Systems utilizing client pull do not have a mechanism for control the request patterns of multiple devices.

C. Server Push:

The following section discusses the server push techniques and points out the limitations associated with using such systems to distribute image data. Server push is a technique that provides a way to transmit a predetermined data set from a server computer to one or more client computers. Referring now to FIG. 1*c*, a system configured to perform one or more server push operations is shown. The system is generally composed of a server system **170**, a network **173**, and client computers **175-171**. Each element of the system is configured to perform a task. Server system **170**, for example, transmits data to any client computer **175-171** scheduled to receive data. Network **173** provides end-to-end connectivity for the system and thereby links server system **170** with client computers **175-171**.

Each client computer **175-171** contains software configured to provide the user with an interface for operating the computer (e.g. an operating system). A web browser **180**, residing at each client, provides users with a way to inform server **170** what type of data to send and how often data of that type should be sent. For example, if the user of client computer **175** wishes to have server **170** transmit stock market quotes (e.g. data **172**) to client computer **175** on a daily basis, the user may direct server **170** to do so by obtaining a web form **190** from server **170** that provides such a option, filling the form out, and submitting the form to server **170**. When server **120** receives the data provided by the user, it schedules the stock market quotes for dissemination at the interval specified by the user.

Server **120** may also be configured to disseminate electronic mail messages to client computers **125-131** on a regular basis. For example, if the user of client computer **129**, or any other person authorized to control the behavior of server **120**, directs server **120** to transmit an electronic mail messages to client computer **129** once a week, server **120** will distribute an electronic mail message to client computer **129** at the interval specified by the user.

Other types of data, such as document written using the HyperText Markup Language (HTML) may also be transmitted to client computers **175-171** for display. Such document may, for example, be embedded into the graphical user interface (e.g. the GUI desktop) or shown as screen savers. Examples, of such distribution systems include the active desktop included with Internet Explorer and the screen saver distribution scheme used by pointcast.

A problem with server push systems is that data is transmitted in a unidirectional manner. For example, data may be sent from server **170** to client computer **177** using server push techniques, but data cannot be transmitted from client computer **175** to client computer **177**. Another problem associated with server push is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **170**, for example, does not contain a mechanism for ensuring that data is only sent to devices having a certain serial number.

None of the prior art devices and/or systems described provide a way to distribute image data to a customizable frame devices. The prior art lacks a mechanism for remotely customizing the behavior of each frame device and does not have a distribution scheme configured to distribute image data to each frame device.

## SUMMARY OF THE INVENTION

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display from a repository of that may be accessed via an interconnection fabric (e.g. a computer network). If a person (referred to as a user) wants to display an image on the frame device the person may do so by transmitting the image data to the repository.

The frame device is programmed to connect to the repository and obtain new images for display. Once the frame device is connected to the network it may also use the opportunity to update the device's onboard software. In one or more embodiments of the invention, the frame device is configured to automatically execute the steps typically required for it to connect to the repository. Thus, the frame device is self-aware and requires only a minimal amount of input from the user. Once the frame device is connected to a power source and a telephone line, for example, the device is configured to automatically access the data repository without any further user input. The software that provides the frame device with its operational logic may be automatically upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. Thus, if certain information necessary for normal day-to-day operation is lost (e.g. by a power outage), the frame device may recover without requiring input from the user.

The type of images and the frequency with which such images are displayed is configured remotely via a graphic user interface called a picture box. In one or more embodi-

ments of the invention, the picture box is accessible via a web browser. The picture box provides a way to customize the behavior characteristics of the frame device to conform to the wishes of the user. Each frame device has a display region (e.g. an LCD) surrounded by a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. The border region may be, for example, an actual picture frame with a paper matte board that surrounds a thin LCD display region. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a data repository and to then display that data according to criteria established by an authorized user.

The data repository is populated with image data via an image collection process. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the target frame device. The user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established via a picture box.

When a user initializes a frame device, the user associated with the initialized frame device becomes a member of an online community. When the user initiates the frame device a picture box is created that allows the user to specify mange the behavior of the user's frame device. Each picture box is assigned a unique username (e.g. a picture address) and associated with one or more frame devices. The picture box provides the user with an interface for managing the behavior characteristics and filter criteria of one or more registered frame devices. For example, the picture box provides the user with a way to specify when the frame device should connect to the data repository to obtain a image and/or software update. When an update occurs new image data and or information related to the operation and behavior of the frame device may be transmitted to the device.

In one or more embodiments of the invention, users may obtain a picture box by using a picture box viewer (e.g. a web browser). A picture box engine residing on a server system may generate the picture box. The picture box engine uses information stored in the data repository to generate the picture box that is displayed by the picture box viewer. For example, a user residing at a client computer may use a picture box viewer to request a picture box from a server computer. The server will respond to the request by executing the picture box engine, which in turn obtains the data used to generate a picture box from the data repository.

## DESCRIPTION OF THE DRAWINGS

FIG. 1a illustrates a device configured to display digital images.

FIG. 1b illustrates the components used by an electronic mail system and/or a client pull system such as the World Wide Web.

FIG. 1c illustrates a system configured to push data from a server computer to one or more client computers.

FIG. 2a is a block diagram that illustrates the components utilized by one embodiment of the invention.

FIG. 2b illustrates the system components utilized by one or more embodiments of the invention.

FIG. 3 is a block diagram that illustrates the internal components of the frame device.

FIG. 4 illustrates what type of data may be stored in the data repository.

FIG. 5 is an illustration of a picture box viewer containing a picture box.

FIG. 6 is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in a frame device.

FIG. 7 illustrates an embodiment of the invention that may be utilized to access the picture box interface.

FIG. 8 is a flow chart illustrating the process utilized by one or more embodiments of the invention to register a frame device.

FIG. 9 illustrates the process utilized by one or more embodiments of the invention to initialize a frame device.

FIG. 10 illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates.

## DETAILED DESCRIPTION

A method and apparatus for distributing picture mail to a frame device community is described. In the following description numerous specific details are set forth in order to provide a more thorough understanding of the present invention. It will be apparent, however, to one skilled in the art, that the present invention may be practiced without these specific details. In other instances, well-known features have not been described in detail so as not to obscure the invention.
General Overview:

The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display and/or software from a data repository via an interconnection fabric (e.g. a computer network). Each frame device is configured to automatically interface with the data repository to obtain image data and to then display that data according to a set of preferences. For example, a frame device may dynamically obtain image data from a networked data source (e.g. a client computer), store that data, and then display that data according to criteria established by an authorized user.

Each frame device provides users with a simplified interface that minimizes the amount of complexity presented to the user without limiting the ability of the device to perform an advanced set of functions. For example, each frame device is programmed to automatically configure itself without obtaining input from the user. So long as the frame device is connected to a power source and a communication source it may remain operational without obtaining input from the user. The software that controls the behavior of each frame device may also be updated or modified without requiring additional input from the user. One embodiment of the invention provides a simplified pushbutton interface that provides users with a mechanism for manually directing the behavior of the device. However, the device will continue to operate even if users do not direct it to via the pushbutton interface. Each frame device is part of a community of interrelated components that operate in concert to provide image data to a family of one or more frame devices. The details of the system are further described below.

Image data is typically stored in a data repository (e.g. a database). Users or people authorized to submit images may transmit image data to the data repository which in turn provides the image data to an associated frame device by sending the image data via picture mail. A picture box, which comprises functionality further described below, provides users with a mechanism for controlling the behavior characteristics of each frame device. Thus, users may control the picture box

9 10

without touching the pushbutton interface on the device. When the picture box is created the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses.

Each frame device contains onboard software designed to automatically connect to an image delivery service. The image delivery service provides a mechanism for transmitting certain types of images to a frame device based on a set of predefined criteria. The specific aspects of the image delivery service are further described below. When a frame device is connected to a network it may automatically execute an initialization process without obtaining any additional input from the user. In one embodiment of the invention this is referred to as the self-configuration protocol. The initialization process is further described below. The data repository may act as an image relay mechanism that processes any image data that is submitted to the system via an image collection/submission engine. The functionality provided by the image collection/submission engine is discussed further below. Once the image data is processed by the collection/submission engine the data repository stores the image data until the frame device connects to the repository for an update. Each frame device is designed to connect to a data source such as the data repository to obtain an update (e.g. image data or software data) using a conversation/security protocol.

Automatic Configuration without User Input:

The device is configured to automatically execute the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software. In one or more embodiments of the invention, for example, the frame begins to acquire configuration information by obtaining the toll free phone number stored in the devices' memory and using that number to connect to a server computer. The server responds by analyzing the caller ID information contained in the connection signal (e.g. ANI) to determine what local phone number or phone numbers the frame device should utilize to inexpensively connect to the data repository. Based on the location of the frame device during dial-in, the server computer provides the frame device with information that directs the device when and where it should dial. The caller ID information, for example, provides the frame device with a way to discern what geographic region the device is located in and based on that information the device knows when to connect to the data repository for an image and/or software update. If the server determines the frame device is in located in Los Angeles, Calif. the server may inform the device to connect at 12:00 am Pacific Daylight Time (PDT) using a phone number located in the Los Angeles area. The local phone number information may be referred to as a localized number sequence.

The frame device responds by storing the information provided by the server in memory and then disconnecting from the toll free phone number without requiring any input from the user. Once the device is disconnected from toll free phone number the frame redials using one of the local phone numbers obtained while the device was connected to the toll free phone number. The local phone number provides the frame device with a mechanism for connecting to the data repository to obtain new images and/or software updates. The frame device typically uses the local phone number information to connect to the data repository at the time specified by the server without requiring any input from the user of the device. Thus, the frame device is self-configuring and self-maintained. If certain information necessary for normal day-to-day operation is lost (e.g. by a power outage or by the user

physically moving the frame device), the frame device may recover without requiring input from the user.

Self-Upgrading without User Input:

The software that provides the frame device with its operational logic may be automatically updated and/or upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. The functionality of the pushbutton switch or behavior characteristics of the frame device, for example, may be altered by updating the onboard software that controls the device. Transmitting an update to the frame device may modify any characteristic that may be controlled via onboard software.

Simplified User Interface:

Users are not required to perform any complex activities to configure the device. The device may, however, connect to the data repository when manually directed to by the user. The frame device contains a simplistic pushbutton interface that provides novice users with a mechanism for directing the behavior of the device. For example, one or more pushbuttons provides users with a way to manually initiate a connection to the data repository. Other functions such as dimming the LCD or cycling through a set of available images (e.g. slide show mode) may also be provided by the pushbutton interface. A detailed discussion of the pushbutton interface located on the frame device follows below.

The Components of a Frame Device:

FIG. 3 shows a block diagram illustrating the components of a frame device as it is used by one embodiment of the invention. Each frame device comprises a Central Processing Unit (CPU 305), memory (e.g. flash memory and DRAM), and telecommunication hardware and/or software configured to provide the device with a mechanism for connecting to a data repository. Onboard software stored in memory provides each frame devices with a set of behavior characteristics that may be customized by the user, or by any other person authorized to alter the frame device's behavior characteristics. CPU 305 is responsible for executing tasks for the frame device. In one or more embodiments of the invention, CPU 305 is a microprocessor manufactured by Cirrus Logic, such as the EP7211 ARM processor, or a microprocessor manufactured by Intel, such as the 80×86, or Pentium processor. However, any other suitable CPU, microprocessor, or microcomputer may be utilized.

CPU 305 communicates with the other components of the frame device utilizing system bus 335. Bus 335 may contain, for example, thirty-two address lines for addressing flash memory 309 or DRAM 307. The system bus 335 may also include, for example, a 64-bit or 32-bit data bus for transferring data between and among the components, such as CPU 305, flash memory 309, DRAM 312, and DRAM 307. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

Display 313 represents the display hardware used to render a visual representation of the image data. In one or more embodiments of the invention, display 313 is a Liquid Crystal Display (LCD). However, the invention also anticipates the use of other display mechanisms that are capable of rendering an image for display. Flat panel technologies such as plasma displays, Field Emission Displays (FED), or improved Cathode Ray Tube (CRT) monitors, for example, may also be utilized to display images. Display 313 is surrounded with a border region modeled to resemble a traditional picture frame. Display 313 is a low profile LCD designed to minimize the prevalence of display 313. Thus, the emphasis is on the picture frame rather than the LCD. Controller 311 controls

the image data output to display **313**. For example, if LCD hardware it utilized to display image data, controller **311** is an LCD controller. DRAM **312** is the memory controller **311** uses to prepare image data for display on display **313**. DRAM **312**, for example, may be utilized for purposes of frame buffering. Dithering may be performed on the frame device in order to improve the quality of images displayed on display **313**.

Flash memory **309** provides the frame device with storage space for the image data. For example, image data held in the data repository may be copied into flash memory **309** when a connection to the data repository occurs. In one or more embodiments of the invention, the image data held in flash memory **309** is stored in a compressed format and decompressed when the data is output to display **313**. Flash memory **309** may hold the onboard software that defines the functionality of the device. The mechanism and data used to control the behavior characteristics of the frame device is also stored in flash memory **309**. For example, flash memory **309** may hold the local phone number utilized to connect to the data repository. In case the local phone number cannot be reached a toll-free phone number also resides in flash memory **309**. The toll-free phone number may be used if the local number fails. Other information that is required to initiate a communication session with the data repository may also reside in flash memory **309**.

Flash memory **309** may store timing information. For example, the time the frame device is scheduled to dim display **313**, the time the frame device is scheduled to connect to the data repository for an update, and the current time are stored in flash memory. In one or more embodiments of the invention, relative time is utilized to indicate the current time. Relative time is kept by keeping track of the number of clock cycles performed by CPU **305**. However, the invention contemplates the use of other mechanisms for keeping time. For example, the current time may be obtained from a central source located on the frame device. The current time may also be obtained by accessing other networked devices such as a server computer containing a system clock.

In one or more embodiments of the invention, flash memory **309** is configured to store the software release number and/or version number of the onboard software. When a connection to the data repository occurs the version of software held resident in flash memory **309** is compared to the version held in the repository. If the version of software held in flash memory **309** is older than the version in the data repository then a newer version is loaded into flash memory **309**. Thus, the frame device is configured to automatically update its software without requiring input from the user. DRAM **307** provides the frame device with an execution space for general-purpose tasks (e.g. frame buffering). Modulator demodulator **319**, for example, may utilize DRAM **309** as a place to process downloaded data.

The function of pushbutton switch **300** is to provide the user with an interface for controlling certain attributes of the frame device. If, for example, the user depresses pushbutton switch **300** the frame device will illuminate display **313** so that images shown on the display become visible. Pushbutton switch **300** is also used as a frame advance. Thus, pushbutton switch **300** provides the user with a way to navigate through the images held in flash memory **309**. If ten images currently reside in flash memory **309**, the user may utilize pushbutton switch **300** to cycle through the ten images in flash memory **309** available for display. One embodiment of the present invention contemplates using pushbutton switch **300** to force the frame device to update its image library. For example, depressing pushbutton switch **300** for an extended duration of time (e.g. several seconds) causes the device to initiate a connection to the data repository. Once the connection is established the frame device utilizes the information contained in the data repository to supply the frame device with a new set of images. Pushbutton switch **300** also provides a way for the user to alter the backlight level of display **313**. In one embodiment of the present invention, pushbutton switch **300** is configured to alter any of the attributes of the frame device provided via software. Thus, it is possible to periodically change the features controlled by pushbutton switch **300** to meet the demands of the user.

The invention also contemplates the use of multiple pushbutton switch **300**'s. If multiple pushbutton switch **300**'s are present each pushbutton switch **300** may be configured to perform different functions. For example, one pushbutton switch **300** may be utilized as a dimmer button that controls the brightness of the frame, whereas the second pushbutton switch may be configured to act as a main button that has multiple functions. In one or more embodiments of the invention, the pushbutton switch provides a mechanism for marking images for deletion. The pushbutton switch may also be utilized to identify images that are to be saved or archived. Photo sensor **303** supplies the frame device with a mechanism for automatically dimming display **313** when certain conditions, such as the passage of time or the activation of pushbutton switch **300**, occur. The frame device is operational without photo sensor **303**. Therefore, photo sensor **303** is not required, but may be included if dimming functionality is desired.

Communication interface **340** provides a two-way data communication coupling via a network link **341** to interconnection fabric **342**. Communication interface **340** may be implemented in software or hardware form. In one or more embodiments of the invention, data communication interface provides a codec for optimizing data throughput to network link **341**. Interconnection fabric **342** represents any type of network configured to transmit data. For example, interconnection fabric **342** may represent the Internet or any other type of easily accessible computer network.

If communication interface **340** is an integrated services digital network (ISDN) card or a modem, communication interface **340** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **341**. Data is then transported across network link **341** to interconnection fabric **342**. If communication interface **340** is a local area network (LAN) card, communication interface **340** utilizes a compatible LAN as network link **341** to transmit data to interconnection fabric **342**. Wireless links are also possible. In any such implementation, communication interface **340** sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information. These signals are transmitted across network link **341** to interconnection fabric **342**. Therefore, interconnection fabric **342** couples the frame device to the data repository.

Power source **329** provides the frame device with the electrical current necessary to properly run the device. In one or more embodiments of the invention, power source **329** obtains an electrical signal from a standard wall plug and utilizes a transformer unit, a voltage converter and an econo reset device to prepare the signal for use by the frame device. Power source **329** may also obtain an electrical signal from a battery, solar power, or any other source that can generate the appropriate amount of current required to adequately power the frame device.

APPX102

System of Interrelated Components:

FIG. 2a is a block diagram that illustrates the components comprising one embodiment of the invention. In the embodiment illustrated, the system comprises one or more frame devices **200-209** configured to connect to data repository **213** via an interconnection fabric **217**. Frame devices **200-209** are designed to resemble traditional picture frames. For example, each frame device contains a border region **250** that enhances the aesthetic qualities of the device. The border region **250** may be comprised of wood, plastic, metal, or any other compound that is pleasing to the eye. Each frame device **200-209** may have a border region **250** that appears to be different from the border region **250** of another frame device. For example, the border region **250** for frame device **200** may appear different than the border region **250** attached to frame device **209**. In one or more embodiments of the invention, border region **250** is an actual picture frame sized to surround the display of frame device **209**. Border region **250** may contain a matte board designed to complement the picture frame.

However, unlike a traditional picture frame, the images shown in the display region of frame devices **200-209** can be periodically modified. For example, frame device **200** can be configured to show a first image for a certain duration of time and a second image for another duration of time. Image data **214**, for example, can be shown in the display region once it is obtained from the data repository.

Frame devices **200-209** connect to data repository **213** to obtain image data **214** via interconnection fabric **217**. In one or more embodiments of the invention, frame devices **200-209** use one or more local frame servers **211** to connect to interconnection fabric **217**. An Internet Service Provider (ISP), modem pool, or any other mechanism capable of connecting frame devices **200-209** to interconnection fabric **217** is an example of a local frame server. However, local frame servers **211** are not required to achieve connectivity to interconnection fabric **217**. Frame devices **200-209**, for example, may connect directly to interconnection fabric **217** and thereby bypass local frame servers **211**.

In the invention, interconnection fabric **217** is any of multiple suitable communication paths for carrying data between frame devices **200-209** and data repository **213**. Interconnection fabric **217** may be, for example, a local area network (LAN) implemented as an Ethernet network. Any other local network may also be utilized. The invention also contemplates the use of wide area networks such as the Internet and/or World Wide Web. Interconnection fabric **217** may be implemented using a physical medium such as a wire or fiber optic cable, or it may be implemented in a wireless environment. For example, the invention contemplates the use of dedicated, dial-up, or shared communication interconnects.

The data repository is populated with image data **214** via an image collection process. Image data **214** is inserted into data repository **213** by data source **260**. In one or more embodiments of the invention, data source **260** populates data repository **213** with image data by obtaining the data from a storage medium such as a hard drive, preparing the data for submission, and transmitting the data to data repository **213**. A program executing at data repository **213** determines whether the image data satisfies certain filter criteria. For example, the program may determine whether the image data was transmitted from a member of the users buddy-list and/or address book. If the image data does not satisfy the filter criteria it may be discard or returned to the original data source. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the

targeted frame device. In one or more embodiments of the invention, the picture mail address is a network address (e.g. an IP address) that is associated with a frame device. The user may specify filter criteria (e.g. via a picture box) which establishes what addresses (e.g. picture mail address) are authorized to populate the data repository. Users who join the picture mail community by connecting one or more frame devices to the interconnection fabric may, for example, pass images data to other members of the community via a picture mail address. However, users are not required to belong to the picture mail community to submit images to a frame device that does belong to the picture mail community. In addition to storing the image data, and filter criteria, data repository **213** also comprises data that may be used to define the behavior of frame devices **200-209**. The structure and arrangement of the data repository itself will be discussed further below. In one or more embodiments of the invention, the filter criteria (e.g. who is permitted to send images to a frame device) and other information held in data repository **213** such as the behavior characteristics of each frame device are established via a picture box.

Users may use the picture box to customize the behavior characteristics associated with each frame device **200-209**. Specifying the time and type of image data **214** frame device **200** is to obtain is an example of a customizable behavior characteristic. However, any feature and/or function offered by the frame devices **200-209** may become a behavior characteristic.

Each picture box **229-233** may provide a way, for example, to specify how often a certain frame device retrieves new image data from the data repository. For example, the user of client computer **225** may use picture box **232** to specify how often frame device **207** connects to data repository **213**. Picture box **232** can also be configured to provide the user of client computer **225** with a mechanism for controlling what images are deliver to frame device **207**. For example, the user could specify that images should only be accepted from people listed in the user's buddy-list, friendly-sender list, or address book. If the user of client computer **225** wants to subscribe to an image delivery service, this preference may also be expressed via picture box **232**. The image delivery service regularly delivers images that illustrate weather reports, art collections, greeting cards, movie posters, post cards, live camera data, or any other type of customized data to the user's frame device. Each image delivery service may be separately subscribed to and the device may be unsubscribe at any time.

The user may also utilize the picture box to define filter criteria (e.g. to specify who is authorized to populate a certain frame device with new images). For example, the user of client computer **221** may use picture box **232** to indicate that only images received from certain picture mail addresses are to be held for display in data repository **213** and forwarded to frame device **203** upon request. Each individual picture box **229-233** controls the behavior characteristics of one or more frame devices **200-209**. Picture box **220**, for example, may be configured to control frame device **203** and **209**.

In one or more embodiments of the invention, the picture box engine **216** is responsible for obtaining the picture box data **233** needed to generate a picture box from data repository **213** and transmitting a visual representation of the picture box to the appropriate picture box viewer. For example, a user who has permission to control frame device **209** may control the behavior characteristics of the device via a picture box. The user may obtain picture box **251** by using picture box viewer **220** to request picture box **251** from server system **215**. For example, if a user residing at client computer **219**

uses picture box viewer **220** to request picture box **251** from server computer **215** the server responds by executing picture box engine **216**, which in turn obtains picture box data **233** from data repository **213**. In this instance, picture box data **233** is associated with frame device **209**. However, the picture box may be associated with any frame device **200-209** the user is authorized to control. The user may control multiple frame devices via a single picture box. A single user can also elect to use multiple picture boxes to control multiple frame devices.

It is possible for the user to modify the onboard software embedded into each frame device **200-209** by making changes to the picture box. When a change is made it is reflected in data repository **213** and communicated to the frame device when the device connects to data repository **213** for an update. Other authorized parties, such as the picture box provider, can also modify and or update the functionality provided by the onboard software by indicating to the frame device when it connects to the data repository that new software is available for it to obtain. When the frame device receives such a message it may automatically obtain and install the new software update. Thus, authorized users can automatically add new functionality and features into the frame device without prompting the user for input.

Each client computer **219-227** is configured to run a picture box viewer **220-228**. For instance, client computer **219** is configured to execute picture box viewer **220**. Picture box viewer **220** provides the user of client computer **219** with a visual representation of picture box **229**. In one or more embodiments of the invention, picture box viewers **220-228** are web browsers configured to obtain picture box data from server system **215**. Picture box engine **216** is responsible for generating picture boxes. To accomplish this task, picture box engine **216** obtains picture box data **233** used to create the picture boxes **229-233** from data repository **213**. The invention contemplates placing picture box engine **216** in a variety of different locations. In one embodiment, for example, picture box engine **216** resides at server system **215**. However, picture box engine **216** may also resides on any computer readily accessible to clients **219-227** via interconnection fabric **217**.

FIG. **2**b illustrates the system components utilized by one or more embodiments of the invention. Frame devices **200**n and web browser **262** are both controlled by an authorized user **283**. The term user as described herein has multiple meanings. The term comprises guest users who have not yet registered and/or initialized a frame device. The term user also refers to registered guests (e.g. members) that may submit images to a frame device. An owner is a type of user who has a frame device. However, an owner need not use web browser **262** to configure the frame device if a user of another type or the manufacturer of the device already has configured the frame. One or more embodiments of the invention contemplates the use of an owner-proxy. The owner-proxy is authorized by the owner to act on the owner's behalf. For example, the owner-proxy may be given authority to control certain aspects of the frame device by the owner. A parent is the user who controls one or more frame devices. The parent has the authority to control what type of images is displayed on the frame and who may submit images for display. The parent user typically has all the privileges needed to control the frame device. The purchaser or buyer of a frame device may also be referred to as a user. A person who provides images and/or data to the system such as a gallery provider, channel provider, and or advertisement provider is also considered a user of the system. Thus, the term user is intended to be a general term that has multiple meanings. A single person

or entity may function as multiple users and multiple people may function as one or more users. The invention contemplates assigning each type of user a different password. Thus, each user may be assigned a different level of access to the system. For example, a parent user has permission to modify the picture box in any way whereas a member does not yet have permission to modify the frames behavior, but may submit images to the picture box for display on the frame device.

When a user initially connects frame device **200** to a power source and/or a communication source, the frame device interfaces with telco **278** via telecommunication mechanism **263**. Telecommunication mechanism **263** connects to access array **264**. In one or more embodiments of the invention telco **278** is the infrastructure provided by a telecommunications provider (e.g. AT&T, MCI, SBC, PacBell, GTE, etc. . . . ) and telecommunication mechanism **278** is a local phone service and/or toll-free phone service. Access array **264** is provided by ISP **279**, and comprises one or more devices configured to communicate with the carrier wave signals transmitted by frame device **200**. The invention contemplates the user of multiple access arrays and each access array may be located in a different geographic region. Each access array may be configured to understand the signaling and/or communication protocols utilized by the frame device. For example, if frame device **200** uses a modem to connect to access array **264**, access array **264** may be configured to understand the corresponding signaling standard (e.g. V.32, V.42bis, V.90 etc. . . . ). Access array **264** may also comprise computer hardware configured to understand protocols such as TCP/IP, SLIP, and PPP. The services offered by MegaPOP™, ZipLink™, UUNET™, and/or GTE Internetworking™, for example, are examples of an access array **264**.

Access Array **264** communicates with proxied server(s) **266**. Proxied server **266** may be, for example a RADIUS server configured to communicate with the registration server **268**. RADIUS is a program that runs on a computer. RADIUS allows the expansion of the number of user (connection) profiles available to RADIUS compliant remote access devices. The three main functions of a RADIUS server are authentication, authorization, and accounting. RADIUS is used to authenticate users for dial-in and/or remote access via a data communication network. Authentication information may be stored locally (e.g. in a local file) or accessed from external authentication mechanisms. Authorization controls access to specific services on the network. Once a user is authenticated, RADIUS identifies what a user is authorized (permitted) to access and communicates that information to a PortMaster. For example, user_1 may be authorized to use a certain type of communication protocol (e.g. PPP or SLIP) for his connection, and to use a certain IP address. The RADIUS accounting permits system administrators to track dial-in and/or network use. The present invention is not limited to the use of RADIUS servers, but also contemplates the user of other types of servers that perform the functionality required to effectively balance the communication path between frame device **200** and data repository server **269**.

In one or more embodiments of the invention, access array **264**, proxied server **266**, load balancer **267**, and registration server **268** intercept and then forward data signals transmitted from frame device **200** to data repository server **269**. Load balancer **267**, for example, is responsible for balancing the load placed on devices in the communication path (e.g. registration server **268**). A Domain Name System (DNS), Windows load balancing service, Router, or Round Robin device are some examples of systems capable of acting as load balancer **267**. Load balancer **267** is provided by frame data

provider **281** to communicate with data repository server **269** via registration server **268**. The functionality provided by load balancer **267**, **272**, and **276** may be provided by a single computer or multiple computers. A single computer connected to the interconnection fabric may, for example, be configured to execute software or hardware that acts as load balancer **267**. Alternatively, the functionality provided in load balancer **267** may be executed in other computer systems connected to the interconnection fabric (e.g. Registration Server **268** or Data Repository Server **269**).

Data repository server **269** and registration server **268** may be configured to transmit log information **274** to one another. In one or more embodiments of the invention log information **274** is RADIUS logs. Data repository server **269** executes, manages, and communicates with data repository **270** via Local Area Network (LAN) **273**. Data repository **270** is a database file system and image store. However, data repository **270** may also comprise other information needed to update and/or manage frame device **200**. For example, the data contained in Package Server **271** may be stored in data repository **270**.

Package Server **271** is configured to communicate with data repository **270** and data repository server **269** via LAN **273**. In one or more embodiments of the invention, package server **271** comprises a File Transfer Protocol Daemon (FTPd), a packager, and an interpreter. Package server **271** may also be referred to as an application server. The packager is responsible for generating multiple kinds of packages. A package is a compilation of data that provides the recipient and the transmitting device with information needed to complete a transaction. For example, a package may contain authentication information that provides frame device **200** with a way to verify whether package server **271** is authentic. A package may also contain metadata about frame device **200**. For example, some or all of the information stored in flash memory and/or DRAM may be inserted into a metadata file. The metadata file may contain, for example, a unique frame identifier, a relative clock time, a lights on clock tick, a lights out clock tick, a connect time, connection information, slide show information, log information, name server information, image information, an image display list, and error information. Other information utilized by the frame device and/or any of the server systems may also be placed into the metadata file. The package server **271** may also generate packages that contain content and formatting data (e.g. image and/or text data).

To obtain package data frame device connects to access array **264** via telecommunication mechanism **263**. In one or more embodiments of the invention frame device **200** is configured to establish an FTP session with package server **271**. Once the session is established, frame device **200** transmits a unique identifier (e.g. user/frameID). Package server **271** responds by prompting frame device **200** for password information, which the frame then transmits. The frame device may dynamically generate the password information. Once frame device **200** enters the correct password, the device is permitted access to package server **271**. At this point frame device **200** is linked to package server **271** and data may be sent to and from each using either ASCII mode or binary mode. Load Balancer **272** may be optionally placed between package server **271** and access array **264** in order to ensure that the load placed on package server **271** does not exceed its capacity.

Frame device **200** typically communicates with package server **271** using the binary connection mode. During the communicate session frame device **200** initiates a GET command via path and thereby obtains an authentication file from

package server **271**. When frame device **200** obtains the authentication file, it determines if the authentication file is authentic by computing a checksum and comparing the result to an expected results file. If the comparison matches, frame device **200** "trusts" package server **271**. When a trust relationship is established frame device **200** transmits package data to package server **271**. In one more embodiments of the invention, frame device **200** tells package server **271** how much package data it will be sending (e.g. via a SIZE command) and then transmit that amount of data to package server **271** via a PUT command. For example, a content list and a log file may be transmitted to the server via the PUT command. Package server **271** then computes and compares the checksum information associated with the transmitted package data (e.g. metadata). Frame device **200** may also utilize the GET command to obtain additional packages. In one or more embodiments of the invention, the USER command and PASS command are modified to provide an additional layer of security. For example, the PASS command and the USER command may be modified to transmit and/or bounce back encrypted strings of data that are authenticated before access to the package data is permitted.

For example, frame device **200** may use the GET command to obtain an administrative package comprising information useful for administering the frame and/or a content package comprising content and formatting data. The content of the packages is self-defined and may vary depending upon the requirements of frame device **200**. Upon delivery of the relevant packages, frame device **200** may synchronize its time keeping mechanism with package server **271** and terminate the connection. If the frame device connected using the toll-free phone number, local number information is obtained and provided to the frame device in the administrative package. The local number information that is best for the device is determined by analyzing the caller ID information provided when the device call using the toll-free phone number.

In one or more embodiments of the invention, web browser **262** provides a mechanism for submitting and/or changing the image data that is to be displayed on frame device **200**. To submit image data web browser **262** connects to local ISP **265** via telco **278**. Local ISP **265** communicates with load balancer **276** which in turn communicates with one or more web servers **275** and submission/image processing engine **284**. Web browser **262** and web servers **275** may also communicate with clearing house **277** and/or data repository **270**. Clearing house **277** is a computer system configured to process transactions with user **283**. In one or more embodiments of the invention, submission/image processing image comprises software configured to obtain image data from user **283** via web browser **262**.

The Data Repository:

The data repository comprises one or more databases. Each database provides the system with information and/or data related to distributing data to one or more frame devices. In one or more embodiments of the invention, the data repository stores information used to control the content distributed to and from each frame. For example, data about each user and the preferences associated with that user may be held in the data repository. Each frame device is configured to connect to the data repository at one or more predefined intervals utilizing an interconnection fabric such as the Internet. Once a frame device connects to the data repository, it utilizes the information stored in the data repository to update the image data that is to be displayed and the behavior characteristics of each frame device. For example, the functions provided by the onboard software may be modified when the behavior characteristics are updated. The data repository is therefore

responsible for queuing and archiving image data and/or software data for each frame device associated with the data repository.

Referring now to FIG. **4**, an example, of the type of data stored in the data repository is shown. In one or more embodiments of the invention, the data repository is comprised of multiple databases. The databases are related to one another and contain information utilized to generate the data repository. Each database may contain one or more tables of information. Thus, the data repository may be constructed as a single database having one or more tables or as a series of databases related to each other. The term database and table may therefore be used interchangeably. The databases may be organized using a relational structure, an object-oriented structure, or any other type of organizational scheme configured to store the information needed to create the data repository. The databases may also be distributed across multiple computers. For example, a first computer may contain one portion of the data repository and a second computer may contain a second portion of the data repository.

One of the databases contained in the data repository is the user database **401**. User database **401** comprises information about users that have registered with the system. In one embodiment of the invention user database **401** contains one record for each registered user. User database **401** typically stores information about the user such as the user's username, password, picture mail address, and billing information. User database **401** may also contain a list of picture mail addresses from which image data may be received. If, for example, a user wishes to receive picture mail from a certain address the user may designate that address as a friendly sender by placing the address in the list of picture mail addresses from which data may be received. In one or more embodiments of the invention, picture mail addresses not contained in the list may not populate a user's frame device with image data. The user may use the picture box to identify a list of friendly picture mail addresses. This list of friendly senders may be referred to as a buddy list and/or address book.

The data repository also holds information about each frame initialized with the system. A frame becomes initialized when the user of the frame device, or a person acting on behalf of the user, directs the system to obtain a picture box. Information about the frame device is held in the frame database **403**. The frame database **403** comprises multiple records **404-411**$n$ and each record is associated with a unique frame device. A single user, however, may have multiple frames registered with the system. Thus, one record in user table **401** may be related to many records in the frame table. For example, if a user owns two frame devices the data repository may have a single record about that user in user database **401** and two records about the user's frame devices in frame database **403**. Frame database **403** contains a record for each frame device that registers with the system.

Frame database **403** contains information that uniquely identifies each frame. Frame database **403**, for example, may store a serial number or any other form of information that uniquely describes a particular frame device. Each user, may control one or more frame devices. In one or more embodiments of the invention, frame database **403** stores information about the geographical location of each frame. For example, the zip code, the area code, and/or phone number where the physically device resides, or any other information that identifies the location of the device may be used to describe the geographic location of the frame.

In one or more embodiments of the invention, each frame is associated with an access number. The access number is the phone number utilized by a particular frame device to connect to the interconnection fabric. The access number, for example, may be a toll free phone number or the phone number of an ISP closest in proximity to the physical location of the frame device. The access number may be stored in frame database **403**.

Frame database **403** also contains data that identifies the intervals at which a particular frame device may perform a predefined action. For example, frame database **403** may hold information that specifies the date and time the frame device associated with that record is to connect to the data repository. The actions performed may be defined by the user of the frame device or by an entity authorized to control the actions of the frame device. One embodiment of the invention allows any person with access to the picture box to define an action.

The intensity of each frame device's display region may be varied. For example, the display of each frame device may be configured to dim at certain times. The dimming times are stored in frame database **403**. For example, if the user wishes to have a particular frame device dim between the hours of 11:00 p.m. and 6:00 a.m. this information may be specified via the picture box and is stored in frame database **403**. The frame device may also be configured to automatically dim at a certain time based on the longitude and latitude of the device. The system obtains the location of the frame device when the device indicates it is present by calling the toll free phone number embedded in memory. The caller ID information passed during this connection, for example, allows the system to determine the location of the device and set the corresponding dimming times. The frame device is typically directed to dim during times when network traffic is low and connect time is inexpensive, however, dimming may occur at any time determined to be appropriate by the system. For example, dimming may occur at a time that is not associated with the geographical location of the frame device.

Information about the software contained in each frame may also be stored in frame database **403**. For example, frame database **403** may store the release and/or version number of the software used to operate and control each frame. If the software is not the most current version available an indication as to whether it is ok to download the software may also be stored in frame database **403**. Frame database **403** stores information about the connection history of each device. For example, the number of failed connections, the number of successful connections, as well as the speed and duration of those connections is stored as the connection history. The connection history may also contain a record of the communication sessions established by a particular device (e.g. the phone numbers called by a particular frame device and the number of images transmitted to the device at that phone number). The frame database **403** may also contain a list of the administrative information uploaded to each frame device.

In one or more embodiments of the invention, the data repository also contains content provider database **413**. A content provider is an entity or organization that offers one or more image delivery services via the interconnection fabric. Content provider database **413** may contain information about multiple content providers. Content provider database **413** contains the name and location of each content provider. For example, content provider database **413** may store the web address or Internet Protocol (IP) address where data pertaining to a particular image delivery service may be located. Content provider database **413** may also contain pointers to other databases where image data utilized to offer an image delivery service resides.

The data repository also stores data utilized by multiple frame devices. For example, central administration database

**21**

415 comprises information such as the time of day (per time zone), administrative messages and/or images, broadcast messages and/or images, and other general data utilized by the frames devices when a connection to the data repository is made. An example of a relational database schema arranged to store the data utilized by the system is shown in appendix A.

The Picture Box/Picture Mail Community:

When a user initializes a frame device, that frame device becomes associated with a picture box. For example, each frame device **200-209** is uniquely identified (e.g. by a serial number, address, digital signature, or other identifier) and associated with a particular picture box (e.g. an account at a web site). Each picture box is associated with a unique user-name and/or picture mail account. Once a picture box is obtained, the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses. A picture mail address provides a mechanism for transmitting image data to a frame device. The picture mail address, for example, provides the system with the addressing information needed to identify the location of the frame and transmit image data to the frame. Thus, the picture mail address provides user with a way to pass images between others users (e.g. family and friends) who also belong to the picture mail community. In one or more embodiments of the invention, a picture mail address is a network address that uniquely identifies the location of each frame device. The picture mail address may be implemented in the form of an electronic mail address, an IP address, or any addressing scheme that informs the system how to direct image data to the frame device.

Image data may be sent to the frame device by sending the data from a data source (e.g. a client or server computer) to the picture mail address associated with that device. The picture box provides the user with an interface for managing the behavior characteristics of one or more registered frame devices. In one or more embodiments of the invention, each user is given a single picture box to control the behavior characteristics of multiple frame devices. However, a user may also be given multiple picture boxes. The picture box is accessible via an interconnection fabric such as the Internet and may be viewed using a standard web browser. In one or more embodiments of the invention, each frame device is associated with a specific picture box. Information about the picture box utilized to control a frame device may be stored in frame database **403**.

Information used to generate each of the picture boxes may be stored in picture box database **400**. For example, picture box database **400** contains a representation of the image (e.g. a thumbnail) as it will be displayed on the frame device, should it be flagged for download to the device. The location (e.g. picture mail address or network address) the image data was transmitted from is also stored in picture box database **400**. Other information such as the date and time the image was received at the data repository and the date and time the image was received at a particular frame device also resides in picture box database **400**. Picture box database **400** may also contain information about the status of the image data accessible to a particular frame device, such as whether the image is to be archived or kept on the frame device when an update occurs. Data that specifies the filename of the image, whether the image currently resides on the frame device, and routing information that specifies which images should be sent to which frame devices may also be stored in picture box database **400**.

**22**

FIG. **5** shows an illustration of a picture box viewer containing a picture box. In one or more embodiments of the invention, picture box viewer **500** is a web browser configured to display picture box **523** (e.g. a web page). Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. However, picture box viewer **500** may be any type of software program configured to display picture box **523**. Picture box **523** is any type of data file capable of being transmitted to picture box viewer **523** for display. For example, files written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF) may be displayed using picture box viewer **523**. It is also possible to generate picture box **523** using various other types of languages such as Standard Generalized Markup Language (SGML) or eXtensible Markup Language (XML).

Picture box **523** is any example of the type of interface that may be used to create and/or modify records in the data repository. The information stored in the data repository may be presented to the user via picture box **523**. In one or more embodiments of the invention, picture box **523** comprises a first portion **505** that contains a list of the image delivery services scheduled to provide data to a particular frame device and a second portion **509** that shows the status of images that may be displayed on the frame device. However, picture box **523** is not limited to using first and second portions, but may utilize any number of portions to present information to the user of a frame device.

In one or more embodiments of the invention, first portion **505** shows what image delivery services the frame device associated with picture box **523** is subscribed to. For example, the frame associated with picture box **523** is scheduled to receive weekly subscription **503**, daily subscription **505**, and monthly subscription **507**. The delivery intervals may be changed utilizing picture box **523**. For example, it is possible to use picture box **523** to change weekly subscription **503** to a monthly subscription.

The second portion **509** shows what image data is currently intended for display frame devices associated with picture box **523**. Second portion **509** comprises columns of information likely to be of use to the owner of the relevant frame device. For example, in one or more embodiments of the invention, columns that contain image name **512**, status **511**, date **513** and sender **514** are shown in second portion **509**. However, any type of data that describes the images currently accessible to the frame device may be placed in the image name **512** column. For example, the image name **512** column may contain the actual file name, an alias associated with the image file, or a description of the image itself. Inage name **512** may also contain a representation of the image data such as a thumbnail.

The status **511** column comprises information that represents the status of the image. For example, information that communicates whether an image is scheduled for display on the frame device is shown in status **511** column. Other information such as whether a new image was received, or whether the image may or may not be deleted can also be presented using status **511** column. One embodiment of the invention provides for the placement of any data that communicates the location and/or status of an image in status **511** column.

Picture box **523** may be configured to show a date **513** column. The date and/or time an image was received may be placed in date **513** column. Other data that is relevant to the receipt of an image may also be inserted into date **513** column.

23

For example, the date a particular image was loaded into an associated frame device may also be placed in date **513** column.

Sender **514** column shows who sent the images shown in the picture box. In one or more embodiments of the invention, sender **514** column contains the picture mail address of the party who transmitted the image. The name and/or location the image was transmitted from may also be shown in sender **514** column.

Routing information may be also be defined using picture box **523**. For example, if the user has the authority to control what is shown on multiple frame devices, the user may use the picture box to specify which images should be sent to which frame devices.

Picture box **253** also provides a mechanism for users to browse through the image data available for display. For example, users may search for images in a list of galleries by conducting a key word search of the galleries. Images held in the galleries may be obtained from a person or entity that provides stock images to the picture box. The user may obtain thumbnail views and full size views of the image data upon request. The user may also use the picture box to review all past, present, and future images displayed on the frame device. Users can also use the picture box to add, replace, or delete any image that is to be scheduled for display on the frame device. Thus, the picture box provides an interface for remotely controlling the behavior of the frame device.

The Image Delivery Service

In one or more embodiments of the invention, users may elect to subscribe a particular frame device to one or more image delivery services offered by the content providers. When the user subscribes to an image delivery service, customized image data is periodically delivered to the frame device designated by the user as the recipient. For example, if a user wishes to have an image summarizing the weather report regularly delivered to the frame device located in the user's house, the user may subscribe to an image delivery service that regularly transmits weather images to the picture mail address associated with the appropriate frame device. The user may control the date and time the image delivery service sends the image data. The user, for example, may specify that the weather report is only to be delivered at 7:00 a.m. on weekdays and is not to be delivered during the weekend. The invention also contemplates a system wherein the data and time the image delivery service transmits image data is predefined and not set by the user. For example, the image provider may determine when to send images to the picture mail account associated with a frame device. A number of different image delivery services are available to members of the picture mail community and each delivery service may transmit images that are illustrative of any kind of information. For example, images that represent post cards, greeting cards, art collections, live video feeds, or any other type of image data may be delivered to a frame device utilizing an image delivery service.

Frame Device Initialization:

In one or more embodiments of the invention, the frame device initializes with the system in order to have the capability to obtain image data. The initialization process may occur with the aid of a user or it may occur automatically without user input. In either instance, users are given the opportunity to customize the behavior of the user's frame device(s). FIG. **8** illustrates the process utilized by one embodiment of the invention to initialize a frame device. The initialization process begins at step **800** when the frame device is connected to a power source and a communication medium such as a telephone line or network connection. The

24

frame device may be configured to automatically connect via a wireless connection or the user may manually couple it to a power source and communication medium.

Once step **800** occurs, an embodiment of the invention proceeds to step **803**. At step **803**, the frame device initiates a connection to the data repository utilizing an interconnection fabric. In one or more embodiments of the invention, the frame device is configured so that can only connect to the data repository and cannot connect to other data sources that are available via the interconnection fabric. For example, the connection process may utilize an authentication scheme (e.g. encryption) to ensure the device connects to an authorized data repository and is not being directed to another data source masquerading as the authorized repository. When step **803** is complete, step **805** executes. At step **805**, the data repository is analyzed to determine whether there is a record for the frame device initiating the connection.

If a record for the frame device is not located, step **807** executes and an image prompting the user to create a picture box account associated with that frame device is displayed to the user. Once the picture box account is created it provides the user with a way to set the behavioral characteristics of the frame device. In one or more embodiments of the invention, the frame device cannot properly connect to the data repository until the picture box account is generated. Thus, the invention contemplates generating a picture box. by executing steps **811** and **813**.

At step **811**, a picture box is obtained. The user may obtain a picture box, and thereby join the picture mail community, by calling a toll free phone number to have another person initiate the generation of the picture box. Alternatively, the user may obtain a picture box by using a web browser and connecting to a web site that contains a mechanism for generating the picture box. The frame device may also automatically direct the system to generate a picture box if an attempt is made to connect and a picture box associated with the frame device attempting to make the connection does not exist. This may occur without requiring any input from the user. However, user input may be obtained if such input is deemed to be desirable. In one or more embodiments of the invention, however, the user may personalize the picture box by using the input mechanisms present on the frame device (e.g. the pushbutton switch).

Once the picture box is obtained, step **813** executes, at step **813** the behavior characteristics of the frame device is determined. The behavior characteristics may be established by default or customized according to the user's preferences. When the behavior characteristics are determined, step **815** executes. At step **815**, the invention contemplates loading the behavior characteristics into the data repository for use by the frame device.

If the data repository already contains a record for the frame device initiating the connection, step **809** executes. At step **809**, the frame device obtains the behavioral characteristics set via the picture box, by accessing the data repository. One embodiment of the invention loads the behavioral characteristics into flash memory residing on the corresponding frame device. Other data, such as software programs and/or image data may also be loaded into the frame device during step **809**. Thus, functionality may be added to the software contained in the frame device without input from the user.

Self-Configuration Protocol:

FIG. **9** illustrates another process that may be utilized by one or more embodiments of the invention to initialize a frame device. The initialization process begins at step **900** where the frame device determines if it is connected to a power source and a communication medium such as a tele-

phone line or network connection. If so, the frame device proceeds to step **901** where it obtains image data from its own memory. At step **902**, the image data is displayed to the user via display **313**. In one or more embodiments of the invention, the image data directs the user to proceed to step **903** where the frame device manually initiates a communication session. The frame device may be configured to automatically initiate a communication session within a certain interval without requiring input from the user. For example, if the user connects the frame device to power source and a communication source, the frame device may initiate a communication session if the user does not manually do so within a certain time frame.

At step **903**, the frame device determines whether it has local phone number information in resident memory. For example, if the frame device has not previously initiated a communication session the device will not have any local phone number information. If so, step **904** executes. At step **904**, the device obtains a phone number (e.g. toll free phone number) from the memory of the frame device. This phone number is referred to as a configuration number sequence and may be permanently embedded into persistent memory (e.g. non-volatile memory). The configuration number sequence is used only for configuration access and is parsimonious with the amount of time it remains connected. Once the frame device has the configuration number sequence, it dials the configuration number using a tone sequence (e.g. step **905**). If that fails, the device may use pulse mode. When a connection is established, device proceeds to step **906** where it obtains one or more local phone numbers from a server computer (e.g. the data repository) provided by the frame service provider. The local phone number information is stored in memory at step **907**.

Once step **907** executes, the device proceeds to step **908** where it disconnects from the configuration number and re-dials using one of the local numbers. If the frame device already has obtained a local number, step **909** executes and when the device is directed to initiate a connection it dials the local number stored in memory. Thus, the frame device is capable of automatically connecting to the interconnection fabric where it may obtain image data from the data repository without requiring input from the user. If the local phone number information is flushed from memory (e.g. by a power failure) or becomes inaccurate (e.g. because the user moved the physical location of the device), the device may use the toll free phone number to automatically reconfigure itself without prompting the user for additional input. Thus, each frame device is an intelligent device that can be easily maintained by novice or inexperienced users.

Image Collection/Submission Engine:

FIG. **6** is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in the display region of a particular frame device. At step **600**, the user wishing to transmit the image data or a data collection engine, obtains the data and prepares it for submission to the picture mail address associated with a particular frame. The data repository may act as an image relay mechanism which holds the image data until the frame device connects to the repository for an update.

The data may be obtained from any source capable of providing one or more image files. For example, image data may be collected from a client computer, an image scanner, digital camera, or a memory device such as a hard drive. The data collection engine provides a mechanism for obtaining images from any image source accessible via an interconnection fabric such as the Internet. In one or more embodiments of the invention, the data collection engine is configured to obtain image data from any web server or web client connected to the interconnection fabric. For example, the user may direct the data submission engine to periodically collect one or more images from a networked device (e.g. a web server or series of web servers) by specifying a URL that identifies the location of the networked device containing image data that is to be collected.

At step **603**, the image data is prepared for submission. An embodiment of the invention contemplates examining the image data to discern whether it meets a set of predetermined constraints. For example, if the display area of the frame device is a static width and height (e.g. 640×480 pixels), step **603** will obtain the dimensions of the display area and determine whether the image data will fit within the identified area without alteration. If the image does not fit, the image data may be altered to coincide with the dimensions of the frame device. The alteration process may scale the image, crop the image, change the resolution of the image, or otherwise modify the image so that it fits within the given display area. For example, if an image is 1024×768 pixels and the display area of a particular frame device is 640×480 pixels, the image may be appropriately scaled to fit into the 640×480 display area of the frame device. In one or more embodiments of the invention, step **603** is performed before the image data is transmitted to the data repository. However, software executing at the data repository or at the frame device may also be configured to prepare the image data for submission. One embodiment of the invention contemplates placing software configured to perform step **603** on any computer connected to the interconnection fabric.

In one or more embodiments of the invention, the data format of the submitted image is modified to conform to the preferences of the frame device. For example, if the submitted image is in BMP format and the frame device contains software or hardware that is capable of rendering JPEG images for display, the image will be converted from BMP format to JPEG format to coincide with the needs of the frame device. The dimensional aspects of the image may be altered along with the data format. For example, a BMP image having a resolution of 1024×768 may be converted into a JPEG image having a resolution of 640×480. The color depth and other aspects of the image may also be modified. For example, the image alteration process may convert all JPEG images so that each image submitted to the system has a 12-bit color depth and is compressed to a size that does not exceed a certain size (e.g. 64 Kb). Submitted data is conformed to coincide with size and format parameters in order to prevent large, illegal, or improperly formatted files from consuming resources on the system. Additionally, filtering and modifying images before they are stored in the data repository provides a way to prevent excessively large images from consuming resources on the frame device. The data format conversion and the image resizing process may be performed without requiring input from the user. However, in one or more embodiments of the invention, the image alterations may be presented to the user for approval and/or manual modification.

When a user initializes a frame device, that frame device becomes associated with a picture box. Each picture box is associated with a unique username and/or picture mail account. At step **605**, the username and/or picture mail account information is utilized to provide a mechanism for transmitting image data to a frame device or series of frame devices. For example, if a user named user_**1** initialized frame device XYZ with the system, another user could transmit image data to frame device XYZ by transmitting the image data to the picture mail address associated with user_**1**. A standard electronic mail client or a customized picture mail

client may be utilized to transmit the picture mail and its associated image data. However, any interface capable of sending binary image data to a particular network address (e.g. a web-based interface) may also be utilized.

At step **607**, the image data is analyzed to determine if it meets the filter criteria established by the user during the registration process (e.g. is the submitted image data from a person who belongs to the user's buddy list or address book). In one embodiment of the invention step **607** is performed by a data population engine. The data population engine utilizes a specific set of filter criteria to determine whether an image is appropriate for display on a frame device. An embodiment of the invention provides the user with an interface to set the criteria. For example, the filter criteria may be set using the picture box associated with that user. The user can, for example, prevent images arriving from certain picture mail and/or network locations from being displayed on the user's frame device(s).

The user may also elect to store images that arrive from certain locations in the data repository and not present the images for display until they are reviewed and/or approved by the user. The user or any other authorized individual and/or entity may set the filter criteria. For example, the organization that controls the data repository may be given the authority to establish filter criteria. The user may set the filter criteria used by the data population engine using the picture box interface. Other interface devices capable of receiving input from a user, such as a telephone or Personal Desktop Assistant (PDA), may also be used to set the filter criteria.

When an image satisfies the filter criteria step **609** executes. At step **609**, images are loaded into the appropriate portion of the data repository. For example, image data that is transmitted to the picture mail address of user_**1** may be loaded into the record in the data repository created for user_**1**. Each time another image is submitted it is added to the appropriate record. Thus, the data repository may hold one or more images.

If the image data does not meet the filter criteria, the image data is discarded or returned to the address of the sender at step **606**. In one or more embodiments of the invention, data that does not meet the filter criteria is stored in the data repository, but is not forwarded to a frame device until approved by the user.

Once image data resides in the data repository, step **611** executes. At step **611**, the frame device obtains the image data set residing at the data repository. For example, the frame device may connect to the data repository utilizing the interconnection fabric and download the image data into memory. In one or more embodiments of the invention, the frame device periodically connects to the data repository. The frequency of the connections may be determined by the user via the picture box interface or by a party authorized to access the picture box. The device may also automatically determine the connection frequency without requiring input from the user.

Once the image data resides in flash memory, step **613** executes and the image data is displayed on the frame device's display mechanism according to the display preferences expressed via the picture box.

Conversation/Security Protocol:

FIG. **10** illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates. At step **1000**, the frame device establishes a connection to the access array at the scheduled interval via the interconnection fabric. For example, the frame device may utilize the communication interface to connect to an ISP or other entity with an access array such as a modem pool. The frame device obtains the information it needs to initiate the

connection from flash memory (e.g. phone number information, unique identifier such as a serial number, and password information). Other information such as the network router information, subnet mask, and domain name service information is drawn directly from the ISP using DHCP or some other dynamically addressing protocol. Thus, the device may obtain the information it needs to connect without input from the user. Once the connection is initiated, the process proceeds to step **1002** where the ISP or entity having control of the access array determines if the frame device is authorized to connect to the access array. If for example, the frame device connects using a modem and PPP, the access array may prompt the device for password information that may be automatically entered by the frame device. In one or more embodiments of the invention, the password to be entered is determined algorithmically by the frame device. If the correct password information is entered the process proceeds to step **1004**, otherwise step **1003** executes and the frame device disconnects and waits for a reconnect command to be initiated.

At step **1004**, the frame device establishes a communication session with a data server. This may be done, for example, using FTP to connect to the data server. However, the invention contemplates the use of other communication protocols such as NFS, tFTP, HTTP, SMTP, POP3, IMAPI, or any other protocol that can be used to transport data between two or more sources, to establish a communication session with the data server.

When the communication session is initiated the data server executes step **1006** where a challenge is made to ensure the frame device is authentic. If the frame device correctly responds to the challenge, step **1008** executes. Otherwise, step **1003** executes and the frame device disconnects. At step **1008**, the data server transmits data to the frame device. For example, the data server may enter binary mode and transmit an authentication file to the frame device in response to the device's request for data (e.g. via the GET command). Once the data is sent step **1010** executes. At step **1010**, the frame device examines the data it received to determine if the data is the type of data expected. For example, the frame device may authenticate the data by checking the size, contents, or encryption sequence associated with the data to determine if the transmitted data came from an authorized data server. If the frame device received the expected data (e.g. the encryption sequence is authentic), it proceeds to step **10012**. If the frame did not receive the kind of data expected, step **1003** executes and the frame disconnects from the data server and awaits a reconnect command.

At step **1012**, the data server transmits metadata and/or a log file to the data server. The metadata file contains status information about the frame such as configuration information or connectivity information. The metadata file may also contain new or additional parameters and/or functionality that are to be added to the device (e.g. an on board software update). The log file contains a record of the frame devices past activities. For example, the log may contain a list of recent connection attempts. Any connection failures may be flagged and later analyzed to determine the cause of the failure. After the frame device transmits the metadata to the frame device step **1014** executes. At step **1014**, the data server determines if it received the kind of metadata that was expected. For example, the data server may check to see if the metadata file contains all the expected parameters. In one or more embodiments of the invention, the data server checks the received data to ensure that the data is the proper type of data and that it has not been modified by an unauthorized user (e.g. by examining an encryption sequence associated with

the metadata). If the metadata is properly authenticated, the data server executes step **1016** where it transmits package data to the frame device. The package data may contain one or more images that are scheduled for display on the frame device, software updates, and additional parameters needed to direct the behavior characteristics of the frame device. Other information that is useful to the operation of the frame device such as timing information may also be placed in the package. Once the package is received by the frame device step **1018** executes. At step **1018**, a checksum operation is performed to ensure that the entire package scheduled for transmission was indeed transmitted. If the checksum results in the expected response the frame device disconnects and begins to unpackage the package data. If the package data is compressed, the frame device decompresses the package and loads the contents of the package into memory. Image files found in the package may be stored in DRAM until they are rendered for display.

Embodiment of Computer Execution Environment (Hardware):

An embodiment of the invention utilized to access the picture box interface can be implemented as computer software in the form of computer readable code executed on a general purpose computer such as computer **700** illustrated in FIG. **7**, or in the form of bytecode class files executable within a Java™ runtime environment running on such a computer, or in the form of bytecodes running on a processor (or devices enabled to process bytecodes) existing in a distributed environment (e.g., one or more processors on a network). A keyboard **710** and mouse **711** are coupled to a system bus **718**. The keyboard and mouse are for introducing user input to the computer system and communicating that user input to processor **713**. Other suitable input devices may be used in addition to, or in place of, the mouse **711** and keyboard **710**. I/O (input/output) unit **719** coupled to system bus **718** represents such I/O elements as a printer, A/V (audio/video) I/O, etc.

Computer **700** includes a video memory **714**, main memory **715** and mass storage **714**, all coupled to system bus **718** along with keyboard **710**, mouse **711** and processor **713**. The mass storage **714** may include both fixed and removable media, such as magnetic, optical or magnetic optical storage systems or any other available mass storage technology. Bus **718** may contain, for example, thirty-two address lines for addressing video memory **714** or main memory **715**. The system bus **718** also includes, for example, a 64-bit data bus for transferring data between and among the components, such as processor **713**, main memory **715**, video memory **714** and mass storage **714**. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

In one or more embodiments of the invention, the processor **713** is a microprocessor manufactured by Sun Microsystems, Inc., such as the SPARC™ microprocessor, or a microprocessor manufactured by Motorola, such as the 680×0 processor, or a microprocessor manufactured by Intel, such as the 80×86, or Pentium processor. However, any other suitable microprocessor or microcomputer may be utilized. Main memory **715** is comprised of dynamic random access memory (DRAM). Video memory **714** is a dual-ported video random access memory. One port of the video memory **714** is coupled to video amplifier **716**. The video amplifier **716** is used to drive the cathode ray tube (CRT) raster monitor **717**. Video amplifier **716** is well known in the art and may be implemented by any suitable apparatus. This circuitry converts pixel data stored in video memory **714** to a raster signal suitable for use by monitor **717**. Monitor **717** is a type of monitor suitable for displaying graphic images.

Computer **700** may also include a communication interface **740** coupled to bus **718**. Communication interface **740** provides a two-way data communication coupling via a network link **741** to a local network **744**. For example, if communication interface **740** is an integrated services digital network (ISDN) card or a modem, communication interface **740** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **741**. If communication interface **740** is a local area network (LAN) card, communication interface **740** provides a data communication connection via network link **741** to a compatible LAN. Wireless links are also possible. In any such implementation, communication interface **740** sends and receives electrical, electromagnetic or optical signals which carry digital data streams representing various types of information.

Network link **741** typically provides data communication through one or more networks to other data devices. For example, network link **741** may provide a connection through local network **744** to local computational service provider computer **743** or to data equipment operated by an Internet Service Provider (ISP) **744**. ISP **744** in turn provides data communication services through the world wide packet data communication network now commonly referred to as the "Internet" **745**. Local network **744** and Internet **745** both use electrical, electromagnetic or optical signals which carry digital data streams. The signals through the various networks and the signals on network link **741** and through communication interface **740**, which carry the digital data to and from computer **700**, are exemplary forms of carrier waves transporting the information.

Computer **400** can send messages and receive data, including program code, through the network(s), network link **741**, and communication interface **740**. In the Internet example, remote computational service provider computer **746** might transmit a requested code for an application program through Internet **745**, ISP **744**, local network **744** and communication interface **740**.

The received code may be executed by processor **713** as it is received, and/or stored in mass storage **714**, or other non-volatile storage for later execution. In this manner, computer **700** may obtain application code in the form of a carrier wave.

Application code may be embodied in any form of computer program product. A computer program product comprises a medium configured to store or transport computer readable code, or in which computer readable code may be embedded. Some examples of computer program products are CD-ROM disks, ROM cards, floppy disks, magnetic tapes, computer hard drives, computational service providers on a network, and carrier waves.

The computer systems described above are for purposes of example only. An embodiment of the invention may be implemented in any type of computer system or programming or processing environment. When a general purpose computer system such as the one described executes the process and process flows described herein, it is configured to adaptably distribute data to one or more recipient devices.

Thus, a method and apparatus for distributing picture mail to a frame device community is described.

The invention claimed is:

1. A display device for displaying image data received from a server system comprising:
a central processing unit;
a display screen for displaying said image data;
a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

2. The display device of claim 1 wherein said computer readable instructions for storing said image data in said memory further comprise instructions for causing image data previously stored in said memory to be replaced with said received image data.

3. The display device of claim 1 wherein said communications network comprises the internet.

4. The display device of claim 1 wherein said communications interface comprises a wireless communications interface.

5. The display device of claim 1 wherein said memory further comprises preference information for controlling the display of said image data by said display device.

6. The display device of claim 5 wherein said preference information comprises communication timing information for specifying the timing of sending requests for image data to said server system.

7. The display device of claim 5 wherein said preference information comprises display timing information for specifying the timing of displaying said image data on said display screen.

8. The display device of claim 5 wherein said preference information comprises an image display list.

9. A display device for displaying image data received from a server system comprising:

a housing with a multi-function pushbutton control;

a central processing unit;

a display screen for displaying said image data;

a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source, to automatically initiate a communications session with said server system without receiving input from a user; said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

10. The display device of claim 9 wherein said computer readable instructions for storing said image data in said memory further comprise instructions for causing image data previously stored in said memory to be replaced with said received image data.

11. The display device of claim 9 wherein said communications network comprises the internet.

12. The display device of claim 9 wherein said communications interface comprises a wireless communications interface.

13. The display device of claim 9 wherein said computer readable instructions for storing said image data in said memory further comprise instructions for automatically updating said computer readable instructions with said updated computer readable instructions.

14. The display device of claim 9 wherein said memory further comprises preference information for controlling the display of said image data by said display device.

15. The display device of claim 14 wherein said preference information comprises communication timing information for specifying the timing of sending requests for image data to said server system.

16. The display device of claim 14 wherein said preference information comprises display timing information for specifying the timing of displaying said image data on said display screen.

17. The display device of claim 14 wherein said preference information comprises an image display list.

18. The display device of claim 14 wherein said preference information comprises an image data set.

* * * * *



US009203930B2

## (12) United States Patent
### Schiller et al.

(10) **Patent No.:** **US 9,203,930 B2**
(45) **Date of Patent:** **\*Dec. 1, 2015**

(54) **METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY**

(75) Inventors: **Dean Schiller**, Glendale, CA (US); **Paul Yanover**, Los Angeles, CA (US)

(73) Assignee: **Ceiva Logic Inc.**, Burbank, CA (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1529 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/179,732**

(22) Filed: **Jun. 24, 2002**

(65) **Prior Publication Data**

US 2004/0205582 A1 Oct. 14, 2004

### Related U.S. Application Data

(63) Continuation of application No. 09/458,849, filed on Dec. 10, 1999, now Pat. No. 6,442,573.

(51) **Int. Cl.**
*G06F 13/00* (2006.01)
*G06F 15/00* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............ *H04L 67/36* (2013.01); *H04L 12/5835* (2013.01); *H04L 29/06* (2013.01); *H04L 51/066* (2013.01); *H04L 63/102* (2013.01); *H04L 67/12* (2013.01); *H04L 67/1014* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ................................ H04L 67/36; H04L 29/06
USPC ......... 715/765, 853–854, 724–726, 730–732, 715/744, 719, 748, 839, 752, 838, 835; 345/638, 83
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,742,345 A | 5/1988 | Di Santo et al. | |
| 5,394,166 A | 2/1995 | Shimada | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 92/05657 | 4/1992 |
| WO | WO 95/30300 | 11/1995 |

(Continued)

OTHER PUBLICATIONS

Hagiwara-Sys-Com U.S., "LUKIS (TM) JPEG Image Viewer (product info.)," web page downloaded from www.hscus.com/prod03 No. n/a, pp. 1-2, Apr. 2001.

(Continued)

*Primary Examiner* — Kevin Nguyen

(74) *Attorney, Agent, or Firm* — The Hecker Law Group, PLC

(57) **ABSTRACT**

A frame device has a display region (e.g., an LCD) surrounded with a border region modeled to resemble a traditional picture frame. Each frame device is connected to an interconnection fabric to obtain image data from a repository and then display that data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process. A user may specify filter criteria which establishes what network addresses (e.g., picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established and/or managed via a user interface.

**20 Claims, 12 Drawing Sheets**



(51) **Int. Cl.**

| | | |
|---|---|---|
| *H04L 29/08* | (2006.01) | |
| *H04L 12/58* | (2006.01) | |
| *H04L 29/06* | (2006.01) | |

(52) **U.S. Cl.**
CPC .......... *H04L 67/1017* (2013.01); *H04L 67/1036* (2013.01); *H04L 69/329* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,448,372 A | | 9/1995 | Axman et al. |
| 5,561,531 A | | 10/1996 | Funazaki |
| 5,606,365 A | | 2/1997 | Maurinus et al. |
| 5,612,741 A | | 3/1997 | Loban et al. |
| 5,680,535 A | | 10/1997 | Harbin et al. |
| 5,706,457 A | | 1/1998 | Dwyer et al. |
| 5,708,826 A | | 1/1998 | Ikeda et al. |
| 5,740,549 A | | 4/1998 | Reilly et al. |
| 5,760,916 A | | 6/1998 | Dellert et al. |
| 5,790,792 A | | 8/1998 | Dudgeon et al. |
| 5,838,906 A | | 11/1998 | Doyle et al. |
| 5,848,427 A | | 12/1998 | Hyodo |
| 5,862,297 A | | 1/1999 | Timmermans |
| 5,862,339 A | | 1/1999 | Bonnaure et al. |
| 5,864,387 A | | 1/1999 | Reed et al. |
| 5,870,172 A | | 2/1999 | Blume |
| 5,898,600 A | | 4/1999 | Isashi |
| 5,905,492 A | | 5/1999 | Straub et al. |
| 5,913,088 A | | 6/1999 | Moghadam et al. |
| 5,923,736 A | | 7/1999 | Shachar |
| 5,923,738 A | | 7/1999 | Cardillo, IV et al. |
| 5,930,501 A | | 7/1999 | Neil |
| 5,959,945 A | | 9/1999 | Kleiman |
| 5,999,740 A | * | 12/1999 | Rowley .................... 717/173 |
| 6,005,690 A | | 12/1999 | Suzuki et al. |
| 6,025,827 A | | 2/2000 | Bullock et al. |
| 6,037,989 A | | 3/2000 | Kim |
| 6,058,428 A | | 5/2000 | Wang et al. |
| 6,067,566 A | | 5/2000 | Moline |
| 6,111,586 A | | 8/2000 | Ikeda et al. |
| 6,141,010 A | | 10/2000 | Hoyle |
| 6,167,469 A | | 12/2000 | Safai et al. |
| 6,199,106 B1 | | 3/2001 | Shaw et al. |
| 6,205,126 B1 | | 3/2001 | Moon |
| 6,215,559 B1 | | 4/2001 | Bryniarski et al. |
| 6,266,069 B1 | * | 7/2001 | Thagard et al. ............... 345/638 |
| 6,462,761 B1 | * | 10/2002 | Hasuo ............................ 715/838 |
| 6,463,468 B1 | | 10/2002 | Buch et al. |
| 6,502,194 B1 | | 12/2002 | Berman et al. |
| 6,535,228 B1 | | 3/2003 | Bandaru et al. |
| 6,567,983 B1 | * | 5/2003 | Shiimori ..................... 725/105 |
| 6,571,271 B1 | | 5/2003 | Savitzky et al. |
| 6,668,278 B1 | | 12/2003 | Yen et al. |
| 6,670,934 B1 | * | 12/2003 | Muoio et al. ................... 345/1.1 |
| 6,717,567 B1 | * | 4/2004 | Bowden et al. ................. 345/104 |
| 6,721,713 B1 | * | 4/2004 | Guheen et al. .................. 705/1.1 |
| 6,741,271 B1 | * | 5/2004 | McConica et al. ............... 715/839 |
| 6,784,925 B1 | * | 8/2004 | Tomat et al. .............. 348/207.11 |
| 6,975,308 B1 | | 12/2005 | Bitetto et al. |
| 7,155,679 B2 | * | 12/2006 | Bandaru et al. ............... 715/748 |
| 2003/0093493 A1 | | 5/2003 | Watanabe et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | WO 95/31872 | 11/1995 |
| WO | WO 96/29639 | 9/1996 |
| WO | WO 97/47106 | 12/1997 |
| WO | WO 98/04088 | 1/1998 |
| WO | WO 98/26548 | 6/1998 |
| WO | WO 99/04342 | 1/1999 |
| WO | WO 99/44339 | 9/1999 |
| WO | WO 99/54663 | 10/1999 |
| WO | WO 99/56447 | 11/1999 |
| WO | WO 00/29960 | 5/2000 |

OTHER PUBLICATIONS

Kodak, Inc. Smart Picture Frame . . . for the Story Box (TM) Network (product description), downloaded from www.kodak.com/US/en/digital/accessories/smartFrame/ on Apr. 2001.

Newman, Heather, Free Press Staff Writer, "Nifty Ways You Can Soup Up Your Machine," Detroit Free Press No. __, pp. 3E, Aug. 22, 1999.

Anonymous, "Visions of the Future," Copyright 1996, 3rd edition 1998, Philips Design, Eidonhover, NL and V+K Publishing, Blaricum, NL, ISBN 90 6611 591 2, pp. 12-13.

Takashi, D. "Doing Fieldwork in the High Tech Jungle." The Wall Street Journal, p. B1 & B22, Oct. 27, 1998.

Kirschner, S. K., "Ideas that Stick," Popular Science, vol. 254 No. 2, pp. 27, Feb. 1999.

Okamoto et al., "Reproducing Device," translation of WO 95/54663, as provided by Ralph McElroy Translation Company (Washington DC), pp. 1-15+Figures.

William H. Gates III, The Road Ahead, Viking, New York, New York USA 1995, pp. 216-227.

Kathleen Kenna, $81 Million Home Built for a King—of Cyberspace, The Toronto Star, Toronto, Ontario Canada, Aug. 4, 1997, p. A1.

Jim Erickson, The House That Microsoft Built: Billionaire Bill's Estate Will be an Electronic Showcase for Art, Seattle Post-Intelligencer, Seattle, Washington USA, May 10, 1991, p. D1.

O. Casey Corr, Gates Buys Electronic Rights to Artwork—Seattle Art Museum Images Will be Shown at his $5 Million Home, The Seattle Times, Seattle, Washington USA, May 9, 1991.

Jacqueline Lunn, Virtual Reality, Sunday Herald Sun, Melbourne, Victoria Australia, Jan. 1, 1998, p. 14.

Susan Nielsen, Technology Doesn't Make for Random Moonings, The Columbian, Vancouver, Washington USA, Mar. 5, 1998.

Ernst Schmiederer, All Power Proceeds From Picture, Ars Electronica, Linz, Austria 1998.

James Wallace, The House Big Money Will Buy if You Were the Richest Person in the World: What Kind of Home Would You Buy? Here's What Bill Gates Did, Roanoke Times & World News, Roanoke, Virginia USA, Sep. 28, 1997, p. D1.

Dawna Travis Dewire, Thin Clients: Delivering Information Over the Web, Michael Sprague ed., McGraw-Hill, New York, New York USA, 1998, Chaps. 15-16, pp. 235-264.

Neil Templin, Choice Hotels International Bets Guests Will Go for Wired PCs, The Wall Street Journal, New York, New York USA, Jul. 26, 1999.

Anthony Mills, Collaborative Engineering and the Internet: Linking Product Development Partners via the Web, Larry Binstock ed., Society of Manufacturing Engineers, Dearborn, Michigan USA 1998, pp. 160-162.

Jeff Pulver, A Personal Cast: BackWeb provides a twist on the PointCast Model by Allowing Users to Broadcast as well as Receive Material, Internet World, Norwalk, Connecticut USA, Dec. 1996, pp. 110-112.

Carolyn Bickford, Free Internet News and Stock Reports: Screen-Saver News Service Gives You Only the News You Choose, MacUser, New York, New York USA, Nov. 1996, p. 33.

Whit Andrews, Planning for Push: How to Seize Control of the Technology That's Sweeping the Web, Internet World, Norwalk, Connecticut USA, May 1997, pp. 45-52.

Peter M. Corcoran et al., Internet Enabled Digital Photography, IEEE Transactions on Consumer Electronics, New York, New York USA, vol. 45, No. 3, Aug. 1999, pp. 577-583.

Elizabeth Corcoran, Microsoft Heads Home: Software Giant Targets Huge Consumer Market With a Host of High-Tech Innovations, The Washington Post, Washington DC USA, Nov. 13, 1994, pp. H1, H6.

Microsoft Corporation, Microsoft Announces Internet Referral Server to Facilitate Selection of Internet Service Provider for Users of Windows, Microsoft Internet Explorer, press release, Redmond, Washington USA, Jul. 30, 1996.

Anonymous, Visions of the Future, V+K Publishing, Blaricum, The Netherlands, 1998, pp. 130-131.

(56) **References Cited**

OTHER PUBLICATIONS

Frame Media, Inc., Detailed Request for Inter Partes Reexamination Under 35 U.S.C. 311-318 and 37 C.F.R. 1.902 et Seq., filed with the USPTO on Oct. 15, 2008.

Bill Gates, Bill Gates Keynote Speech Fall/COMDEX, Alladin Hotel, Las Vegas, Nevada, Nov. 14, 1994, http://ourworld.compuserve.com/homepages/r_harvey/iayf2005.htm.

Stephan Somogyi, Future Perfect, Interactions, Nov./Dec. 1999, pp. 17-18.

\* cited by examiner



FIGURE 1A
(Prior Art)

APPX116



**FIGURE 1B**
**(Prior Art)**

APPX117



**FIGURE 1C**
**(Prior Art)**

APPX118



**FIGURE 2A**

APPX119



**FIGURE 2B**

APPX120



**FIGURE 3**



**FIGURE 4**

APPX121



*FIGURE 5*

APPX122



*FIGURE 6*

APPX123



FIGURE 7

APPX124



**FIGURE 8**

APPX125



**FIGURE 9**

APPX126



**FIGURE 10**

# METHOD AND APPARATUS FOR DISTRIBUTING PICTURE MAIL TO A FRAME DEVICE COMMUNITY

## CROSS REFERENCE TO RELATED APPLICATIONS

The present application is a continuation of U.S. patent application Ser. No. 09/458,849, filed Dec. 10, 1999, now U.S. Pat. No. 6,442,573, which is incorporated by reference herein.

## FIELD OF THE INVENTION

This invention relates to the field of computer software. More specifically, the invention relates to a method and apparatus for distributing picture mail to a frame device community.

Portions of the disclosure of this patent document contain material that is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office file or records, but otherwise reserves all copyrights whatsoever.

## BACKGROUND

Traditional Picture Frames:

Picture frames provide a visually pleasing way to present photographs for display. People typically prefer to use picture frames, rather than digital display mechanisms (e.g. computer monitors), because of the aesthetic qualities associated with such frames. However, several problems and disadvantages result from the use of traditional picture frames.

For example, a problem that may be encountered by picture frame users is that changing the picture in the frame requires a series of manual steps. For example, a person who wishes to change the picture must manually remove the picture and replace it with a new one. Consequently, changing the picture requires that a person be physically located at the same place where the picture frame resides.

An additional problem with picture frames is that the frame does not have the ability to adjust the dimensions and/or size of the picture to fit within the display area. Pictures placed into the picture frame must correspond to the dimensions of the frame's display area. One prior art attempt to overcome these limitations is the use of various type of digital display device. The following section describes a prior art digital display device and discusses the inherent limitations of the device.

Digital Display Device:

FIG. 1a illustrates a prior art device (e.g. the Sony PHD A55 CyberFrame™) capable of displaying digital images. However, there are several problems associated with this device. For example, the device lacks the ability to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user. The device shown in FIG. 1a consists of a display 100. Display 100 is an active matrix LCD screen configured to display digital video data and still image data. The data shown on display 100 is obtained from storage media 103. Storage media 103 is a memory medium capable of storing video and/or image data (e.g. a Memory Stick™).

The device contains software and/or hardware configured to playback MPEG or JPEG data files obtained from storage media 103. The device supports playback in a variety of different resolutions and can, for example, display JPEG data

in UXGA (1600×1200), SXGA (1280×960), XGA (1024×768), or VGA (640×480). MPEG data files are shown on display 100 using a presentation mode that supports a resolution of 320×240 or a video mode that uses a resolution of 160×112.

The device also has built-in speaker(s) 105 and volume control 107. Speakers 105 provide a way to play back sound data introduced to the device via storage media 103. Volume control 107 allows the user of the device to adjust the decibel level. Control mechanism 109 contains the software and/or hardware utilized to control how data is displayed. For example, control mechanism 109 has a slide show mode that allows the user to display several images at varying intervals. Control mechanism 109 also provides the system with a way to delete unwanted images or keep certain images from being deleted. Control mechanism 109 is configured to provide other functionality, such as a sleep timer, brightness control, an index mode, an automatic angle detector, and a touchless sensor.

A problem with prior art mechanisms, such as the one illustrated in FIG. 1a, is that the user must physically provide storage media 103 to the device. Thus, a person who does not have physical access to the device cannot introduce new images into the device. Moreover, the device cannot be controlled from a remote location. For example, making changes to a web site cannot control the behavior of the control mechanism.

A further problem is that the functions offered by control mechanism 109 cannot be remotely updated, modified, or otherwise changed. For example, a new feature, such as the ability to obtain new images from a network, cannot be added by transmitting a software update to the device from a remote source. The device illustrated in FIG. 1a is isolated from other devices and therefore does not have the ability to communicate with such devices over a telecommunication medium.

Another limitation inherent in the design of the prior art device is that the device cannot automatically receive different types of image data. For example, the device cannot obtain different types of image data via an image delivery service. The user of the device illustrated in FIG. 1a cannot elect to periodically receive information relating to a particular topic such as the weather report. Computer networks are a prior art mechanism used to propagate data to devices connected to the network. The following section describes several techniques used to send and receive data across such computer networks and explains the limitations and disadvantages associated with such techniques.

Computer Networks:

A network is an amalgamation of interconnected computers. Devices properly connected to the network may utilize the network to communicate with other devices coupled to the network. A server computer, for example, may use a network to transmit data to a client computer for display. There are several different techniques for propagating data to devices connected to the network. For example, electronic mail, client pull, and server push mechanisms all are examples of techniques that provide a way to transmit data to a client computer. However, these techniques lack a mechanism for establishing and then controlling the behavior of a device from a remote location. For example, these techniques cannot dynamically obtain image data from a networked data source and then display that data according to the behavior criteria established by an authorized user.

A. Electronic Mail Systems:

The following section discusses electronic mail systems and points out the limitations associated with using such systems to distribute image data. An electronic mail system is

an example of a prior art system used to distribute data to one or more recipients. The electronic mail system, for example, provides users with a way to transmit data from one computer to another computer.

An example of an electronic mail system is shown in FIG. 1b. The system consists of one or more client computers 125-128 each having a client software program 129-132 configured to send and receive data, a network 133 configured to relay the data to one or more recipients, and a mail server 120 having server software 121 configured to store the data until it is retrieved by the designated recipient(s).

A user residing at client computer 125, for example, may use the system shown in FIG. 1b to transmit an image file to another user residing at a different computer (e.g. client computer 127). To send the file the user typically executes the appropriate client software program (e.g. client software 129), determines the data to be sent, and directs the program to send the data to a recipient. Data that is sent is routed across network 133 to the appropriate mail server 120-123 associated with the recipient. Once mail server 120 receives the data, the server holds the data in the intended recipients account until requested by the recipient. For example, mail server 120 will store the data until the recipient residing at client computer 127 executes a local version of client software program 129 and directs the program to obtain data from mail server 120.

A problem associated with using current electronic mail systems is that to receive and view images recipients must have physical access to a client computer containing a client software program configured to obtain mail data. For example, an electronic mail client (e.g. Microsoft Outlook Express) and/or a web browser (e.g. Microsoft Internet Explorer) must reside on client computer 127 in order for it to obtain data from server 120.

An additional problem with using current electronic mail systems is that in order to receive data the recipient must know how to navigate around the operating system and how to use the program utilized to obtain the data. For example, in some instances the recipient is required to manually configure the program utilized to obtain data. This requires that the recipient know the name and/or address of server 120 and be familiar with the settings required to login to server 120. Current electronic mail systems cannot, for example, automatically connect to an image source, obtain image data for display, and then automatically display the image data according to a set of predetermined preferences.

Instead, current systems require the recipient to manually perform a series of steps before the image data may be viewed. For example, receivers that use a Simple Mail Transfer Protocol (SMTP)/POP electronic mail system are typically required to 1) open a client program configured to connect to the appropriate server, 2) direct the client to obtain the image data from the server, 3) select the electronic mail message containing the image data from a list of received messages, and 4) provide the image data to a client program configured to display the image data.

In some instances, however, the receiver cannot use the electronic mail client to view the image data, but instead must have an application specially configured to view the image data. If, for example, the receiver's electronic mail client cannot process images sent in the Tagged Image File Format (TIFF), the receiver must have an application capable of viewing TIFF files in order to view the image data transmitted by the sender. Thus, a problem with using current electronic mail clients to transmit image data is that such clients lack flexibility and require the user to manually open the electronic mail message to view the attached image data.

Another problem is that electronic mail client programs cannot obtain image data and then display a full sized view of that data without requiring the user to manually intervene. Current electronic mail clients are not configured to periodically obtain and then automatically display images. Additionally, the receiver cannot control which images may be displayed and the frequency with which those images are displayed cannot be set based on the receiver's preferences. For example, mail clients lack the ability to automatically distribute data to a client computer according to a set of preferences determined by the user of the client computer. Furthermore, the receiver cannot set the behavior characteristics of the electronic mail client unless physically present at the client.

B. Client Pull:

The following section discusses the client pull technique and points out the limitations associated with using such systems to distribute image data. Client pull is an example of a technique used to download data from a server computer. When client pull is employed, data is requested by a client computer and then delivered by a server. For example, if web browser 131, executing at client computer 127, requests web page 151 stored on web server 150, it will cause web server 150 to execute web server software 152 which will in turn transmit web page 151 to client computer 127. The World Wide Web (WWW) is an example of a system that utilizes the client pull technique. The WWW is a segment of the Internet that utilizes an application layer protocol called the Hyper-Text Transfer Protocol (HTTP) to disseminate and to obtain information from server computers (e.g. web server 150).

HTTP is a request/response protocol used with distributed, collaborative, hypermedia information systems. In operation, HTTP enables one computer to request data from another. For example, client 127 can use HTTP to communicate with web server 150 via network 133. In this scenario web server 150 acts as a data store for one or more web pages 151 and is capable of processing client 127's requests for such files. The web pages 151 stored on web server 150 may contain any type of data. For example, the files may contain data used to construct a form, image data, text data, or any other type of data. HTTP has communication methods that utilize the client pull technique to allow client 127 to request data from web server 150. Client 127 may use web browser 131 to initiate a request and thereby obtain web page 151.

Typically, web browser 131 requests at least one web page 151 from web server 150 and web server software 151 responds to the request by forwarding requested web page 151 to client 127. Once web page 151 arrives the connection is between client 127 and web server 150 is terminated. Client 127 uses web browser 131 to display requested web page 151. Web server 150 does not maintain any state information about the request once the connection is terminated. HTTP, which is frequently used to implement client pull, is, therefore, a stateless application protocol. That is, client 127 can send several requests to web server 150, but each individual request is treated independent of any other request. Web server 150 has no recollection of any previous request. Thus, for example, if a form is completed by the user and submitted to web server 150 for processing, the web server does not maintain a record of the data entered the form.

Once a file is sent from web server 150 to client 127 it becomes ready for display. Client 127's web browser 131 is typically used to format and display web page 151. Web browser 131 allows the user to request and view web page 131 (or any other web page) without having to learn a complicated command syntax. Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and

Opera. Some web browsers can display several different types of files. For example, web browser **131** may display files (e.g. web pages) written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF). It is also possible to display various other types of files using language such as Standard Generalized Markup Language (SGML) or extensible Markup Language (XML).

A problem with utilizing client pull to distribute data, is that information about what data is to be disseminated to the client computer must be contained in the initial request. For example, if a user residing at client **127** wishes to request web page **131**, the user may do so by entering a Uniform Resource Locator (URL) and then transmitting the URL to web server **150**. The URL is used to identify the name and location of web page **131** (e.g. web page **131** resides on web server **150**). When web server **150** receives the request it transmits requested web page **131** to client **127**. Web server **150** is not configured, for example, to transmit data that web server **150** determines client **127** needs (e.g. onboard software updates).

Another problem associated with client pull is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **150**, for example, does not provide a way to ensure that data intended for display at a certain device is only sent to that device (e.g. a device with a unique serial number). An additional problem is that client **127** cannot be directed to request data without input or direction from a user residing at client **127**. For example, a user residing at client **128** cannot control the behavior of client **127**. Systems utilizing client pull do not have a mechanism for control the request patterns of multiple devices.

C. Server Push:

The following section discusses the server push techniques and points out the limitations associated with using such systems to distribute image data. Server push is a technique that provides a way to transmit a predetermined data set from a server computer to one or more client computers. Referring now to FIG. 1c, a system configured to perform one or more server push operations is shown. The system is generally composed of a server system **170**, a network **173**, and client computers **175-171**. Each element of the system is configured to perform a task. Server system **170**, for example, transmits data to any client computer **175-171** scheduled to receive data. Network **173** provides end-to-end connectivity for the system and thereby links server system **170** with client computers **175-171**.

Each client computer **175-171** contains software configured to provide the user with an interface for operating the computer (e.g. an operating system). A web browser **180**, residing at each client, provides users with a way to inform server **170** what type of data to send and how often data of that type should be sent. For example, if the user of client computer **175** wishes to have server **170** transmit stock market quotes (e.g. data **172**) to client computer **175** on a daily basis, the user may direct server **170** to do so by obtaining a web form **190** from server **170** that provides such a option, filling the form out, and submitting the form to server **170**. When server **120** receives the data provided by the user, it schedules the stock market quotes for dissemination at the interval specified by the user.

Server **120** may also be configured to disseminate electronic mail messages to client computers **125-131** on a regular basis. For example, if the user of client computer **129**, or any other person authorized to control the behavior of server **120**, directs server **120** to transmit an electronic mail messages to client computer **129** once a week, server **120** will distribute an electronic mail message to client computer **129** at the interval specified by the user.

Other types of data, such as document written using the HyperText Markup Language (HTML) may also be transmitted to client computers **175-171** for display. Such document may, for example, be embedded into the graphical user interface (e.g. the GUI desktop) or shown as screen savers. Examples, of such distribution systems include the active desktop included with Internet Explorer and the screen saver distribution scheme used by pointcast.

A problem with server push systems is that data is transmitted in a unidirectional manner. For example, data may be sent from server **170** to client computer **177** using server push techniques, but data cannot be transmitted from client computer **175** to client computer **177**. Another problem associated with server push is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **170**, for example, does not contain a mechanism for ensuring that data is only sent to devices having a certain serial number.

None of the prior art devices and/or systems described provide a way to distribute image data to a customizable frame devices. The prior art lacks a mechanism for remotely customizing the behavior of each frame device and does not have a distribution scheme configured to distribute image data to each frame device.

## SUMMARY OF THE INVENTION

A method and apparatus for distributing picture mail to a frame device community is described. The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display from a repository of that may be accessed via an interconnection fabric (e.g. a computer network). If a person (referred to as a user) wants to display an image on the frame device the person may do so by transmitting the image data to the repository.

The frame device is programmed to connect to the repository and obtain new images for display. Once the frame device is connected to the network it may also use the opportunity to update the device's onboard software. In one or more embodiments of the invention, the frame device is configured to automatically execute the steps typically required for it to connect to the repository. Thus, the frame device is self-aware and requires only a minimal amount of input from the user. Once the frame device is connected to a power source and a telephone line, for example, the device is configured to automatically access the data repository without any further user input. The software that provides the frame device with its operational logic may be automatically upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. Thus, if certain information necessary for normal day-to-day operation is lost (e.g. by a power outage), the frame device may recover without requiring input from the user.

The type of images and the frequency with which such images are displayed is configured remotely via a graphic user interface called a picture box. In one or more embodiments of the invention, the picture box is accessible via a web browser. The picture box provides a way to customize the behavior characteristics of the frame device to conform to the wishes of the user. Each frame device has a display region (e.g. an LCD) surrounded by a border region modeled to

US 9,203,930 B2

7

resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. The border region may be, for example, an actual picture frame with a paper matte board that surrounds a thin LCD display region. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a data repository and to then display that data according to criteria established by an authorized user.

The data repository is populated with image data via an image collection process. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the target frame device. The user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established via a picture box.

When a user initializes a frame device, the user associated with the initialized frame device becomes a member of an online community. When the user initiates the frame device a picture box is created that allows the user to specify mange the behavior of the user's frame device. Each picture box is assigned a unique username (e.g. a picture address) and associated with one or more frame devices. The picture box provides the user with an interface for managing the behavior characteristics and filter criteria of one or more registered frame devices. For example, the picture box provides the user with a way to specify when the frame device should connect to the data repository to obtain a image and/or software update. When an update occurs new image data and or information related to the operation and behavior of the frame device may be transmitted to the device.

In one or more embodiments of the invention, users may obtain a picture box by using a picture box viewer (e.g. a web browser). A picture box engine residing on a server system may generate the picture box. The picture box engine uses information stored in the data repository to generate the picture box that is displayed by the picture box viewer. For example, a user residing at a client computer may use a picture box viewer to request a picture box from a server computer. The server will respond to the request by executing the picture box engine, which in turn obtains the data used to generate a picture box from the data repository.

DESCRIPTION OF THE DRAWINGS

FIG. 1a illustrates a device configured to display digital images.

FIG. 1b illustrates the components used by an electronic mail system and/or a client pull system such as the World Wide Web.

FIG. 1c illustrates a system configured to push data from a server computer to one or more client computers.

FIG. 2a is a block diagram that illustrates the components utilized by one embodiment of the invention.

FIG. 2b illustrates the system components utilized by one or more embodiments of the invention.

FIG. 3 is a block diagram that illustrates the internal components of the frame device.

FIG. 4 illustrates what type of data may be stored in the data repository.

FIG. 5 is an illustration of a picture box viewer containing a picture box.

8

FIG. 6 is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in a frame device.

FIG. 7 illustrates an embodiment of the invention that may be utilized to access the picture box interface.

FIG. 8 is a flow chart illustrating the process utilized by one or more embodiments of the invention to register a frame device.

FIG. 9 illustrates the process utilized by one or more embodiments of the invention to initialize a frame device.

FIG. 10 illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates.

DETAILED DESCRIPTION

A method and apparatus for distributing picture mail to a frame device community is described. In the following description numerous specific details are set forth in order to provide a more thorough understanding of the present invention. It will be apparent, however, to one skilled in the art, that the present invention may be practiced without these specific details. In other instances, well-known features have not been described in detail so as not to obscure the invention.
General Overview:

The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display and/or software from a data repository via an interconnection fabric (e.g. a computer network). Each frame device is configured to automatically interface with the data repository to obtain image data and to then display that data according to a set of preferences. For example, a frame device may dynamically obtain image data from a networked data source (e.g. a client computer), store that data, and then display that data according to criteria established by an authorized user.

Each frame device provides users with a simplified interface that minimizes the amount of complexity presented to the user without limiting the ability of the device to perform an advanced set of functions. For example, each frame device is programmed to automatically configure itself without obtaining input from the user. So long as the frame device is connected to a power source and a communication source it may remain operational without obtaining input from the user. The software that controls the behavior of each frame device may also be updated or modified without requiring additional input from the user. One embodiment of the invention provides a simplified pushbutton interface that provides users with a mechanism for manually directing the behavior of the device. However, the device will continue to operate even if users do not direct it to via the pushbutton interface. Each frame device is part of a community of interrelated components that operate in concert to provide image data to a family of one or more frame devices. The details of the system are further described below.

Image data is typically stored in a data repository (e.g. a database). Users or people authorized to submit images may transmit image data to the data repository which in turn provides the image data to an associated frame device by sending the image data via picture mail. A picture box, which comprises functionality further described below, provides users with a mechanism for controlling the behavior characteristics of each frame device. Thus, users may control the picture box without touching the pushbutton interface on the device. When the picture box is created the user associated with the picture box becomes a member of a picture mail community.

APPX131

Members of the picture mail community are each provided with one or more picture mail addresses.

Each frame device contains onboard software designed to automatically connect to an image delivery service. The image delivery service provides a mechanism for transmitting certain types of images to a frame device based on a set of predefined criteria. The specific aspects of the image delivery service are further described below. When a frame device is connected to a network it may automatically execute an initialization process without obtaining any additional input from the user. In one embodiment of the invention this is referred to as the self-configuration protocol. The initialization process is further described below. The data repository may act as an image relay mechanism that processes any image data that is submitted to the system via an image collection/submission engine. The functionality provided by the image collection/submission engine is discussed further below. Once the image data is processed by the collection/submission engine the data repository stores the image data until the frame device connects to the repository for an update. Each frame device is designed to connect to a data source such as the data repository to obtain an update (e.g. image data or software data) using a conversation/security protocol.

Automatic Configuration Without User Input:

The device is configured to automatically execute the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software. In one or more embodiments of the invention, for example, the frame begins to acquire configuration information by obtaining the toll free phone number stored in the devices' memory and using that number to connect to a server computer. The server responds by analyzing the caller ID information contained in the connection signal (e.g. ANI) to determine what local phone number or phone numbers the frame device should utilize to inexpensively connect to the data repository. Based on the location of the frame device during dial-in, the server computer provides the frame device with information that directs the device when and where it should dial. The caller ID information, for example, provides the frame device with a way to discern what geographic region the device is located in and based on that information the device knows when to connect to the data repository for an image and/or software update. If the server determines the frame device is in located in Los Angeles, Calif. the server may inform the device to connect at 12:00 am Pacific Daylight Time (PDT) using a phone number located in the Los Angeles area. The local phone number information may be referred to as a localized number sequence.

The frame device responds by storing the information provided by the server in memory and then disconnecting from the toll free phone number without requiring any input from the user. Once the device is disconnected from toll free phone number the frame redials using one of the local phone numbers obtained while the device was connected to the toll free phone number. The local phone number provides the frame device with a mechanism for connecting to the data repository to obtain new images and/or software updates. The frame device typically uses the local phone number information to connect to the data repository at the time specified by the server without requiring any input from the user of the device. Thus, the frame device is self-configuring and self-maintained. If certain information necessary for normal day-to-day operation is lost (e.g. by a power outage or by the user physically moving the frame device), the frame device may recover without requiring input from the user.

Self-Upgrading Without User Input:

The software that provides the frame device with its operational logic may be automatically updated and/or upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. The functionality of the pushbutton switch or behavior characteristics of the frame device, for example, may be altered by updating the onboard software that controls the device. Transmitting an update to the frame device may modify any characteristic that may be controlled via onboard software.

Simplified User Interface:

Users are not required to perform any complex activities to configure the device. The device may, however, connect to the data repository when manually directed to by the user. The frame device contains a simplistic pushbutton interface that provides novice users with a mechanism for directing the behavior of the device. For example, one or more pushbuttons provides users with a way to manually initiate a connection to the data repository. Other functions such as dimming the LCD or cycling through a set of available images (e.g. slide show mode) may also be provided by the pushbutton interface. A detailed discussion of the pushbutton interface located on the frame device follows below.

The Components of a Frame Device:

FIG. 3 shows a block diagram illustrating the components of a frame device as it is used by one embodiment of the invention. Each frame device comprises a Central Processing Unit (CPU 305), memory (e.g. flash memory and DRAM), and telecommunication hardware and/or software configured to provide the device with a mechanism for connecting to a data repository. Onboard software stored in memory provides each frame devices with a set of behavior characteristics that may be customized by the user, or by any other person authorized to alter the frame device's behavior characteristics. CPU 305 is responsible for executing tasks for the frame device. In one or more embodiments of the invention, CPU 305 is a microprocessor manufactured by Cirrus Logic, such as the EP7211 ARM processor, or a microprocessor manufactured by Intel, such as the 80×86, or Pentium processor. However, any other suitable CPU, microprocessor, or microcomputer may be utilized.

CPU 305 communicates with the other components of the frame device utilizing system bus 335. Bus 335 may contain, for example, thirty-two address lines for addressing flash memory 309 or DRAM 307. The system bus 335 may also include, for example, a 64-bit or 32-bit data bus for transferring data between and among the components, such as CPU 305, flash memory 309, DRAM 312, and DRAM 307. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

Display 313 represents the display hardware used to render a visual representation of the image data. In one or more embodiments of the invention, display 313 is a Liquid Crystal Display (LCD). However, the invention also anticipates the use of other display mechanisms that are capable of rendering an image for display. Flat panel technologies such as plasma displays, Field Emission Displays (FED), or improved Cathode Ray Tube (CRT) monitors, for example, may also be utilized to display images. Display 313 is surrounded with a border region modeled to resemble a traditional picture frame. Display 313 is a low profile LCD designed to minimize the prevalence of display 313. Thus, the emphasis is on the picture frame rather than the LCD. Controller 311 controls the image data output to display 313. For example, if LCD hardware it utilized to display image data, controller 311 is an

LCD controller. DRAM **312** is the memory controller **311** uses to prepare image data for display on display **313**. DRAM **312**, for example, may be utilized for purposes of frame buffering. Dithering may be performed on the frame device in order to improve the quality of images displayed on display **313**.

Flash memory **309** provides the frame device with storage space for the image data. For example, image data held in the data repository may be copied into flash memory **309** when a connection to the data repository occurs. In one or more embodiments of the invention, the image data held in flash memory **309** is stored in a compressed format and decompressed when the data is output to display **313**. Flash memory **309** may hold the onboard software that defines the functionality of the device. The mechanism and data used to control the behavior characteristics of the frame device is also stored in flash memory **309**. For example, flash memory **309** may hold the local phone number utilized to connect to the data repository. In case the local phone number cannot be reached a toll-free phone number also resides in flash memory **309**. The toll-free phone number may be used if the local number fails. Other information that is required to initiate a communication session with the data repository may also reside in flash memory **309**.

Flash memory **309** may store timing information. For example, the time the frame device is scheduled to dim display **313**, the time the frame device is scheduled to connect to the data repository for an update, and the current time are stored in flash memory. In one or more embodiments of the invention, relative time is utilized to indicate the current time. Relative time is kept by keeping track of the number of clock cycles performed by CPU **305**. However, the invention contemplates the use of other mechanisms for keeping time. For example, the current time may be obtained from a central source located on the frame device. The current time may also be obtained by accessing other networked devices such as a server computer containing a system clock.

In one or more embodiments of the invention, flash memory **309** is configured to store the software release number and/or version number of the onboard software. When a connection to the data repository occurs the version of software held resident in flash memory **309** is compared to the version held in the repository. If the version of software held in flash memory **309** is older than the version in the data repository then a newer version is loaded into flash memory **309**. Thus, the frame device is configured to automatically update its software without requiring input from the user. DRAM **307** provides the frame device with an execution space for general-purpose tasks (e.g. frame buffering). Modulator demodulator **319**, for example, may utilize DRAM **309** as a place to process downloaded data.

The function of pushbutton switch **300** is to provide the user with an interface for controlling certain attributes of the frame device. If, for example, the user depresses pushbutton switch **300** the frame device will illuminate display **313** so that images shown on the display become visible. Pushbutton switch **300** is also used as a frame advance. Thus, pushbutton switch **300** provides the user with a way to navigate through the images held in flash memory **309**. If ten images currently reside in flash memory **309**, the user may utilize pushbutton switch **300** to cycle through the ten images in flash memory **309** available for display. One embodiment of the present invention contemplates using pushbutton switch **300** to force the frame device to update its image library. For example, depressing pushbutton switch **300** for an extended duration of time (e.g. several seconds) causes the device to initiate a connection to the data repository. Once the connection is

established the frame device utilizes the information contained in the data repository to supply the frame device with a new set of images. Pushbutton switch **300** also provides a way for the user to alter the backlight level of display **313**. In one embodiment of the present invention, pushbutton switch **300** is configured to alter any of the attributes of the frame device provided via software. Thus, it is possible to periodically change the features controlled by pushbutton switch **300** to meet the demands of the user.

The invention also contemplates the use of multiple pushbutton switch **300**'s. If multiple pushbutton switch **300**'s are present each pushbutton switch **300** may be configured to perform different functions. For example, one pushbutton switch **300** may be utilized as a dimmer button that controls the brightness of the frame, whereas the second pushbutton switch may be configured to act as a main button that has multiple functions. In one or more embodiments of the invention, the pushbutton switch provides a mechanism for marking images for deletion. The pushbutton switch may also be utilized to identify images that are to be saved or archived. Photo sensor **303** supplies the frame device with a mechanism for automatically dimming display **313** when certain conditions, such as the passage of time or the activation of pushbutton switch **300**, occur. The frame device is operational without photo sensor **303**. Therefore, photo sensor **303** is not required, but may be included if dimming functionality is desired.

Communication interface **340** provides a two-way data communication coupling via a network link **341** to interconnection fabric **342**. Communication interface **340** may be implemented in software or hardware form. In one or more embodiments of the invention, data communication interface provides a codec for optimizing data throughput to network link **341**. Interconnection fabric **342** represents any type of network configured to transmit data. For example, interconnection fabric **342** may represent the Internet or any other type of easily accessible computer network.

If communication interface **340** is an integrated services digital network (ISDN) card or a modem, communication interface **340** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **341**. Data is then transported across network link **341** to interconnection fabric **342**. If communication interface **340** is a local area network (LAN) card, communication interface **340** utilizes a compatible LAN as network link **341** to transmit data to interconnection fabric **342**. Wireless links are also possible. In any such implementation, communication interface **340** sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information. These signals are transmitted across network link **341** to interconnection fabric **342**. Therefore, interconnection fabric **342** couples the frame device to the data repository.

Power source **329** provides the frame device with the electrical current necessary to properly run the device. In one or more embodiments of the invention, power source **329** obtains an electrical signal from a standard wall plug and utilizes a transformer unit, a voltage converter and an econo reset device to prepare the signal for use by the frame device. Power source **329** may also obtain an electrical signal from a battery, solar power, or any other source that can generate the appropriate amount of current required to adequately power the frame device.

System of Interrelated Components:

FIG. 2*a* is a block diagram that illustrates the components comprising one embodiment of the invention. In the embodiment illustrated, the system comprises one or more frame

devices 200-209 configured to connect to data repository 213 via an interconnection fabric 217. Frame devices 200-209 are designed to resemble traditional picture frames. For example, each frame device contains a border region 250 that enhances the aesthetic qualities of the device. The border region 250 may be comprised of wood, plastic, metal, or any other compound that is pleasing to the eye. Each frame device 200-209 may have a border region 250 that appears to be different from the border region 250 of another frame device. For example, the border region 250 for frame device 200 may appear different than the border region 250 attached to frame device 209. In one or more embodiments of the invention, border region 250 is an actual picture frame sized to surround the display of frame device 209. Border region 250 may contain a matte board designed to complement the picture frame.

However, unlike a traditional picture frame, the images shown in the display region of frame devices 200-209 can be periodically modified. For example, frame device 200 can be configured to show a first image for a certain duration of time and a second image for another duration of time. Image data 214, for example, can be shown in the display region once it is obtained from the data repository.

Frame devices 200-209 connect to data repository 213 to obtain image data 214 via interconnection fabric 217. In one or more embodiments of the invention, frame devices 200-209 use one or more local frame servers 211 to connect to interconnection fabric 217. An Internet Service Provider (ISP), modem pool, or any other mechanism capable of connecting frame devices 200-209 to interconnection fabric 217 is an example of a local frame server. However, local frame servers 211 are not required to achieve connectivity to interconnection fabric 217. Frame devices 200-209, for example, may connect directly to interconnection fabric 217 and thereby bypass local frame servers 211.

In the invention, interconnection fabric 217 is any of multiple suitable communication paths for carrying data between frame devices 200-209 and data repository 213. Interconnection fabric 217 may be, for example, a local area network (LAN) implemented as an Ethernet network. Any other local network may also be utilized. The invention also contemplates the use of wide area networks such as the Internet and/or World Wide Web. Interconnection fabric 217 may be implemented using a physical medium such as a wire or fiber optic cable, or it may be implemented in a wireless environment. For example, the invention contemplates the use of dedicated, dial-up, or shared communication interconnects.

The data repository is populated with image data 214 via an image collection process. Image data 214 is inserted into data repository 213 by data source 260. In one or more embodiments of the invention, data source 260 populates data repository 213 with image data by obtaining the data from a storage medium such as a hard drive, preparing the data for submission, and transmitting the data to data repository 213. A program executing at data repository 213 determines whether the image data satisfies certain filter criteria. For example, the program may determine whether the image data was transmitted from a member of the users buddy-list and/or address book. If the image data does not satisfy the filter criteria it may be discard or returned to the original data source. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with thee targeted frame device. In one or more embodiments of the invention, the picture mail address is a network address (e.g. an IP address) that is associated with a frame device. The user may specify filter criteria (e.g. via a picture box) which establishes what addresses (e.g. picture mail address) are authorized to populate the data repository. Users who join the picture mail community by connecting one or more frame devices to the interconnection fabric may, for example, pass images data to other members of the community via a picture mail address. However, users are not required to belong to the picture mail community to submit images to a frame device that does belong to the picture mail community. In addition to storing the image data, and filter criteria, data repository 213 also comprises data that may be used to define the behavior of frame devices 200-209. The structure and arrangement of the data repository itself will be discussed further below. In one or more embodiments of the invention, the filter criteria (e.g. who is permitted to send images to a frame device) and other information held in data repository 213 such as the behavior characteristics of each frame device are established via a picture box.

Users may use the picture box to customize the behavior characteristics associated with each frame device 200-209. Specifying the time and type of image data 214 frame device 200 is to obtain is an example of a customizable behavior characteristic. However, any feature and/or function offered by the frame devices 200-209 may become a behavior characteristic.

Each picture box 229-233 may provide a way, for example, to specify how often a certain frame device retrieves new image data from the data repository. For example, the user of client computer 225 may use picture box 232 to specify how often frame device 207 connects to data repository 213. Picture box 232 can also be configured to provide the user of client computer 225 with a mechanism for controlling what images are deliver to frame device 207. For example, the user could specify that images should only be accepted from people listed in the user's buddy-list, friendly-sender list, or address book. If the user of client computer 225 wants to subscribe to an image delivery service, this preference may also be expressed via picture box 232. The image delivery service regularly delivers images that illustrate weather reports, art collections, greeting cards, movie posters, post cards, live camera data, or any other type of customized data to the user's frame device. Each image delivery service may be separately subscribed to and the device may be unsubscribe at any time.

The user may also utilize the picture box to define filter criteria (e.g. to specify who is authorized to populate a certain frame device with new images). For example, the user of client computer 221 may use picture box 232 to indicate that only images received from certain picture mail addresses are to be held for display in data repository 213 and forwarded to frame device 203 upon request. Each individual picture box 229-233 controls the behavior characteristics of one or more frame devices 200-209. Picture box 220, for example, may be configured to control frame device 203 and 209.

In one or more embodiments of the invention, the picture box engine 216 is responsible for obtaining the picture box data 233 needed to generate a picture box from data repository 213 and transmitting a visual representation of the picture box to the appropriate picture box viewer. For example, a user who has permission to control frame device 209 may control the behavior characteristics of the device via a picture box. The user may obtain picture box 251 by using picture box viewer 220 to request picture box 251 from server system 215. For example, if a user residing at client computer 219 uses picture box viewer 220 to request picture box 251 from server computer 215 the server responds by executing picture box engine 216, which in turn obtains picture box data 233 from data repository 213. In this instance, picture box data

APPX134

233 is associated with frame device 209. However, the picture box may be associated with any frame device 200-209 the user is authorized to control. The user may control multiple frame devices via a single picture box. A single user can also elect to use multiple picture boxes to control multiple frame devices.

It is possible for the user to modify the onboard software embedded into each frame device 200-209 by making changes to the picture box. When a change is made it is reflected in data repository 213 and communicated to the frame device when the device connects to data repository 213 for an update. Other authorized parties, such as the picture box provider, can also modify and or update the functionality provided by the onboard software by indicating to the frame device when it connects to the data repository that new software is available for it to obtain. When the frame device receives such a message it may automatically obtain and install the new software update. Thus, authorized users can automatically add new functionality and features into the frame device without prompting the user for input.

Each client computer 219-227 is configured to run a picture box viewer 220-228. For instance, client computer 219 is configured to execute picture box viewer 220. Picture box viewer 220 provides the user of client computer 219 with a visual representation of picture box 229. In one or more embodiments of the invention, picture box viewers 220-228 are web browsers configured to obtain picture box data from server system 215. Picture box engine 216 is responsible for generating picture boxes. To accomplish this task, picture box engine 216 obtains picture box data 233 used to create the picture boxes 229-233 from data repository 213. The invention contemplates placing picture box engine 216 in a variety of different locations. In one embodiment, for example, picture box engine 216 resides at server system 215. However, picture box engine 216 may also resides on any computer readily accessible to clients 219-227 via interconnection fabric 217.

FIG. 2b illustrates the system components utilized by one or more embodiments of the invention. Frame devices 200n and web browser 262 are both controlled by an authorized user 283. The term user as described herein has multiple meanings. The term comprises guest users who have not yet registered and/or initialized a frame device. The term user also refers to registered guests (e.g. members) that may submit images to a frame device. An owner is a type of user who has a frame device. However, an owner need not use web browser 262 to configure the frame device if a user of another type or the manufacturer of the device already has configured the frame. One or more embodiments of the invention contemplates the use of an owner-proxy. The owner-proxy is authorized by the owner to act on the owner's behalf. For example, the owner-proxy may be given authority to control certain aspects of the frame device by the owner. A parent is the user who controls one or more frame devices. The parent has the authority to control what type of images is displayed on the frame and who may submit images for display. The parent user typically has all the privileges needed to control the frame device. The purchaser or buyer of a frame device may also be referred to as a user. A person who provides images and/or data to the system such as a gallery provider, channel provider, and or advertisement provider is also considered a user of the system. Thus, the term user is intended to be a general term that has multiple meanings. A single person or entity may function as multiple users and multiple people may function as one or more users. The invention contemplates assigning each type of user a different password. Thus, each user may be assigned a different level of access to the

system. For example, a parent user has permission to modify the picture box in any way whereas a member does not yet have permission to modify the frames behavior, but may submit images to the picture box for display on the frame device.

When a user initially connects frame device 200 to a power source and/or a communication source, the frame device interfaces with telco 278 via telecommunication mechanism 263. Telecommunication mechanism 263 connects to access array 264. In one or more embodiments of the invention telco 278 is the infrastructure provided by a telecommunications provider (e.g. AT&T, MCI, SBC, PacBell, GTE, etc . . . ) and telecommunication mechanism 278 is a local phone service and/or toll-free phone service. Access array 264 is provided by ISP 279, and comprises one or more devices configured to communicate with the carrier wave signals transmitted by frame device 200. The invention contemplates the user of multiple access arrays and each access array may be located in a different geographic region. Each access array may be configured to understand the signaling and/or communication protocols utilized by the frame device. For example, if frame device 200 uses a modem to connect to access array 264, access array 264 may be configured to understand the corresponding signaling standard (e.g. V.32, V.42bis, V.90 etc . . . ). Access array 264 may also comprise computer hardware configured to understand protocols such as TCP/IP, SLIP, and PPP. The services offered by MegaPOP™, ZipLink™, UUNET™, and/or GTE Internetworking™, for example, are examples of an access array 264.

Access Array 264 communicates with proxied server(s) 266. Proxied server 266 may be, for example a RADIUS server configured to communicate with the registration server 268. RADIUS is a program that runs on a computer. RADIUS allows the expansion of the number of user (connection) profiles available to RADIUS compliant remote access devices. The three main functions of a RADIUS server are authentication, authorization, and accounting. RADIUS is used to authenticate users for dial-in and/or remote access via a data communication network. Authentication information may be stored locally (e.g. in a local file) or accessed from external authentication mechanisms. Authorization controls access to specific services on the network. Once a user is authenticated, RADIUS identifies what a user is authorized (permitted) to access and communicates that information to a PortMaster. For example, user_1 may be authorized to use a certain type of communication protocol (e.g. PPP or SLIP) for his connection, and to use a certain IP address. The RADIUS accounting permits system administrators to track dial-in and/or network use. The present invention is not limited to the use of RADIUS servers, but also contemplates the user of other types of servers that perform the functionality required to effectively balance the communication path between frame device 200 and data repository server 269.

In one or more embodiments of the invention, access array 264, proxied server 266, load balancer 267, and registration server 268 intercept and then forward data signals transmitted from frame device 200 to data repository server 269. Load balancer 267, for example, is responsible for balancing the load placed on devices in the communication path (e.g. registration server 268). A Domain Name System (DNS), Windows load balancing service, Router, or Round Robin device are some examples of systems capable of acting as load balancer 267. Load balancer 267 is provided by frame data provider 281 to communicate with data repository server 269 via registration server 268. The functionality provided by load balancer 267, 272, and 276 may be provided by a single computer or multiple computers. A single computer con-

nected to the interconnection fabric may, for example, be configured to execute software or hardware that acts as load balancer **267**. Alternatively, the functionality provided in load balancer **267** may be executed in other computer systems connected to the interconnection fabric (e.g. Registration Server **268** or Data Repository Server **269**).

Data repository server **269** and registration server **268** may be configured to transmit log information **274** to one another. In one or more embodiments of the invention log information **274** is RADIUS logs. Data repository server **269** executes, manages, and communicates with data repository **270** via Local Area Network (LAN) **273**. Data repository **270** is a database file system and image store. However, data repository **270** may also comprise other information needed to update and/or manage frame device **200**. For example, the data contained in Package Server **271** may be stored in data repository **270**.

Package Server **271** is configured to communicate with data repository **270** and data repository server **269** via LAN **273**. In one or more embodiments of the invention, package server **271** comprises a File Transfer Protocol Daemon (FTPd), a packager, and an interpreter. Package server **271** may also be referred to as an application server. The packager is responsible for generating multiple kinds of packages. A package is a compilation of data that provides the recipient and the transmitting device with information needed to complete a transaction. For example, a package may contain authentication information that provides frame device **200** with a way to verify whether package server **271** is authentic. A package may also contain metadata about frame device **200**. For example, some or all of the information stored in flash memory and/or DRAM may be inserted into a metadata file. The metadata file may contain, for example, a unique frame identifier, a relative clock time, a lights on clock tick, a lights out clock tick, a connect time, connection information, slide show information, log information, name server information, image information, an image display list, and error information. Other information utilized by the frame device and/or any of the server systems may also be placed into the metadata file. The package server **271** may also generate packages that contain content and formatting data (e.g. image and/or text data).

To obtain package data frame device connects to access array **264** via telecommunication mechanism **263**. In one or more embodiments of the invention frame device **200** is configured to establish an FTP session with package server **271**. Once the session is established, frame device **200** transmits a unique identifier (e.g. user/frameID). Package server **271** responds by prompting frame device **200** for password information, which the frame then transmits. The frame device may dynamically generate the password information. Once frame device **200** enters the correct password, the device is permitted access to package server **271**. At this point frame device **200** is linked to package server **271** and data may be sent to and from each using either ASCII mode or binary mode. Load Balancer **272** may be optionally placed between package server **271** and access array **264** in order to ensure that the load placed on package server **271** does not exceed its capacity.

Frame device **200** typically communicates with package server **271** using the binary connection mode. During the communicate session frame device **200** initiates a GET command via path and thereby obtains an authentication file from package server **271**. When frame device **200** obtains the authentication file, it determines if the authentication file is authentic by computing a checksum and comparing the result to an expected results file. If the comparison matches, frame device **200** "trusts" package server **271**. When a trust relationship is established frame device **200** transmits package data to package server **271**. In one more embodiments of the invention, frame device **200** tells package server **271** how much package data it will be sending (e.g. via a SIZE command) and then transmit that amount of data to package server **271** via a PUT command. For example, a content list and a log file may be transmitted to the server via the PUT command. Package server **271** then computes and compares the checksum information associated with the transmitted package data (e.g. metadata). Frame device **200** may also utilize the GET command to obtain additional packages. In one or more embodiments of the invention, the USER command and PASS command are modified to provide an additional layer of security. For example, the PASS command and the USER command may be modified to transmit and/or bounce back encrypted strings of data that are authenticated before access to the package data is permitted.

For example, frame device **200** may use the GET command to obtain an administrative package comprising information useful for administering the frame and/or a content package comprising content and formatting data. The content of the packages is self-defined and may vary depending upon the requirements of frame device **200**. Upon delivery of the relevant packages, frame device **200** may synchronize its time keeping mechanism with package server **271** and terminate the connection. If the frame device connected using the toll-free phone number, local number information is obtained and provided to the frame device in the administrative package. The local number information that is best for the device is determined by analyzing the caller ID information provided when the device call using the toll-free phone number.

In one or more embodiments of the invention, web browser **262** provides a mechanism for submitting and/or changing the image data that is to be displayed on frame device **200**. To submit image data web browser **262** connects to local ISP **265** via telco **278**. Local ISP **265** communicates with load balancer **276** which in turn communicates with one or more web servers **275** and submission/image processing engine **284**. Web browser **262** and web servers **275** may also communicate with clearing house **277** and/or data repository **270**. Clearing house **277** is a computer system configured to process transactions with user **283**. In one or more embodiments of the invention, submission/image processing image comprises software configured to obtain image data from user **283** via web browser **262**.

The Data Repository:

The data repository comprises one or more databases. Each database provides the system with information and/or data related to distributing data to one or more frame devices. In one or more embodiments of the invention, the data repository stores information used to control the content distributed to and from each frame. For example, data about each user and the preferences associated with that user may be held in the data repository. Each frame device is configured to connect to the data repository at one or more predefined intervals utilizing an interconnection fabric such as the Internet. Once a frame device connects to the data repository, it utilizes the information stored in the data repository to update the image data that is to be displayed and the behavior characteristics of each frame device. For example, the functions provided by the onboard software may be modified when the behavior characteristics are updated. The data repository is therefore responsible for queuing and archiving image data and/or software data for each frame device associated with the data repository.

APPX136

19
20

Referring now to FIG. 4, an example, of the type of data stored in the data repository is shown. In one or more embodiments of the invention, the data repository is comprised of multiple databases. The databases are related to one another and contain information utilized to generate the data repository. Each database may contain one or more tables of information. Thus, the data repository may be constructed as a single database having one or more tables or as a series of databases related to each other. The term database and table may therefore be used interchangeably. The databases may be organized using a relational structure, an object-oriented structure, or any other type of organizational scheme configured to store the information needed to create the data repository. The databases may also be distributed across multiple computers. For example, a first computer may contain one portion of the data repository and a second computer may contain a second portion of the data repository.

One of the databases contained in the data repository is the user database 401. User database 401 comprises information about users that have registered with the system. In one embodiment of the invention user database 401 contains one record for each registered user. User database 401 typically stores information about the user such as the user's username, password, picture mail address, and billing information. User database 401 may also contain a list of picture mail addresses from which image data may be received. If, for example, a user wishes to receive picture mail from a certain address the user may designate that address as a friendly sender by placing the address in the list of picture mail addresses from which data may be received. In one or more embodiments of the invention, picture mail addresses not contained in the list may not populate a user's frame device with image data. The user may use the picture box to identify a list of friendly picture mail addresses. This list of friendly senders may be referred to as a buddy list and/or address book.

The data repository also holds information about each frame initialized with the system. A frame becomes initialized when the user of the frame device, or a person acting on behalf of the user, directs the system to obtain a picture box. Information about the frame device is held in the frame database 403. The frame database 403 comprises multiple records 404-411n and each record is associated with a unique frame device. A single user, however, may have multiple frames registered with the system. Thus, one record in user table 401 may be related to many records in the frame table. For example, if a user owns two frame devices the data repository may have a single record about that user in user database 401 and two records about the user's frame devices in frame database 403. Frame database 403 contains a record for each frame device that registers with the system.

Frame database 403 contains information that uniquely identifies each frame. Frame database 403, for example, may store a serial number or any other form of information that uniquely describes a particular frame device. Each user, may control one or more frame devices. In one or more embodiments of the invention, frame database 403 stores information about the geographical location of each frame. For example, the zip code, the area code, and/or phone number where the physically device resides, or any other information that identifies the location of the device may be used to describe the geographic location of the frame.

In one or more embodiments of the invention, each frame is associated with an access number. The access number is the phone number utilized by a particular frame device to connect to the interconnection fabric. The access number, for example, may be a toll free phone number or the phone number of an ISP closest in proximity to the physical location of the frame device. The access number may be stored in frame database 403.

Frame database 403 also contains data that identifies the intervals at which a particular frame device may perform a predefined action. For example, frame database 403 may hold information that specifies the date and time the frame device associated with that record is to connect to the data repository. The actions performed may be defined by the user of the frame device or by an entity authorized to control the actions of the frame device. One embodiment of the invention allows any person with access to the picture box to define an action.

The intensity of each frame device's display region may be varied. For example, the display of each frame device may be configured to dim at certain times. The dimming times are stored in frame database 403. For example, if the user wishes to have a particular frame device dim between the hours of 11:00 p.m. and 6:00 a.m. this information may be specified via the picture box and is stored in frame database 403. The frame device may also be configured to automatically dim at a certain time based on the longitude and latitude of the device. The system obtains the location of the frame device when the device indicates it is present by calling the toll free phone number embedded in memory. The caller ID information passed during this connection, for example, allows the system to determine the location of the device and set the corresponding dimming times. The frame device is typically directed to dim during times when network traffic is low and connect time is inexpensive, however, dimming may occur at any time determined to be appropriate by the system. For example, dinning may occur at a time that is not associated with the geographical location of the frame device.

Information about the software contained in each frame may also be stored in frame database 403. For example, frame database 403 may store the release and/or version number of the software used to operate and control each frame. If the software is not the most current version available an indication as to whether it is ok to download the software may also be stored in frame database 403. Frame database 403 stores information about the connection history of each device. For example, the number of failed connections, the number of successful connections, as well as the speed and duration of those connections is stored as the connection history. The connection history may also contain a record of the communication sessions established by a particular device (e.g. the phone numbers called by a particular frame device and the number of images transmitted to the device at that phone number). The frame database 403 may also contain a list of the administrative information uploaded to each frame device.

In one or more embodiments of the invention, the data repository also contains content provider database 413. A content provider is an entity or organization that offers one or more image delivery services via the interconnection fabric. Content provider database 413 may contain information about multiple content providers. Content provider database 413 contains the name and location of each content provider. For example, content provider database 413 may store the web address or Internet Protocol (IP) address where data pertaining to a particular image delivery service may be located. Content provider database 413 may also contain pointers to other databases where image data utilized to offer an image delivery service resides.

The data repository also stores data utilized by multiple frame devices. For example, central administration database 415 comprises information such as the time of day (per time zone), administrative messages and/or images, broadcast

**21**

messages and/or images, and other general data utilized by the frames devices when a connection to the data repository is made. An example of a relational database schema arranged to store the data utilized by the system is shown in appendix A.

The Picture Box/Picture Mail Community:

When a user initializes a frame device, that frame device becomes associated with a picture box. For example, each frame device 200-209 is uniquely identified (e.g. by a serial number, address, digital signature, or other identifier) and associated with a particular picture box (e.g. an account at a web site). Each picture box is associated with a unique username and/or picture mail account. Once a picture box is obtained, the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses. A picture mail address provides a mechanism for transmitting image data to a frame device. The picture mail address, for example, provides the system with the addressing information needed to identify the location of the frame and transmit image data to the frame. Thus, the picture mail address provides user with a way to pass images between others users (e.g. family and friends) who also belong to the picture mail community. In one or more embodiments of the invention, a picture mail address is a network address that uniquely identifies the location of each frame device. The picture mail address may be implemented in the form of an electronic mail address, an IP address, or any addressing scheme that informs the system how to direct image data to the frame device.

Image data may be sent to the frame device by sending the data from a data source (e.g. a client or server computer) to the picture mail address associated with that device. The picture box provides the user with an interface for managing the behavior characteristics of one or more registered frame devices. In one or more embodiments of the invention, each user is given a single picture box to control the behavior characteristics of multiple frame devices. However, a user may also be given multiple picture boxes. The picture box is accessible via an interconnection fabric such as the Internet and may be viewed using a standard web browser. In one or more embodiments of the invention, each frame device is associated with a specific picture box. Information about the picture box utilized to control a frame device may be stored in frame database 403.

Information used to generate each of the picture boxes may be stored in picture box database 400. For example, picture box database 400 contains a representation of the image (e.g. a thumbnail) as it will be displayed on the frame device, should it be flagged for download to the device. The location (e.g. picture mail address or network address) the image data was transmitted from is also stored in picture box database 400. Other information such as the date and time the image was received at the data repository and the date and time the image was received at a particular frame device also resides in picture box database 400. Picture box database 400 may also contain information about the status of the image data accessible to a particular frame device, such as whether the image is to be archived or kept on the frame device when an update occurs. Data that specifies the filename of the image, whether the image currently resides on the frame device, and routing information that specifies which images should be sent to which frame devices may also be stored in picture box database 400.

FIG. 5 shows an illustration of a picture box viewer containing a picture box. In one or more embodiments of the invention, picture box viewer 500 is a web browser config-

**22**

ured to display picture box 523 (e.g. a web page). Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. However, picture box viewer 500 may be any type of software program configured to display picture box 523. Picture box 523 is any type of data file capable of being transmitted to picture box viewer 523 for display. For example, files written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF) may be displayed using picture box viewer 523. It is also possible to generate picture box 523 using various other types of languages such as Standard Generalized Markup Language (SGML) or eXtensible Markup Language (XML).

Picture box 523 is any example of the type of interface that may be used to create and/or modify records in the data repository. The information stored in the data repository may be presented to the user via picture box 523. In one or more embodiments of the invention, picture box 523 comprises a first portion 505 that contains a list of the image delivery services scheduled to provide data to a particular frame device and a second portion 509 that shows the status of images that may be displayed on the frame device. However, picture box 523 is not limited to using first and second portions, but may utilize any number of portions to present information to the user of a frame device.

In one or more embodiments of the invention, first portion 505 shows what image delivery services the frame device associated with picture box 523 is subscribed to. For example, the frame associated with picture box 523 is scheduled to receive weekly subscription 503, daily subscription 505, and monthly subscription 507. The delivery intervals may be changed utilizing picture box 523. For example, it is possible to use picture box 523 to change weekly subscription 503 to a monthly subscription.

The second portion 509 shows what image data is currently intended for display frame devices associated with picture box 523. Second portion 509 comprises columns of information likely to be of use to the owner of the relevant frame device. For example, in one or more embodiments of the invention, columns that contain image name 512, status 511, date 513 and sender 514 are shown in second portion 509. However, any type of data that describes the images currently accessible to the frame device may be placed in the image name 512 column. For example, the image name 512 column may contain the actual file name, an alias associated with the image file, or a description of the image itself. Image name 512 may also contain a representation of the image data such as a thumbnail.

The status 511 column comprises information that represents the status of the image. For example, information that communicates whether an image is scheduled for display on the frame device is shown in status 511 column. Other information such as whether a new image was received, or whether the image may or may not be deleted can also be presented using status 511 column. One embodiment of the invention provides for the placement of any data that communicates the location and/or status of an image in status 511 column.

Picture box 523 may be configured to show a date 513 column. The date and/or time an image was received may be placed in date 513 column. Other data that is relevant to the receipt of an image may also be inserted into date 513 column. For example, the date a particular image was loaded into an associated frame device may also be placed in date 513 column.

Sender 514 column shows who sent the images shown in the picture box. In one or more embodiments of the invention,

23

24

sender **514** column contains the picture mail address of the party who transmitted the image. The name and/or location the image was transmitted from may also be shown in sender **514** column.

Routing information may be also be defined using picture box **523**. For example, if the user has the authority to control what is shown on multiple frame devices, the user may use the picture box to specify which images should be sent to which frame devices.

Picture box **253** also provides a mechanism for users to browse through the image data available for display. For example, users may search for images in a list of galleries by conducting a key word search of the galleries. Images held in the galleries may be obtained from a person or entity that provides stock images to the picture box. The user may obtain thumbnail views and full size views of the image data upon request. The user may also use the picture box to review all past, present, and future images displayed on the frame device. Users can also use the picture box to add, replace, or delete any image that is to be scheduled for display on the frame device. Thus, the picture box provides an interface for remotely controlling the behavior of the frame device.
The Image Delivery Service:

In one or more embodiments of the invention, users may elect to subscribe a particular frame device to one or more image delivery services offered by the content providers. When the user subscribes to an image delivery service, customized image data is periodically delivered to the frame device designated by the user as the recipient. For example, if a user wishes to have an image summarizing the weather report regularly delivered to the frame device located in the user's house, the user may subscribe to an image delivery service that regularly transmits weather images to the picture mail address associated with the appropriate frame device. The user may control the date and time the image delivery service sends the image data. The user, for example, may specify that the weather report is only to be delivered at 7:00 a.m. on weekdays and is not to be delivered during the weekend. The invention also contemplates a system wherein the data and time the image delivery service transmits image data is predefined and not set by the user. For example, the image provider may determine when to send images to the picture mail account associated with a frame device. A number of different image delivery services are available to members of the picture mail community and each delivery service may transmit images that are illustrative of any kind of information. For example, images that represent post cards, greeting cards, art collections, live video feeds, or any other type of image data may be delivered to a frame device utilizing an image delivery service.
Frame Device Initialization:

In one or more embodiments of the invention, the frame device initializes with the system in order to have the capability to obtain image data. The initialization process may occur with the aid of a user or it may occur automatically without user input. In either instance, users are given the opportunity to customize the behavior of the user's frame device(s). FIG. **8** illustrates the process utilized by one embodiment of the invention to initialize a frame device. The initialization process begins at step **800** when the frame device is connected to a power source and a communication medium such as a telephone line or network connection. The frame device may be configured to automatically connect via a wireless connection or the user may manually couple it to a power source and communication medium.

Once step **800** occurs, an embodiment of the invention proceeds to step **803**. At step **803**, the frame device initiates a connection to the data repository utilizing an interconnection fabric. In one or more embodiments of the invention, the frame device is configured so that can only connect to the data repository and cannot connect to other data sources that are available via the interconnection fabric. For example, the connection process may utilize an authentication scheme (e.g. encryption) to ensure the device connects to an authorized data repository and is not being directed to another data source masquerading as the authorized repository. When step **803** is complete, step **805** executes. At step **805**, the data repository is analyzed to determine whether there is a record for the frame device initiating the connection.

If a record for the frame device is not located, step **807** executes and an image prompting the user to create a picture box account associated with that frame device is displayed to the user. Once the picture box account is created it provides the user with a way to set the behavioral characteristics of the frame device. In one or more embodiments of the invention, the frame device cannot properly connect to the data repository until the picture box account is generated. Thus, the invention contemplates generating a picture box. by executing steps **811** and **813**.

At step **811**, a picture box is obtained. The user may obtain a picture box, and thereby join the picture mail community, by calling a toll free phone number to have another person initiate the generation of the picture box. Alternatively, the user may obtain a picture box by using a web browser and connecting to a web site that contains a mechanism for generating the picture box. The frame device may also automatically direct the system to generate a picture box if an attempt is made to connect and a picture box associated with the frame device attempting to make the connection does not exist. This may occur without requiring any input from the user. However, user input may be obtained if such input is deemed to be desirable. In one or more embodiments of the invention, however, the user may personalize the picture box by using the input mechanisms present on the frame device (e.g. the pushbutton switch).

Once the picture box is obtained, step **813** executes, at step **813** the behavior characteristics of the frame device is determined. The behavior characteristics may be established by default or customized according to the user's preferences. When the behavior characteristics are determined, step **815** executes. At step **815**, the invention contemplates loading the behavior characteristics into the data repository for use by the frame device.

If the data repository already contains a record for the frame device initiating the connection, step **809** executes. At step **809**, the frame device obtains the behavioral characteristics set via the picture box, by accessing the data repository. One embodiment of the invention loads the behavioral characteristics into flash memory residing on the corresponding frame device. Other data, such as software programs and/or image data may also be loaded into the frame device during step **809**. Thus, functionality may be added to the software contained in the frame device without input from the user.
Self-Configuration Protocol:

FIG. **9** illustrates another process that may be utilized by one or more embodiments of the invention to initialize a frame device. The initialization process begins at step **900** where the frame device determines if it is connected to a power source and a communication medium such as a telephone line or network connection. If so, the frame device proceeds to step **901** where it obtains image data from its own memory. At step **902**, the image data is displayed to the user via display **313**. In one or more embodiments of the invention, the image data directs the user to proceed to step **903** where

APPX139

25

the frame device manually initiates a communication session. The frame device may be configured to automatically initiate a communication session within a certain interval without requiring input from the user. For example, if the user connects the frame device to power source and a communication source, the frame device may initiate a communication session if the user does not manually do so within a certain time frame.

At step 903, the frame device determines whether it has local phone number information in resident memory. For example, if the frame device has not previously initiated a communication session the device will not have any local phone number information. If so, step 904 executes. At step 904, the device obtains a phone number (e.g. toll free phone number) from the memory of the frame device. This phone number is referred to as a configuration number sequence and may be permanently embedded into persistent memory (e.g. non-volatile memory). The configuration number sequence is used only for configuration access and is parsimonious with the amount of time it remains connected. Once the frame device has the configuration number sequence, it dials the configuration number using a tone sequence (e.g. step 905). If that fails, the device may use pulse mode. When a connection is established, device proceeds to step 906 where it obtains one or more local phone numbers from a server computer (e.g. the data repository) provided by the frame service provider. The local phone number information is stored in memory at step 907.

Once step 907 executes, the device proceeds to step 908 where it disconnects from the configuration number and re-dials using one of the local numbers. If the frame device already has obtained a local number, step 909 executes and when the device is directed to initiate a connection it dials the local number stored in memory. Thus, the frame device is capable of automatically connecting to the interconnection fabric where it may obtain image data from the data repository without requiring input from the user. If the local phone number information is flushed from memory (e.g. by a power failure) or becomes inaccurate (e.g. because the user moved the physical location of the device), the device may use the toll free phone number to automatically reconfigure itself without prompting the user for additional input. Thus, each frame device is an intelligent device that can be easily maintained by novice or inexperienced users.

Image Collection/Submission Engine:

FIG. 6 is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in the display region of a particular frame device. At step 600, the user wishing to transmit the image data or a data collection engine, obtains the data and prepares it for submission to the picture mail address associated with a particular frame. The data repository may act as an image relay mechanism which holds the image data until the frame device connects to the repository for an update.

The data may be obtained from any source capable of providing one or more image files. For example, image data may be collected from a client computer, an image scanner, digital camera, or a memory device such as a hard drive. The data collection engine provides a mechanism for obtaining images from any image source accessible via an interconnection fabric such as the Internet. In one or more embodiments of the invention, the data collection engine is configured to obtain image data from any web server or web client connected to the interconnection fabric. For example, the user may direct the data submission engine to periodically collect one or more images from a networked device (e.g. a web server or series of web servers) by specifying a URL that

26

identifies the location of the networked device containing image data that is to be collected.

At step 603, the image data is prepared for submission. An embodiment of the invention contemplates examining the image data to discern whether it meets a set of predetermined constraints. For example, if the display area of the frame device is a static width and height (e.g. 640×480 pixels), step 603 will obtain the dimensions of the display area and determine whether the image data will fit within the identified area without alteration. If the image does not fit, the image data may be altered to coincide with the dimensions of the frame device. The alteration process may scale the image, crop the image, change the resolution of the image, or otherwise modify the image so that it fits within the given display area. For example, if an image is 1024×768 pixels and the display area of a particular frame device is 640×480 pixels, the image may be appropriately scaled to fit into the 640×480 display area of the frame device. In one or more embodiments of the invention, step 603 is performed before the image data is transmitted to the data repository. However, software executing at the data repository or at the frame device may also be configured to prepare the image data for submission. One embodiment of the invention contemplates placing software configured to perform step 603 on any computer connected to the interconnection fabric.

In one or more embodiments of the invention, the data format of the submitted image is modified to conform to the preferences of the frame device. For example, if the submitted image is in BMP format and the frame device contains software or hardware that is capable of rendering JPEG images for display, the image will be converted from BMP format to JPEG format to coincide with the needs of the frame device. The dimensional aspects of the image may be altered along with the data format. For example, a BMP image having a resolution of 1024×768 may be converted into a JPEG image having a resolution of 640×480. The color depth and other aspects of the image may also be modified. For example, the image alteration process may convert all JPEG images so that each image submitted to the system has a 12-bit color depth and is compressed to a size that does not exceed a certain size (e.g. 64 Kb). Submitted data is conformed to coincide with size and format parameters in order to prevent large, illegal, or improperly formatted files from consuming resources on the system. Additionally, filtering and modifying images before they are stored in the data repository provides a way to prevent excessively large images from consuming resources on the frame device. The data format conversion and the image resizing process may be performed without requiring input from the user. However, in one or more embodiments of the invention, the image alterations may be presented to the user for approval and/or manual modification.

When a user initializes a frame device, that frame device becomes associated with a picture box. Each picture box is associated with a unique username and/or picture mail account. At step 605, the username and/or picture mail account information is utilized to provide a mechanism for transmitting image data to a frame device or series of frame devices. For example, if a user named user_1 initialized frame device XYZ with the system, another user could transmit image data to frame device XYZ by transmitting the image data to the picture mail address associated with user_1. A standard electronic mail client or a customized picture mail client may be utilized to transmit the picture mail and its associated image data. However, any interface capable of sending binary image data to a particular network address (e.g. a web-based interface) may also be utilized.

At step **607**, the image data is analyzed to determine if it meets the filter criteria established by the user during the registration process (e.g. is the submitted image data from a person who belongs to the user's buddy list or address book). In one embodiment of the invention step **607** is performed by a data population engine. The data population engine utilizes a specific set of filter criteria to determine whether an image is appropriate for display on a frame device. An embodiment of the invention provides the user with an interface to set the criteria. For example, the filter criteria may be set using the picture box associated with that user. The user can, for example, prevent images arriving, from certain picture mail and/or network locations from being displayed on the user's frame device(s).

The user may also elect to store images that arrive from certain locations in the data repository and not present the images for display until they are reviewed and/or approved by the user. The user or any other authorized individual and/or entity may set the filter criteria. For example, the organization that controls the data repository may be given the authority to establish filter criteria. The user may set the filter criteria used by the data population engine using the picture box interface. Other interface devices capable of receiving input from a user, such as a telephone or Personal Desktop Assistant (PDA), may also be used to set the filter criteria.

When an image satisfies the filter criteria step **609** executes. At step **609**, images are loaded into the appropriate portion of the data repository. For example, image data that is transmitted to the picture mail address of user_1 may be loaded into the record in the data repository created for user_1. Each time another image is submitted it is added to the appropriate record. Thus, the data repository may hold one or more images.

If the image data does not meet the filter criteria, the image data is discarded or returned to the address of the sender at step **606**. In one or more embodiments of the invention, data that does not meet the filter criteria is stored in the data repository, but is not forwarded to a frame device until approved by the user.

Once image data resides in the data repository, step **611** executes. At step **611**, the frame device obtains the image data set residing at the data repository. For example, the frame device may connect to the data repository utilizing the interconnection fabric and download the image data into memory. In one or more embodiments of the invention, the frame device periodically connects to the data repository. The frequency of the connections may be determined by the user via the picture box interface or by a party authorized to access the picture box. The device may also automatically determine the connection frequency without requiring input from the user.

Once the image data resides in flash memory, step **613** executes and the image data is displayed on the frame device's display mechanism according to the display preferences expressed via the picture box.

Conversation/Security Protocol:

FIG. **10** illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates. At step **1000**, the frame device establishes a connection to the access array at the scheduled interval via the interconnection fabric. For example, the frame device may utilize the communication interface to connect to an ISP or other entity with an access array such as a modem pool. The frame device obtains the information it needs to initiate the connection from flash memory (e.g. phone number information, unique identifier such as a serial number, and password information). Other information such as the network router information, subnet mask, and domain name service infor-

mation is drawn directly from the ISP using DHCP or some other dynamically addressing protocol. Thus, the device may obtain the information it needs to connect without input from the user. Once the connection is initiated, the process proceeds to step **1002** where the ISP or entity having control of the access array determines if the frame device is authorized to connect to the access array. If for example, the frame device connects using a modem and PPP, the access array may prompt the device for password information that may be automatically entered by the frame device. In one or more embodiments of the invention, the password to be entered is determined algorithmically by the frame device. If the correct password information is entered the process proceeds to step **1004**, otherwise step **1003** executes and the frame device disconnects and waits for a reconnect command to be initiated.

At step **1004**, the frame device establishes a communication session with a data server. This may be done, for example, using FTP to connect to the data server. However, the invention contemplates the use of other communication protocols such as NFS, tFTP, HTTP, SMTP, POP3, IMAPI, or any other protocol that can be used to transport data between two or more sources, to establish a communication session with the data server.

When the communication session is initiated the data server executes step **1006** where a challenge is made to ensure the frame device is authentic. If the frame device correctly responds to the challenge, step **1008** executes. Otherwise, step **1003** executes and the frame device disconnects. At step **1008**, the data server transmits data to the frame device. For example, the data server may enter binary mode and transmit an authentication file to the frame device in response to the device's request for data (e.g. via the GET command). Once the data is sent step **1010** executes. At step **1010**, the frame device examines the data it received to determine if the data is the type of data expected. For example, the frame device may authenticate the data by checking the size, contents, or encryption sequence associated with the data to determine if the transmitted data came from an authorized data server. If the frame device received the expected data (e.g. the encryption sequence is authentic), it proceeds to step **10012**. If the frame did not receive the kind of data expected, step **1003** executes and the frame disconnects from the data server and awaits a reconnect command.

At step **1012**, the data server transmits metadata and/or a log file to the data server. The metadata file contains status information about the frame such as configuration information or connectivity information. The metadata file may also contain new or additional parameters and/or functionality that are to be added to the device (e.g. an on board software update). The log file contains a record of the frame devices past activities. For example, the log may contain a list of recent connection attempts. Any connection failures may be flagged and later analyzed to determine the cause of the failure. After the frame device transmits the metadata to the frame device step **1014** executes. At step **1014**, the data server determines if it received the kind of metadata that was expected. For example, the data server may check to see if the metadata file contains all the expected parameters. In one or more embodiments of the invention, the data server checks the received data to ensure that the data is the proper type of data and that it has not been modified by an unauthorized user (e.g. by examining an encryption sequence associated with the metadata). If the metadata is properly authenticated, the data server executes step **1016** where it transmits package data to the frame device. The package data may contain one or more images that are scheduled for display on the frame

device, software updates, and additional parameters needed to direct the behavior characteristics of the frame device. Other information that is useful to the operation of the frame device such as timing information may also be placed in the package. Once the package is received by the frame device step **1018** executes. At step **1018**, a checksum operation is performed to ensure that the entire package scheduled for transmission was indeed transmitted. If the checksum results in the expected response the frame device disconnects and begins to unpackage the package data. If the package data is compressed, the frame device decompresses the package and loads the contents of the package into memory. Image files found in the package may be stored in DRAM until they are rendered for display.

Embodiment of Computer Execution Environment (Hardware):

An embodiment of the invention utilized to access the picture box interface can be implemented as computer software in the form of computer readable code executed on a general purpose computer such as computer **700** illustrated in FIG. **7**, or in the form of bytecode class files executable within a Java™ runtime environment running on such a computer, or in the form of bytecodes running on a processor (or devices enabled to process bytecodes) existing in a distributed environment (e.g., one or more processors on a network). A keyboard **710** and mouse **711** are coupled to a system bus **718**. The keyboard and mouse are for introducing user input to the computer system and communicating that user input to processor **713**. Other suitable input devices may be used in addition to, or in place of, the mouse **711** and keyboard **710**. I/O (input/output) unit **719** coupled to system bus **718** represents such I/O elements as a printer, A/V (audio/video) I/O, etc.

Computer **700** includes a video memory **714**, main memory **715** and mass storage **714**, all coupled to system bus **718** along with keyboard **710**, mouse **711** and processor **713**. The mass storage **714** may include both fixed and removable media, such as magnetic, optical or magnetic optical storage systems or any other available mass storage technology. Bus **718** may contain, for example, thirty-two address lines for addressing video memory **714** or main memory **715**. The system bus **718** also includes, for example, a 64-bit data bus for transferring data between and among the components, such as processor **713**, main memory **715**, video memory **714** and mass storage **714**. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

In one or more embodiments of the invention, the processor **713** is a microprocessor manufactured by Sun Microsystems, Inc., such as the SPARC™ microprocessor, or a microprocessor manufactured by Motorola, such as the 680×0 processor, or a microprocessor manufactured by Intel, such as the 80×86, or Pentium processor. However, any other suitable microprocessor or microcomputer may be utilized. Main memory **715** is comprised of dynamic random access memory (DRAM). Video memory **714** is a dual-ported video random access memory. One port of the video memory **714** is coupled to video amplifier **716**. The video amplifier **716** is used to drive the cathode ray tube (CRT) raster monitor **717**. Video amplifier **716** is well known in the art and may be implemented by any suitable apparatus. This circuitry converts pixel data stored in video memory **714** to a raster signal suitable for use by monitor **717**. Monitor **717** is a type of monitor suitable for displaying graphic images.

Computer **700** may also include a communication interface **740** coupled to bus **718**. Communication interface **740** provides a two-way data communication coupling via a network link **741** to a local network **744**. For example, if communication interface **740** is an integrated services digital network (ISDN) card or a modem, communication interface **740** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **741**. If communication interface **740** is a local area network (LAN) card, communication interface **740** provides a data communication connection via network link **741** to a compatible LAN. Wireless links are also possible. In any such implementation, communication interface **740** sends and receives electrical, electromagnetic or optical signals which carry digital data streams representing various types of information.

Network link **741** typically provides data communication through one or more networks to other data devices. For example, network link **741** may provide a connection through local network **744** to local computational service provider computer **743** or to data equipment operated by an Internet Service Provider (ISP) **744**. ISP **744** in turn provides data communication services through the world wide packet data communication network now commonly referred to as the "Internet" **745**. Local network **744** and Internet **745** both use electrical, electromagnetic or optical signals which carry digital data streams. The signals through the various networks and the signals on network link **741** and through communication interface **740**, which carry the digital data to and from computer **700**, are exemplary forms of carrier waves transporting the information.

Computer **400** can send messages and receive data, including program code, through the network(s), network link **741**, and communication interface **740**. In the Internet example, remote computational service provider computer **746** might transmit a requested code for an application program through Internet **745**, ISP **744**, local network **744** and communication interface **740**.

The received code may be executed by processor **713** as it is received, and/or stored in mass storage **714**, or other nonvolatile storage for later execution. In this manner, computer **700** may obtain application code in the form of a carrier wave.

Application code may be embodied in any form of computer program product. A computer program product comprises a medium configured to store or transport computer readable code, or in which computer readable code may be embedded. Some examples of computer program products are CD-ROM disks, ROM cards, floppy disks, magnetic tapes, computer hard drives, computational service providers on a network, and carrier waves.

The computer systems described above are for purposes of example only. An embodiment of the invention may be implemented in any type of computer system or programming or processing environment. When a general purpose computer system such as the one described executes the process and process flows described herein, it is configured to adaptably distribute data to one or more recipient devices.

Thus, a method and apparatus for distributing picture mail to a frame device community is described.

What is claimed is:

1. A digital display apparatus having an integrated housing, said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus, and a current version of onboard software;

a processor configured to control the display of image data from said plurality of image data files in said image

31

display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

2. The digital display apparatus of claim 1, wherein said authentication function is further configured to provide said unique identifier of said digital display apparatus to said first remote server system.

3. The digital display apparatus of claim 2, wherein said authentication function is further configured to provide device authentication information to said first remote server system prior to obtaining image data from said first remote server system.

4. The digital display apparatus of claim 1, wherein said onboard software further comprises an initialization function configured to prompt said first remote server system to associate a record with said digital display apparatus.

5. The digital display apparatus of claim 1, wherein said digital display apparatus is configured to display an account initialization message.

6. The digital display apparatus of claim 5, wherein said account initialization message prompts a user to create an account with said first remote server system.

7. The digital display apparatus of claim 1, wherein said memory comprises a connection timing parameter that indicates a timing interval for said digital display apparatus to automatically initiate periodic connections with said first remote server system.

8. The digital display apparatus of claim 1, wherein said memory comprises an image display parameter comprising a timing interval for periodically selecting an image data file from said memory for rendering on said display region.

9. The digital display apparatus of claim 1, wherein said network medium comprises a wired transmission medium.

10. The digital display apparatus of claim 1, wherein said network medium comprises a wireless transmission medium.

11. A digital display apparatus having an integrated housing, said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information

32

for a first remote server system and a unique identifier for said digital display apparatus, and onboard software;

a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region based on a value of said image display parameter; and

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

12. The digital display apparatus of claim 11 wherein said remote authentication function is further configured to provide said unique identifier of said digital display apparatus to said first remote server system.

13. The digital display apparatus of claim 12 wherein said remote authentication function is further configured to provide device authentication information to said first remote server system prior to obtaining image data from said first remote server system.

14. The digital display apparatus of claim 11 wherein said onboard software further comprises an initialization function configured to prompt said first remote server system to associate a record with said digital display apparatus.

15. The digital display apparatus of claim 11 wherein said digital display apparatus is configured to display an account initialization message served from said server system.

16. The digital display apparatus of claim 15 wherein said account initialization message prompts a user to create an account with said first remote server system.

17. The digital display apparatus of claim 11 wherein said memory comprises a connection timing parameter that indicates a timing interval for said digital display apparatus to automatically initiate periodic connections with said first remote server system.

18. The digital display apparatus of claim 11 wherein said memory comprises a timing interval for periodically selecting an image data file from said memory for rendering on said display region.

19. The digital display apparatus of claim 11 wherein said network medium comprises a wired transmission medium.

20. The digital display apparatus of claim 11 wherein said network medium comprises a wireless transmission medium.

* * * * *



US009654562B2

## (12) United States Patent
### Schiller et al.

(10) **Patent No.:** **US 9,654,562 B2**
(45) **Date of Patent:** ***May 16, 2017**

(54) **METHOD AND APPARATUS FOR DISTRIBUTING CONTENT VIA A COMMUNICATIONS NETWORK**

(71) Applicant: **CEIVA Logic Inc.**, Burbank, CA (US)

(72) Inventors: **Dean Schiller**, Glendale, CA (US); **Paul Yanover**, Los Angeles, CA (US)

(73) Assignee: **Ceiva Logic, Inc.**, Burbank, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **14/802,218**

(22) Filed: **Jul. 17, 2015**

(65) **Prior Publication Data**

US 2016/0028826 A1 Jan. 28, 2016

### Related U.S. Application Data

(63) Continuation of application No. 11/927,520, filed on Oct. 29, 2007, now Pat. No. 9,124,656, which is a continuation of application No. 10/179,732, filed on Jun. 24, 2002, now Pat. No. 9,203,930, which is a continuation of application No. 09/458,849, filed on Dec. 10, 1999, now Pat. No. 6,442,573.

(51) **Int. Cl.**
| | |
|---|---|
| *G06F 15/00* | (2006.01) |
| *G06F 13/00* | (2006.01) |
| *H04L 29/08* | (2006.01) |
| *H04L 12/58* | (2006.01) |
| *H04L 29/06* | (2006.01) |

(52) **U.S. Cl.**
CPC .......... *H04L 67/12* (2013.01); *H04L 12/5835* (2013.01); *H04L 29/06* (2013.01); *H04L 51/066* (2013.01); *H04L 63/102* (2013.01);

*H04L 67/36* (2013.01); *H04L 67/1014* (2013.01); *H04L 67/1017* (2013.01); *H04L 67/1036* (2013.01); *H04L 69/329* (2013.01)

(58) **Field of Classification Search**
CPC .... H04N 1/0029; G06F 17/30274; G06F 8/38
USPC ................. 715/716–719, 722–726, 851–853
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,535,228 B1 * | 3/2003 | Bandaru | ........... | G06F 17/30274 |
| | | | | 707/E17.029 |
| 6,670,934 B1 * | 12/2003 | Muoio | ....................... | G06F 8/38 |
| | | | | 345/1.1 |
| 6,975,308 B1 * | 12/2005 | Bitetto | ............... | H04N 1/00294 |
| | | | | 345/104 |

* cited by examiner

*Primary Examiner* — Kevin Nguyen

(74) *Attorney, Agent, or Firm* — The Hecker Law Group, PLC

(57) **ABSTRACT**

A method and apparatus for distributing content via a communication network is presented. In one or more embodiments, the present invention comprises apparatus for receiving content from a server system. In one or more embodiments, the apparatus comprises a central processing unit, a video controller, a communications interface, and a memory comprising computer readable instructions for causing said apparatus to perform a variety of functions. In one or more embodiments, the computer readable instructions comprise instructions for causing the apparatus, upon connection to a power source and a communications source, to initiate a communications session with the server system. In one or more embodiments, the computer readable instructions comprise instructions to cause the apparatus to prompt a user of said apparatus to create an account at the server system.

**20 Claims, 12 Drawing Sheets**





FIGURE 1A
(Prior Art)

APPX145



**FIGURE 1B**
**(Prior Art)**



**FIGURE 1C**
**(Prior Art)**



**FIGURE 2A**



**FIGURE 2B**



**FIGURE 3**

**FIGURE 4**



**FIGURE 5**

APPX151



*FIGURE 6*

APPX152



**FIGURE 7**

APPX153



**FIGURE 8**



**FIGURE 9**



**FIGURE 10**

APPX156

# METHOD AND APPARATUS FOR DISTRIBUTING CONTENT VIA A COMMUNICATIONS NETWORK

## CROSS REFERENCE TO RELATED APPLICATIONS

This patent application is a continuation of and claims the benefit of the filing date of U.S. patent application Ser. No. 11/927,520 filed Oct. 29, 2007, which is a continuation of U.S. patent application Ser. No. 10/179,732 filed Jun. 24, 2002, which is a continuation of U.S. patent application Ser. No. 09/458,849 filed Dec. 10, 1999, which issued as U.S. Pat. No. 6,442,573 on Aug. 27, 2002, all of which are incorporated by reference in their entirety herein.

## FIELD OF THE INVENTION

This invention relates to a method and apparatus for distributing content via a communications network.

Portions of the disclosure of this patent document contain material that is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office file or records, but otherwise reserves all copyrights whatsoever.

## BACKGROUND

### Traditional Picture Frames

Picture frames provide a visually pleasing way to present photographs for display. People typically prefer to use picture frames, rather than digital display mechanisms (e.g. computer monitors), because of the aesthetic qualities associated with such frames. However, several problems and disadvantages result from the use of traditional picture frames.

For example, a problem that may be encountered by picture frame users is that changing the picture in the frame requires a series of manual steps. For example, a person who wishes to change the picture must manually remove the picture and replace it with a new one. Consequently, changing the picture requires that a person be physically located at the same place where the picture frame resides.

An additional problem with picture frames is that the frame does not have the ability to adjust the dimensions and/or size of the picture to fit within the display area. Pictures placed into the picture frame must correspond to the dimensions of the frame's display area. One prior art attempt to overcome these limitations is the use of various type of digital display device. The following section describes a prior art digital display device and discusses the inherent limitations of the device.

### Digital Display Device

FIG. 1a illustrates a prior art device (e.g. the Sony PHD A55 CyberFrame™) capable of displaying digital images. However, there are several problems associated with this device. For example, the device lacks the ability to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user. The device shown in FIG. 1a consists of a display 100. Display 100 is an active matrix LCD screen configured to display digital video data and still image data. The data shown on display 100 is obtained from storage media 103. Storage media 103 is a memory medium capable of storing video and/or image data (e.g. a Memory Stick™).

The device contains software and/or hardware configured to playback MPEG or JPEG data files obtained from storage media 103. The device supports playback in a variety of different resolutions and can, for example, display JPEG data in UXGA (1600×1200), SXGA (1280×960), XGA (1024×768), or VGA (640×480). MPEG data files are shown on display 100 using a presentation mode that supports a resolution of 320×240 or a video mode that uses a resolution of 160×112.

The device also has built-in speaker(s) 105 and volume control 107. Speakers 105 provide a way to play back sound data introduced to the device via storage media 103. Volume control 107 allows the user of the device to adjust the decibel level. Control mechanism 109 contains the software and/or hardware utilized to control how data is displayed. For example, control mechanism 109 has a slide show mode that allows the user to display several images at varying intervals. Control mechanism 109 also provides the system with a way to delete unwanted images or keep certain images from being deleted. Control mechanism 109 is configured to provide other functionality, such as a sleep timer, brightness control, an index mode, an automatic angle detector, and a touchless sensor.

A problem with prior art mechanisms, such as the one illustrated in FIG. 1a, is that the user must physically provide storage media 103 to the device. Thus, a person who does not have physical access to the device cannot introduce new images into the device. Moreover, the device cannot be controlled from a remote location. For example, making changes to a web site cannot control the behavior of the control mechanism.

A further problem is that the functions offered by control mechanism 109 cannot be remotely updated, modified, or otherwise changed. For example, a new feature, such as the ability to obtain new images from a network, cannot be added by transmitting a software update to the device from a remote source. The device illustrated in FIG. 1a is isolated from other devices and therefore does not have the ability to communicate with such devices over a telecommunication medium.

Another limitation inherent in the design of the prior art device is that the device cannot automatically receive different types of image data. For example, the device cannot obtain different types of image data via an image delivery service. The user of the device illustrated in FIG. 1a cannot elect to periodically receive information relating to a particular topic such as the weather report. Computer networks are a prior art mechanism used to propagate data to devices connected to the network. The following section describes several techniques used to send and receive data across such computer networks and explains the limitations and disadvantages associated with such techniques.

### Computer Networks

A network is an amalgamation of interconnected computers. Devices properly connected to the network may utilize the network to communicate with other devices coupled to the network. A server computer, for example, may use a network to transmit data to a client computer for display. There are several different techniques for propagating data to devices connected to the network. For example, electronic mail, client pull, and server push mechanisms all are examples of techniques that provide a way to transmit data to a client computer. However, these techniques lack a

APPX157

mechanism for establishing and then controlling the behavior of a device from a remote location. For example, these techniques cannot dynamically obtain image data from a networked data source and then display that data according to the behavior criteria established by an authorized user.

A. Electronic Mail Systems

The following section discusses electronic mail systems and points out the limitations associated with using such systems to distribute image data. An electronic mail system is an example of a prior art system used to distribute data to one or more recipients. The electronic mail system, for example, provides users with a way to transmit data from one computer to another computer.

An example of an electronic mail system is shown in FIG. 1b. The system consists of one or more client computers 125-128 each having a client software program 129-132 configured to send and receive data, a network 133 configured to relay the data to one or more recipients, and a mail server 120 having server software 121 configured to store the data until it is retrieved by the designated recipient(s).

A user residing at client computer 125, for example, may use the system shown in FIG. 1b to transmit an image file to another user residing at a different computer (e.g. client computer 127). To send the file the user typically executes the appropriate client software program (e.g. client software 129), determines the data to be sent, and directs the program to send the data to a recipient. Data that is sent is routed across network 133 to the appropriate mail server 120-123 associated with the recipient. Once mail server 120 receives the data, the server holds the data in the intended recipients account until requested by the recipient. For example, mail server 120 will store the data until the recipient residing at client computer 127 executes a local version of client software program 129 and directs the program to obtain data from mail server 120.

A problem associated with using current electronic mail systems is that to receive and view images recipients must have physical access to a client computer containing a client software program configured to obtain mail data. For example, an electronic mail client (e.g. Microsoft Outlook Express) and/or a web browser (e.g. Microsoft Internet Explorer) must reside on client computer 127 in order for it to obtain data from server 120.

An additional problem with using current electronic mail systems is that in order to receive data the recipient must know how to navigate around the operating system and how to use the program utilized to obtain the data. For example, in some instances the recipient is required to manually configure the program utilized to obtain data. This requires that the recipient know the name and/or address of server 120 and be familiar with the settings required to login to server 120. Current electronic mail systems cannot, for example, automatically connect to an image source, obtain image data for display, and then automatically display the image data according to a set of predetermined preferences.

Instead, current systems require the recipient to manually perform a series of steps before the image data may be viewed. For example, receivers that use a Simple Mail Transfer Protocol (SMTP)/POP electronic mail system are typically required to 1) open a client program configured to connect to the appropriate server, 2) direct the client to obtain the image data from the server, 3) select the electronic mail message containing the image data from a list of received messages, and 4) provide the image data to a client program configured to display the image data.

In some instances, however, the receiver cannot use the electronic mail client to view the image data, but instead

must have an application specially configured to view the image data. If, for example, the receiver's electronic mail client cannot process images sent in the Tagged Image File Format (TIFF), the receiver must have an application capable of viewing TIFF files in order to view the image data transmitted by the sender. Thus, a problem with using current electronic mail clients to transmit image data is that such clients lack flexibility and require the user to manually open the electronic mail message to view the attached image data.

Another problem is that electronic mail client programs cannot obtain image data and then display a full sized view of that data without requiring the user to manually intervene. Current electronic mail clients are not configured to periodically obtain and then automatically display images. Additionally, the receiver cannot control which images may be displayed and the frequency with which those images are displayed cannot be set based on the receiver's preferences. For example, mail clients lack the ability to automatically distribute data to a client computer according to a set of preferences determined by the user of the client computer. Furthermore, the receiver cannot set the behavior characteristics of the electronic mail client unless physically present at the client.

B. Client Pull

The following section discusses the client pull technique and points out the limitations associated with using such systems to distribute image data. Client pull is an example of a technique used to download data from a server computer. When client pull is employed, data is requested by a client computer and then delivered by a server. For example, if web browser 131, executing at client computer 127, requests web page 151 stored on web server 150, it will cause web server 150 to execute web server software 152 which will in turn transmit web page 151 to client computer 127. The World Wide Web (WWW) is an example of a system that utilizes the client pull technique. The WWW is a segment of the Internet that utilizes an application layer protocol called the HyperText Transfer Protocol (HTTP) to disseminate and to obtain information from server computers (e.g. web server 150).

HTTP is a request/response protocol used with distributed, collaborative, hypermedia information systems. In operation, HTTP enables one computer to request data from another. For example, client 127 can use HTTP to communicate with web server 150 via network 133. In this scenario web server 150 acts as a data store for one or more web pages 151 and is capable of processing client 127's requests for such files. The web pages 151 stored on web server 150 may contain any type of data. For example, the files may contain data used to construct a form, image data, text data, or any other type of data. HTTP has communication methods that utilize the client pull technique to allow client 127 to request data from web server 150. Client 127 may use web browser 131 to initiate a request and thereby obtain web page 151.

Typically, web browser 131 requests at least one web page 151 from web server 150 and web server software 151 responds to the request by forwarding requested web page 151 to client 127. Once web page 151 arrives the connection is between client 127 and web server 150 is terminated. Client 127 uses web browser 131 to display requested web page 151. Web server 150 does not maintain any state information about the request once the connection is terminated. HTTP, which is frequently used to implement client pull, is, therefore, a stateless application protocol. That is, client 127 can send several requests to web server 150, but

each individual request is treated independent of any other request. Web server **150** has no recollection of any previous request. Thus, for example, if a form is completed by the user and submitted to web server **150** for processing, the web server does not maintain a record of the data entered the form.

Once a file is sent from web server **150** to client **127** it becomes ready for display. Client **127**'s web browser **131** is typically used to format and display web page **151**. Web browser **131** allows the user to request and view web page **131** (or any other web page) without having to learn a complicated command syntax. Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. Some web browsers can display several different types of files. For example, web browser **131** may display files (e.g. web pages) written using the Hyper-Text Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF). It is also possible to display various other types of files using language such as Standard Generalized Markup Language (SGML) or eXtensible Markup Language (XML).

A problem with utilizing client pull to distribute data, is that information about what data is to be disseminated to the client computer must be contained in the initial request. For example, if a user residing at client **127** wishes to request web page **131**, the user may do so by entering a Uniform Resource Locator (URL) and then transmitting the URL to web server **150**. The URL is used to identify the name and location of web page **131** (e.g. web page **131** resides on web server **150**). When web server **150** receives the request it transmits requested web page **131** to client **127**. Web server **150** is not configured, for example, to transmit data that web server **150** determines client **127** needs (e.g. onboard software updates).

Another problem associated with client pull is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **150**, for example, does not provide a way to ensure that data intended for display at a certain device is only sent to that device (e.g. a device with a unique serial number). An additional problem is that client **127** cannot be directed to request data without input or direction from a user residing at client **127**. For example, a user residing at client **128** cannot control the behavior of client **127**. Systems utilizing client pull do not have a mechanism for control the request patterns of multiple devices.

C. Server Push

The following section discusses the server push techniques and points out the limitations associated with using such systems to distribute image data. Server push is a technique that provides a way to transmit a predetermined data set from a server computer to one or more client computers. Referring now to FIG. **1**c, a system configured to perform one or more server push operations is shown. The system is generally composed of a server system **170**, a network **173**, and client computers **175-171**. Each element of the system is configured to perform a task. Server system **170**, for example, transmits data to any client computer **175-171** scheduled to receive data. Network **173** provides end-to-end connectivity for the system and thereby links server system **170** with client computers **175-171**.

Each client computer **175-171** contains software configured to provide the user with an interface for operating the computer (e.g. an operating system). A web browser **180**, residing at each client, provides users with a way to inform server **170** what type of data to send and how often data of that type should be sent. For example, if the user of client computer **175** wishes to have server **170** transmit stock market quotes (e.g. data **172**) to client computer **175** on a daily basis, the user may direct server **170** to do so by obtaining a web form **190** from server **170** that provides such a option, filling the form out, and submitting the form to server **170**. When server **120** receives the data provided by the user, it schedules the stock market quotes for dissemination at the interval specified by the user.

Server **120** may also be configured to disseminate electronic mail messages to client computers **125-131** on a regular basis. For example, if the user of client computer **129**, or any other person authorized to control the behavior of server **120**, directs server **120** to transmit an electronic mail messages to client computer **129** once a week, server **120** will distribute an electronic mail message to client computer **129** at the interval specified by the user.

Other types of data, such as document written using the HyperText Markup Language (HTML) may also be transmitted to client computers **175-171** for display. Such document may, for example, be embedded into the graphical user interface (e.g. the GUI desktop) or shown as screen savers. Examples, of such distribution systems include the active desktop included with Internet Explorer and the screen saver distribution scheme used by pointcast.

A problem with server push systems is that data is transmitted in a unidirectional manner. For example, data may be sent from server **170** to client computer **177** using server push techniques, but data cannot be transmitted from client computer **175** to client computer **177**. Another problem associated with server push is that it does not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user). Web server **170**, for example, does not contain a mechanism for ensuring that data is only sent to devices having a certain serial number.

None of the prior art devices and/or systems described provide a way to distribute image data to a customizable frame devices. The prior art lacks a mechanism for remotely customizing the behavior of each frame device and does not have a distribution scheme configured to distribute image data to each frame device.

## SUMMARY OF THE INVENTION

A method and apparatus for distributing content via a communications network is described. The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display from a repository of that may be accessed via an interconnection fabric (e.g. a computer network). If a person (referred to as a user) wants to display an image on the frame device the person may do so by transmitting the image data to the repository.

The frame device is programmed to connect to the repository and obtain new images for display. Once the frame device is connected to the network it may also use the opportunity to update the device's onboard software. In one or more embodiments of the invention, the frame device is configured to automatically execute the steps typically required for it to connect to the repository. Thus, the frame device is self-aware and requires only a minimal amount of input from the user. Once the frame device is connected to a power source and a telephone line, for example, the device is configured to automatically access the data repository without any further user input. The software that provides the frame device with its operational logic may be automati-

cally upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. Thus, if certain information necessary for normal day-to-day operation is lost (e.g. by a power outage), the frame device may recover without requiring input from the user.

The type of images and the frequency with which such images are displayed is configured remotely via a graphic user interface called a picture box. In one or more embodiments of the invention, the picture box is accessible via a web browser. The picture box provides a way to customize the behavior characteristics of the frame device to conform to the wishes of the user. Each frame device has a display region (e.g. an LCD) surrounded by a border region modeled to resemble a traditional picture frame. The border region may be comprised of wood, plastic, or any other aesthetically pleasing compound. The border region may be, for example, an actual picture frame with a paper matte board that surrounds a thin LCD display region. Each frame device is configured to connect to an interconnection fabric to periodically obtain image data from a data repository and to then display that data according to criteria established by an authorized user.

The data repository is populated with image data via an image collection process. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the target frame device. The user may specify filter criteria which establishes what network addresses (e.g. picture mail address) are authorized to populate the data repository. The filter criteria and other information such as the behavior characteristics of each frame device are established via a picture box.

When a user initializes a frame device, the user associated with the initialized frame device becomes a member of an online community. When the user initiates the frame device a picture box is created that allows the user to specify mange the behavior of the user's frame device. Each picture box is assigned a unique username (e.g. a picture address) and associated with one or more frame devices. The picture box provides the user with an interface for managing the behavior characteristics and filter criteria of one or more registered frame devices. For example, the picture box provides the user with a way to specify when the frame device should connect to the data repository to obtain a image and/or software update. When an update occurs new image data and or information related to the operation and behavior of the frame device may be transmitted to the device.

In one or more embodiments of the invention, users may obtain a picture box by using a picture box viewer (e.g. a web browser). A picture box engine residing on a server system may generate the picture box. The picture box engine uses information stored in the data repository to generate the picture box that is displayed by the picture box viewer. For example, a user residing at a client computer may use a picture box viewer to request a picture box from a server computer. The server will respond to the request by executing the picture box engine, which in turn obtains the data used to generate a picture box from the data repository.

## DESCRIPTION OF THE DRAWINGS

FIG. 1a illustrates a device configured to display digital images.

FIG. 1b illustrates the components used by an electronic mail system and/or a client pull system such as the World Wide Web.

FIG. 1c illustrates a system configured to push data from a server computer to one or more client computers.

FIG. 2a is a block diagram that illustrates the components utilized by one embodiment of the invention.

FIG. 2b illustrates the system components utilized by one or more embodiments of the invention.

FIG. 3 is a block diagram that illustrates the internal components of the frame device.

FIG. 4 illustrates what type of data may be stored in the data repository.

FIG. 5 is an illustration of a picture box viewer containing a picture box.

FIG. 6 is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in a frame device.

FIG. 7 illustrates an embodiment of the invention that may be utilized to access the picture box interface.

FIG. 8 is a flow chart illustrating the process utilized by one or more embodiments of the invention to register a frame device.

FIG. 9 illustrates the process utilized by one or more embodiments of the invention to initialize a frame device.

FIG. 10 illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates.

## DETAILED DESCRIPTION

A method and apparatus for distributing content via a communications network is described. In the following description numerous specific details are set forth in order to provide a more thorough understanding of the present invention. It will be apparent, however, to one skilled in the art, that the present invention may be practiced without these specific details. In other instances, well-known features have not been described in detail so as not to obscure the invention.

General Overview

The present invention comprises one or more interconnected frame devices. A frame device is a self-configuring digital picture frame that obtains images for display and/or software from a data repository via an interconnection fabric (e.g. a computer network). Each frame device is configured to automatically interface with the data repository to obtain image data and to then display that data according to a set of preferences. For example, a frame device may dynamically obtain image data from a networked data source (e.g. a client computer), store that data, and then display that data according to criteria established by an authorized user.

Each frame device provides users with a simplified interface that minimizes the amount of complexity presented to the user without limiting the ability of the device to perform an advanced set of functions. For example, each frame device is programmed to automatically configure itself without obtaining input from the user. So long as the frame device is connected to a power source and a communication source it may remain operational without obtaining input from the user. The software that controls the behavior of each frame device may also be updated or modified without requiring additional input from the user. One embodiment of the invention provides a simplified pushbutton interface that provides users with a mechanism for manually directing the behavior of the device. However, the device will continue to operate even if users do not direct it to via the pushbutton

APPX160

interface. Each frame device is part of a community of interrelated components that operate in concert to provide image data to a family of one or more frame devices. The details of the system are further described below.

Image data is typically stored in a data repository (e.g. a database). Users or people authorized to submit images may transmit image data to the data repository which in turn provides the image data to an associated frame device by sending the image data via picture mail. A picture box, which comprises functionality further described below, provides users with a mechanism for controlling the behavior characteristics of each frame device. Thus, users may control the picture box without touching the pushbutton interface on the device. When the picture box is created the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses.

Each frame device contains onboard software designed to automatically connect to an image delivery service. The image delivery service provides a mechanism for transmitting certain types of images to a frame device based on a set of predefined criteria. The specific aspects of the image delivery service are further described below. When a frame device is connected to a network it may automatically execute an initialization process without obtaining any additional input from the user. In one embodiment of the invention this is referred to as the self-configuration protocol. The initialization process is further described below. The data repository may act as an image relay mechanism that processes any image data that is submitted to the system via an image collection/submission engine. The functionality provided by the image collection/submission engine is discussed further below. Once the image data is processed by the collection/submission engine the data repository stores the image data until the frame device connects to the repository for an update. Each frame device is designed to connect to a data source such as the data repository to obtain an update (e.g. image data or software data) using a conversation/security protocol.

Automatic Configuration without User Input

The device is configured to automatically execute the steps required to connect to the repository and does not require input from the user to obtain new images and/or update the onboard software. In one or more embodiments of the invention, for example, the frame begins to acquire configuration information by obtaining the toll free phone number stored in the devices' memory and using that number to connect to a server computer. The server responds by analyzing the caller ID information contained in the connection signal (e.g. ANI) to determine what local phone number or phone numbers the frame device should utilize to inexpensively connect to the data repository. Based on the location of the frame device during dial-in, the server computer provides the frame device with information that directs the device when and where it should dial. The caller ID information, for example, provides the frame device with a way to discern what geographic region the device is located in and based on that information the device knows when to connect to the data repository for an image and/or software update. If the server determines the frame device is in located in Los Angeles, Calif. the server may inform the device to connect at 12:00 am Pacific Daylight Time (PDT) using a phone number located in the Los Angeles area. The local phone number information may be referred to as a localized number sequence.

The frame device responds by storing the information provided by the server in memory and then disconnecting from the toll free phone number without requiring any input from the user. Once the device is disconnected from toll free phone number the frame redials using one of the local phone numbers obtained while the device was connected to the toll free phone number. The local phone number provides the frame device with a mechanism for connecting to the data repository to obtain new images and/or software updates. The frame device typically uses the local phone number information to connect to the data repository at the time specified by the server without requiring any input from the user of the device. Thus, the frame device is self-configuring and self-maintained. If certain information necessary for normal day-to-day operation is lost (e.g. by a power outage or by the user physically moving the frame device), the frame device may recover without requiring input from the user.

Self-Upgrading without User Input

The software that provides the frame device with its operational logic may be automatically updated and/or upgraded without input from the user. For example, when the frame device connects to the data repository the device may elect to update and/or modify the operating system software located inside the frame device. The functionality of the pushbutton switch or behavior characteristics of the frame device, for example, may be altered by updating the onboard software that controls the device. Transmitting an update to the frame device may modify any characteristic that may be controlled via onboard software.

Simplified User Interface

Users are not required to perform any complex activities to configure the device. The device may, however, connect to the data repository when manually directed to by the user. The frame device contains a simplistic pushbutton interface that provides novice users with a mechanism for directing the behavior of the device. For example, one or more pushbuttons provides users with a way to manually initiate a connection to the data repository. Other functions such as dimming the LCD or cycling through a set of available images (e.g. slide show mode) may also be provided by the pushbutton interface. A detailed discussion of the pushbutton interface located on the frame device follows below.

The Components of a Frame Device

FIG. 3 shows a block diagram illustrating the components of a frame device as it is used by one embodiment of the invention. Each frame device comprises a Central Processing Unit (CPU 305), memory (e.g. flash memory and DRAM), and telecommunication hardware and/or software configured to provide the device with a mechanism for connecting to a data repository. Onboard software stored in memory provides each frame devices with a set of behavior characteristics that may be customized by the user, or by any other person authorized to alter the frame device's behavior characteristics. CPU 305 is responsible for executing tasks for the frame device. In one or more embodiments of the invention, CPU 305 is a microprocessor manufactured by Cirrus Logic, such as the EP7211 ARM processor, or a microprocessor manufactured by Intel, such as the 80X86, or Pentium processor. However, any other suitable CPU, microprocessor, or microcomputer may be utilized.

CPU 305 communicates with the other components of the frame device utilizing system bus 335. Bus 335 may contain, for example, thirty-two address lines for addressing flash memory 309 or DRAM 307. The system bus 335 may also include, for example, a 64-bit or 32-bit data bus for transferring data between and among the components, such as

CPU **305**, flash memory **309**, DRAM **312**, and DRAM **307**. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

Display **313** represents the display hardware used to render a visual representation of the image data. In one or more embodiments of the invention, display **313** is a Liquid Crystal Display (LCD). However, the invention also anticipates the use of other display mechanisms that are capable of rendering an image for display. Flat panel technologies such as plasma displays, Field Emission Displays (FED), or improved Cathode Ray Tube (CRT) monitors, for example, may also be utilized to display images. Display **313** is surrounded with a border region modeled to resemble a traditional picture frame. Display **313** is a low profile LCD designed to minimize the prevalence of display **313**. Thus, the emphasis is on the picture frame rather than the LCD. Controller **311** controls the image data output to display **313**. For example, if LCD hardware it utilized to display image data, controller **311** is an LCD controller. DRAM **312** is the memory controller **311** uses to prepare image data for display on display **313**. DRAM **312**, for example, may be utilized for purposes of frame buffering. Dithering may be performed on the frame device in order to improve the quality of images displayed on display **313**.

Flash memory **309** provides the frame device with storage space for the image data. For example, image data held in the data repository may be copied into flash memory **309** when a connection to the data repository occurs. In one or more embodiments of the invention, the image data held in flash memory **309** is stored in a compressed format and decompressed when the data is output to display **313**. Flash memory **309** may hold the onboard software that defines the functionality of the device. The mechanism and data used to control the behavior characteristics of the frame device is also stored in flash memory **309**. For example, flash memory **309** may hold the local phone number utilized to connect to the data repository. In case the local phone number cannot be reached a toll-free phone number also resides in flash memory **309**. The toll-free phone number may be used if the local number fails. Other information that is required to initiate a communication session with the data repository may also reside in flash memory **309**.

Flash memory **309** may store timing information. For example, the time the frame device is scheduled to dim display **313**, the time the frame device is scheduled to connect to the data repository for an update, and the current time are stored in flash memory. In one or more embodiments of the invention, relative time is utilized to indicate the current time. Relative time is kept by keeping track of the number of clock cycles performed by CPU **305**. However, the invention contemplates the use of other mechanisms for keeping time. For example, the current time may be obtained from a central source located on the frame device. The current time may also be obtained by accessing other networked devices such as a server computer containing a system clock.

In one or more embodiments of the invention, flash memory **309** is configured to store the software release number and/or version number of the onboard software. When a connection to the data repository occurs the version of software held resident in flash memory **309** is compared to the version held in the repository. If the version of software held in flash memory **309** is older than the version in the data repository then a newer version is loaded into flash memory **309**. Thus, the frame device is configured to automatically update its software without requiring input from the user. DRAM **307** provides the frame device with an

execution space for general-purpose tasks (e.g. frame buffering). Modulator demodulator **319**, for example, may utilize DRAM **309** as a place to process downloaded data.

The function of pushbutton switch **300** is to provide the user with an interface for controlling certain attributes of the frame device. If, for example, the user depresses pushbutton switch **300** the frame device will illuminate display **313** so that images shown on the display become visible. Pushbutton switch **300** is also used as a frame advance. Thus, pushbutton switch **300** provides the user with a way to navigate through the images held in flash memory **309**. If ten images currently reside in flash memory **309**, the user may utilize pushbutton switch **300** to cycle through the ten images in flash memory **309** available for display. One embodiment of the present invention contemplates using pushbutton switch **300** to force the frame device to update its image library. For example, depressing pushbutton switch **300** for an extended duration of time (e.g. several seconds) causes the device to initiate a connection to the data repository. Once the connection is established the frame device utilizes the information contained in the data repository to supply the frame device with a new set of images. Pushbutton switch **300** also provides a way for the user to alter the backlight level of display **313**. In one embodiment of the present invention, pushbutton switch **300** is configured to alter any of the attributes of the frame device provided via software. Thus, it is possible to periodically change the features controlled by pushbutton switch **300** to meet the demands of the user.

The invention also contemplates the use of multiple pushbutton switch **300**'s. If multiple pushbutton switch **300**'s are present each pushbutton switch **300** may be configured to perform different functions. For example, one pushbutton switch **300** may be utilized as a dimmer button that controls the brightness of the frame, whereas the second pushbutton switch may be configured to act as a main button that has multiple functions. In one or more embodiments of the invention, the pushbutton switch provides a mechanism for marking images for deletion. The pushbutton switch may also be utilized to identify images that are to be saved or archived. Photo sensor **303** supplies the frame device with a mechanism for automatically dimming display **313** when certain conditions, such as the passage of time or the activation of pushbutton switch **300**, occur. The frame device is operational without photo sensor **303**. Therefore, photo sensor **303** is not required, but may be included if dimming functionality is desired.

Communication interface **340** provides a two-way data communication coupling via a network link **341** to interconnection fabric **342**. Communication interface **340** may be implemented in software or hardware form. In one or more embodiments of the invention, data communication interface provides a codec for optimizing data throughput to network link **341**. Interconnection fabric **342** represents any type of network configured to transmit data. For example, interconnection fabric **342** may represent the Internet or any other type of easily accessible computer network.

If communication interface **340** is an integrated services digital network (ISDN) card or a modem, communication interface **340** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **341**. Data is then transported across network link **341** to interconnection fabric **342**. If communication interface **340** is a local area network (LAN) card, communication interface **340** utilizes a compatible LAN as network link **341** to transmit data to interconnection fabric **342**. Wireless links are also possible. In any such imple-

APPX162

mentation, communication interface 340 sends and receives electrical, electromagnetic or optical signals that carry digital data streams representing various types of information. These signals are transmitted across network link 341 to interconnection fabric 342. Therefore, interconnection fabric 342 couples the frame device to the data repository.

Power source 329 provides the frame device with the electrical current necessary to properly run the device. In one or more embodiments of the invention, power source 329 obtains an electrical signal from a standard wall plug and utilizes a transformer unit, a voltage converter and an econo reset device to prepare the signal for use by the frame device. Power source 329 may also obtain an electrical signal from a battery, solar power, or any other source that can generate the appropriate amount of current required to adequately power the frame device.

System of Interrelated Components

FIG. 2a is a block diagram that illustrates the components comprising one embodiment of the invention. In the embodiment illustrated, the system comprises one or more frame devices 200-209 configured to connect to data repository 213 via an interconnection fabric 217. Frame devices 200-209 are designed to resemble traditional picture frames. For example, each frame device contains a border region 250 that enhances the aesthetic qualities of the device. The border region 250 may be comprised of wood, plastic, metal, or any other compound that is pleasing to the eye. Each frame device 200-209 may have a border region 250 that appears to be different from the border region 250 of another frame device. For example, the border region 250 for frame device 200 may appear different than the border region 250 attached to frame device 209. In one or more embodiments of the invention, border region 250 is an actual picture frame sized to surround the display of frame device 209. Border region 250 may contain a matte board designed to complement the picture frame.

However, unlike a traditional picture frame, the images shown in the display region of frame devices 200-209 can be periodically modified. For example, frame device 200 can be configured to show a first image for a certain duration of time and a second image for another duration of time. Image data 214, for example, can be shown in the display region once it is obtained from the data repository.

Frame devices 200-209 connect to data repository 213 to obtain image data 214 via interconnection fabric 217. In one or more embodiments of the invention, frame devices 200-209 use one or more local frame servers 211 to connect to interconnection fabric 217. An Internet Service Provider (ISP), modem pool, or any other mechanism capable of connecting frame devices 200-209 to interconnection fabric 217 is an example of a local frame server. However, local frame servers 211 are not required to achieve connectivity to interconnection fabric 217. Frame devices 200-209, for example, may connect directly to interconnection fabric 217 and thereby bypass local frame servers 211.

In the invention, interconnection fabric 217 is any of multiple suitable communication paths for carrying data between frame devices 200-209 and data repository 213. Interconnection fabric 217 may be, for example, a local area network (LAN) implemented as an Ethernet network. Any other local network may also be utilized. The invention also contemplates the use of wide area networks such as the Internet and/or World Wide Web. Interconnection fabric 217 may be implemented using a physical medium such as a wire or fiber optic cable, or it may be implemented in a wireless

environment. For example, the invention contemplates the use of dedicated, dial-up, or shared communication interconnects.

The data repository is populated with image data 214 via an image collection process. Image data 214 is inserted into data repository 213 by data source 260. In one or more embodiments of the invention, data source 260 populates data repository 213 with image data by obtaining the data from a storage medium such as a hard drive, preparing the data for submission, and transmitting the data to data repository 213. A program executing at data repository 213 determines whether the image data satisfies certain filter criteria. For example, the program may determine whether the image data was transmitted from a member of the users buddy-list and/or address book. If the image data does not satisfy the filter criteria it may be discard or returned to the original data source. For example, in one or more embodiments of the invention, a networked data source (e.g. a client and/or server computer) populates the data repository with image data by submitting image data to a picture mail address associated with the targeted frame device. In one or more embodiments of the invention, the picture mail address is a network address (e.g. an IP address) that is associated with a frame device. The user may specify filter criteria (e.g. via a picture box) which establishes what addresses (e.g. picture mail address) are authorized to populate the data repository. Users who join the picture mail community by connecting one or more frame devices to the interconnection fabric may, for example, pass images data to other members of the community via a picture mail address. However, users are not required to belong to the picture mail community to submit images to a frame device that does belong to the picture mail community. In addition to storing the image data, and filter criteria, data repository 213 also comprises data that may be used to define the behavior of frame devices 200-209. The structure and arrangement of the data repository itself will be discussed further below. In one or more embodiments of the invention, the filter criteria (e.g. who is permitted to send images to a frame device) and other information held in data repository 213 such as the behavior characteristics of each frame device are established via a picture box.

Users may use the picture box to customize the behavior characteristics associated with each frame device 200-209. Specifying the time and type of image data 214 frame device 200 is to obtain is an example of a customizable behavior characteristic. However, any feature and/or function offered by the frame devices 200-209 may become a behavior characteristic.

Each picture box 229-233 may provide a way, for example, to specify how often a certain frame device retrieves new image data from the data repository. For example, the user of client computer 225 may use picture box 232 to specify how often frame device 207 connects to data repository 213. Picture box 232 can also be configured to provide the user of client computer 225 with a mechanism for controlling what images are deliver to frame device 207. For example, the user could specify that images should only be accepted from people listed in the user's buddy-list, friendly-sender list, or address book. If the user of client computer 225 wants to subscribe to an image delivery service, this preference may also be expressed via picture box 232. The image delivery service regularly delivers images that illustrate weather reports, art collections, greeting cards, movie posters, post cards, live camera data, or any other type of customized data to the user's frame device.

Each image delivery service may be separately subscribed to and the device may be unsubscribe at any time.

The user may also utilize the picture box to define filter criteria (e.g. to specify who is authorized to populate a certain frame device with new images). For example, the user of client computer **221** may use picture box **232** to indicate that only images received from certain picture mail addresses are to be held for display in data repository **213** and forwarded to frame device **203** upon request. Each individual picture box **229-233** controls the behavior characteristics of one or more frame devices **200-209**. Picture box **220**, for example, may be configured to control frame device **203** and **209**.

In one or more embodiments of the invention, the picture box engine **216** is responsible for obtaining the picture box data **233** needed to generate a picture box from data repository **213** and transmitting a visual representation of the picture box to the appropriate picture box viewer. For example, a user who has permission to control frame device **209** may control the behavior characteristics of the device via a picture box. The user may obtain picture box **251** by using picture box viewer **220** to request picture box **251** from server system **215**. For example, if a user residing at client computer **219** uses picture box viewer **220** to request picture box **251** from server computer **215** the server responds by executing picture box engine **216**, which in turn obtains picture box data **233** from data repository **213**. In this instance, picture box data **233** is associated with frame device **209**. However, the picture box may be associated with any frame device **200-209** the user is authorized to control. The user may control multiple frame devices via a single picture box. A single user can also elect to use multiple picture boxes to control multiple frame devices.

It is possible for the user to modify the onboard software embedded into each frame device **200-209** by making changes to the picture box. When a change is made it is reflected in data repository **213** and communicated to the frame device when the device connects to data repository **213** for an update. Other authorized parties, such as the picture box provider, can also modify and or update the functionality provided by the onboard software by indicating to the frame device when it connects to the data repository that new software is available for it to obtain. When the frame device receives such a message it may automatically obtain and install the new software update. Thus, authorized users can automatically add new functionality and features into the frame device without prompting the user for input.

Each client computer **219-227** is configured to run a picture box viewer **220-228**. For instance, client computer **219** is configured to execute picture box viewer **220**. Picture box viewer **220** provides the user of client computer **219** with a visual representation of picture box **229**. In one or more embodiments of the invention, picture box viewers **220-228** are web browsers configured to obtain picture box data from server system **215**. Picture box engine **216** is responsible for generating picture boxes. To accomplish this task, picture box engine **216** obtains picture box data **233** used to create the picture boxes **229-233** from data repository **213**. The invention contemplates placing picture box engine **216** in a variety of different locations. In one embodiment, for example, picture box engine **216** resides at server system **215**. However, picture box engine **216** may also resides on any computer readily accessible to clients **219-227** via interconnection fabric **217**.

FIG. **2***b* illustrates the system components utilized by one or more embodiments of the invention. Frame devices **200***n* and web browser **262** are both controlled by an authorized

user **283**. The term user as described herein has multiple meanings. The term comprises guest users who have not yet registered and/or initialized a frame device. The term user also refers to registered guests (e.g. members) that may submit images to a frame device. An owner is a type of user who has a frame device. However, an owner need not use web browser **262** to configure the frame device if a user of another type or the manufacturer of the device already has configured the frame. One or more embodiments of the invention contemplates the use of an owner-proxy. The owner-proxy is authorized by the owner to act on the owner's behalf. For example, the owner-proxy may be given authority to control certain aspects of the frame device by the owner. A parent is the user who controls one or more frame devices. The parent has the authority to control what type of images is displayed on the frame and who may submit images for display. The parent user typically has all the privileges needed to control the frame device. The purchaser or buyer of a frame device may also be referred to as a user. A person who provides images and/or data to the system such as a gallery provider, channel provider, and or advertisement provider is also considered a user of the system. Thus, the term user is intended to be a general term that has multiple meanings. A single person or entity may function as multiple users and multiple people may function as one or more users. The invention contemplates assigning each type of user a different password. Thus, each user may be assigned a different level of access to the system. For example, a parent user has permission to modify the picture box in any way whereas a member does not yet have permission to modify the frames behavior, but may submit images to the picture box for display on the frame device.

When a user initially connects frame device **200** to a power source and/or a communication source, the frame device interfaces with telco **278** via telecommunication mechanism **263**. Telecommunication mechanism **263** connects to access array **264**. In one or more embodiments of the invention telco **278** is the infrastructure provided by a telecommunications provider (e.g. AT&T, MCI, SBC, Pac-Bell, GTE, etc. . . . ) and telecommunication mechanism **278** is a local phone service and/or toll-free phone service. Access array **264** is provided by ISP **279**, and comprises one or more devices configured to communicate with the carrier wave signals transmitted by frame device **200**. The invention contemplates the user of multiple access arrays and each access array may be located in a different geographic region. Each access array may be configured to understand the signaling and/or communication protocols utilized by the frame device. For example, if frame device **200** uses a modem to connect to access array **264**, access array **264** may be configured to understand the corresponding signaling standard (e.g. V.32, V.42bis, V.90 etc. . . . ). Access array **264** may also comprise computer hardware configured to understand protocols such as TCP/IP, SLIP, and PPP. The services offered by MegaPOP™, ZipLink™, UUNET™, and/or GTE Internetworking™, for example, are examples of an access array **264**.

Access Array **264** communicates with proxied server(s) **266**. Proxied server **266** may be, for example a RADIUS server configured to communicate with the registration server **268**. RADIUS is a program that runs on a computer. RADIUS allows the expansion of the number of user (connection) profiles available to RADIUS compliant remote access devices. The three main functions of a RADIUS server are authentication, authorization, and accounting. RADIUS is used to authenticate users for dial-in and/or remote access via a data communication network.

17

Authentication information may be stored locally (e.g. in a local file) or accessed from external authentication mechanisms. Authorization controls access to specific services on the network. Once a user is authenticated, RADIUS identifies what a user is authorized (permitted) to access and communicates that information to a PortMaster. For example, user_1 may be authorized to use a certain type of communication protocol (e.g. PPP or SLIP) for his connection, and to use a certain IP address. The RADIUS accounting permits system administrators to track dial-in and/or network use. The present invention is not limited to the use of RADIUS servers, but also contemplates the user of other types of servers that perform the functionality required to effectively balance the communication path between frame device 200 and data repository server 269.

In one or more embodiments of the invention, access array 264, proxied server 266, load balancer 267, and registration server 268 intercept and then forward data signals transmitted from frame device 200 to data repository server 269. Load balancer 267, for example, is responsible for balancing the load placed on devices in the communication path (e.g. registration server 268). A Domain Name System (DNS), Windows load balancing service, Router, or Round Robin device are some examples of systems capable of acting as load balancer 267. Load balancer 267 is provided by frame data provider 281 to communicate with data repository server 269 via registration server 268. The functionality provided by load balancer 267, 272, and 276 may be provided by a single computer or multiple computers. A single computer connected to the interconnection fabric may, for example, be configured to execute software or hardware that acts as load balancer 267. Alternatively, the functionality provided in load balancer 267 may be executed in other computer systems connected to the interconnection fabric (e.g. Registration Server 268 or Data Repository Server 269).

Data repository server 269 and registration server 268 may be configured to transmit log information 274 to one another. In one or more embodiments of the invention log information 274 is RADIUS logs. Data repository server 269 executes, manages, and communicates with data repository 270 via Local Area Network (LAN) 273. Data repository 270 is a database file system and image store. However, data repository 270 may also comprise other information needed to update and/or manage frame device 200. For example, the data contained in Package Server 271 may be stored in data repository 270.

Package Server 271 is configured to communicate with data repository 270 and data repository server 269 via LAN 273. In one or more embodiments of the invention, package server 271 comprises a File Transfer Protocol Daemon (FTPd), a packager, and an interpreter. Package server 271 may also be referred to as an application server. The packager is responsible for generating multiple kinds of packages. A package is a compilation of data that provides the recipient and the transmitting device with information needed to complete a transaction. For example, a package may contain authentication information that provides frame device 200 with a way to verify whether package server 271 is authentic. A package may also contain metadata about frame device 200. For example, some or all of the information stored in flash memory and/or DRAM may be inserted into a metadata file. The metadata file may contain, for example, a unique frame identifier, a relative clock time, a lights on clock tick, a lights out clock tick, a connect time, connection information, slide show information, log information, name server information, image information, an

18

image display list, and error information. Other information utilized by the frame device and/or any of the server systems may also be placed into the metadata file. The package server 271 may also generate packages that contain content and formatting data (e.g. image and/or text data).

To obtain package data frame device connects to access array 264 via telecommunication mechanism 263. In one or more embodiments of the invention frame device 200 is configured to establish an FTP session with package server 271. Once the session is established, frame device 200 transmits a unique identifier (e.g. user/frameID). Package server 271 responds by prompting frame device 200 for password information, which the frame then transmits. The frame device may dynamically generate the password information. Once frame device 200 enters the correct password, the device is permitted access to package server 271. At this point frame device 200 is linked to package server 271 and data may be sent to and from each using either ASCII mode or binary mode. Load Balancer 272 may be optionally placed between package server 271 and access array 264 in order to ensure that the load placed on package server 271 does not exceed its capacity.

Frame device 200 typically communicates with package server 271 using the binary connection mode. During the communicate session frame device 200 initiates a GET command via path and thereby obtains an authentication file from package server 271. When frame device 200 obtains the authentication file, it determines if the authentication file is authentic by computing a checksum and comparing the result to an expected results file. If the comparison matches, frame device 200 "trusts" package server 271. When a trust relationship is established frame device 200 transmits package data to package server 271. In one more embodiments of the invention, frame device 200 tells package server 271 how much package data it will be sending (e.g. via a SIZE command) and then transmit that amount of data to package server 271 via a PUT command. For example, a content list and a log file may be transmitted to the server via the PUT command. Package server 271 then computes and compares the checksum information associated with the transmitted package data (e.g. metadata). Frame device 200 may also utilize the GET command to obtain additional packages. In one or more embodiments of the invention, the USER command and PASS command are modified to provide an additional layer of security. For example, the PASS command and the USER command may be modified to transmit and/or bounce back encrypted strings of data that are authenticated before access to the package data is permitted.

For example, frame device 200 may use the GET command to obtain an administrative package comprising information useful for administering the frame and/or a content package comprising content and formatting data. The content of the packages is self-defined and may vary depending upon the requirements of frame device 200. Upon delivery of the relevant packages, frame device 200 may synchronize its time keeping mechanism with package server 271 and terminate the connection. If the frame device connected using the toll-free phone number, local number information is obtained and provided to the frame device in the administrative package. The local number information that is best for the device is determined by analyzing the caller ID information provided when the device call using the toll-free phone number.

In one or more embodiments of the invention, web browser 262 provides a mechanism for submitting and/or changing the image data that is to be displayed on frame device 200. To submit image data web browser 262 connects

to local ISP **265** via telco **278**. Local ISP **265** communicates with load balancer **276** which in turn communicates with one or more web servers **275** and submission/image processing engine **284**. Web browser **262** and web servers **275** may also communicate with clearing house **277** and/or data repository **270**. Clearing house **277** is a computer system configured to process transactions with user **283**. In one or more embodiments of the invention, submission/image processing image comprises software configured to obtain image data from user **283** via web browser **262**.

The Data Repository

The data repository comprises one or more databases. Each database provides the system with information and/or data related to distributing data to one or more frame devices. In one or more embodiments of the invention, the data repository stores information used to control the content distributed to and from each frame. For example, data about each user and the preferences associated with that user may be held in the data repository. Each frame device is configured to connect to the data repository at one or more predefined intervals utilizing an interconnection fabric such as the Internet. Once a frame device connects to the data repository, it utilizes the information stored in the data repository to update the image data that is to be displayed and the behavior characteristics of each frame device. For example, the functions provided by the onboard software may be modified when the behavior characteristics are updated. The data repository is therefore responsible for queuing and archiving image data and/or software data for each frame device associated with the data repository.

Referring now to FIG. **4**, an example, of the type of data stored in the data repository is shown. In one or more embodiments of the invention, the data repository is comprised of multiple databases. The databases are related to one another and contain information utilized to generate the data repository. Each database may contain one or more tables of information. Thus, the data repository may be constructed as a single database having one or more tables or as a series of databases related to each other. The term database and table may therefore be used interchangeably. The databases may be organized using a relational structure, an object-oriented structure, or any other type of organizational scheme configured to store the information needed to create the data repository. The databases may also be distributed across multiple computers. For example, a first computer may contain one portion of the data repository and a second computer may contain a second portion of the data repository.

One of the databases contained in the data repository is the user database **401**. User database **401** comprises information about users that have registered with the system. In one embodiment of the invention user database **401** contains one record for each registered user. User database **401** typically stores information about the user such as the user's username, password, picture mail address, and billing information. User database **401** may also contain a list of picture mail addresses from which image data may be received. If, for example, a user wishes to receive picture mail from a certain address the user may designate that address as a friendly sender by placing the address in the list of picture mail addresses from which data may be received. In one or more embodiments of the invention, picture mail addresses not contained in the list may not populate a user's frame device with image data. The user may use the picture box to identify a list of friendly picture mail addresses. This list of friendly senders may be referred to as a buddy list and/or address book.

The data repository also holds information about each frame initialized with the system. A frame becomes initialized when the user of the frame device, or a person acting on behalf of the user, directs the system to obtain a picture box. Information about the frame device is held in the frame database **403**. The frame database **403** comprises multiple records **404-411***n* and each record is associated with a unique frame device. A single user, however, may have multiple frames registered with the system. Thus, one record in user table **401** may be related to many records in the frame table. For example, if a user owns two frame devices the data repository may have a single record about that user in user database **401** and two records about the user's frame devices in frame database **403**. Frame database **403** contains a record for each frame device that registers with the system.

Frame database **403** contains information that uniquely identifies each frame. Frame database **403**, for example, may store a serial number or any other form of information that uniquely describes a particular frame device. Each user, may control one or more frame devices. In one or more embodiments of the invention, frame database **403** stores information about the geographical location of each frame. For example, the zip code, the area code, and/or phone number where the physically device resides, or any other information that identifies the location of the device may be used to describe the geographic location of the frame.

In one or more embodiments of the invention, each frame is associated with an access number. The access number is the phone number utilized by a particular frame device to connect to the interconnection fabric. The access number, for example, may be a toll free phone number or the phone number of an ISP closest in proximity to the physical location of the frame device. The access number may be stored in frame database **403**.

Frame database **403** also contains data that identifies the intervals at which a particular frame device may perform a predefined action. For example, frame database **403** may hold information that specifies the date and time the frame device associated with that record is to connect to the data repository. The actions performed may be defined by the user of the frame device or by an entity authorized to control the actions of the frame device. One embodiment of the invention allows any person with access to the picture box to define an action.

The intensity of each frame device's display region may be varied. For example, the display of each frame device may be configured to dim at certain times. The dimming times are stored in frame database **403**. For example, if the user wishes to have a particular frame device dim between the hours of 11:00 p.m. and 6:00 a.m. this information may be specified via the picture box and is stored in frame database **403**. The frame device may also be configured to automatically dim at a certain time based on the longitude and latitude of the device. The system obtains the location of the frame device when the device indicates it is present by calling the toll free phone number embedded in memory. The caller ID information passed during this connection, for example, allows the system to determine the location of the device and set the corresponding dimming times. The frame device is typically directed to dim during times when network traffic is low and connect time is inexpensive, however, dimming may occur at any time determined to be appropriate by the system. For example, dimming may occur at a time that is not associated with the geographical location of the frame device.

Information about the software contained in each frame may also be stored in frame database **403**. For example,

frame database **403** may store the release and/or version number of the software used to operate and control each frame. If the software is not the most current version available an indication as to whether it is ok to download the software may also be stored in frame database **403**. Frame database **403** stores information about the connection history of each device. For example, the number of failed connections, the number of successful connections, as well as the speed and duration of those connections is stored as the connection history. The connection history may also contain a record of the communication sessions established by a particular device (e.g. the phone numbers called by a particular frame device and the number of images transmitted to the device at that phone number). The frame database **403** may also contain a list of the administrative information uploaded to each frame device.

In one or more embodiments of the invention, the data repository also contains content provider database **413**. A content provider is an entity or organization that offers one or more image delivery services via the interconnection fabric. Content provider database **413** may contain information about multiple content providers. Content provider database **413** contains the name and location of each content provider. For example, content provider database **413** may store the web address or Internet Protocol (IP) address where data pertaining to a particular image delivery service may be located. Content provider database **413** may also contain pointers to other databases where image data utilized to offer an image delivery service resides.

The data repository also stores data utilized by multiple frame devices. For example, central administration database **415** comprises information such as the time of day (per time zone), administrative messages and/or images, broadcast messages and/or images, and other general data utilized by the frames devices when a connection to the data repository is made. An example of a relational database schema arranged to store the data utilized by the system is shown in Appendix A.

The Picture Box/Picture Mail Community

When a user initializes a frame device, that frame device becomes associated with a picture box. For example, each frame device **200-209** is uniquely identified (e.g. by a serial number, address, digital signature, or other identifier) and associated with a particular picture box (e.g. an account at a web site). Each picture box is associated with a unique username and/or picture mail account. Once a picture box is obtained, the user associated with the picture box becomes a member of a picture mail community. Members of the picture mail community are each provided with one or more picture mail addresses. A picture mail address provides a mechanism for transmitting image data to a frame device. The picture mail address, for example, provides the system with the addressing information needed to identify the location of the frame and transmit image data to the frame. Thus, the picture mail address provides user with a way to pass images between others users (e.g. family and friends) who also belong to the picture mail community. In one or more embodiments of the invention, a picture mail address is a network address that uniquely identifies the location of each frame device. The picture mail address may be implemented in the form of an electronic mail address, an IP address, or any addressing scheme that informs the system how to direct image data to the frame device.

Image data may be sent to the frame device by sending the data from a data source (e.g. a client or server computer) to the picture mail address associated with that device. The picture box provides the user with an interface for managing the behavior characteristics of one or more registered frame devices. In one or more embodiments of the invention, each user is given a single picture box to control the behavior characteristics of multiple frame devices. However, a user may also be given multiple picture boxes. The picture box is accessible via an interconnection fabric such as the Internet and may be viewed using a standard web browser. In one or more embodiments of the invention, each frame device is associated with a specific picture box. Information about the picture box utilized to control a frame device may be stored in frame database **403**.

Information used to generate each of the picture boxes may be stored in picture box database **400**. For example, picture box database **400** contains a representation of the image (e.g. a thumbnail) as it will be displayed on the frame device, should it be flagged for download to the device. The location (e.g. picture mail address or network address) the image data was transmitted from is also stored in picture box database **400**. Other information such as the date and time the image was received at the data repository and the date and time the image was received at a particular frame device also resides in picture box database **400**. Picture box database **400** may also contain information about the status of the image data accessible to a particular frame device, such as whether the image is to be archived or kept on the frame device when an update occurs. Data that specifies the filename of the image, whether the image currently resides on the frame device, and routing information that specifies which images should be sent to which frame devices may also be stored in picture box database **400**.

FIG. **5** shows an illustration of a picture box viewer containing a picture box. In one or more embodiments of the invention, picture box viewer **500** is a web browser configured to display picture box **523** (e.g. a web page). Examples of several widely used web browsers include Netscape Navigator, Internet Explorer, and Opera. However, picture box viewer **500** may be any type of software program configured to display picture box **523**. Picture box **523** is any type of data file capable of being transmitted to picture box viewer **523** for display. For example, files written using the HyperText Markup Language (HTML), the JavaScript programming language, the ActiveX programming language, or the Portable Document Format (PDF) may be displayed using picture box viewer **523**. It is also possible to generate picture box **523** using various other types of languages such as Standard Generalized Markup Language (SGML) or eXtensible Markup Language (XML).

Picture box **523** is any example of the type of interface that may be used to create and/or modify records in the data repository. The information stored in the data repository may be presented to the user via picture box **523**. In one or more embodiments of the invention, picture box **523** comprises a first portion **505** that contains a list of the image delivery services scheduled to provide data to a particular frame device and a second portion **509** that shows the status of images that may be displayed on the frame device. However, picture box **523** is not limited to using first and second portions, but may utilize any number of portions to present information to the user of a frame device.

In one or more embodiments of the invention, first portion **505** shows what image delivery services the frame device associated with picture box **523** is subscribed to. For example, the frame associated with picture box **523** is scheduled to receive weekly subscription **503**, daily subscription **505**, and monthly subscription **507**. The delivery intervals may be changed utilizing picture box **523**. For

APPX167

example, it is possible to use picture box **523** to change weekly subscription **503** to a monthly subscription.

The second portion **509** shows what image data is currently intended for display frame devices associated with picture box **523**. Second portion **509** comprises columns of information likely to be of use to the owner of the relevant frame device. For example, in one or more embodiments of the invention, columns that contain image name **512**, status **511**, date **513** and sender **514** are shown in second portion **509**. However, any type of data that describes the images currently accessible to the frame device may be placed in the image name **512** column. For example, the image name **512** column may contain the actual file name, an alias associated with the image file, or a description of the image itself. Image name **512** may also contain a representation of the image data such as a thumbnail.

The status **511** column comprises information that represents the status of the image. For example, information that communicates whether an image is scheduled for display on the frame device is shown in status **511** column. Other information such as whether a new image was received, or whether the image may or may not be deleted can also be presented using status **511** column. One embodiment of the invention provides for the placement of any data that communicates the location and/or status of an image in status **511** column.

Picture box **523** may be configured to show a date **513** column. The date and/or time an image was received may be placed in date **513** column. Other data that is relevant to the receipt of an image may also be inserted into date **513** column. For example, the date a particular image was loaded into an associated frame device may also be placed in date **513** column.

Sender **514** column shows who sent the images shown in the picture box. In one or more embodiments of the invention, sender **514** column contains the picture mail address of the party who transmitted the image. The name and/or location the image was transmitted from may also be shown in sender **514** column.

Routing information may be also be defined using picture box **523**. For example, if the user has the authority to control what is shown on multiple frame devices, the user may use the picture box to specify which images should be sent to which frame devices.

Picture box **253** also provides a mechanism for users to browse through the image data available for display. For example, users may search for images in a list of galleries by conducting a key word search of the galleries. Images held in the galleries may be obtained from a person or entity that provides stock images to the picture box. The user may obtain thumbnail views and full size views of the image data upon request. The user may also use the picture box to review all past, present, and future images displayed on the frame device. Users can also use the picture box to add, replace, or delete any image that is to be scheduled for display on the frame device. Thus, the picture box provides an interface for remotely controlling the behavior of the frame device.

The Image Delivery Service

In one or more embodiments of the invention, users may elect to subscribe a particular frame device to one or more image delivery services offered by the content providers. When the user subscribes to an image delivery service, customized image data is periodically delivered to the frame device designated by the user as the recipient. For example, if a user wishes to have an image summarizing the weather report regularly delivered to the frame device located in the

user's house, the user may subscribe to an image delivery service that regularly transmits weather images to the picture mail address associated with the appropriate frame device. The user may control the date and time the image delivery service sends the image data. The user, for example, may specify that the weather report is only to be delivered at 7:00 a.m. on weekdays and is not to be delivered during the weekend. The invention also contemplates a system wherein the data and time the image delivery service transmits image data is predefined and not set by the user. For example, the image provider may determine when to send images to the picture mail account associated with a frame device. A number of different image delivery services are available to members of the picture mail community and each delivery service may transmit images that are illustrative of any kind of information. For example, images that represent post cards, greeting cards, art collections, live video feeds, or any other type of image data may be delivered to a frame device utilizing an image delivery service.

Frame Device Initialization

In one or more embodiments of the invention, the frame device initializes with the system in order to have the capability to obtain image data. The initialization process may occur with the aid of a user or it may occur automatically without user input. In either instance, users are given the opportunity to customize the behavior of the user's frame device(s). FIG. **8** illustrates the process utilized by one embodiment of the invention to initialize a frame device. The initialization process begins at step **800** when the frame device is connected to a power source and a communication medium such as a telephone line or network connection. The frame device may be configured to automatically connect via a wireless connection or the user may manually couple it to a power source and communication medium.

Once step **800** occurs, an embodiment of the invention proceeds to step **803**. At step **803**, the frame device initiates a connection to the data repository utilizing an interconnection fabric. In one or more embodiments of the invention, the frame device is configured so that can only connect to the data repository and cannot connect to other data sources that are available via the interconnection fabric. For example, the connection process may utilize an authentication scheme (e.g. encryption) to ensure the device connects to an authorized data repository and is not being directed to another data source masquerading as the authorized repository. When step **803** is complete, step **805** executes. At step **805**, the data repository is analyzed to determine whether there is a record for the frame device initiating the connection.

If a record for the frame device is not located, step **807** executes and an image prompting the user to create a picture box account associated with that frame device is displayed to the user. Once the picture box account is created it provides the user with a way to set the behavioral characteristics of the frame device. In one or more embodiments of the invention, the frame device cannot properly connect to the data repository until the picture box account is generated. Thus, the invention contemplates generating a picture box. by executing steps **811** and **813**.

At step **811**, a picture box is obtained. The user may obtain a picture box, and thereby join the picture mail community, by calling a toll free phone number to have another person initiate the generation of the picture box. Alternatively, the user may obtain a picture box by using a web browser and connecting to a web site that contains a mechanism for generating the picture box. The frame device may also automatically direct the system to generate a picture box if an attempt is made to connect and a picture

box associated with the frame device attempting to make the connection does not exist. This may occur without requiring any input from the user. However, user input may be obtained if such input is deemed to be desirable. In one or more embodiments of the invention, however, the user may personalize the picture box by using the input mechanisms present on the frame device (e.g. the pushbutton switch).

Once the picture box is obtained, step **813** executes, at step **813** the behavior characteristics of the frame device is determined. The behavior characteristics may be established by default or customized according to the user's preferences. When the behavior characteristics are determined, step **815** executes. At step **815**, the invention contemplates loading the behavior characteristics into the data repository for use by the frame device.

If the data repository already contains a record for the frame device initiating the connection, step **809** executes. At step **809**, the frame device obtains the behavioral characteristics set via the picture box, by accessing the data repository. One embodiment of the invention loads the behavioral characteristics into flash memory residing on the corresponding frame device. Other data, such as software programs and/or image data may also be loaded into the frame device during step **809**. Thus, functionality may be added to the software contained in the frame device without input from the user.

Self-Configuration Protocol

FIG. **9** illustrates another process that may be utilized by one or more embodiments of the invention to initialize a frame device. The initialization process begins at step **900** where the frame device determines if it is connected to a power source and a communication medium such as a telephone line or network connection. If so, the frame device proceeds to step **901** where it obtains image data from its own memory. At step **902**, the image data is displayed to the user via display **313**. In one or more embodiments of the invention, the image data directs the user to proceed to step **903** where the frame device manually initiates a communication session. The frame device may be configured to automatically initiate a communication session within a certain interval without requiring input from the user. For example, if the user connects the frame device to power source and a communication source, the frame device may initiate a communication session if the user does not manually do so within a certain time frame.

At step **903**, the frame device determines whether it has local phone number information in resident memory. For example, if the frame device has not previously initiated a communication session the device will not have any local phone number information. If so, step **904** executes. At step **904**, the device obtains a phone number (e.g. toll free phone number) from the memory of the frame device. This phone number is referred to as a configuration number sequence and may be permanently embedded into persistent memory (e.g. non-volatile memory). The configuration number sequence is used only for configuration access and is parsimonious with the amount of time it remains connected. Once the frame device has the configuration number sequence, it dials the configuration number using a tone sequence (e.g. step **905**). If that fails, the device may use pulse mode. When a connection is established, device proceeds to step **906** where it obtains one or more local phone numbers from a server computer (e.g. the data repository) provided by the frame service provider. The local phone number information is stored in memory at step **907**.

Once step **907** executes, the device proceeds to step **908** where it disconnects from the configuration number and

re-dials using one of the local numbers. If the frame device already has obtained a local number, step **909** executes and when the device is directed to initiate a connection it dials the local number stored in memory. Thus, the frame device is capable of automatically connecting to the interconnection fabric where it may obtain image data from the data repository without requiring input from the user. If the local phone number information is flushed from memory (e.g. by a power failure) or becomes inaccurate (e.g. because the user moved the physical location of the device), the device may use the toll free phone number to automatically reconfigure itself without prompting the user for additional input. Thus, each frame device is an intelligent device that can be easily maintained by novice or inexperienced users.

Image Collection/Submission Engine

FIG. **6** is a flow chart illustrating the process utilized by one embodiment of the invention to prepare an image for display in the display region of a particular frame device. At step **600**, the user wishing to transmit the image data or a data collection engine, obtains the data and prepares it for submission to the picture mail address associated with a particular frame. The data repository may act as an image relay mechanism which holds the image data until the frame device connects to the repository for an update.

The data may be obtained from any source capable of providing one or more image files. For example, image data may be collected from a client computer, an image scanner, digital camera, or a memory device such as a hard drive. The data collection engine provides a mechanism for obtaining images from any image source accessible via an interconnection fabric such as the Internet. In one or more embodiments of the invention, the data collection engine is configured to obtain image data from any web server or web client connected to the interconnection fabric. For example, the user may direct the data submission engine to periodically collect one or more images from a networked device (e.g. a web server or series of web servers) by specifying a URL that identifies the location of the networked device containing image data that is to be collected.

At step **603**, the image data is prepared for submission. An embodiment of the invention contemplates examining the image data to discern whether it meets a set of predetermined constraints. For example, if the display area of the frame device is a static width and height (e.g. 640×480 pixels), step **603** will obtain the dimensions of the display area and determine whether the image data will fit within the identified area without alteration. If the image does not fit, the image data may be altered to coincide with the dimensions of the frame device. The alteration process may scale the image, crop the image, change the resolution of the image, or otherwise modify the image so that it fits within the given display area. For example, if an image is 1024×768 pixels and the display area of a particular frame device is 640×480 pixels, the image may be appropriately scaled to fit into the 640×480 display area of the frame device. In one or more embodiments of the invention, step **603** is performed before the image data is transmitted to the data repository. However, software executing at the data repository or at the frame device may also be configured to prepare the image data for submission. One embodiment of the invention contemplates placing software configured to perform step **603** on any computer connected to the interconnection fabric.

In one or more embodiments of the invention, the data format of the submitted image is modified to conform to the preferences of the frame device. For example, if the submitted image is in BMP format and the frame device

27

contains software or hardware that is capable of rendering JPEG images for display, the image will be converted from BMP format to JPEG format to coincide with the needs of the frame device. The dimensional aspects of the image may be altered along with the data format. For example, a BMP image having a resolution of 1024×768 may be converted into a JPEG image having a resolution of 640×480. The color depth and other aspects of the image may also be modified. For example, the image alteration process may convert all JPEG images so that each image submitted to the system has a 12-bit color depth and is compressed to a size that does not exceed a certain size (e.g. 64 Kb). Submitted data is conformed to coincide with size and format parameters in order to prevent large, illegal, or improperly formatted files from consuming resources on the system. Additionally, filtering and modifying images before they are stored in the data repository provides a way to prevent excessively large images from consuming resources on the frame device. The data format conversion and the image resizing process may be performed without requiring input from the user. However, in one or more embodiments of the invention, the image alterations may be presented to the user for approval and/or manual modification.

When a user initializes a frame device, that frame device becomes associated with a picture box. Each picture box is associated with a unique username and/or picture mail account. At step 605, the username and/or picture mail account information is utilized to provide a mechanism for transmitting image data to a frame device or series of frame devices. For example, if a user named user_1 initialized frame device XYZ with the system, another user could transmit image data to frame device XYZ by transmitting the image data to the picture mail address associated with user_1. A standard electronic mail client or a customized picture mail client may be utilized to transmit the picture mail and its associated image data. However, any interface capable of sending binary image data to a particular network address (e.g. a web-based interface) may also be utilized.

At step 607, the image data is analyzed to determine if it meets the filter criteria established by the user during the registration process (e.g. is the submitted image data from a person who belongs to the user's buddy list or address book). In one embodiment of the invention step 607 is performed by a data population engine. The data population engine utilizes a specific set of filter criteria to determine whether an image is appropriate for display on a frame device. An embodiment of the invention provides the user with an interface to set the criteria. For example, the filter criteria may be set using the picture box associated with that user. The user can, for example, prevent images arriving from certain picture mail and/or network locations from being displayed on the user's frame device(s).

The user may also elect to store images that arrive from certain locations in the data repository and not present the images for display until they are reviewed and/or approved by the user. The user or any other authorized individual and/or entity may set the filter criteria. For example, the organization that controls the data repository may be given the authority to establish filter criteria. The user may set the filter criteria used by the data population engine using the picture box interface. Other interface devices capable of receiving input from a user, such as a telephone or Personal Desktop Assistant (PDA), may also be used to set the filter criteria.

When an image satisfies the filter criteria step 609 executes. At step 609, images are loaded into the appropriate portion of the data repository. For example, image data that

28

is transmitted to the picture mail address of user_1 may be loaded into the record in the data repository created for user_1. Each time another image is submitted it is added to the appropriate record. Thus, the data repository may hold one or more images.

If the image data does not meet the filter criteria, the image data is discarded or returned to the address of the sender at step 606. In one or more embodiments of the invention, data that does not meet the filter criteria is stored in the data repository, but is not forwarded to a frame device until approved by the user.

Once image data resides in the data repository, step 611 executes. At step 611, the frame device obtains the image data set residing at the data repository. For example, the frame device may connect to the data repository utilizing the interconnection fabric and download the image data into memory. In one or more embodiments of the invention, the frame device periodically connects to the data repository. The frequency of the connections may be determined by the user via the picture box interface or by a party authorized to access the picture box. The device may also automatically determine the connection frequency without requiring input from the user.

Once the image data resides in flash memory, step 613 executes and the image data is displayed on the frame device's display mechanism according to the display preferences expressed via the picture box.

Conversation/Security Protocol

FIG. 10 illustrates the process used by one or more embodiments of the invention to obtain new image data and/or software updates. At step 1000, the frame device establishes a connection to the access array at the scheduled interval via the interconnection fabric. For example, the frame device may utilize the communication interface to connect to an ISP or other entity with an access array such as a modem pool. The frame device obtains the information it needs to initiate the connection from flash memory (e.g. phone number information, unique identifier such as a serial number, and password information). Other information such as the network router information, subnet mask, and domain name service information is drawn directly from the ISP using DHCP or some other dynamically addressing protocol. Thus, the device may obtain the information it needs to connect without input from the user. Once the connection is initiated, the process proceeds to step 1002 where the ISP or entity having control of the access array determines if the frame device is authorized to connect to the access array. If for example, the frame device connects using a modem and PPP, the access array may prompt the device for password information that may be automatically entered by the frame device. In one or more embodiments of the invention, the password to be entered is determined algorithmically by the frame device. If the correct password information is entered the process proceeds to step 1004, otherwise step 1003 executes and the frame device disconnects and waits for a reconnect command to be initiated.

At step 1004, the frame device establishes a communication session with a data server. This may be done, for example, using FTP to connect to the data server. However, the invention contemplates the use of other communication protocols such as NFS, tFTP, HTTP, SMTP, POP3, IMAPI, or any other protocol that can be used to transport data between two or more sources, to establish a communication session with the data server.

When the communication session is initiated the data server executes step 1006 where a challenge is made to ensure the frame device is authentic. If the frame device

correctly responds to the challenge, step **1008** executes. Otherwise, step **1003** executes and the frame device disconnects. At step **1008**, the data server transmits data to the frame device. For example, the data server may enter binary mode and transmit an authentication file to the frame device in response to the device's request for data (e.g. via the GET command). Once the data is sent step **1010** executes. At step **1010**, the frame device examines the data it received to determine if the data is the type of data expected. For example, the frame device may authenticate the data by checking the size, contents, or encryption sequence associated with the data to determine if the transmitted data came from an authorized data server. If the frame device received the expected data (e.g. the encryption sequence is authentic), it proceeds to step **10012**. If the frame did not receive the kind of data expected, step **1003** executes and the frame disconnects from the data server and awaits a reconnect command.

At step **1012**, the data server transmits metadata and/or a log file to the data server. The metadata file contains status information about the frame such as configuration information or connectivity information. The metadata file may also contain new or additional parameters and/or functionality that are to be added to the device (e.g. an on board software update). The log file contains a record of the frame devices past activities. For example, the log may contain a list of recent connection attempts. Any connection failures may be flagged and later analyzed to determine the cause of the failure. After the frame device transmits the metadata to the frame device step **1014** executes. At step **1014**, the data server determines if it received the kind of metadata that was expected. For example, the data server may check to see if the metadata file contains all the expected parameters. In one or more embodiments of the invention, the data server checks the received data to ensure that the data is the proper type of data and that it has not been modified by an unauthorized user (e.g. by examining an encryption sequence associated with the metadata). If the metadata is properly authenticated, the data server executes step **1016** where it transmits package data to the frame device. The package data may contain one or more images that are scheduled for display on the frame device, software updates, and additional parameters needed to direct the behavior characteristics of the frame device. Other information that is useful to the operation of the frame device such as timing information may also be placed in the package. Once the package is received by the frame device step **1018** executes. At step **1018**, a checksum operation is performed to ensure that the entire package scheduled for transmission was indeed transmitted. If the checksum results in the expected response the frame device disconnects and begins to unpackage the package data. If the package data is compressed, the frame device decompresses the package and loads the contents of the package into memory. Image files found in the package may be stored in DRAM until they are rendered for display.

Embodiment of Computer Execution Environment (Hardware)

An embodiment of the invention utilized to access the picture box interface can be implemented as computer software in the form of computer readable code executed on a general purpose computer such as computer **700** illustrated in FIG. **7**, or in the form of bytecode class files executable within a Java™ runtime environment running on such a computer, or in the form of bytecodes running on a processor (or devices enabled to process bytecodes) existing in a distributed environment (e.g., one or more processors on a network). A keyboard **710** and mouse **711** are coupled to a system bus **718**. The keyboard and mouse are for introducing user input to the computer system and communicating that user input to processor **713**. Other suitable input devices may be used in addition to, or in place of, the mouse **711** and keyboard **710**. I/O (input/output) unit **719** coupled to system bus **718** represents such I/O elements as a printer, A/V (audio/video) I/O, etc.

Computer **700** includes a video memory **714**, main memory **715** and mass storage **714**, all coupled to system bus **718** along with keyboard **710**, mouse **711** and processor **713**. The mass storage **714** may include both fixed and removable media, such as magnetic, optical or magnetic optical storage systems or any other available mass storage technology. Bus **718** may contain, for example, thirty-two address lines for addressing video memory **714** or main memory **715**. The system bus **718** also includes, for example, a 64-bit data bus for transferring data between and among the components, such as processor **713**, main memory **715**, video memory **714** and mass storage **714**. Alternatively, multiplex data/address lines may be used instead of separate data and address lines.

In one or more embodiments of the invention, the processor **713** is a microprocessor manufactured by Sun Microsystems, Inc., such as the SPARC™ microprocessor, or a microprocessor manufactured by Motorola, such as the 680X0 processor, or a microprocessor manufactured by Intel, such as the 80X86, or Pentium processor. However, any other suitable microprocessor or microcomputer may be utilized. Main memory **715** is comprised of dynamic random access memory (DRAM). Video memory **714** is a dual-ported video random access memory. One port of the video memory **714** is coupled to video amplifier **716**. The video amplifier **716** is used to drive the cathode ray tube (CRT) raster monitor **717**. Video amplifier **716** is well known in the art and may be implemented by any suitable apparatus. This circuitry converts pixel data stored in video memory **714** to a raster signal suitable for use by monitor **717**. Monitor **717** is a type of monitor suitable for displaying graphic images.

Computer **700** may also include a communication interface **740** coupled to bus **718**. Communication interface **740** provides a two-way data communication coupling via a network link **741** to a local network **744**. For example, if communication interface **740** is an integrated services digital network (ISDN) card or a modem, communication interface **740** provides a data communication connection to the corresponding type of telephone line, which comprises part of network link **741**. If communication interface **740** is a local area network (LAN) card, communication interface **740** provides a data communication connection via network link **741** to a compatible LAN. Wireless links are also possible. In any such implementation, communication interface **740** sends and receives electrical, electromagnetic or optical signals which carry digital data streams representing various types of information.

Network link **741** typically provides data communication through one or more networks to other data devices. For example, network link **741** may provide a connection through local network **744** to local computational service provider computer **743** or to data equipment operated by an Internet Service Provider (ISP) **744**. ISP **744** in turn provides data communication services through the world wide packet data communication network now commonly referred to as the "Internet" **745**. Local network **744** and Internet **745** both use electrical, electromagnetic or optical signals which carry digital data streams. The signals through the various networks and the signals on network link **741** and through

communication interface **740**, which carry the digital data to and from computer **700**, are exemplary forms of carrier waves transporting the information.

Computer **400** can send messages and receive data, including program code, through the network(s), network link **741**, and communication interface **740**. In the Internet example, remote computational service provider computer **746** might transmit a requested code for an application program through Internet **745**, ISP **744**, local network **744** and communication interface **740**.

The received code may be executed by processor **713** as it is received, and/or stored in mass storage **714**, or other non-volatile storage for later execution. In this manner, computer **700** may obtain application code in the form of a carrier wave.

Application code may be embodied in any form of computer program product. A computer program product comprises a medium configured to store or transport computer readable code, or in which computer readable code may be embedded. Some examples of computer program products are CD-ROM disks, ROM cards, floppy disks, magnetic tapes, computer hard drives, computational service providers on a network, and carrier waves.

The computer systems described above are for purposes of example only. An embodiment of the invention may be implemented in any type of computer system or programming or processing environment. When a general purpose computer system such as the one described executes the process and process flows described herein, it is configured to adaptably distribute data to one or more recipient devices.

Thus, a method and apparatus for distributing content via a communications network is described.

The invention claimed is:

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:

said display screen;

a central processing unit;

a video controller configured to control display of said content on said display screen;

a communications interface configured to communicate with said server system via said communications network;

a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:

upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;

sending by said apparatus said unique identifier to said server system;

sending by said apparatus said version identifier to said server system;

prompting by said apparatus a user of said apparatus to create an account at said server system;

receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;

updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;

receiving by said apparatus updated content from said server system;

displaying by said apparatus said updated content on said display screen.

2. The apparatus of claim **1** wherein said image data comprises still image data.

3. The apparatus of claim **1** wherein said image data comprises a video feed.

4. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for causing said apparatus to receive location information of said apparatus from said server system.

5. The apparatus of claim **4** wherein said location information comprises a local telephone number.

6. The apparatus of claim **1** wherein said unique identifier comprises a serial number of said apparatus.

7. The apparatus of claim **1** wherein said content comprises content provided by a content provider.

8. The apparatus of claim **7** wherein said content comprises content provided by a channel provider.

9. The apparatus of claim **1** wherein said display screen comprises an LCD display screen.

10. The apparatus of claim **1** wherein said communications network comprises the internet.

11. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for causing said apparatus to transmit metadata to said server system.

12. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for causing said apparatus to receive metadata from said server system.

13. The apparatus of claim **12** wherein said metadata comprises said unique identifier.

14. The apparatus of claim **12** wherein said metadata comprises connection information.

15. The apparatus of claim **11** wherein said metadata comprises information about said apparatus.

16. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system.

17. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for causing said apparatus to receive authentication information from said server system.

18. The apparatus of claim **1** wherein said computer readable instructions comprise instructions for setting behavior characteristics of said apparatus.

19. The apparatus of claim **18** wherein said behavior characteristics comprise a connection time for said apparatus initiating a communications link with said server system via said communications network.

20. The apparatus of claim **1** wherein said updated computer readable instructions comprise instructions for adding new functionality to said apparatus.

* * * * *

# CERTIFICATE OF COMPLIANCE

I, Lawrence M. Hadley, hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 13,809 words, excluding the portions authorized to be excluded by Fed. R. App. P. 27(d)(2) and Federal Circuit Rule 27(d).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: August 20, 2024                    By:    */s/ Lawrence M. Hadley*
                                                         Lawrence M. Hadley

**PROOF OF SERVICE**

I certify that the **CORRECTED BRIEF FOR APPELLANT CEIVA OPCO, LLC** was served on all counsel of record via electronic mail or CM/ECF delivery on this 7th day of April 2025.

/s/    *Lawrence M. Hadley*
Lawrence M. Hadley